1 | STEVEN T. GUBNER – Bar No. 156593
JASON B. KOMORSKY – Bar No. 155677
2 | SUSAN K. SEFLIN – Bar No. 213865
JESSICA L. BAGDANOV – Bar No. 281020
3 | BG LAW LLP
21650 Oxnard Street, Suite 500
4 | Woodland Hills, CA 91367
Telephone:  (818) 827-9000
5 | Facsimile:  (818) 827-9099
Email:     sgubner@bg.law
6 |            jkomorsky@bg.law
           sseflin@bg.law
7 |            jbagdanov@bg.law

8 | Attorneys for David Seror, Chapter 7 Trustee;
Brutzkus Gubner, LLP; BG LAW LLP
9 | *and*
Specially appearing for Liberty Mutual Insurance
10 | Company

11 | **UNITED STATES BANKRUPTCY COURT**

12 | **CENTRAL DISTRICT OF CALIFORNIA**

13 | **SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| In re | Case No. 1:12-bk-10986-MB |
| ALLANA BARONI, | Chapter 7 |
| Debtor. | Adv. No. 1:24-ap-01059-MB |
| ———————————————— | **NOTICE OF MOTION AND MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM FOR RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| ALLANA BARONI AND JAMES BARONI (individually and on behalf of the United States), | |
| Plaintiff, | [Filed concurrently with Request for Judicial Notice] |
| v. | |
| DAVID SEROR (personally, and in his capacity as Chapter 7 Trustee); BRUTZKUS GUBNER, LLP; BG LAW LLP; WELLS FARGO, BANK N.A.; SEVERSON & WERSEN, a professional corporation; LIBERTY MUTUAL INSURANCE COMPANY; UNITED STATES FIRE INSURANCE COMPANY, and DOES 1-50, | Hearing: |
| | Date:   To Be Determined |
| | Time:  To Be Determined |
| | Place:  21041 Burbank Boulevard, Courtroom 303, Woodland Hills, CA 91367 |
| Defendants. | |

3017305

**PLEASE TAKE NOTICE** that on a date and time to be determined by the Court, and in the above entitled court located at 21041 Burbank Boulevard, Suite 342, Courtroom 303, Woodland Hills, CA 91367, the Honorable Martin R. Barash presiding, David Seror, in his individual capacity, David Seror, in his capacity as Chapter 7 Trustee (the "Trustee") for the bankruptcy estate (the "Estate") of Allana Baroni (the "Debtor"), Brutzkus Gubner, LLP, BG Law, LLP, and Liberty Mutual Insurance Company ("Liberty Mutual"), defendants in this adversary (the "Defendants"), will and hereby do move (the "Motion"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable herein by Rule 7012 of the Federal Rules of Bankruptcy Procedure, for dismissal with prejudice of the adversary complaint [Adv. Doc. No. 1] (the "Complaint") filed by the Debtor and the non-debtor's spouse, James Baroni ("Mr. Baroni" and, with the Debtor, the "Baronis").

By this Motion, the Defendants seek dismissal of the entire Complaint on the grounds that the claims for relief are barred by the doctrines of res judicata, collateral estoppel and law of the case and, further, the claims against the Trustee and the representatives of the Trustee are barred by the doctrine of quasi-judicial immunity and California's litigation privilege.  Because the claims against the Trustee and his counsel are barred, there is no basis to recover on the sbond as against Liberty Mutual and US Fire as that claim is derivative of any claims against the Trustee and his professionals and, in any event, the Plaintiffs do not have standing to bring a direct action against these insurers and are not even beneficiaries under the insurance policies.

The Trustee further respectfully requests that the Court exercise its own initiative pursuant to Rule 9011(c)(1)(B) of the Federal Rules of Bankruptcy Procedure by "directing an attorney, law firm, or party to show cause why it has not violated subdivision (b) with respect thereto" or, alternatively, exercising its inherent power to find that the Baronis' counsel's conduct in filing the Complaint was in bad faith and no "plausible, good faith argument can be made by a competent attorney to the contrary."  *Aldivar v. City of L.A.*, 780 F. 2d 823, 833 (9th Cir. 1986) *abrogated on other grounds by Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990).

The Motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the accompanying request for judicial notice seeking the Court to take

1

1  judicial notice of the substantial record in this bankruptcy inclusive of all bankruptcy court decisions

2  and appeals thereof (the "RJN"), all other matters of which the Court may take judicial notice, and

3  any oral or written evidence or argument that the Court may consider at the hearing on this Motion.

4      **PLEASE TAKE FURTHER NOTICE** that, pursuant to LBR 9031-1(f)(1), unless

5  otherwise ordered by the Court, any party who opposes the Motion must, not later than fourteen (14)

6  days before the hearing on the Motion, file and serve a response to the Motion.

7      **WHEREFORE**, the Defendants respectfully request that the Court enter an Order granting

8  this Motion, dismissing the Complaint in its entirety with prejudice, and granting such other and

9  further relief as the Court deems just and proper under the circumstances.

10  DATED:  December 5, 2024                    BG LAW LLP

11

12                                                 By: _____

13                                                     Jason B. Komorsky
                                                   Susan K. Seflin

14                                                     Jessica L. Bagdanov
                                                   Attorneys for David Seror, Chapter 7 Trustee;

15                                                     Brutzkus Gubner, LLP; BG LAW LLP
                                                   *and*

16                                                     Specially appearing for Liberty Mutual
                                                   Insurance Company

17

18

19

20

21

22

23

24

25

26

27

28

3017305

2

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ...................................................................................................1

II.     BACKGROUND AND SUMMARY OF COMPLAINT ....................................7

        A.      The Bankruptcy Proceedings ...................................................................7

        B.      The Complaint ..........................................................................................9

III.    ARGUMENT ........................................................................................................13

        A.      Res Judicata, Collateral Estoppel and Law of the Case Bar the Complaint ..........13

        B.      The Trustee and His Counsel are Subject to Quasi-Judicial Immunity and the
                Litigation Privilege .................................................................................18

        C.      The Court Must Put a Stop to the Baronis' and Their Counsel's Continued
                Malfeasance ............................................................................................21

IV.     CONCLUSION.....................................................................................................26

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**Cases**

*Agha-Khan v. United States,*
  2015 WL 5734380 (E.D. Cal. Sept. 29, 2015)
  *aff'd* 683 Fed. Appx. 628 (9th Cir. 2017) .................................................................. 21

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)) ................................................................................................. 13

*Askins v. U.S. Dept. of Homeland Sec.,*
  899 F.3d 1035 (9th Cir. 2018) ..................................................................................... 6

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007) ................................................................................................... 13

*Bennett v. Williams,*
  892 F.2d 822 (9th Cir.1989) .................................................................................. 7, 18

*Burton v. Infinity Cap. Mgmt.,*
  862 F.3d 740 (9th Cir. 2017) ....................................................................................... 7

*Fayer v. Vaughn,*
  649 F.3d 1061 (9th Cir. 2011) ................................................................................... 13

*First National Bank of Oneida, N.A. v. Brandt,*
  597 B.R. 663 (M.D. Fla. 2018) .................................................................................. 15

*Harris v. Viegelahn,*
  575 U.S. 510 (2015) ........................................................................................... 3, 7, 18

*In re Aina Le'a, Inc.,*
  2023 WL 8792064 (Bankr. D. Haw. Dec. 18, 2023) .................................................. 2

*In re Baroni,*
  36 F.4th 958 (2022)
  *cert. denied sub nom. Baroni v. Seror,*
  2022 WL 16909177 (U.S. Nov. 14, 2022) ........................................................ passim

*In re Baroni,*
  658 B.R. 551 (C.D. Cal. Mar. 25, 2024) ............................................................... 6, 14

*In re Baroni,* Case No. 22-6867,
  2022 WL 18277987 (C.D. Cal. Dec. 9, 2022) ............................................................ 3

*In re Continental Coin Corp.,*
  380 B.R. 1 (Bankr. C.D. Cal. 2007) ........................................................................... 18

*In re Frantz,*
  635 B.R. 594 (9th Cir. BAP 2023) .......................................................... 22, 23, 24, 25

*In re Gens,*
  2018 WL 4353086 (N.D. Cal. Sept. 12, 2018) .......................................................... 14

*In re Grantham Bros.*,
   922 F.2d 1438 (9th Cir. 1991) ............................................................................. 4

*In re Madatian*,
   2019 WL 545679 (9th Cir. BAP Feb. 11, 2019)................................................ 19

*In re Patel*,
   621 B.R. 245 (Bankr. E.D. Cal. 2020)................................................................ 15

*In re Richards*,
   2023 WL 5805569 (C.D. Cal. Sept. 6, 2023) .................................................... 16

*In Re Stephenson*,
   647 B.R. 256 (Bankr. D. D.C. 2022) .............................................................. 2, 17

*Johnson v. Riverside Healthcare Sys.*,
   534 F.3d 1116 (9th Cir. 2008) ........................................................................... 13

*MGIC Indem. Corp. v. Weisman*,
   803 F.2d 500 (9th Cir. 1986) ............................................................................... 7

*Rasooly v. Self*,
   2015 WL 3430092 (N.D. Cal. May 27, 2015) ................................................... 14

*Reusser v. Wachovia Bank, N.A.*
   525 F.3d 855 (9th Cir. 2008) ............................................................................... 7

*Rubin v. Green*,
   4 Cal. 4th 1187 (1993) ...................................................................................... 20

*Scott v. Kuhlmann*,
   746 F.2d 1377 (9th Cir.1984) ............................................................................ 14

*Zaldivar v. City of L.A.*,
   780 F.2d 823 (9th Cir. 1986),
   *abrogated on other grounds*,
   *Cooter & Gell v. Hartmarx Corp.*,
   496 U.S. 384 (1990) .......................................................................................... 25

**Statutes**

11 U.S.C.,
   Section 1141(d)(5)(A) ...................................................................................... 2, 15

11 U.S.C.,
   Section 704(a)(1) ......................................................................................... 1, 3, 19

California Civil Code,
   Section 47(b) ................................................................................................... 7, 20

**Rules**

Federal Rules of Bankruptcy Procedure,
   Section 9011 ....................................................................................................... 23

2877986

1

**Treatises**

2

6 Norton Bankruptcy Law and Practice 3d, Part II.
   Analysis of Bankruptcy Code, Subpart 17, Chapter 114. Postconfirmation Matters, at § 114:2
   (Jan. 2022 update)............................................................................................................ 15

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2877986

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    INTRODUCTION**

The crux of the Complaint filed by the Baronis in their personal capacity (and purportedly on behalf of the United States of America)[1] can be summarized as follows: Notwithstanding the Debtor's default under her Second Amended Plan of Reorganization (the "Plan"), which led to the conversion of the debtor's chapter 11 reorganization into a chapter 7 liquidation, the appointment of a chapter 7 trustee to "collect and reduce to money the property of the estate" [11 U.S.C. § 704(a)(1)], and the mandated turnover of all of the Debtor's properties to the Trustee (as they were now deemed assets of the chapter 7 estate) for liquidation, the since-breached Plan nevertheless prevented this Court from ordering and the Trustee from selling any of the turned over properties or the Trustee from settling and this Court approving any of the disputed claims pending against the Debtor (and, of course, the District Court and the Ninth Circuit from affirming any of this Court's rulings). As the Baronis allege, this Court's orders of conversion and turnover, the affirmances thereof, and all post-conversion orders are void because they are contrary to the Plan, which the Baronis' Complaint presupposes could be breached by the Debtor without consequences.

The Baronis assert that this Court, the BAP, the District Court, and the Ninth Circuit were bound by all terms of the Plan irrespective of the Debtor's subsequent breaches thereof, this Court could not convert the Debtor's chapter 11 or order turnover of the Debtor's assets, the higher courts could not affirm said conversion and turnover, these courts could not order the sale of the turned over properties, and the chapter 7 trustee, bound by the terms of the Plan, was forbidden from selling estate assets even if such sales were pursuant to court orders. Likewise, the estate's creditors were not entitled to seek the full amount on their claims (as set forth in the Plan) notwithstanding the Debtor's default, the absence of a discharge and the years' long battles between the Debtor and the lenders who were awarded more than one million dollars in fees after prevailing against the Debtor.

The fatal flaws in the Complaint's premises are twofold: first, its mistaken belief that confirmation of the Plan rendered the Plan *res judicata* for all purposes even though the Debtor had

---

[1] The Baronis claim to be suing on behalf of the United States. See Complaint, at 2:1-2. The Baronis have no standing to pursue claims on behalf of the United States assuming such claims exist.

1    not received a discharge and such discharge was still ***contingent*** on satisfying her Plan payment

2    obligations [*see In Re Stephenson*, 647 B.R. 256, 268 (Bankr. D. D.C. 2022) (post-passage of the

3    Bankruptcy Abuse and Consumer Protection Act ("BAPCPA"), confirmation order does not have

4    *res judicata* effect on individual Debtor's obligations, which are still contingent on debtor making

5    plan payments)]; and, second, its mistaken belief that it can attack collaterally all final orders issued

6    beginning with this Court's conversion of the Debtor's chapter 11 bankruptcy.  This flagrant abuse

7    of the Court system can only be described as vexatious, both by the Baronis and their counsel.

8          The Plan could not serve as a bar to this Court's orders redressing the Debtor's material

9    breaches of the Plan post-confirmation especially because Plan confirmation did not provide the

10    Debtor with a discharge.  *See* 11 U.S.C. § 1141(d)(5)(A) ("confirmation of the plan does not

11    discharge any debt provided for in the plan until the court grants a discharge on completion of all

12    payments under the plan").  After all, the Plan "is 'construed basically as a contract' " [*In re Baroni*,

13    36 F.4th 958, 967 (2022) *cert. denied sub nom. Baroni v. Seror*, 2022 WL 16909177 (U.S. Nov. 14,

14    2022)], and the Debtor's material breaches of the contract were thus properly the subject of adverse

15    consequences in light of the Debtor's lack of a discharge.  *Id.*, at 973 (affirming bankruptcy court's

16    (i) conversion of Debtor's chapter 11 bankruptcy to chapter 7 based on material post-confirmation

17    breaches and (ii) turnover of Debtor's properties to the estate); *see also In re Aina Le'a, Inc.*, 2023

18    WL 8792064, *3 (Bankr. D. Haw. Dec. 18, 2023) ("A debtor's failure to carry out a plan of

19    reorganization is therefore a breach of contract, and creditors are entitled to appropriate remedies.").

20    Whatever protections the Plan would have bestowed on Debtor had she performed were forfeited

21    when she breached.  *See* fn. 8, below.

22          The effect of Debtor's default and resulting conversion has never been lost on the Baronis or

23    their counsel notwithstanding their repeated attacks and now feigned ignorance in the Complaint:

24  
25                   Because of the conversion of the case, the plan provisions no longer apply.
                 Therefore the amounts demanded by the lenders as set forth above [footnote]
                 is the Debtor's best effort to estimate the amount owed as of the date of
26                   conversion. The secured creditors, who so vociferously pushed for
                 conversion of the case, now have the right to foreclose based on the full
                 amount owed, meaning Nationstar … will receive many hundreds of
27                   thousands of dollars more in a foreclosure than through the confirmed plan.

28    Bankr. Doc. No. 989 [Debtor's Motion to Dismiss Chapter 7 Case], at 9:5-11; *id.*, at 13:24-26

1   ("Secured creditors, who are now able to ignore the terms of the confirmed plan and seek payment in

2   full from the property, will be able to proceed.").

3       The Complaint evinces the Debtor's lack of self-awareness insofar as the Baronis seek to

4   hold the Trustee and the other defendants in contempt for allegedly willfully failing to obey the Plan

5   [Complaint, at First Claim for Relief] while ignoring the fact that the injuries for which the Baronis

6   seek redress were self-inflicted flowing directly from the Debtor's own willful post-confirmation

7   Plan breaches. *See*, e.g., *In re Baroni*, Case No. 22-6867, 2022 WL 18277987, at *2 (C.D. Cal. Dec.

8   9, 2022) (District Court recognizing that Debtor's injuries—*i.e.*, the loss of her properties—arose

9   from her own malfeasance).  The belief that the Debtor was entitled to all the benefits of the Plan

10  despite her post-confirmation breaches or that the Trustee appointed as a result thereof would

11  manage the estate properties and revert them back to the Debtor pursuant to the since-breached Plan

12  is not rooted in reality, as even the Debtor knows.  *See* Bankr. Doc. No. 1009, at 2:11-12 ("purpose

13  of chapter 7 is to liquidate the debtor's assets for the benefit of *unsecured* creditors").  After all,

> Chapter 7 allows a debtor to make a clean break from his financial past, but
> at a steep price: prompt liquidation of the debtor's assets. When a debtor
> files a Chapter 7 petition, his assets, with specified exemptions, are
> immediately transferred to a bankruptcy estate. § 541(a)(1). A Chapter 7
> trustee is then charged with selling the property in the estate, § 704(a)(1),
> and distributing the proceeds to the debtor's creditors, § 726.

18  *Harris v. Viegelahn*, 575 U.S. 510, 513 (2015).

19      As the Ninth Circuit concluded, her post-confirmation breaches were material, supported

20  conversion and, as relevant here, resulted in the Debtor's obligation to turn over all of her properties

21  to the Trustee.  *See In re Baroni*, 36 F.4th at 972-973; *see also* Bankr. Doc. No. 1144 (Motion to

22  Dismiss Order), at Conclusion of Law ¶ 10 ("The Calabasas Property, the Camarillo Property (and

23  rents derived therefrom) and the Carmel Property (and the rents derived therefrom), the Sale

24  Proceeds from the sale of the Henderson Property … are property of the chapter 7 estate."); *see also*

25  Bankr. Doc. No. 1158 (Amended Findings of Fact and Conclusions of Law re: Turnover Order), at

26  Conclusions of Law ¶¶ 12-14.  In turn, the Trustee's charge under the bankruptcy code was to

27  liquidate the assets, including the real properties formerly owned by the Debtor.

28

3017305

1    To label the Complaint frivolous would elevate it to an undeserved status.  The Complaint

2  evinces complete contempt for the rule of law and the orderly administration of bankruptcy

3  proceedings, a stunning ignorance of a chapter 7 liquidation (deriving from the conversion from

4  chapter 11), and a willfully blind eye towards the consequences of the Debtor's material breaches of

5  the Plan.  The Complaint pays lip service to the fact that the Baronis had a full and fair opportunity

6  to litigate every issue presented herein to finality.  The Baronis do not get another bite at the apple.

7    As the Ninth Circuit has instructed:

8    A claim is frivolous if it is "both baseless and made without a reasonable
     and competent inquiry." *Townsend*, 914 F.2d at 1140. A frivolous claim is
9    one that is "legally unreasonable, or without legal foundation." *Zaldivar*,
     780 F.2d at 831…. Because the collateral attack had no basis in law or fact,
10   we agree that it was frivolous under Rule 11….

11  *In re Grantham Bros.*, 922 F.2d 1438, 1442 (9th Cir. 1991).  Baseless?  Absolutely.  Without a

12  reasonable and competent inquiry?  Undoubtedly.  Indeed, the Complaint is a collateral attack on

13  steroids, as it attacks multiple final, non-appealable rulings including without limitation:

14    1.    This Court's *Order Converting Case to Chapter 7* dated April 29, 2019 [Bankr. Doc.

15  No. 967] (the "Conversion Order"), affirmed by the District Court [*In re Baroni*, Case No. 19-07548,

16  Doc. No. 34 (C.D. Cal. Jan. 25, 2021)] and the Ninth Circuit [*In re Baroni*, 36 F.4th 958];

17    2.    This Court's *Order Granting Trustee's Turnover Motion* dated March 31, 2020

18  [Bankr. Doc. No. 1148] (the "Turnover Order"), which order was affirmed by the District Court [*In

19  re Baroni*, Case No. 20-4338, 2021 WL 243322 (C.D. Cal. Jan. 25, 2021)] and the Ninth Circuit [*In

20  re Baroni*, 36 F.4th 958];

21    3.    This Court's *Order Granting Chapter 7 Trustee's Motion for Approval of

22  Compromise with Certain Prepetition Lenders Pursuant to Federal rule of Bankruptcy Procedure

23  9019 and Section 363(m) of the Bankruptcy Code* dated December 4, 2020 [Bankr. Doc. No. 1273]

24  (the "Rental Lenders Settlement Order"), which order was affirmed by the BAP [*In re Baroni*, Case

25  No. 20-1278, 2021 WL 3011907 (9th Cir. BAP July 13, 2021)], and dismissed by the Ninth Circuit

26  for lack of standing [*In re Baroni*, Case No. 21-60045, at Doc. No. 49 (9th Cir. Feb. 8, 2023)];

27    4.    This Court's *Order Granting Motion to: (1) Approve Sale of Real Property Free and

28  Clear of all Liens, Interests, Claims, and Encumbrances with Such Liens, Interests, Claims, and*

4

*Encumbrances to Attach to Proceeds Pursuant to 11 U.S.C. §§363(b) and (f); (2) Approve Overbid Procedures; and (3) Determine that Buyer is Entitled to Protection Pursuant to 11 U.S.C. § 363(m)* dated December 16, 2020 [Bankr. Doc. No. 1287] (the "Carmel Sale Order"), which order was affirmed by the BAP [*In re Baroni*, Case No. 20-1279, at Doc. No. 24 (9th Cir. BAP July 13, 2021)], and which subsequent appeal was voluntarily dismissed by the Debtor. *In re Baroni*, Case No. 21-60046, at Doc. No. 33 (9th Cir. June 28, 2022);

5. This Court *Order Denying Chapter 7 Debtor's Motion for an Order Removing Chapter 7 Trustee David Seror for Cause Pursuant to 11 U.S.C. §324(b) & Moving Court to Make Criminal Referrals of Wells Fargo Bank, N.A., Bernard Kornberg, and David Seror* dated August 9, 2022 [Bankr. Doc. No. 1523], which appeal was dismissed for lack of prosecution. *See In re Baroni*, Case No. 22-06867, at Doc. No. 16 (C.D. Cal. Oct. 13, 2023);

6. This Court's *Order on Trustee's Motion for Approval of Compromise with CIT Bank, N.A. and LoanCare, LLC, Pursuant to Federal Rule of Bankruptcy Procedure 9019* dated February 13, 2023 [Bankr. Doc. No. 1756], which order was not appealed by the Baronis;

7. This Court's *Order Granting Chapter 7 Trustee's Amended Motion to: (1) Approve Sale of Real Property Free and Clear of all Liens, Interests, Claims, and Encumbrances with Such Liens, Interests, Claims, and Encumbrances to Attach to Proceeds Pursuant to 11 U.S.C. §§363(b) and (f); (2) Approve Overbid Procedures; and (3) Determine that Buyer is Entitled to Protection Pursuant to 11 U.S.C. § 363(m)* dated March 1, 2023 [Bankr. Doc. No. 1774] (the "Camarillo Sale Order"), which appeal was dismissed for lack of prosecution by the District Court [*In re Baroni*, Case No. 23-01818, Doc. No. 29 (C.D. Cal. Aug. 10, 2023) and the Ninth Circuit [*In re Baroni*, Case No. 23-55675, Doc. No. 16 (9th Cir. May 28, 2024)];

8. This Court's *Order Granting Partial Summary Judgment* requiring physical turnover of the Calabasas Property dated July 27, 2023 [Adv. Doc. No. 47], which appeal was dismissed for lack of prosecution [*In re* Baroni, case no. 23-06689, Doc. No. 20 (C.D. Cal. June 24, 2024)]; and

9. This Court's *Order Granting Chapter 7 Trustee's Motion to: (1) Approve Sale of Real Property Free and Clear of all Liens, Interests, Claims, and Encumbrances with Such Liens, Interests, Claims, and Encumbrances to Attach to Proceeds Pursuant to 11 U.S.C. §§363(b) and (f);*

5

1  *(2) Approve Overbid Procedures; and (3) Determine that Buyer is Entitled to Protection Pursuant to*

2  *11 U.S.C. § 363(m)* dated July 27, 2023 [Bankr. Doc. No. 1919] (the "Calabasas Sale Order"), which

3  Debtor appeal was dismissed for lack of prosecution [*In re Baroni*, Case no. 23-06457, Doc. No. 9

4  (C.D. Cal. Apr. 17, 2024), which separate appeal by Mr. Baroni was affirmed [*In re Baroni*, 658

5  B.R. 551 (C.D. Cal. March 25, 2024)] and resides currently with the Ninth Circuit.

6          All of these rulings are either *res judicata* or law of the case and cannot be disturbed. *See*

7  *Askins v. U.S. Dept. of Homeland Sec.*, 899 F.3d 1035, 1042 (9th Cir. 2018); *see also In re Baroni*,

8  2023 WL 4236687, *7 (C.D. Cal. June 28, 2023); *see,* generally, RJN. By the Complaint, however,

9  the Baronis seek a declaration finding all of these prior orders and affirmances thereof void—a dead

10  letter effort if ever there was one. The Complaint must be dismissed with prejudice.

11         Whether the Plan contemplated a reorganization is simply irrelevant in light of the Debtor's

12  post-confirmation breach and the resulting Conversion Order.[2] Whether the Plan contemplated the

13  Debtor continuing to own the Calabasas, Camarillo and Carmel Properties is irrelevant in light of the

14  Turnover Order. Whether the Plan provided for creditors to get a fraction of the amounts owed to

15  them by the Debtor is irrelevant in light of the Debtor's breach of her payment obligations. The

16  amounts owed to the creditors was not set in stone by the Plan insofar as the Debtor disputed all such

17  claims, engaged in extensive (unsuccessful) post-confirmation litigation, had not completed the

18  prescribed payments and never received a discharge.

19         No matter how many times the Trustee has briefed this issue (and notwithstanding this

20  Court's warning to the Debtor that this would be the result of her repeated breaches of the Plan), the

21  Complaint continues to push a false narrative where the Debtor is still entitled to the very properties

22  that this Court ordered turned over to the Trustee for liquidation and the creditors are foreclosed

23  from seeking the entirety of their claims as set forth in the Plan.

24         The instant Complaint, however, is not a proper vehicle to revisit these issues (as they cannot

25  be revisited). For as framed, no relief can be granted to the Baronis under the Complaint. The

26

27  ───────────────

28  [2] Had the bankruptcy been dismissed, the lenders would have been entitled to seek the full amount
of their pre-petition claims from the Debtor; the Plan would not act to cap the Debtor's liability.

1  entirety of the Complaint rests on the impossibility of attacking these final rulings, which are subject

2  to *res judicata*, collateral estoppel and are law of the case and cannot now be collaterally attacked.

3        Of course, this is not the only fatal infirmity with the Complaint.  Both the Trustee and

4  counsel are protected by quasi-judicial immunity.  Every alleged action taken by the Trustee and

5  counsel in the bankruptcy was pursuant to a Court order.  All the acts alleged herein against the

6  Trustee and his counsel fall within that immunity and are barred.  *See Burton v. Infinity Cap. Mgmt.*,

7  862 F.3d 740, 748 (9th Cir. 2017) *citing In re Castillo*, 297 F.3d 940, 946–47 (9th Cir. 2002); *see*

8  *also In re Harris*, 590 F.3d 730, 742 (9th Cir. 2009) ("Bankruptcy trustees are entitled to broad

9  immunity from suit when acting within the scope of their authority and pursuant to court order.")

10  *quoting Bennett v. Williams*, 892 F.2d 822, 823 (9th Cir. 1989).  The claims are also barred by the

11  litigation privilege.  *See* Cal. Civ. Code § 47(b).  In addition to the infirmities identified herein,

12  Plaintiffs have no standing to sue the Trustee's insurers directly; they are not a judgment creditor.

13  See Cal. Ins. Code § 11580.  They are also not policy beneficiaries.  Complaint, Exhibit 1.

14        Based on the fulsome precedent in this bankruptcy, the Complaint should be dismissed with

15  prejudice.  The Court should consider whether to exercise its own initiative pursuant to Rule 9011

16  and issue an order to show cause why the Baronis' counsel should not be held in contempt and/or its

17  inherent power to sanction the Baronis' counsel for filing this Complaint in bad faith.  Mr.

18  Mordente's pro hac vice application should be denied for he clearly has not familiarized himself with

19  the record or the California Rules of Professional Conduct insofar as he has signed a Complaint that

20  is knowingly false.  Alternatively, he should be subject to the same fate as Mr. Antognini.  To the

21  extent the Court deems it necessary, the Trustee stands willing to renew his vexatious litigant motion.

22  **II.    BACKGROUND AND SUMMARY OF COMPLAINT**

23      **A.  *The Bankruptcy Proceedings***

24        The Debtor filed a voluntary chapter 13 petition on February 1, 2012.  Bankr. Doc. No. 1.[3]

25  The Debtor then filed a motion to convert her case to chapter 11, which was granted by the Court.

26  

---

27  [3]  The facts identified herein are all subject to judicial notice without converting the motion into one for summary judgment.  *See MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986). Bankruptcy court records are the proper subject of judicial notice.  *See Reusser v. Wachovia Bank,*
28  *N.A.* 525 F.3d 855, 857 n.1 (9th Cir. 2008); *see,* generally, RJN.

1    Bankr. Doc. Nos. 10 and 17.  The Debtor's Plan was confirmed on April 15, 2013.  Bankr. Doc. No.

2    423.  The Plan identified over $1.1 million of unsecured claims, which under the Plan would receive

3    the pro rata share of $50,000.  With respect to the lender claims, the Plan provided as follows:

> Each of the first trust deed holders (herein after "senior lienholders") is
> partially unsecured. The plan bifurcates the claims of such allowed senior
> lienholders into secured and unsecured claims. Specifically, the plan
> provides each allowed senior lienholder with a secured claim in the amount
> of the value of the property, established by the attached appraisal respecting
> such property, and an unsecured claim for the balance.

8    Bankr. Doc. No. 376, at pp. 15-16.  As part of the Plan, the Debtor disputed all of the lenders'

9    claims.  *See, id.*, Exhibit 1 (chart identifying disputed claims); *id.*, Exhibit 2.

10        After a creditor filed a motion to convert the case from chapter 11 to chapter 7 based on

11   repeated defaults and breaches by the Debtor of her Plan payment obligations, the Court granted the

12   creditor's motion and entered the Conversion Order on April 29, 2019.  Bankr. Doc. No. 967.

13        On April 30, 2019, the Trustee, David Seror, was appointed the chapter 7 trustee in the

14   Debtor's bankruptcy case, in which capacity he continues to serve.  Bankr. Doc. No. 968.  On June

15   26, 2019, the Trustee filed a motion for turnover (the "Turnover Motion"), pursuant to which he

16   sought entry of a Court order directing the Debtor to turn over certain property of the estate.   Bankr.

17   Doc. No. 991.  As of the petition date, the Debtor owned several pieces of property, including the

18   Calabasas Property, the Camarillo Property, and the Carmel Property.  Bankr. Doc. No. 1.  On

19   March 31, 2020, the Court entered the Turnover Order granting the Turnover Motion, ordering that

20   each of these properties were assets of the estate.  Bankr. Doc. No.1148.

21        Both the Conversion Order and Turnover Order were affirmed on appeal to the District Court

22   and, subsequently, on appeal to the Ninth Circuit.  *In re Baroni*, 36 F.4th 958.  Thus, both the

23   Conversion Order and Turnover Order are final orders, law of the case, and not subject to further

24   appeal or collateral challenge.

25        During the course of the chapter 7 proceedings, the Trustee negotiated settlements with CIT

26   (the "CIT Settlement") and with certain lenders relating to other real properties (the "Rental Lender

27   Settlement").  Both of these settlements were presented for approval to the Court [Bankr. Doc. Nos.

28   1120 and 1577], the Baronis objected to the Rental Lender Settlement (but not the CIT Settlement)

1  [Bankr. Doc. Nos. 1129 and 1142], and the Court approved both settlements.  Bankr. Doc. Nos. 1273

2  and 1756. As is relevant here, those settlements and accompanying motions specifically provided for

3  the amount and manner in which the lenders' claims would be allowed.  *See Id.,* 1120, at pp. 9-11;

4  1577, at p. 7.  The orders approving the settlements are now final and non-appealable.

5      After noticed motions and pursuant to Court orders, the Trustee retained professionals to

6  market the properties and sold each of these properties.  Bankr. Doc. Nos. 1116, 1155, 1212, 1220,

7  1287, 1674, 1748, 1774, 1919.  The Baronis were provided notice and the Debtor and/or Mr. Baroni

8  objected to the sales.  Bankr. Doc. Nos. 1241, 1259, 1714, 1746, 1757, 1830, 1835, 1892.  In point

9  of fact, with limited exceptions (such as the CIT settlement), the Baronis objected to every motion

10  and every Court order issued after the case was converted to chapter 7 and the Debtor was ordered to

11  turn over her properties to the Trustee.  See, generally, Bankruptcy Docket.

12      Notwithstanding the Debtor's counsel's admission and this Court's admonition that as a

13  result of the Debtor's breaches and conversion of the case the Debtor no longer was entitled to the

14  benefit of her reduced payments on the debt identified in the Plan and was no longer the owner of

15  the properties, the Baronis routinely filed briefs re-arguing that the Plan was binding and in effect—

16  *i.e.,* that the Baronis were entitled to the return of the properties and the creditors' claims were

17  capped by the Plan at a fraction of their actual amount.  *See* Complaint, at ¶ 58.

18      **B.  *The Complaint***

19      The Complaint identifies the Trustee, the Trustee's counsel (BG Law LLP formerly known

20  as Brutzkus Gubner LLP, "BG Law"), Wells Fargo Bank N.A. ("Wells Fargo"), Severson & Wersen

21  ("Severson"), Liberty Mutual Insurance Company ("Liberty Mutual") and United States Fire

22  Insurance Company ("US Fire").  The Complaint contains nine claims for relief: (1) Contempt for

23  Willful Failure to Obey the Plan Order, for Willful Violations of the Plan Order, and for Collaterally

24  Attacking the Plan Order (against all defendants); (2) Breach of Fiduciary Duty (against Trustee);

25  (3) Aiding and Abetting Breach of Fiduciary Duty (against BG Law and Severson, and Wells

26  Fargo); (4) Gross Negligence (against the Trustee); (5) Tortious Interference With Contract (against

27  Trustee and BG Law); (6) Elder Abuse (against the Trustee, BG Law, Severson, and Wells Fargo);

28  (7) Intentional Infliction of Emotional Distress (against the Trustee, BG Law, Severson, and Wells

Fargo); (8) Declaratory Relief; and (9) Recovery on the Bonds (against Liberty Mutual and US Fire).

In all respects, the Complaint is premised on the proposition that the Debtor's Plan (the one that the Debtor defaulted on) did not provide the Trustee with the right to sell the Debtor's properties and limits the amount creditors will receive on their claims. Complaint, at ¶ 18. Accordingly, the Complaint alleges that any orders by this Court that are inconsistent with the Plan are void. *Id.*, at ¶ 20. As the Complaint posits:

> A confirmed plan binds all parties, including the debtor, creditors and purchasers of estate assets, to the terms of the plan, which means that creditors cannot increase their secured or unsecured claims above the amounts and treatment provided in the confirmed chapter 11 plan.

*Id.*, at ¶ 21. The Complaint alleges that the Plan had three main objectives:

> a. Allana retains ownership of her real property;
>
> b. Deals with the secured claims by; (1) setting specific dollar amounts of the secured claims; (2) providing the treatment of secured claims; and (3) specifying the terms under which the secured claim amounts are to be paid monthly and over the life of the Plan; and
>
> c. Allocates $50,000 as the total maximum amount owed and to be paid to all general unsecured claimants (shared pro rata between them).

*Id.*, at ¶ 23. The crux of the alleged actionable conduct by the defendants is set forth immediately thereafter as follows:

> a. Seror sold all of the Baronis' real properties in direct violation of the Plan provisions and the terms and goals of the Plan which provided that Allana was to retain her real property. Seror netted at least $1,203,529.42 from the sales. These amounts, in addition to the damages sought herein, including costs and out of pocket expenses that may have been incurred, belong to the Baronis, as Allana was entitled to retain all her real
>
> b. Although the confirmed Plan dealt with, and particularized specific dollar amounts to be paid to secured claimants monthly and over the life of the Plan, and although Allana turned $743,744 over to Seror, and the tenants renting the Baronis' Camarillo and Carmel properties paid Seror monthly rent of at least $216,059.97 sufficient to pay the secured claims pursuant to the terms of the Plan Order and the confirmed Plan, Seror did not pay the secured claims pursuant to the Plan. Instead, Seror converted the turned over Plan funds and monthly rents, into payments of $1,362,711 to his firm BG Law. This conversion caused the Plan to default because the monthly secured claim payments were not paid by Seror; and
>
> c. Though the confirmed Plan capped the amount to be paid to all allowed general unsecured claims at $50,000 total (shared by them pro rata), and does not allow creditors to file claims post Plan confirmation concerning property already dealt with by the Plan, nor to increase the amount of their

1
2
3
4
5
6
7
8

secured claims, nor to increase the amount of the general unsecured $50,000 pot; Seror violated his duty as trustee and violated the terms of the confirmed Plan by working with and encouraging Wells Fargo Bank N.A. to file a post Plan confirmation general unsecured claim in the amount of $839,944 ("Unsecured Claim 7-2") to block Allana from dismissing her bankruptcy case and exiting bankruptcy. The Unsecured Claim 7-2 concerned property already dealt with by the Plan. Seror further violated his duty as trustee by failing to object to the Unsecured Claim 7-2 that violated the Plan Order and the terms, conditions, and goals of the confirmed Plan. The Bankruptcy Court, at Seror's urging ruled that everyone but David Seror lacked standing to object to the Unsecured Claim 7-2. Through their violations of the Plan Order, including the filing of the Unsecured Claim 7-2, Defendants separately and together burdened the estate with $2,024,019 of manufactured unsecured debt not allowed under the terms of the Plan.

9    *Id.*, at ¶ 24(a), (b) and (c).  The Complaint concludes that the Trustee and his counsel:

10
11
12

administered the entire chapter 7 case for their own financial enrichment. Every decision they made was considered through the lens of what would provide these Defendants with the most amount of money from Allana Baronis' estate, and inflict maximum harm to the Plaintiffs without regard to, and contrary to, the terms of the confirmed Plan, and Plan Order.

13    *Id.*, at ¶ 29.

14    The Complaint relies on cherry-picked language from two district court orders as the basis

15    for its claim: the first, an "Order [Conditionally Granting] Appellant's Motion to Stay ("Stay Order")

16    dated February 5, 2021 and relating to the turnover of the Camarillo, Carmel and Calabasas Property

17    during the pendency of the Debtor's appeal of the Conversion Order and Turnover Order, wherein

18    the district court in passing noted that a "primary purpose of Appellant's Plan was to allow her to

19    keep financial control and management of her real properties" [Stay Order, at p. 7] citing to the

20    district court's affirmance of the Turnover Order, at pp. 8-12 [*see* Complaint, at ¶ 48];[4] and second,

21    the district court's *Order Re: Appeal from Bankruptcy Court's Memorandum Decision* [*In re*

22    *Baroni*, case no. 23-cv-06235-MWF, Doc. No. 40, at 7], wherein the district court ruled against the

23    Baronis and affirmed the bankruptcy court's holding approving the sale of the Calabasas Property

24    and finding that it was community property based, in part, on its treatment as community property in

25    the Plan, which Plan treatment the Court found was subject to *res judicata*. *See* Complaint, at ¶ 49.

26    _____

27
28

[4] By way of the Stay Order, the District Court conditionally granted a stay of the turnover of the Debtor's properties to the Trustee so as to allow the Debtor to appeal the District Court's affirmance of this Court's turnover order realizing that the Debtor could suffer irreparable harm if the Ninth Circuit reversed the Turnover Order, which the Ninth Circuit ultimately did not do.

1    The Complaint barely mentions the fact that the Debtor defaulted on her plan payments,

2    which was the predicate for the conversion of the Debtor's plan from chapter 11 to chapter 7 and,

3    further, that the Debtor did not obtain a discharge by means of her confirmed Plan—and the impact

4    these two facts had on the events in question.  Instead, the Complaint suggests that the Debtor was

5    willing and able to make the Plan payments but the bank refused to accept them.  See Complaint, at

6    ¶¶ 81-84.  On this score, the Complaint ignores Mr. Antognini's prior admission that Debtor

7    defaulted.  *See* Doc. No. 966, at 13:1-4 ("The Court: … Is there an order excusing her from paying?

8    Mr. Antognini: No, there is not. The Court: And has she paid? Mr. Antognini: No, she has not.").

9    The Complaint makes no mention of the Ninth Circuit decision affirming the Conversion

10    Order and the Turnover Order and the impact of this holding on the allegations herein, pretending

11    those bankruptcy orders are irrelevant to this action.  Rather, and in furtherance of the fiction passed

12    off as allegations in the Complaint, the Debtor alleges contrary to findings made by this Court that:

13    
14    
15    
16    

> Allana turned over to Seror an estate that was current on its Plan payments,
> with both the Baronis' Carmel, CA and Camarillo, CA properties leased to
> long terms tenants bringing in annual revenue of $114,000, and with the loan
> on the Baronis' Calabasas, CA residence completely current. The only issue
> was a distribution from the payments Allana already paid into the Class 7
> reserve account pursuant to the Plan.

Complaint, at ¶ 32.[5]

17    The remainder of the Complaint consists of a list of grievances, aired previously, including

18    the dispute regarding the Wells Fargo proof of claim and the claim that the estate properties were

19    sold solely for the benefit of secured creditors.  The Complaint contains obvious fuzzy math and

20    notably does not acknowledge the significant estate claims that arose as a result of the Baronis'

21    scorched-earth litigation, first with all of the secured creditors and later with respect to each and

22    every action taken by the Trustee. Thus, while the Complaint identifies the settlements between the

23    Trustee and the Debtor's lenders (and contests whether those settlements were proper in light of the

24    payment obligations under the Plan), it fails to allege the impetus for these settlement amounts—*i.e.*,

25    

---

26    [5] As one example of revisionist history, the Complaint states that "the terms of the Plan cap
unsecured debt at $50,000 which Allana paid pre conversion."  Complaint, at ¶ 123.  The Court
27    found that the Debtor did not have evidence of such payments.  Bankr. Doc. No. 1144, Findings of
Fact ¶¶ M-O.  Of course, the Court need not make any factual findings in this regard because the
28    entire Complaint is legally improper.

12

1  the Debtor's default and the Baronis' scorched-earth litigation tactics, which created substantial

2  administrative costs and additional lender claims.

3        Finally, the Complaint does not claim that any acts by the Trustee, his professionals, the bank

4  and its professionals were carried out without the Trustee first securing a court order.   Rather,

5  recognizing the infirmity of their allegations contesting the Trustee and his counsel's actions all of

6  which were carried out pursuant to final court orders, the Complaint seeks to have the Court find that

7  at least the following orders (and affirmances thereof) are void and unenforceable:

8        1.      The Rental Lenders Settlement Order [Bankr. Doc. No. 1273].  Complaint, at ¶ 348;

9        2.      The Carmel Sale Order [Bankr. Doc. No. 1287].  *Id.*;

10       3.      The Camarillo Sale Order [Bankr. Doc. No. 1774].  *Id.*;

11       4.      The CIT Settlement Order [Bankr. Doc. No. 1756]. *Id.*; and

12       5.      The Calabasas Sale Order [Bankr. Doc. No. 1919]. *Id.*

13       Implicitly, however, the Complaint challenges the validity of the Conversion Order and

14  Turnover Order insofar as the former prompted the appointment of the Trustee and the latter

15  determined that the Debtor's assets now belonged to the estate.  As the Complaint alleges, this Court

16  lacked jurisdiction to enter any of these orders insofar as they collaterally attacked the Plan and, as

17  the Complaint alleges, orders entered in contravention of the Plan are void.  *Id.*, at ¶¶ 354, 355.

18  **III.    ARGUMENT**

19       **A.    *Legal Standard***

20       "A motion to dismiss [pursuant to Rule 12(b)(6) will only be granted if the complaint fails to

21  allege enough facts to state a claim to relief that is plausible on its face."  *Fayer v. Vaughn*, 649 F.3d

22  1061, 1064 (9th Cir. 2011) (internal quotation marks omitted) citing, *inter alia*, *Bell Atlantic Corp. v.*

23  *Twombly*, 550 U.S. 544, 547 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   "[D]ismissal may

24  be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under

25  a cognizable legal theory." *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir.

26  2008) (internal quotation marks and citations omitted); *see also Neitzke v. Williams*, 490 U.S. 319,

27  326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of

28  law.").

3017305

1    "A claim may be dismissed under the doctrine of res judicata on a motion to dismiss under

2   Rule 12(b)(6) when the Court is able to discern the relevant facts by way of judicial notice of the

3   earlier court proceedings." *Rasooly v. Self*, 2015 WL 3430092 (N.D. Cal. May 27, 2015) *citing Scott*

4   *v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir.1984) (affirming dismissal pursuant to Rule 12(b)(6) on

5   grounds of res judicata because the district court did not consider any disputed facts).

6      **B.      *Res Judicata, Collateral Estoppel and Law of the Case Bar the Complaint***

7      As recently articulated by the District Court in one of the Baronis' appeals:

8      The doctrine of res judicata bars a party from bringing a claim if a court of
       competent jurisdiction has rendered final judgment on the merits of the claim
9      in a previous action involving the same parties or their privies. *In re Int'l
       Nutronics, Inc.*, 28 F.3d 965, 969 (9th Cir. 1994) (internal citation omitted).
10     'Res judicata bars all grounds for recovery that could have been asserted,
       whether they were or not, in a prior suit between the same parties on the same
11     cause of action.' *Id.* The elements necessary to establish res judicata are: '(1)
       an identity of claims, (2) a final judgment on the merits, and (3) privity
12     between parties.' *Headwaters Inc. v. U.S. Forest Serv.*, 399 F.3d 1047, 1052
       (9th Cir. 2005) (internal citations omitted).
13
       The application of the doctrine to bankruptcy court orders is somewhat
14     distinct from other scenarios given the nature of the proceedings, but courts
       routinely conclude that attacks to final, non-appealable bankruptcy court
15     orders outside the specified criteria of Rule 60(b) are improper 'collateral
       attacks,' and the 'collateral attack' doctrine is a species of 'res judicata.'
16

17   *In re Baroni*, 2023 WL 4236687, *7 (C.D. Cal.  June 28, 2023) (citations omitted); *see also In re*

18   *Gens*, 2018 WL 4353086, *6 (N.D. Cal. Sept. 12, 2018).

19      In another appeal, the District Court explained law of the case, as follows:

20     Under the law-of-the-case doctrine, 'a court is ordinarily precluded from
       reexamining an issue previously decided by the same court, or a higher
21     court, in the same case.' *United States v. Jingles*, 702 F.3d 494, 499–500
       (9th Cir. 2012) (citation omitted).  'For the doctrine to apply, the issue in
22     question must have been decided explicitly or by necessary implication in
       [the] previous disposition.' *Id.*  A court may have discretion to depart from
23     the law of the case where: (1) the first decision was clearly erroneous; (2) an
       intervening change in the law has occurred; (3) the evidence on remand is
24     substantially different; (4) other changed circumstances exist; or (5) a
       manifest injustice would otherwise result. *United States v. Alexander*, 106
25     F.3d 874, 876 (9th Cir. 1997) (internal citation omitted).

26   *In re Baroni*, 658 B.R. 551, 557 (C.D. Cal. Mar. 25, 2024); *see also* Doc. No. 1913, at 32:7-13.

27      Whether this Court applies *res judicata* (claim preclusion), collateral estoppel (issue

28   preclusion) or law of the case, the result is the same.  The Complaint fails to state any cognizable

14

1    claim for relief for the simple reason that the entirety of the relief sought is predicated on this Court

2    setting aside multiple final orders, which the Court is powerless to do.

3          The Court has a stack of final orders that preclude the claims brought here.  Those orders

4    include: (i) the Conversion Order; (ii) the Turnover Order; (iii) the Rental Lenders Settlement Order;

5    (iv) the Carmel Sale Order; (v) the order denying the removal of the Trustee; (vi) the CIT Settlement

6    Order; (vii) the Camarillo Sale Order; and (viii) the physical turnover order relating to the Calabasas

7    Property.  In turn, this Court is subject to a host of intermediate and Ninth Circuit appellate

8    decisions, which it is not at liberty to ignore or countermand.  Those rulings include: (i) the District

9    Court's affirmance of the Conversion Order; (ii) the District Court's affirmance of the Turnover

10    Order; (iii) the Ninth Circuit's affirmance of both the Conversion Order and the Turnover Order; (iv)

11    the District Court's affirmance of the Carmel Sale Order; (v) and the District Court's affirmance of

12    the Calabasas Sale Order.  See RJN.  None of these orders are voidable, let alone void.

13          The Baronis' argument is nonsensical in light of the Conversion Order and Turnover Order,

14    the former serving to convert the Debtor's chapter 11 reorganization into a chapter 7 liquidation and

15    the latter order serving to vest the properties in the estate, not the Debtor.  Willful breaches of

16    confirmed Plans have consequences (as did the unsuccessful lender litigations) especially where, as

17    here, the Debtor was not discharged at the time of Plan confirmation.[6]  This Court's Conversion

18    Order and Turnover Order are not void; rather, they are the subject of a published affirmance by the

19    Ninth Circuit, which this Court is powerless to set aside.  *In re Baroni*¸ 36 F.4th 958.

20

21

---

22    [6] Although this is not a forum for deciding the merits anew, the Debtor's material breaches in light
of the fact that she did not receive a discharge upon Plan confirmation, had severe adverse

23    consequences.  *See* 11 U.S.C. § 1141(d)(5)(A) ("confirmation of the plan does not discharge any
debt provided for in the plan until the court grants a discharge on completion of all payments under

24    the plan"); *see also First National Bank of Oneida, N.A. v. Brandt*, 597 B.R. 663, 670-71 (M.D. Fla.
2018) (absence of discharge allows creditor to seek to enforce pre-petition rights against Debtor); *6

25    Norton Bankruptcy Law and Practice 3d, Part II. Analysis of Bankruptcy Code, Subpart 17, Chapter
11. Postconfirmation Matters*, at § 114.2 (Jan. 2022 update) ) ("Because individual debtors do not get

26    a discharge until the plan is completed, if the debtor defaults under the plan, the debtor will be
susceptible to claims of creditors for the full amount of the indebtedness owed as of the filing of the

27    debtor's petition."); *In re Patel*, 621 B.R. 245, 257 (Bankr. E.D. Cal. 2020) ("No discharge would
mean that all original debts remain owed with interest").  Thus, the Baronis' argument that the

28    "amounts and treatment" are binding on the Trustee and creditors [Complaint, at ¶ 20], is wrong in
light of the Debtor's material default.

1    To the extent that the Baronis believed that the subsequent sales of estate property should not

2    have been approved by the Court based upon the argument that the Plan forbade it notwithstanding

3    the Debtor's breach thereof, they admittedly raised those arguments at the time the Court was

4    contemplating the respective motions [*see* Complaint, at ¶ 58] and the arguments did not carry the

5    day.  To the extent the Baronis believed that the settlements with lenders violated the Plan

6    notwithstanding the Debtor's breach thereof, they raised that argument at the time the Court

7    approved those settlements.  *Id.*  To the extent the Baronis believed that this Court, the District Court

8    and the Ninth Circuit had no right to require the Debtor to turn over these properties because such

9    treatment was inconsistent with the Plan terms notwithstanding the breach thereof, the Baronis raised

10   that argument.  Indeed, the Debtor did assert that her Plan did not provide for the properties to

11   become part of a chapter 7 estate.  The argument was rejected by this Court, the District Court and,

12   ultimately, the Ninth Circuit.  *In re Baroni*, 36 F.4th 958.

13   The Baronis purport to rely on a portion of the last of these orders, the affirmance by the

14   District of the Calabasas Sale Order (wherein the District Court discusses the application of *res*

15   *judicata* to the Debtor's Plan's treatment of the Calabasas Property as community property), as the

16   basis for their Complaint.[7]  But, while the Complaint champions a sliver of the District Court's

17   analysis it fails to wrestle with the fact that the District Court's actual holding is antithetical to their

18   position.[8]  Contrary to the entirety of their Complaint, the District Court ***affirmed*** the Trustee's right

19

20   [7]  Notably, the Calabasas Sale Order is on appeal, divesting this Court of jurisdiction to set it aside.
21   *See In re Richards*, 2023 WL 5805569 (C.D. Cal. Sept. 6, 2023)  ('Even though a bankruptcy court
     has wide latitude to reconsider and vacate its own prior decisions, not even a bankruptcy court may
     vacate or modify an order while on appeal.'  [citation]. The filing of a notice of appeal divests a
22   lower court of jurisdiction over the appeal's subject matter. [citation].").

23   [8]  The Complaint is based on the Baronis' misuse of the principle of *res judicata* in relying on a
24   portion of the District Court's ruling affirming the Calabasas Sale Order, which holding is the mirror
     opposite of the premise of the Complaint.  The District Court, like this Court, found that the
     treatment of the Calabasas Property as community property by the Debtor was *res judicata* and
25   could not be collaterally challenged by Mr. Baroni.  However, the District Court already had
     affirmed the Conversion Order and Turnover Order, thereby upholding the adverse effect of the
26   Debtor's post-confirmation breaches in light of the Plan's absence of finality (*i.e.*, absence of *res
     judicata*) regarding her obligations to creditors.  It is inconceivable that the Baronis and their counsel
27   do not comprehend these easily reconcilable findings in light of the fact that this Court impressed
     upon the Debtor and the Debtor understood the impact of her breaches, which resulted in conversion
28   and turnover and negated deals with the creditor body.

16

1    to sell the Calabasas Property (as it did the Camarillo and Carmel sales), the very sales the

2    Complaint claims violate the Plan.  Thus, to the extent the District Court's holding has *res judicata*

3    or law of the case effect, it is that the Trustee was entitled to sell the Calabasas Property.

4    While a Plan is *res judicata* on issues finally decided, the Debtor's obligation to her creditors

5    was not subject to ***finality*** at the time the Plan was confirmed, as it was still contingent on the Debtor

6    making the required Plan payments and receiving a discharge (while she wages war against each of

7    her lenders).  As explained by the *Stephensen* court in the context of a debtor's eligibility for

8    discharge post-passage of the BAPCPA:

9        Plan confirmation for an individual debtor in chapter 11 is merely one
10       requirement towards that debtor's eligibility for a discharge, which remains
         contingent long past entry of the confirmation order. Giving an individual
11       debtor's chapter 11 confirmation order res judicata effect as to this Debtor's
         eligibility for a chapter 7 discharge is inappropriate and inconsistent with
12       § 1141(d)(5). Therefore, the Court finds that the Confirmation Order in this
         case does not have any res judicata effect as to the reliance on the Pre-
13       Confirmation Actions in the Complaints.

14       Alternatively, the Debtor's argument also fails because the Confirmation
         Order was not a final order with respect to Debtor's eligibility for entry of a
15       discharge, thereby failing the third element of res judicata. A condition
         precedent to the Debtor obtaining a discharge was that he had to meet all of
16       the terms of the Plan, including making all payments thereunder, and then
         subsequently move the Court for entry of his discharge. Only after each of
17       those conditions could a final order be entered as to the Debtor's eligibility
         for a discharge. While the general rule is that all claims that could have been
18       brought at plan confirmation are res judicata and stems from the need for
         finality and establishing a place for litigation to end, the language of
19       § 1141(d)(5) specifically modifies that rule in individual chapter 11 cases.

20   647 B.R. at 267-268; *id.*, at 266 ("It is this drastic and fundamental change to the timing of an

21   individual debtor's chapter 11 discharge—from immediate and finite pre-BAPCPA to delayed and

22   contingent post-BAPCPA—where the Debtor's argument fails.").  The Complaint here fails in its

23   refusal to acknowledge the effect of the Debtor's post-confirmation breaches absent a discharge.

24   The Baronis' quixotic attempt to relitigate this issue—given their claim that they raised this

25   precise issue at least fourteen times and lost each time [see Complaint, at ¶ 58]—is precisely why *res*

26   *judicata*, collateral estoppel and law of the case need be applied here.  As the District Court noted in

27   a previous attempt by the Baronis to claim that the Calabasas Property should not be turned over:

28

3017305

1   Appellants seem to be operating under the fantasy that they may collaterally
    attack the Ninth Circuit's ruling affirming the earlier turnover order in this
2   action, which confirmed that the Calabasas residence was an asset of the
    estate. *In re Baroni*, 36 F.4th 958, 966 (9th Cir. 2022), *cert. denied sub nom.
3   Baroni v. Seror*, 2022 WL 16909177 (U.S. Nov. 14, 2022). They may not.
    And given the Calabasas residence is part of the estate, Appellant Baroni
4   cannot claim "irreparable injury" based on its future sale. (See Opposition at
    16) ("Here, the injury—i.e., the Debtor's loss of her house—was the direct
5   result of the Debtor's defaults under her chapter 11 plan, the conversion of
    her chapter 11 to a chapter 7, and the resulting turnover of the Debtor's assets
6   to the chapter 7 estate. To the extent the Debtor suffered irreparable injury, it
    occurred years ago and was the product of her own malfeasance.").
7
    *In re Baroni*, Case No. 22-6867, 2022 WL 18277987, at *2 (C.D. Cal. Dec. 9, 2022).
8
9       In sum, the action is barred by a series of orders issued by this Court that are now final and

10  not subject to challenge let alone reversal.

11              **C.   *The Trustee and His Counsel are Subject to Quasi-Judicial Immunity***

12  'Bankruptcy trustees are entitled to broad immunity from suit when acting
    within the scope of their authority and pursuant to court order.' *Bennett v.
13  Williams*, 892 F.2d 822, 823 (9th Cir.1989). Additionally, "court appointed
    officers who represent the estate are the functional equivalent of a trustee."
14  *Crown Vantage*, 421 F.3d at 973. The doctrine of judicial immunity also
    applies to court approved attorneys for the trustee. *Smallwood v. United
15  States*, 358 F.Supp. 398, 404 (E.D.Mo.1973), *aff'd mem.*, 486 F.2d 1407 (8th
    Cir.1973).

16  *In re Harris*, 590 F.3d at 742.  As the Ninth Circuit explained:

17  For derived quasi-judicial immunity to apply, the defendants must satisfy the
    following four elements: (1) their acts were within the scope of their
18  authority; (2) the debtor had notice of their proposed acts; (3) they candidly
    disclosed their proposed acts to the bankruptcy court; and (4) the bankruptcy
19  court approved their acts. *Bennett*, 892 F.2d at 823, 825; see also *In re
    Jacksen*, 105 B.R. 542, 545 (9th Cir.BAP1989) (holding a trustee has
20  immunity for actions "within the scope of the authority conferred upon him
    by statute or the court").

21
22  *Id.*

23      Thus, whether the sale of the estate properties—the Calabasas Property, the Camarillo

24  Property and the Carmel Property—violated the Plan is simply not the proper subject of litigation.

25  Each sale was pursuant to Court order and are considered an adjudicative function entitling trustees

26  to immunity.  *In re Continental Coin Corp.*, 380 B.R. 1, 11 (Bankr. C.D. Cal. 2007).

27      Similarly, whether the settlements with various lenders violated the Plan is, likewise, not the

28  proper subject of litigation.  Each of those settlements was presented to the Court for approval,

approved by the Court and, where appealed by the Baronis, upheld on appeal.  Even the Baroni

claims regarding their eviction from the Calabasas Property fails because such actions were taken

pursuant to Court orders after the Calabasas Property was deemed an asset of the estate, after the

Court approved the sale of the Calabasas Property and after the Baronis refused to voluntarily vacate

the Calabasas Property.  The Debtor was obligated to turn over the Calabasas Property pursuant to

Court order and their eviction was pursuant thereto.[9]

Here, none of the claims for relief as against the Trustee and his counsel can overcome the

application of quasi-judicial immunity because all of the four elements for its application exist as to

the allegations of malfeasance.  First, the acts of marshalling assets, settling with creditors, and

selling estate assets are clearly within the authority of a chapter 7 trustee.  *See* 11 U.S.C. § 704(a)(1).

Second, as to each of the offending acts—*i.e.*, the marshalling and selling of assets, the settlements

with creditors, the eviction of the Baronis and the settlement/payment of claims (including

administrative claims), the Baronis had notice of and an opportunity to be heard.  Third, each of the

acts alleged to have caused harm to the Baronis were subject of noticed motions, including the

conversion and turnover motions, motions to market and sell estate properties, motions for turnover,

motions to compromise claims, the adversary to evict the Baronis from the Calabasas Property, and

interim fee distributions.  Finally, all of these acts were approved by this Court and affirmed by the

District Court, the BAP and/or the Ninth Circuit (to the extent the Baronis appealed, were found to

have standing to appeal and actually prosecuted those appeals).

Thus, none of the alleged acts by the Trustee and his counsel are actionable.  Indeed, the

Baronis alleged misconduct by the Trustee, the Trustee's counsel, Wells Fargo and Wells Fargo's

counsel with respect to the amended proof of claim submitted by Wells Fargo and the compromise

between Wells Fargo and the Trustee.  But, this compromise and the treatment of Wells Fargo's

amended proof of claim were the subject of noticed motions, oppositions by the Baronis, and

ultimately orders from this Court approving the compromise.  The compromise was affirmed by the

---

[9] This Court was well within its authority to order the Baronis' eviction. *See In re Madatian*, 2019 WL 545679, *3 (9th Cir. BAP Feb. 11, 2019) ("Section 542(a) requires debtors to turn over virtually all estate property to the trustee.  If the debtor does not comply, the bankruptcy court has the power to require compliance by, in effect, evicting the debtor from the property.").

1    BAP [*In re Baroni*, Case No. CC-20-1278-LGT, Doc. No. 26 (9th Cir. BAP Jul. 13, 2021)] and then

2    dismissed by the Ninth Circuit for lack of standing.  *In re Baroni*, Case No. 21-60045, Doc. No. 49

3    (9th Cir. Feb. 8, 2023). The Court also rejected efforts by the Baronis to seek to have the Trustee

4    removed and for criminal referrals based upon the Wells Fargo amended proof of claim and the

5    resulting compromise between the Trustee and Wells Fargo.  Notably, the Baronis' appeal thereof

6    was dismissed for lack of prosecution and mootness.  *See In re Baroni*, Case No. 2:22-cv-06887-

7    MWF, Doc. No. 16 (C.D. Cal. Oct. 13, 2023).

8         The Trustee's conduct (as well as that of his representatives), fully disclosed and approved

9    by the Court, cannot form the basis for the Complaint based upon the application of quasi-judicial

10   immunity.  The same is true for all of the other alleged offending conduct.  For every claim of

11   malfeasance alleged by the Baronis as against the defendants, each act allegedly performed by the

12   defendants was pursuant to Court Order.   Whether labeled as gross negligence or elder abuse or

13   tortious interference or willful violations or breach of fiduciary duty, the gravamen of the Complaint

14   seeks to hold the Trustee, his professionals, and others liable for complying with court orders.  The

15   label placed on the claim for relief is irrelevant; ultimately, it is the facts upon which the claim for

16   relief is based that will determine whether, or if, the claims are barred by quasi-judicial immunity.

17   Here, the Baronis identify no conduct by any of the Defendants that was not carried out pursuant to

18   court order.  Accordingly, the claims must be dismissed based upon quasi-judicial immunity.

19        **D.**    ***The Litigation Privilege Similarly Bars Almost All Allegations in the Complaint***

20        The litigation privilege codified in Section 47(b) of the California Civil Code insulates the

21   Trustee and his counsel.  The litigation privilege is broad and bars the use of any communications

22   made during or in connection with a judicial proceeding to form the basis of a claim for relief:

23           California courts and the California legislature have long recognized that any
             alleged communications made during or in connection with judicial
24           proceedings—including arbitration—are absolutely privileged. Such
             communications may not form the basis of any subsequent claim against the
25           proponent. For well over a century, communications with 'some relation' to
             judicial proceedings have been absolutely immune from tort liability by the
26           privilege codified as section 47(b).

27   *Rubin v. Green,* 4 Cal. 4th 1187, 1193 (1993).

28

3017305

1    The case of *Agha-Khan v. United States*, 2015 WL 5734380, *7 (E.D. Cal. Sept. 29, 2015)

2    *aff'd* 683 Fed. Appx. 628 (9th Cir. 2017) provides a practical illustration of the litigation privilege in

3    barring a suit such as the Baronis' suit against the Trustee in this case. In *Agha-Khan*, the debtor

4    brought claims against the trustee and his counsel arising out of the debtor's bankruptcy and the

5    trustee and his counsel's actions therein.  The District Court dismissed the claims holding that

6    Section 47(b) barred the action:

7            Nevertheless, the Court grants this motion to dismiss as Agha–Khan has no
        claims for relief against Jeffrey Vetter and his attorneys because they are
8        protected by California's absolute litigation privilege. This privilege applies
        to communications or publications made in a judicial proceeding. See Cal.
9        Civ. C. § 47(b). Consequently, California's litigation privilege bars the
        claims against the Vetter/KDG Defendants because Agha–Khan's theory
10       against them is that she was harmed by acts taken in her bankruptcy
        proceedings.… Agha–Khan states no factual allegations against the
11       Vetter/KDG Defendants, distinct from communications and pleadings in the
        bankruptcy proceedings, other than making conclusory and fanciful
12       allegations that the Vetter/KDG Defendants recruited other defendants,
        including virtually every lawyer and professional who Agha–Khan had any
13       dealings with, in a massive conspiracy against her.  In view of that, the
        Vetter/KDG Defendants are protected by California's absolute litigation
14       privilege.

15   *Agha-Khan*, 2015 WL 5734380, *7.  The Ninth Circuit affirmed.  683 Fed. Appx. 628.

16       Like the Debtor in *Agha-Khan*, the Baronis seeks to sue the Defendants based solely on action

17   taken in the bankruptcy proceedings. The Trustee and his counsel's actions and communications

18   taken in connection therewith are absolutely privileged. The Baronis' claims are barred by the

19   litigation privilege because they are based almost entirely on pleadings filed before this Court by the

20   Trustee and his counsel.[10]

21       **E.  *The Court Must Put a Stop to the Baronis' and Their Counsel's Continued
        Malfeasance***

22       At this juncture in the Debtor's chapter 7 bankruptcy case, all assets of the estate have been

23   sold, Mr. Baroni has been afforded one last extension (his fifth) to file his opening appellate brief in

24   the only open appeal,[11] and the only issue before this Court is whether, or if, the Baronis should be

25

26   [10]  It goes without saying that, in addition to the above infirmities, the Baronis have no standing to sue
     the Trustee's insurers directly. See Cal. Ins. Code § 11580. They are also not policy beneficiaries.
27   Complaint, Exhibit 1.  Thus, even if the Baronis' entire Complaint were not subject to dismissal for
     the reasons stated herein, they still could not bring a direct action or claim a right to the proceeds.

28   [11]  Mr. Baroni's motion to stay the Ninth Circuit appeal in deference to this proceeding was denied.

21

3017305

1   held accountable for the rental value of the real property of the estate located at 3339 Via Verde Ct.,

2   Calabasas, California 91302 (the "Calabasas Property") during the period of time in which they

3   refused to vacate and adversely occupied the property notwithstanding the Trustee's turnover

4   demand.  Once resolved (and any appeal from that ruling), the Trustee can close the estate.

5        Recognizing the winding-down status of the bankruptcy, earlier this year District Court

6   Judge Michael W. Fitzgerald was reluctant to grant the Trustee's vexatious litigant motion brought

7   against the Baronis and their counsel, Richard Antognini ("Antognini").  But, he cautioned the

8   Baronis and counsel nevertheless:

9        Moreover, in light of the Court's recent ruling in another one of the Baroni
         Parties' appeals, the Court is optimistic that the drastic remedy the Trustee

10       seeks is not necessary as this time. *See In re Baroni*, 658 B.R 551 (C.D. Cal.
         2024). The Court's view is further supported by the Trustee's own

11       representations regarding the current status of the underlying bankruptcy
         action. (*See* Reply at 20 (noting that there are no further properties to be sold

12       and that the only remaining issue is a pending summary judgment in an
         adversary proceeding)).

13
         Accordingly, the Motion is **DENIED**. ***Despite the Court's ruling, the***

14       ***Baroni Parties are warned that, should they engage in similar***
         ***unmeritorious and frivolous conduct in the future, they risk being subject***

15       ***to a pre-filing order.***

16   *In re Baroni*, Case No. 23-06689, Doc. No. 20, at p. 3 (C.D. Cal. June 24, 2024) (emphasis added).

17        Rather than heed the District Court's warning and go gentle into the next phase of their lives,

18   the Baronis have taken one final opportunity to rage, raging against every action taken by the

19   Trustee and his court-approved counsel over the past five years, notwithstanding the undisputed fact

20   that all such actions were taken pursuant to and in conformity with orders of this Court and, in most

21   cases, affirmances of said orders by the District Court, the Bankruptcy Appellate Panel (the "BAP"),

22   and the Ninth Circuit (where such appeals were taken and not dismissed for lack of standing,

23   jurisdiction, or lack of prosecution).  By any measure, the Complaint is frivolous.

24        In *In re Frantz*, 635 B.R. 594 (9th Cir. BAP 2023), the Ninth Circuit Bankruptcy Appellate

25   Panel canvassed Ninth Circuit authority setting forth the standard by which bankruptcy courts could

26   sanction counsel either pursuant to Rule 9011 or the bankruptcy court's inherent authority.  As an

27   initial matter, the BAP found that both Rule 9011 and the court's inherent authority provide avenues

28   for sanctions provided that counsel's conduct satisfies the relevant standard.

The *Frantz* court identified the bankruptcy court's Rule 9011 authority as follows:

> Rule 9011(b) provides, in summary, that when an attorney signs or files a document with the court, she is certifying to the best of her knowledge that she is not presenting the document "for any improper purpose," that the legal contentions are warranted, and that the factual assertions have evidentiary support. The bankruptcy court may initiate Rule 9011 proceedings on its own initiative. Rule 9011(c)(1)(B). If the bankruptcy court determines that the attorney has violated the rule, it may impose a sanction "limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." Rule 9011(c)(2). The central purpose of the rule is to deter baseless filings. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990) (Civil Rule 11).

We have stated that

> Rule 9011 empowers bankruptcy courts to impose sanctions upon the signers of paper where a) the paper is frivolous, or b) the paper is filed for an improper purpose. In fact, the bankruptcy court is required to impose sanctions on the signer of a paper if he or she files a frivolous paper or files a paper for an improper purpose.

> *In re Brooks-Hamilton*, 400 B.R. 238, 249 (9th Cir. BAP 2009) (cleaned up).

*Id.*, at 602. The *Frantz* court further identified the standard for imposition of sanctions under Rule 9011 where the bankruptcy court exercises such authority on its own initiative,[12] as follows:

> 'Rule 9011(b) incorporates a reasonableness standard which focuses on whether a competent attorney admitted to practice before the involved court could believe in like circumstances that his actions were legally and factually justified.' *In re Nakhuda*, 544 B.R. at 899. Additionally, when the court imposes sanctions on its own initiative, it must 'apply a higher standard 'akin to contempt' ....' *Id.* The Ninth Circuit has explained that:

> > This [Civil Rule 11] standard is applied with particular stringency where, as here, the sanctions are imposed on the court's own motion. In that circumstance – unlike the situation in which an opposing party moves for [Civil] Rule 11 sanctions – there is no "safe harbor" in the Rule allowing lawyers to correct or withdraw their challenged filings. In light of this important distinction, sua sponte sanctions will ordinarily be imposed only in situations that are akin to a contempt of court.

> *United Nat'l Ins. Co. v. R&D Latex Corp.*, 242 F.3d 1102, 1115-16 (9th Cir. 2001) (cleaned up).

*Id.*, at 602-603.

---

[12] Under Section 9011 of the Federal Rules of Bankruptcy Procedure, this Court is empowered to issue an order to show cause to the Baronis' counsel on its own initiative. However, any monetary sanctions thereunder must be paid to the Court, not the Trustee.

3017305

After citing authority for the proposition that bankruptcy courts also have the power to sanction counsel s under the court's inherent authority, the *Frantz* court described the standard for imposition of sanctions against counsel, as follows:

> The Ninth Circuit has stated that a court may impose sanctions pursuant to its inherent authority when it finds:
>
>> willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose.... [A]n attorney's reckless misstatements of law and fact, when coupled with an improper purpose, ... are sanctionable under a court's inherent power.
>
> *Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001).
>
> 'Before awarding sanctions under its inherent powers, however, the court must make an explicit finding that counsel's conduct 'constituted or was tantamount to bad faith.' ' *Primus Auto. Fin. Servs., Inc.*, 115 F.3d at 648 (citation omitted); see also *Fink*, 239 F.3d at 992 ("In reviewing sanctions under the court's inherent power, our cases have consistently focused on bad faith.... [A] specific finding of bad faith ... must precede any sanction under the court's inherent powers." (cleaned up)).

*Id.*, at 603.[13]

The Complaint reeks of bad faith. Among other things, the Complaint admits that the Debtor and/or Mr. Baroni have made this same argument unsuccessfully ***at least*** fourteen times. Complaint, at ¶ 58. Counsel claims merely that he has sought "clarification" of the status of the Plan since April 9, 2019, but the Court "declined to address Plaintiff's argument that the Plan is binding and in effect." Complaint, at ¶¶ 57-59. No clarification was needed. First, the Court made clear to Mr. Antognini the effect of the conversion in 2019 when the Debtor's bankruptcy was converted:

> I understand why the debtor doesn't like it. The debtor has been -- the debtor cut certain deals with them during the plan phase. The debtor has been litigating and in some cases resolving the litigation with some of the other parties.
>
> ***And, you know, with the case converting, you know, those deals, that restructuring goes away. But, you know, that's what happens when you materially default under a plan.*** I don't know what to tell you. And, again, I note that this is not the first time that that has happened.

April 9, 2019 Transcript of Proceedings [Bankr. Doc. No. 966], at 28:3-12 incorporated by reference into the Court's April 29, 2019 Order Granting Bank of New York Mellon F/K/A the Bank of New

---

[13] The *Frantz* court also recognized that bankruptcy courts have the power to "[i]nitiate proceedings for civil or criminal contempt" and "[i]mpose other appropriate sanctions" pursuant to LBR 2090-2.

York Successor Trustee to JPMorgan Chase Bank, N.A., as Trustee for the Structured Asset

Mortgage Investments II Trust, Mortgage Pass-Through Certificates, Series 2006-AR6's Motion to

Convert or Dismiss Chapter 11 Case [Bankr. Doc. No. 967] (emphasis added).

Second, the Debtor's counsel knew the impact of the Conversion Order on the Plan:[14]

> Because of the conversion of the case, ***the plan provisions no longer apply***.
> … ***The secured creditors, who so vociferously pushed for conversion of the
> case, now have the right to foreclose based on the full amount owed,
> meaning Nationstar specifically on the Carmel property will receive many
> hundreds of thousands of dollars more in a foreclosure than through the
> confirmed plan.***

Bankr. Doc. No. 989 [Motion by Debtor to Dismiss Chapter 7 Case], at 9:5-11 (emphasis added).

Thus, the Complaint is not borne of counsel's ignorance or this Court's failure to "clarify"

the impact of the Debtor's defaults.  Counsel knows his argument is frivolous and the Court has on

many occasions attempted to point out the fallaciousness of counsel's argument.

The Complaint does nothing to reconcile the Conversion Order and Turnover Order with the

Complaint allegations that the Trustee was supposed to administer the assets for the benefit of the

Debtor and return those assets to the Debtor.  The Complaint does not even acknowledge the

Debtor's material breach of the Plan post-confirmation, the very cause of the injuries for which the

Baronis complain.  The Complaint does not address the fact that each and every action by the

Trustee and counsel complained of in the Complaint was authorized by court order—save to claim

that every single order issued by this Court (and affirmed by higher courts) is void.

The Court would have to ignore the import of its own orders, the affirmance of those orders,

and the finality of those orders, not to mention the fact that Mr. Antognini has known for five years

the effect of the Conversion Order, to find that a "plausible, good faith argument can be made by a

competent attorney to the contrary."  *Id. quoting Zaldivar v. City of L.A.*, 780 F.2d 823, 833 (9th Cir.

1986), *abrogated on other grounds, Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990).  Given

counsel the benefit of the doubt, the arguments regarding the defaulted upon Plan evinces that

counsel is not competent with respect to bankruptcy law.  Given past admissions, however, it is

---

[14] The Debtor's brief, filed by the Resnik Hayes firm, was served on Mr. Antognini who was also
counsel of record for the Debtor and represented the Debtor at the hearing on the Conversion Order.

1   apparent that counsel understood the effect of the Conversion Order and Turnover Order, as well as

2   the concepts of *res judicata* (both claim and issue preclusion), collateral estoppel and law of the

3   case; rather, it is that he knows the effect but persists with bad faith arguments to the contrary.

4       Mr. Antognini's shenanigans must come to an end, which will only happen if this Court

5   disabuses him of the notion that he has carte blanche to file knowingly frivolous pleadings with

6   impunity.  The Court should either issue an order to show cause pursuant to Rule 9011 or,

7   alternatively, exercise its inherent authority to sanction Mr. Antognini.  To the extent necessary, the

8   Trustee stands ready to renew his vexatious litigant motion previously filed with the District Court.

9   The Court likewise should not approve the pro hac vice application for New York counsel or,

10  alternatively, the Court should hold him equally responsible for this bad faith filing.  Finally, the

11  Court should consider a pre-filing order precluding the Baronis from filing any further pleadings in

12  the bankruptcy absent pre-approval by the Court.

13  **IV.    CONCLUSION**

14      For the foregoing reasons, the Trustee respectfully requests that the Court enter an order

15  granting this Motion, dismissing the Complaint with prejudice, issuing an order to show cause why

16  Plaintiffs' counsel should not be sanctioned pursuant to Rule 9011 or, alternatively, exercising the

17  Court's inherent powers, and granting any further relief the Court deems appropriate under the

18  circumstances.

19  DATED:  December 5, 2024                    BG LAW LLP

20

21                                              By: _____

22                                                  Jason B. Komorsky
                                                    Susan K. Seflin
23                                                  Jessica L. Bagdanov
                                                    Attorneys for David Seror, Chapter 7 Trustee;
24                                                  Brutzkus Gubner, LLP, BG Law, LLP;
                                                    *and*
25                                                  Specially appearing for Liberty Mutual
                                                    Insurance Company
26

27

28

3017305

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**21650 Oxnard Street, Suite 500, Woodland Hills, California 91367**

A true and correct copy of the foregoing document entitled: **NOTICE OF MOTION AND MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM FOR RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **December 5, 2024**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Richard L Antognini    rlalawyer@yahoo.com, rlalawyer@yahoo.com
- David Seror (TR)    dseror@bg.law, csalazar@bg.law;C133@ecfcbis.com;mgalvan@bg.law
- United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On **_____**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**\*\*PER JUDGE BARASH PROCEDURES, CHAMBERS COPIES NOT REQUIRED**

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **_____**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| December 5, 2024 | JESSICA STUDLEY | /s/ Jessica Studley |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*    **F 9013-3.1.PROOF.SERVICE**