MARY KATE SULLIVAN (State Bar No. 180203)
mks@severson.com
ADAM N. BARASCH (State Bar No. 158220)
anb@severson.com
SEVERSON & WERSON
A Professional Corporation
595 Market Street, Suite 2600
San Francisco, California 94105
Telephone: (415) 398-3344
Facsimile: (415) 956-0439

Attorneys for Severson and Werson, A
Professional Corporation

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA, SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re<br><br>ALLANA BARONI,<br><br>Debtor. | Case No. 1:12-bk-10986-MB<br><br>Chapter 7<br><br>Adv. No. 1:24-ap-01059-MB |
| ALLAN BARONI AND JAMES BARONI (Individually and on behalf of the United States)<br><br>Plaintiff,<br><br>vs.<br><br>DAVID SEROR (personally, and in his capacity as Chapter 7 Trustee); BRUTZKUS GUBNERL BG LAW LLP; WELLS FARGO BANK, N.A.; SEVERSON & WERSON A Professional Corporation; LIBERTY MUTUAL INSURANCE COMPANY; UNITED STATES FIRE INSURANCE COMPANY; and Does 1-50<br><br>Defendants. | **SEVERSON AND WERSON, A PROFESSIONAL CORPORATION'S REPLY TO OPPOSITION TO MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM FOR RELIEF**<br><br>Date:    February 27, 2025<br>Time:   2:30 PM<br>Place:   Via ZoomGov, Courtroom 303<br>             21041 Burbank Blvd.<br>             Woodland Hills, CA |

11951.0701/16496257.1                                 1
REPLY TO OPPOSITION TO MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM FOR RELIEF

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Even though Allana and James Baroni ("Plaintiffs") have filed a separate Opposition to Defendant, Severson & Werson's ("Defendant") Motion to Dismiss Complaint ("Motion") from the Opposition to the Trustee's Motion to Dismiss ("Opposition to Trustee's Motion"), Plaintiffs have incorporated the Opposition to Trustee's Motion into Plaintiffs' arguments to respond to this Motion. Both Oppositions follow the same incomprehensible arguments that they previously admitted have been rejected by this Court and by the Appellate Court's [see Opposition, at 27:7-8 (at least 14 times by the Plaintiffs' count)] that can be boiled down the following: Notwithstanding the Debtor's default under her Second Amended Plan of Reorganization (the "Plan"), which led to the conversion of the debtor's chapter 11 reorganization into a chapter 7 liquidation, the appointment of a chapter 7 trustee to "collect and reduce to money the property of the estate" [11 U.S.C. § 704(a)(1)], and the mandated turnover of all of the Debtor's properties to the Trustee (as they were now deemed assets of the chapter 7 estate) for liquidation, the since-breached Plan nevertheless prevented this Court from ordering and the Trustee from selling any of the turned over properties or the Trustee from settling and this Court approving any of the disputed claims pending against the Debtor (and, of course, the District Court and the Ninth Circuit from affirming any of this Court's rulings). As the Plaintiffs allege, this Court's orders of conversion and turnover, the affirmances thereof, and all post-conversion orders are void because they are contrary to the Plan, which the Plaintiffs' Complaint presupposes could be breached by the Debtor without any consequences.

As the Plaintiffs' have incorporated not their Opposition prior arguments made in their Opposition to the Trustee's Motion, Defendant also incorporates the balance of Trustee's Reply introduction contained in document number 63, pages 1-7, as though set forth fully herein this Reply.

## II. ARGUMENT

### A. Plaintiffs Fail to Address Litigation Privilege in Opposition to This Motion but Even if Consider Opposition to Litigation Privilege in Trustee's Motion to Dismiss, Plaintiff's Fail to Make a Compelling Argument Against It

As an initial comment, Plaintiffs' Opposition to this Motion, fails to address Defendant's assertion that the litigation privilege bars Plaintiffs' from bringing these claims against Defendant,

who was counsel for record for several secured creditors in Debtor' bankruptcy case. As such, this Motion should be granted without leave to amend on that basis alone. However, even if incorporating Plaintiffs' Opposition to Trustee's Motion to Dismiss, the litigation privilege still bars this complaint against Defendant.

The litigation privilege is broad and bars the use of any communications made during or in connection with a judicial proceeding to form the basis of a claim for relief:

> California courts and the California legislature have long recognized that any alleged communications made during or in connection with judicial proceedings—including arbitration—are absolutely privileged. Such communications may not form the basis of any subsequent claim against the proponent. For well over a century, communications with `some relation' to judicial proceedings have been absolutely immune from tort liability by the privilege codified as section 47(b).

*Rubin v. Green,* 4 Cal. 4th 1187, 1193 (1993).

The only argument in the Plaintiffs' Opposition to Trustee's Motion to Dismiss as to why the litigation privilege does not apply to Trustee's counsel is the same argument made throughout both Oppositions: namely, that the Trustee's actions in conformity with this Court's orders constitute contempt of the Plan—again without identifying what provision was violated let alone why that particular provision was subject to *res judicata.* . But every action of which the Plaintiffs complain of arose in this bankruptcy and consisted of obtaining and acting in conformity with Court orders. To the extent that Plaintiffs' claims are based upon statements made during the course of litigation, they are barred by the absolute litigation privilege as a matter of law. Cal. Civ. Code § 47(b); *Agha-Khan v. United States,* 2015 WL 5734380, *7 (E.D. Cal. Sept. 29, 2015) *aff'd* 683 Fed. Appx. 628 (9th Cir. 2017); Action *Apartment Assn., Inc. v. City of Santa Monica*, 41 Cal. 4th 1232, 1241 (2007); *Rusheen v. Cohen*, 37 Cal.4th 1048, 1057 (2006); *Silberg v. Anderson*, 50 Cal.3d 205, 216 (1990).  Plaintiffs' never address any arguments as to why the litigation privilege does not apply to this Defendant.

 For the reasons stated above, and in the moving papers, the defendant's actions in this bankruptcy and in conformance with the Court's orders (all of which are final) is subject to the litigation privilege, and this adversary should be dismissed without leave to amend on that ground alone.

**B.    The Court Had Jurisdiction to Enter Each of the Now Final Orders Relied upon by the Trustee in Carrying Out His Duties and to Grant this Motion to Dismiss— None of the Court's Orders Are Void and, in Any Event, None Can Be Collaterally Challenged**

A bankruptcy court has jurisdiction over `all civil proceedings arising under title 11 or arising in or related to cases under title 11.' 28 U.S.C. § 1334(b). Proceedings "arising in" bankruptcy cases are generally referred to as `core' proceedings, and essentially are proceedings that would not exist outside of bankruptcy, such as "matters concerning the administration of the estate,' `orders to turn over property of the estate,' and "proceedings to determine, avoid, or recover preferences.' 28 U.S.C. § 157(b)(2); *see also In re Harris Pine Mills,* 44 F.3d 1431, 1435-37 (9th Cir.1995).

The bankruptcy court also has jurisdiction over a much broader set of cases: those proceedings that are "related to" a bankruptcy case. The Ninth Circuit has adopted the `*Pacor* test' for determining the scope of `related to' jurisdiction. *In re Fietz,* 852 F.2d 455, 457 (9th Cir.1988). Under this formulation, the test is whether:

the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy. Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate. *In re Pegasus Gold Corp.,* 394 F.3d 1189, 1193 (9th Cir. 2005) quoting *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir. 1984).

With regard to the breadth of post-confirmation bankruptcy court jurisdiction, the Ninth Circuit has adopted the "close nexus" test enunciated by the Third Circuit. *Id.,* at 1194 citing *In re Resorts Int'l, Inc.,* 372 F.3d 154, 156-157 (3d Cir. 2004) ("the essential inquiry appears to be whether there is a close nexus to the bankruptcy plan or proceeding sufficient to uphold bankruptcy court jurisdiction over the matter"). "[M]atters affecting `the interpretation, implementation, consummation, execution, or administration of the confirmed plan will typically have the requisite close nexus. *Id.; see also Lacy v. Stinky Love, Inc. (In re Lacy),* 304 B.R. 439, 444 (D. Colo. 2004) ("[a]fter confirmation, the Bankruptcy Court retains jurisdiction to interpret, enforce, or aid the operation of a plan of reorganization") citing *Donaldson v. Bernstein (In re Donaldson),* 104 F.3d 547 (3d Cir. 1997), *In re Erie Hilton Joint Venture,* 137 B.R. 165 (Bankr. W.D. Pa. 1992), and 1991 Advisory Committee Note to Fed. R. Bank. P. 3022 ("A final decree closing the case after the estate is fully administered does not deprive the court of jurisdiction to enforce or interpret its own orders and does not prevent the court from reopening the case for cause pursuant to § 350(b) of the Code."). As *Lacy* instructs, "Section

1112(b) provides express authority for dismissal or conversion of a Chapter 11 case, including post-confirmation conversion." *Lacy,* 304 B.R. at 444.

Plaintiffs argue that this Court lacked subject matter jurisdiction because all of its orders beginning in 2019 were contrary to the terms of the Plan. That is not the test for jurisdiction or the Court's power to convert the Debtor's bankruptcy from chapter 11 to chapter 7 and to issue orders consistent therewith. Clearly, the interpretation and implementation of the Plan, as well as the consequences of breaches thereof, were well within the "close nexus" necessary for this Court to exercise jurisdiction.

Contrary to Plaintiffs claim that this Court lacked jurisdiction, Plaintiffs have repeatedly accepted this Court's jurisdiction to enter these orders and the appellate courts' jurisdiction to entertain appeals thereof:

> This appeal arises from entry of an order by the bankruptcy court converting her chapter 11 case to chapter 7 as well as denying her Motion for Reconsideration of that Order. The bankruptcy court had jurisdiction to enter the order pursuant to 28 U.S.C. §§ 157(a), 157(b) and 1334. The district court had jurisdiction over the appeal under 28 U.S.C. § 158(a). The Bankruptcy court had jurisdiction to enter the orders pursuant to 28 U.S.C. §§ 157(a), 157(b) and 1334. This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a).

*Baroni v. Seror,* Case No. 21-55150, Appellant's Opening Brief [Doc. No. 8, (Oct. 19, 2023)], at p. 5 (attached hereto as **Exhibit C** to Trustee's Reply at Docket number 63.)**;** *see also* **Exhibit A** to Trustee's Reply at Docket number 63**,** at p. 5 ("The Bankruptcy Court had jurisdiction to enter the orders pursuant to 28 U.S.C. §§ 157(a), 157(b) and 1334. This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)"); *Baroni v. Seror,* Case No. 2:23-cv-06235-MWF, Opening Brief of Appellant James Baroni [Doc. No. 27], at p. 1 (acknowledging that District Court has jurisdiction to hear appeal of Calabasas Property Sale Order and Abandonment Denial Order) (attached hereto as **Exhibit D** to Trustee's Reply at Docket number 63).

As with its other arguments, the Opposition to Defendant's and Trustee's Motions never explains factually or by citation to apt authority why, contrary to their repeated prior admissions, this Court lacked jurisdiction, first, to convert the case, second, to issue orders thereafter consistent with the conversion of this bankruptcy and, third, to rule on this Motion (or why the appellate courts

lacked jurisdiction to affirm such orders). On the first two points, the Opposition simply ignores the Plaintiffs' prior admissions and repeats the bald statement that "Judge Barash did not have jurisdiction to enter the 2020, and 2023, Plan Violation Orders." Opposition to Trustee's Motion to Dismiss, at 10:8-9; *see also* Opposition to Trustee's Motion to Dismiss, at 10:13-14 (Judge B[a]rash approving the Plan Violation Agreement Orders which were entered without jurisdiction..."). On the third point, it appears (although its far from clear) that the Opposition contends that "[t]he Court does not have jurisdiction to grant the Motion" because "[t]he Motion argues that neither the Plan Order nor the goals and conditions of the Plan are effective of binding (Motion passim)." Opposition to Trustee's Motion to Dismiss, at 11:19, 11:24-25; *see also id.,* at 12:8-9 ("the Court has no jurisdiction to grant the Motion").

     First, defendant's and Trustee's Motions are not predicated on the effectiveness of the Confirmation Order, let alone the Plan's so-called goals and conditions. But, even if that were the predicate for the Motion, it would not divest this Court of jurisdiction to rule thereon. Second, it is not defendants who are collaterally attacking this Court's orders, but the Complaint filed by the Plaintiffs that are guilty of this offending conduct. The "proceeding that challenges the integrity of a previously entered judgment" [Opposition to Trustee's Motion to Dismiss, at 9-10] is the Plaintiffs' Complaint, which challenges all of this Court's final orders post-confirmation. Accordingly, it is the Complaint, not Motion, to which this Court cannot provide relief because of the existence of final, non-appealable orders that preclude such relief.

     In this regard, the law is clear in this Circuit that the Plaintiffs cannot collaterally challenge these final orders, even if, as they claim, this Court and the appellate courts lacked subject matter jurisdiction:

> Even objections to subject-matter jurisdiction—which may be raised at any time, even on appeal—must be raised while the lawsuit is still pending; they may not be raised for the first time by way of collateral challenge in a subsequent action. A party that "had an opportunity to litigate the question of subject-matter jurisdiction" in the original proceeding "may not ... reopen that question in a collateral attack." *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702 n. 9, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982) *(citing Chicot County Drainage Dist. v. Baxter State Bank,* 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940), and *Stoll* v. *Gottlieb,* 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938)).

*City of South Pasadena,* 284 F.3d at 1157. Accordingly, not only did this Court have jurisdiction to enter all of the orders that are the subject of the Complaint as admitted by the Plaintiffs repeatedly, but the Plaintiffs cannot collaterally attack these final, non-appealable orders.

    **C.**     ***Res Judicata* Bars Plaintiffs From Attacking the Plan Violation Agreement Orders, Orders that Flowed Due to Lack of Discharge and Conversion of the Case***

Plaintiffs' Opposition fails to understand that their Complaint is seeking to reconsider and set aside all the Court's orders in Allana Baroni's bankruptcy case that occurred after her case was converted to Chapter 7. Plaintiffs cannot challenge these Order for many reasons including under the doctrine of *res judicata.*

> The doctrine of res judicata bars a party from bringing a claim if a court of competent jurisdiction has rendered final judgment on the merits of the claim in a previous action involving the same parties or their privies. *In re Int'l Nutronics, Inc.,* 28 F.3d 965, 969 (9th Cir. 1994) (internal citation omitted). `Res judicata bars all grounds for recovery that could have been asserted, whether they were or not, in a prior suit between the same parties on the same cause of action.' *Id.* The elements necessary to establish res judicata are: ` (1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties.' *Headwaters Inc. v. U.S. Forest Serv.,* 399 F.3d 1047, 1052 (9th Cir. 2005) (internal citations omitted).
>
> The application of the doctrine to bankruptcy court orders is somewhat distinct from other scenarios given the nature of the proceedings, but courts routinely conclude that attacks to final, non-appealable bankruptcy court orders outside the specified criteria of Rule 60(b) are improper `collateral attacks,' and the `collateral attack' doctrine is a species of `res judicata.'

*In re Baroni,* 2023 WL 4236687, *7 (C.D. Cal. June 28, 2023) (citations omitted); *see also In re Gens,* 2018 WL 4353086, *6 (N.D. Cal. Sept. 12, 2018).

In another appeal, the District Court explained law of the case, as follows:

> Under the law-of-the-case doctrine, `a court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court, in the same case.' *United States v. Jingles,* 702 F.3d 494, 499-500 (9th Cir. 2012) (citation omitted). `For the doctrine to apply, the issue in question must have been decided explicitly or by necessary implication in [the] previous disposition.' *Id.* A court may have discretion to depart from the law of the case where: (1) the first decision was clearly erroneous; (2) an intervening change in the law has occurred; (3) the evidence on remand is substantially different; (4) other changed circumstances exist; or (5) a manifest injustice would otherwise result. *United States v. Alexander,* 106 F.3d 874, 876 (9th Cir. 1997) (internal citation omitted).

1 | *In re Baroni,* 658 B.R. 551, 557 (C.D. Cal. Mar. 25, 2024); *see also* Doc. No. 1913, at 32:7-13.

2 |     Whether this Court applies *res judicata* (claim preclusion), collateral estoppel (issue reclusion)
3 | or law of the case, the result is the same. The Complaint fails to state any cognizable claim for relief for
4 | the simple reason that the entirety of the relief sought is predicated on this Court setting aside
5 | multiple final orders, which the Court is powerless to do.

6 |     The Court has a stack of final orders that preclude the claims brought here. Those orders
7 | include: (i) the Conversion Order; (ii) the Turnover Order; (iii) the Rental Lenders Settlement Order;
8 | (iv) the Carmel Sale Order; (v) the order denying the removal of the Trustee; (vi) the CIT Settlement
9 | Order; (vii) the Camarillo Sale Order; and (viii) the physical turnover order relating to the Calabasas
10 | Property. In turn, this Court is subject to a host of intermediate and Ninth Circuit appellate decisions,
11 | which it is not at liberty to ignore or countermand. Those rulings include: (i) the District Court's
12 | affirmance of the Conversion Order; (ii) the District Court's affirmance of the Turnover Order; (iii)
13 | the Ninth Circuit's affirmance of both the Conversion Order and the Turnover Order; (iv) the District
14 | Court's affirmance of the Carmel Sale Order; (v) and the District Court's affirmance of the Calabasas
15 | Sale Order. *See* RJN to Trustee's Opposition incorporated here by reference. None of these orders are
16 | voidable, let alone void.

17 |     Here, a creditor sought, and the Court ordered conversion pursuant to Section 1112(b), which
18 | is separate and distinct from modifications to the Plan. Thus, the entirety of the Opposition's analysis
19 | regarding modifications pursuant to 11 U.S.C. § 1127 is irrelevant. *See* Opposition, at 16:18-19
20 | ("Courts have rejected attempts to circumvent § 1127(b) by characterizing a proposed plan
21 | modification as a motion to modify, clarify, or reconsider the chapter 11 plan confirmation order or to
22 | modify a plan-related document")  The Court's orders did not modify the Plan; the Court's orders
23 | implemented the conversion, turnover and subsequent liquidation of the estate.

24 |     Turning to the *res judicata* effect of the Plan, the Plan is only preclusive on issues decided to
25 | finality. The Opposition to Trustee's Motion recognizes that "[c]onfirmed plans resemble consent
26 | decrees, which have characteristics of both a contract and a judgment. Opposition, at 19:26-27 quoting
27 | *In re Oakhurst Lodge,* 582 B.R. 784, 792 (Bankr. S.D. Cal. 2018) citing *Hillis Motors, Inc. v. Hawaii*
28 | *Automobile Dealer's Association,* 997 F.2d 581, 588 (9th Cir. 1993). Likewise, the Opposition to

1  Defendant's Motion recognizes that "[i]f the change is a modification, however, then the requirements
2  of section 1127 must be met. *See, e.g., In re Oakhurst Lodge, Inc.,* 582 B.R. 784, 798 (Bankr. E.D.
3  Cal. 2018) ("A settlement that 'alters the legal relationships among the debtor and its creditors' under
4  the confirmed plan constitutes a plan modification.").The Court look no further than the subsequent
5  decision in *In re Stephenson,* 2023 WL 6204334 (Bankr. D.D.C. Sept. 22, 2023), which the
6  Opposition to the Trustee's Motion to Dismiss champions but whose import is clearly lost on them.

In the *Stephenson* court's original holding, it explained why the payment scheme in the debtor's plan was not subject to *res judicata.* As the court explained, as a result of BAPCPA individual debtors no longer receive a discharge upon confirmation. Such discharge only occurs when the debtor made its plan payments. Thus, where the debtor defaulted on such obligation it lost the benefit of the payment scheme, which was a contract between it and the creditors that was contingent upon the debtor satisfying her payment obligations. *In re Stephenson*, 647 B.R. 256, 258 (Bankr. D.C. 2022).

Like the debtor in *Stephenson,* the Opposition and the Opposition to the Trustee's Motion to Dismiss mischaracterizes the courts' subsequent holding, including failing to note the part in the second decision wherein it denied the debtor's reconsideration and reaffirmed its first holding. *See id.,* at \*4 ("The Court held in *Stephenson,* and continues to hold..."). Thus, it was entirely consistent for this Court (and, in turn, the District Court on appeal) to find aspects of the Plan subject to *res judicata* (as for example, what was an asset of the estate) while simultaneously approving the sale and liquidation of the Calabasas Property, which sale resulted from the Debtor's breach.

In other words, the Plaintiffs' entire complaint is rooted in the District Court's narrow discussion of *res judicata* of certain findings in the Plan that then ignores that the District Court did exactly what the Plaintiffs' claim was forbidden by the Plan—i.e., it approved the sale of the Calabasas Property. The Plan did not bar the sale of the Calabasas Property; rather, it provided the Debtor with a roadmap for making payments and, thus, ultimately being discharged from her liabilities to her creditors. No payments, no discharge. The Plan may have contemplated the Debtor retaining her properties if she satisfied her payment obligations, but final rulings subject to *res judicata* are not founded on contemplation. As explained by one leading bankruptcy treatise:

> Because individual debtors do not get a discharge until the plan is completed, if the debtor defaults under the plan, the debtor will be susceptible to claims of creditors for the full amount of the indebtedness owed as of the filing of the debtor's petition.

Norton Bankruptcy Law and Practice 3d, Part II. Analysis of Bankruptcy Code, Subpart 17, Chapter 11. Post confirmation Matters, at § 114.2 (Jan. 2022 update).

Here, the Debtor breached her plan obligations, which afforded creditors the right to petition the Court to convert the Debtor's bankruptcy to a chapter 7 liquidation. In fact, Debtor had ample warning of the consequences on not complying with the terms of her Plan when creditor, Wells Fargo, filed the first Motion to Convert. Although Debtor cured Wells Fargo's default at the "11th hour" resulting in that Motion being denied, when she again tried to manipulate the Plan by not paying a secured creditor per the terms of her Chapter 11 Plan, Bank of New York filed a second Motion to Convert, which the Court granted. Whatever, benefits would have been afforded the Debtor had she performed were lost as a result of her breach and the conversion. That the "goal" of the Plan pre-breach was for the Debtor to keep her properties is not the proper subject of *res judicata.* There was no final adjudication that the Debtor was entitled to these properties under any and all circumstances.

The Ninth Circuit previously countered Debtors position when it affirmed not only this Court's Conversion Order, but the Turnover Order as well. By that holding, the Ninth Circuit affirmed that the properties identified in the Plan no longer belonged to the Debtor but were assets of the chapter 7 estate. The notion that notwithstanding the Conversion Order and the Turnover Order, the Trustee was barred from selling the estate properties or settling with estate creditors is simply a fiction inconsistent with the Conversion Order, the Turnover Order, and the Trustee's statutory obligations set forth in Section 704.

### III.  CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court enter an order granting this Motion, dismissing the Complaint with prejudice, and granting any further relief the Court deems appropriate under the circumstances.

| | | |
|---|---|---|
| 1 | DATED: February 20, 2025 | SEVERSON & WERSON<br>A Professional Corporation |
| 2 | | |
| 3 | | |
| 4 | | By:  /s/Adam N. Barasch |
| | | ADAM N. BARASCH |
| 5 | | |
| 6 | | Attorneys for Severson and Werson, A Professional Corporation |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 595 Market Street, Suite 2600, San Francisco, CA 94105.

A true and correct copy of the foregoing document entitled (*specify*): SEVERSON AND WERSON, A PROFESSIONAL CORPORATION'S REPLY TO OPPOSITION TO MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM FOR RELIEF will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) February 20, 2025 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Richard L Antognini      rlalawyer@yahoo.com
Jessica L Bagdanov     jbagdanov@bg.law, ecf@bg.law
Susan K Seflin           sseflin@bg.law
David Seror (TR)      dseror@bg.law, csalazar@bg.law, c133@ecfcbis.com, mgalvan@bg.law
United States Trustee (SV) ustpregion16.wh.ecf@usdoj.gov
Jason B Komorsky      ecf@bg.law, jkoworsky@bg.law
Justin D. Balser         justin.balser@troutman.com

☐ Service information continued on attached page.

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) February 20, 2025 , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

***PER JUDGE BARASH PROCEDURES, CHAMBERS COPIES NOT REQUIRED

☐ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

11951.0701/16496257.1                                          1
REPLY TO OPPOSITION TO MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM FOR RELIEF

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| February 20, 2025 | Chevalier Robertson | /s/Chevalier Robertson |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |