1  Richard L. Antognini (Cal. Bar No. 075711)
2  Law Office of Richard L. Antognini
   2485 Notre Dame Blvd., Suite 370, #45
3  Chico, California 95928-7167
   Tel: (916) 295-4896
4  Email: rlalawyer@yahoo.com

5
   Anthony R. Mordente (NY Reg. No. 1847516) (Pro hac vice)
6  Mordente Law Firm, LLC
   160-29 Union Turnpike
7  Fresh Meadows, New York 11366-1937
   Tel: (718) 969-9200
8  Email: amordente@mordentelaw.com
9  *Counsel for Plaintiffs*

10                **UNITED STATES BANKRUPTCY COURT**
11  **CENTRAL DISTRICT OF CALIFORNIA - SAN FERNANDO VALLEY DIVISION**

12

13  In re                                )  Bankruptcy Case No.1:12-bk-10986-MB
                                          )  Chapter 7
14       ALLANA BARONI,                   )  Adv. Proc. No.1:24-ap-01059-MB
                                          )
15             Debtor.                    )
                                          )
16  _____          )
    ALLANA BARONI AND JAMES BARONI        )
17  (individually and on behalf of the United )
    States),                             )
18                                        )
                                          )  PLAINTIFFS' MOTION FOR
19            Plaintiffs,                 )  DISQUALIFICATION OF THE
                                          )  HON. MARTIN R. BARASH
20  v.                                    )  PURSUANT TO 28 U.S.C. §455
                                          )
21  DAVID SEROR (personally, and in his   )
22  capacity as Chapter 7 Trustee); BRUTZKUS )
    GUBNER; BG LAW LLP; WELLS FARGO       )
23  BANK N.A.; SEVERSON & WERSEN A        )  Hearing:
    Professional Corporation; LIBERTY     )
24  MUTUAL INSURANCE COMPANY;             )  Date: TBD
25  UNITED STATES FIRE INSURANCE          )  Time: TBD
    COMPANY; and DOES 1-50,               )  Place: TBD
26                                        )
27            Defendants.                 )
    _____  )
28

**PLEASE TAKE NOTICE** that on _____, 2025 at _____, Plaintiffs Allana Baroni and James Baroni, individually, and on behalf of the United States, will and hereby does move pursuant to 28 U.S.C. §455, and in the interest of justice and to preserve public confidence in the judicial process, for the Hon. Martin R. Barash recuse himself from this Adversary Proceeding, or in the alternative for an order disqualifying Judge Barash from presiding over this Adversary Proceeding.

This case presents issues of great public concern. Impartiality of the judiciary is deemed fundamental to the system of justice in the United States. Even the appearance of bias or undue influence threatens public confidence and is of such importance that federal judges are statutorily required to disqualify themselves from any proceeding in which their impartiality might reasonably be questioned.

The motion is based upon this notice of motion and motion, the attached memorandum of points and authorities, the Adversary Proceeding (Doc. 1) filed by Plaintiffs attached hereto as <u>Exhibit 1</u>, and *Plaintiffs Request for Continuance of the February 27, 2025, Hearings on Defendants' Motions to Dismiss the Adversary Proceeding*, attached hereto as <u>Exhibit 2</u> and filed concurrently with this motion.

As documented below, on April 15, 2013, the Hon. Alan M. Ahart entered the order approving Plaintiff Allana's Baroni's *Second Amended Disclosure Statement And Plan Of Reorganization For Allana Baroni* pursuant to U.S. Code Title 11 ("Plan Order"). On April 9, 2019, Judge Barash forcibly converted this case from chapter 11 to chapter 7.

Post conversion, on March 25, 2024, the U.S. District Court held that once the Plan Order was entered [on April 15, 2013], the Plan was and remains binding on ***all parties*** (emphasis added by U.S. District Court) (Case No. 2:23-cv-06235-MWF Doc 40):

> "[o]nce a bankruptcy plan is confirmed, it is binding on ***all parties*** and all questions that could have been raised pertaining to the plan are entitled to *res judicata* effect." *Trulis v. Barton*, 107 F.3d 685, 691 (9th Cir. 1995) (citing 11 U.S.C. § 1141(a)) (emphasis added); *see also* 11 U.S.C. § 1141(a) ("[T]he provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan." (emphasis added by USDC) (the "USDC Plan Order")

The USDC Plan Order supports the 9th Circuit's 2022, post-conversion application of the Plan when it held that the purpose of the post-conversion turnover was in furtherance of funding and administering the intent and provisions of the Plan. "To hold that the unadministered rent and sale proceeds did not revest in the bankruptcy estate upon conversion to Chapter 7 would frustrate the intent of the Plan and is contrary to many of its provisions." *In re Baroni*, 36 F.4th 958, 973 (9th Cir. 2022).

Since conversion, Defendants have been using Judge Barash's Court to issue orders that collaterally attack the previous judicial officer Judge Ahart's Plan Order, frustrate the intent of the Plan, and act contrary to the provisions of the Plan.

Post confirmation, Judge Barash retained jurisdiction to protect the Plan, prevent interference with the execution of the Plan, and otherwise aid in the Plan's operation. Judge Barash has no jurisdiction to collaterally attack the Plan Order.

Judge Barash has not implemented the USDC Plan Order which held that the Plan and Plan Order are res judicata, governed by 11 U.S.C. § 1141(a), and has been binding on ***all parties*** since April 15, 2013. Therefore, Plaintiffs brough the Adversary Proceeding to require the implementation of the USDC Plan Order and seek damages caused by the collateral attacks on the Plan Order.

Without jurisdiction, Judge Barash issued the orders that collaterally attack the Plan Order which harmed the Plaintiffs, and could lead a reasonable person to question Judge Barash's impartiality if he is allowed to preside over the Adversary Proceeding, thus recusal under 28 U.S.C. § 455 is required, even if Judge Barash is committed to and personally believes he can judge the issues in this case impartially.

This request is no insult to Judge Barash, rather " 'under a realistic appraisal of psychological tendencies and human weakness,' the [conflicts of interest in this case] 'pose[] such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented." *Caperton,* 556 U.S. at 870 (quoting *Withrow,* 421 U.S. at 47).

Counsel are ethically compelled to bring this motion in light of the facts set forth below that would reasonably give rise to, at a minimum, an appearance of partiality.

1       **PLEASE TAKE FURTER NOTICE** that pursuant to LBR 9031-1(f)(4),

2 unless otherwise ordered by the Court, any party who opposes the motion must, not

3 later than fourteen (14) days before the hearing on the motion, file and serve a

4 response to the motion.

5

6       **WHEREFORE**, Plaintiffs respectfully request that the Court enter an order

7 granting this motion.

8

9   Dated: February 24, 2025          LAW OFFICE OF RICHARD L. ANTOGNINI

10                                   /s/ Richard L. Antognini

11                                   _____

12                                   Richard L. Antognini, Esq.

13                                   *Attorneys for Plaintiffs*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

The capitalized terms in this Motion are defined as:

a.  David Seror (personally and in his capacity as chapter 7 trustee), ("Seror")'

b.  Brutzkus Gubner, LLP, separately or with BG Law, LLP ("BG Law");

c.  Seror with BG Law (the "Seror Defendants");

d.  David Seror (personally and in his capacity as chapter 7 trustee); Brutzkus Gubner; BG Law LLP; Wells Fargo Bank N.A.; Severson & Wersen a professional corporation; (together with the "Plan Defendants");

e.  Severson and Werson PC ("Severson");

f.  The Second Amended Disclosure Statement and Plan of Reorganization for Allana Baroni described in ¶17 of the Adversary Proceeding (Doc. 1), including all goals and conditions, together with the US District Court's holding that the goal of Allana's plan of reorganization is that Allana is to keep her real properties (Case 2:20-cv-04338-MWF Doc 53 Filed 02/05/21) (the "Plan");

g.  The April 15, 2013, order approving the Plan (Main Case Doc. 257 "Plan Order");

h.  The Plan Order Violation Agreement described in ¶160 of the Adversary Proceeding, together with the CIT Plan Order Violation Agreement described in ¶172 of the Adversary Proceeding ("Plan Violation Agreements") and

i.  The orders approving the Plan Violation Agreements ("Plan Violation Agreement Orders").

Other capitalized terms have the same meaning as in the Adversary Proceeding, attached here as <u>Exhibit 1</u>.

## TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES...................................................8-13

ARGUMENT.................................................................................................8-13

    A. Background..........................................................................................8

    B. Under 28 U.S.C. §455(a) Judge Barash Should Be Disqualified
       And 28 U.S.C. §455(b) Judge Barash Is Required To Be Disqualified................10

    C. The Hearings On Defendants' Motions to Dismiss Should Be Continued
       Until After the Motion to Withdraw Pending in the U.S. District Court
       is Decided, And After The Instant Motion Is Decided......................................13

    D. This Motion Should be Heard Outside The Central District
       CA Bankruptcy Court's San Fernando Valley Division................................13

CONCLUSION.............................................................................................13

1

# <u>TABLE OF AUTHORITIES</u>

2

3 **<u>Cases</u>**

4

5 *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 821–22, 106 S. Ct.
   1580, 1585, 89 L. Ed. 2d 823 (1986) ....................................................................11,13
6 *Caperton,* 556 U.S. at 883-84 ...........................................................................................13
 *In re Murchison,* 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955) ............11
7 *In re Murchison,* 349 U.S. 133, 138, 75 S.Ct. 623, 99 L.Ed. 942 (1955) ....................12
 *Isom v. Arkansas,* 140 S. Ct. 342, 343, 205 L. Ed. 2d 373 (2019) ...............................12
8 *Rippo v. Baker*, 580 U.S. 285, 287, 137 S. Ct. 905, 907, 197 L. Ed. 2d 167 (2017) ......12
 *Trulis v. Barton*, 107 F.3d 685, 691 (9th Cir. 1995)........................................................9
9 *Tumey v. Ohio,* 273 U.S., at 523, 47 S.Ct. at 441 ..........................................................13
10 *United States v. Holland*, 519 F.3d 909, 912–13 (9th Cir. 2008)..................................12
 *United States v. Studley,* 783 F.2d 934, 939 (9th Cir.1986) ..........................................11
11 *Ward v. Village of Monroeville, supra,* 409 U.S., at 60, 93 S.Ct., at 83........................11
 *Williams v. Pennsylvania,* 136 S. Ct. 1899, 1909 (2016) ........................................12, 13
12 *Withrow,* 421 U.S. at 58, n. 25, 95 S.Ct. 1456...............................................................12
13 *Yagman v. Republic Ins.,* 987 F.2d 622, 626 (9th Cir. 1993) ........................................11

14 **<u>Statutes</u>**

15 11 U.S.C. § 1141(a) ............................................................................................................9
16 28 U.S.C. § 455(a) ............................................................................................................11
 28 U.S.C. § 455(b) ......................................................................................................11, 13

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### ARGUMENT

**A. Background**

The factual background of the case is set out in the Adversary Proceeding attached and incorporated by reference as <u>Exhibit 1</u>. The relevant facts are as follows:

On April 15, 2013, the Hon. Alan M. Ahart entered the order approving Plaintiff Allana's Baroni's *Second Amended Disclosure Statement And Plan Of Reorganization For Allana Baroni* pursuant to U.S. Code Title 11 (Doc 423).

On or about January 1, 2014, Judge Ahart retired. On or about March 26, 2015, the Hon. Martin R. Barash, was appointed as the judicial officer to replace Judge Ahart.

On April 9, 2019, Judge Barash converted this case from chapter 11 to chapter 7 (Main Case Doc. 967).

Post conversion, on February 5, 2021, the U.S. District Court for the Central District of California ("USDC") held that the goal of Allana Baroni's Plan is for Allana to retain ownership of her real properties (Case No. 2:20-cv-04338-MWF); no appeal of this holding was taken. This holding is the law of the case.

Post conversion, on March 25, 2024, the USDC held that once the Plan was confirmed, it is binding on all parties, including Seror:

> "[o]nce a bankruptcy plan is confirmed, it is binding on ***all parties*** and all questions that could have been raised pertaining to the plan are entitled to *res judicata* effect." *Trulis v. Barton*, 107 F.3d 685, 691 (9th Cir. 1995) (citing 11 U.S.C. § 1141(a)) (emphasis added); *see also* 11 U.S.C. § 1141(a) ("[T]he provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan.")" (emphasis added by USDC) (the "USDC Plan Order") (Case No. 2:23-cv- 06235-MWF Doc 40).

No appeal of these USDC Plan Order holdings was taken. These holdings are the law of the case.

After Judge Barash forcibly converted the case to chapter 7 on April 9, 2019, Judge Barash began entering orders that violate and collaterally attack Judge Ahart's Plan

1   Order. Plaintiffs alerted Judge Barash through at least 14 filings, that the Plan is in effect

2   but being violated by Defendants however, Judge Barash ignored the provisions of the Plan

3   after the case was converted. (¶58 of Adversary Proceeding).

4        No party in interest moved the Bankruptcy Court for an order to modify the Plan

5   under 11 U.S. Code §1127, and the Plan Order has not been revoked.

6        On February 21, 2020, the Plan Defendants requested the Bankruptcy Court

7   approve a settlement agreement that collaterally attacked the Plan Order and violated the

8   terms and goals of the Plan to the detriment of the Plaintiffs (Main Case Doc. 1120 the

9   "Plan Order Violation Agreement"). The Plan Order Violation Agreement does not state

     that it is intended to replace or be substituted for the confirmed Plan.

10       The Baronis' opposed the Plan Order Violation Agreement arguing it violated the

11   Plan, and collaterally attacked Judge Ahart's Plan Order by materially altering the terms,

12   rights and duties of the parties affected by the Plan. Nonetheless, on May 1, 2020, Judge

13   Barash approved the Plan Order Violation Agreement through Main Case Docket entries

14   1200, 1272 and 1273, without Plan analysis and without clarifying the status of the Plan

15   Order. (See Table 2, p33 of the Adversary Proceeding).

16       Defendants Seror, BG Law, LoanCare, LLC and CIT Bank N.A. requested Judge

17   Barash approve another settlement agreement. Seror and BG Law filed this undated,

18   executed agreement on October 18, 2022, with Main Case Doc.1577, (the "CIT Plan Order

19   Violation Agreement"). This agreement collaterally attacked Judge Ahart's Plan Oder and

20   violates the Plan by materially altering the terms, rights and duties of the parties affected

21   by the Plan, to the detriment of the Plaintiffs. (See Table 2, p33 of the Adversary

     Proceeding).

22       The CIT Plan Order Violation Agreement does not state that it is intended to replace

23   or be substituted for the confirmed Plan.

24       Judge Barash denied the Baronis' due process rights to oppose the CIT Plan Order

25   Violation Agreement and instead on February 13, 2023, approved the CIT Plan Order

26   Violation Agreement that collaterally attacked Judge Ahart's Plan Order and deprived the

27   Baronis' of their due process rights. (Main Case Doc. 1765).

28

Since the entry of the USDC Plan Order on March 25, 2024, Judge Barash has not implemented the District Court's holding that the Plan is res judicata, governed by 1141(a), and has been in effect and binding since the Plan Order was entered on April 15, 2013.

Therefore, on November 4, 2024, Plaintiffs filed the Adversary Proceeding.

On November 4, 2024, Plaintiffs filed a Motion to Withdraw the Reference of the Adversary Proceeding to the Bankruptcy Court under 28 U.S.C. §157(d) and Federal Rule of Bankruptcy Procedure 5011, in the United States District Court for the Central District of California as Doc. 1 U.S. in Case No. 2:24-cv-09537-MWF (the "Motion to Withdraw")

On November 5, 2024, Judge Barash was served with the Motion to Withdraw.

On December 2, 2024, the U.S. District Court set the following briefing schedule for the Motion to Withdraw:

- Opposition to the Motion shall be filed no later than January 13, 2025.
- Reply in support of the Motion shall be filed no later than January 27, 2025. The Motion will then be taken under submission, unless the Court determines that a hearing is needed.

As of the date of the filing of this motion, the U.S. District Court has not entered its decision on the Motion to Withdraw.

On December 5, 2024, and February 6, 2025, Defendants filed Motions to Dismiss this Adversary Proceeding as (Adv. Proc. Docs Doc 23, 71, and 77). As of the date of the filing of this motion, Judge Barash has not continued the February 27, 2025, hearings on Defendants' Motions to Dismiss the Adversary Proceeding.

Defendants' Motions to Dismiss rely on the argument that the USDC Plan Order does not mean the entire Plan is in effect, only some unidentified provisions of the Plan are in effect and rely on Judge Barash's Plan Violation Agreement Orders that collaterally attack the Plan Order and violate the USDC Plan Order.

## B. Under 28 U.S.C. §455(a) Judge Barash Should Be Disqualified And 28 U.S.C. §455(b) Judge Barash Is Required To Be Disqualified

The federal recusal statute requires that a judge "disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. §455(a). Recusal will be justified either by actual bias or appearance of bias and is appropriate

1    where a reasonable person with knowledge of all the facts could conclude that the judge's

2    impartiality might reasonably be questioned. *Yagman v. Republic Ins.,* 987 F.2d 622, 626

3    (9th Cir. 1993) (internal quotations omitted) *United States v. Studley,* 783 F.2d 934, 939

4    (9th Cir.1986).

5        The U.S. Supreme Court recognized that under the Due Process Clause, no judge

6    "can be a judge in his own case [or be] permitted to try cases where he has an interest in

7    the outcome." *In re Murchison,* 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955). A

8    reasonable formulation of the issue is whether the "situation is one 'which would offer a

9    possible temptation to the average ... judge to ... lead him not to hold the balance nice, clear

10   and true.' " *Ward v. Village of Monroeville, supra,* 409 U.S., at 60, 93 S.Ct., at 83. *Aetna Life
     Ins. Co. v. Lavoie*, 475 U.S. 813, 822, 106 S. Ct. 1580, 1585, 89 L. Ed. 2d 823 (1986).

11       U.S. Supreme Court precedent requires asking the question of whether, considering

12   all the circumstances alleged, the risk of bias is too high to be constitutionally tolerable?

13   Under U.S. Supreme Court precedents, the Due Process Clause may sometimes demand

14   recusal even when a judge " 'ha[s] no actual bias.' *Rippo v. Baker*, 580 U.S. 285, 287, 137 S.

15   Ct. 905, 907, 197 L. Ed. 2d 167 (2017). See *Williams v. Pennsylvania,* 579 U.S. 1, 8, 136

16   S.Ct. 1899, 1905, 195 L.Ed.2d 132 (2016) ("The Court asks not whether a judge harbors an

17   actual, subjective bias, but instead whether, as an objective matter, the average judge in

18   his position is likely to be neutral, or whether there is an unconstitutional potential for

19   bias" (internal quotation marks omitted)). *Id. Rippo v. Baker*.

20       In this case, Juge Barash is conflicted, because he would be put in the position of

21   deciding whether his own orders collaterally attacked the Plan order and were therefore

22   improper, causing significant harm to Plaintiffs. In addition, the average judge would

23   reasonably be tempted to tip the balance in favor of Defendants to avoid the impropriety of

24   the orders that collaterally attack the Plan Order entered without jurisdiction. Critically,

25   what matters is not whether Judge Barash personally believes he can judge this case

26   fairly— the issue is an objective one, regarding the mere public appearance of impropriety.

27   "If it is a close case, the balance tips in favor of recusal." *United States v. Holland*, 519 F.3d
     909, 912–13 (9th Cir. 2008).

28

1    Where a judge is put in the position of evaluating his own prior findings, recusal is

2    necessary, *Isom v. Arkansas,* 140 S. Ct. 342, 343, 205 L. Ed. 2d 373 (2019). The Court has

3    acknowledged that "[a]llowing a decisionmaker to review and evaluate his own prior

4    decisions raises problems," *Withrow*, 421 U.S. at 58, n. 25, 95 S.Ct. 1456, perhaps because

5    of the risk that a judge might " 'be so psychologically wedded to his or her previous position'

6    " that he or she will " 'consciously or unconsciously avoid the appearance of having erred or

7    changed position.' " *Williams*, 579 U. S., at ——, 136 S.Ct., at 1906 (quoting *Withrow*, 421

8    U.S. at 57, 95 S.Ct. 1456). And it has warned that a judge's "personal knowledge and

9    impression" of a case may sometimes outweigh the parties' arguments. *In re Murchison*,
349 U.S. 133, 138, 75 S.Ct. 623, 99 L.Ed. 942 (1955) *Id. Isom v. Arkansas.*

10   Thus, to determine whether any given judicial conflict violates the Due Process

11   Clause, the US Supreme Court asks whether, " 'under a realistic appraisal of psychological

12   tendencies and human weakness,' the interest 'poses such a risk of actual bias or

13   prejudgment that the practice must be forbidden if the guarantee of due process is to be

14   adequately implemented.' " *Caperton,* 556 U.S. at 883-84 (quoting *Withrow v. Larkin,* 421

15   U.S. 35, 47 (1975)). The US Supreme Court further recognized, "[b]oth the appearance and

16   reality of impartial justice are necessary to the public legitimacy of judicial

17   pronouncements and thus to the rule of law itself." *Williams v. Pennsylvania,* 136 S. Ct.

18   1899, 1909 (2016). Under the *Caperton* test, and pursuant to §455 Judge Barash should

19   recuse himself, and if not then he should be disqualified.

20   In *Tumey v. Ohio,* 273 U.S., at 523, 47 S.Ct. at 441, while recognizing that the

21   Constitution does not reach every issue of judicial qualification, the Court concluded that

22   "it certainly violates the Fourteenth Amendment ... to subject [a person's] liberty or

23   property to the judgment of a court the judge of which has a direct, personal, substantial,

24   pecuniary interest in reaching a conclusion against him in his case." *Aetna Life Ins. Co. v.
Lavoie*, 475 U.S. 813, 821–22, 106 S. Ct. 1580, 1585, 89 L. Ed. 2d 823 (1986).

25   As described herein, Judge Barash would be determining whether his own orders

26   that collaterally attack the Plan Order were improperly entered without jurisdiction

27   causing substantial harm to Plaintiffs. A reasonable person would be convinced that Judge

28   Barash would be biased toward avoiding an outcome favorable to Plaintiffs, and therefore

Judge Barash is required to be disqualified under the provisions of § 455(b)(1).

### C. The Hearings On Defendants' Motions to Dismiss Should Be Continued Until After the Motion to Withdraw Pending in the U.S. District Court is Decided, And After The Instant Motion Is Decided

If the U.S. District Court withdraws the reference of the Adversary Proceeding to the Bankruptcy Court, then this motion is moot. If the U.S. District Court declines to withdraw the reference then Judge Barash should recuse himself or be disqualified.

In any event, the February 27, 2025, hearings on Defendants' Motions to Dismiss should be continued until the withdrawal and disqualification motions are decided. Attached and incorporated by refence as <u>Exhibit 2</u>, is Plaintiffs Request for Continuance filed concurrently with this motion.

### D. This Motion Should be Heard Outside The Central District CA Bankruptcy Court's San Fernando Valley Division

It is the Plaintiffs' understanding that due to the Hon. Judge Maureen Tighe's retirement, two judicial officers substantively hear cases in the San Fernando Valley Division: Judge Barash and the Hon. Victoria Kaufman. Due to the closeness of the San Fernando Valley benches in their small venue and the possibility that if Judge Barash is disqualified, Judge Kaufman would be his replacement, Plaintiffs respectfully request this motion be heard and determined outside the San Fernando Valley Division.

### CONCLUSION

Defendants created the probability of actual bias by putting Judge Barash in the position of defending the use of his Court for collateral attacks on the Plan Order, contempt of the Plan Order, and frustration of the Plan's intent and its provisions. Recusal is required under the Fourteenth Amendment's due process clause when, objectively speaking, the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable.

Considering the details and facts contained in the reporting above, an objective view of Judge Barash's participation in Defendants' collateral attacks on the Plan Order raises an appearance of impropriety; that is, a reasonable person with knowledge of all the facts might have reason to question Judge Barash's impartiality in presiding over this

1   Adversary Proceeding which deals with the frustration, violations and attacks on the Plan
2   and Plan Order, and significantly harmed the Plaintiffs.

3       Plaintiffs respectfully request that this motion be granted, and while it and the
4   Withdrawal Motion are under consideration, request that the February 27, 2025, hearings
5   on Defendants Motions to Dismiss, be continued until the Withdrawal Motion and the
6   instant motion are decided.

7

8   Dated: February 24, 2025          LAW OFFICE OF RICHARD L. ANTOGNINI

9                                     /s/ Richard L. Antognini

10                                    _____
                                      Richard L. Antognini, Esq.
11                                    *Attorneys for Plaintiffs*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

1  Richard L. Antognini (Cal. Bar No. 075711)
2  Law Office of Richard L. Antognini
   2485 Notre Dame Blvd., Suite 370, #45
3  Chico, California 95928-7167
   Tel: (916) 295-4896
4  Email: rlalawyer@yahoo.com

5
   Anthony R. Mordente (NY Reg. No. 1847516) (Pro hac vice pending)
6  Mordente Law Firm, LLC
   160-29 Union Turnpike
7  Fresh Meadows, New York 11366-1937
   Tel: (718) 969-9200
8  Email: amordente@mordentelaw.com
9  *Counsel for Plaintiffs*

10
              **UNITED STATES BANKRUPTCY COURT**
11  **CENTRAL DISTRICT OF CALIFORNIA - SAN FERNANDO VALLEY DIVISION**

12

13  In re                                      )  Bankruptcy Case No.1:12-bk-10986-MB
                                                )  Chapter 7
14      ALLANA BARONI,                          )  Adv. Proc. No._____
                                                )
15          Debtor.                             )  COMPLAINT FOR:
    _____            )
16  ALLANA BARONI AND JAMES BARONI              )  (1)  CONTEMPT FOR VIOLATIONS OF
17  (individually and on behalf of the United   )       CONFIRMED CHAPTER 11 PLAN
    States),                                    )       AND OF CHAPTER 11 PLAN
18                                              )       CONFIRMATION ORDER;
            Plaintiffs,                         )  (2)  BREACH OF FIDUCIARY DUTY;
19                                              )  (3)  AIDING AND ABETTING BREACH
20  v.                                          )       OF FIDUCIARY DUTY;
                                                )  (4)  GROSS NEGLIGENCE;
21  DAVID SEROR (personally, and in his         )  (5)  TORTIOUS INTERFERENCE;
22  capacity as Chapter 7 Trustee); BRUTZKUS    )  (6)  ELDER ABUSE;
    GUBNER; BG LAW LLP; WELLS FARGO             )  (7)  INTENTIONAL INFLICTION OF
23  BANK N.A.; SEVERSON & WERSEN A              )       EMOTIONAL DISTRESS;
    Professional Corporation; LIBERTY           )  (8)  DECLARATORY RELIEF;
24  MUTUAL INSURANCE COMPANY;                   )  (9)  RECOVERY ON BOND
25  UNITED STATES FIRE INSURANCE                )
    COMPANY; and DOES 1-50,                     )  and
26                                              )
            Defendants.                         )  DEMAND FOR JURY TRIAL
27  _____            )
28

_____
ADVERSARY PROCEEDING COMPLAINT OF PLAINTIFFS ALLANA BARONI & JAMES BARONI V. SEROR
(PERSONALLY AND IN HIS CAPACITY AS CHAPTER 7 TRUSTEE) ET AL.; AND JURY DEMAND          1

Plaintiffs Allana Baroni and James Baroni, individually, and on behalf of the United States complain of the defendants as follows:

## GENERAL ALLEGATIONS

### JURISDICTION AND VENUE

1.     The United States District Court has original and exclusive jurisdiction over this case under 28 U.S.C. §1334(a). Plaintiffs do not consent to the jurisdiction of the Bankruptcy Court to preside over this Adversary Proceeding, or to enter final orders in connection with this proceeding. This action demands a jury trial to proceed with an Article III judge. A motion to withdraw the reference to Bankruptcy Court, is being concurrently filed in the District Court. This is a non-core proceeding concerning contract law, common law, torts, non-Title 11 federal law, and state law issues in which the District Court is more proficient than the Bankruptcy Court. Venue of this complaint is proper in this district because the misconduct alleged herein occurred in this district.

### THE PARTIES

2.     Plaintiff Allana Baroni, referred to herein as ("Allana"), is the debtor in this case.

3.     Plaintiff James Baroni is the non-filing spouse of Allana Baroni. James Baroni is a third-party beneficiary of the Plan because the Plan provides that Allana is to retain ownership of all property, including any community property. James Baroni is a party in interest who is directly affected by Allana's bankruptcy case and a person aggrieved by Defendants' misconduct alleged herein. James Baroni is a United States Military Veteran and at all times relevant, a senior citizen, referred to herein as ("Mr. Baroni or James Baroni,"). The term (the "Baronis") means Allana Baroni separately, James Baroni separately, and Allana and James Baroni together.

4.     Defendant David Seror is now, and at all times since the filing of his acceptance of appointment on April 30, 2019, has been, the chapter 7 trustee for the estate of Allana Baroni. Seror is a lawyer and partner of the firm he hired to represent him in this case. Defendant David Seror is referred to herein as ("Seror").

5. On July 17, 2019 David Seror and Defendant Brutzkus Gubner, filed their *Application to Employ Brutzkus Gubner* as Defendant Seror's general counsel. Defendant Seror is identified as a partner of Brutzkus Gubner who does business in California, and whose business address is 21650 Oxnard Street, Suite 500 Woodland Hills, CA 91367.

6. On January 3, 2022, Defendant BG Law LLP in Woodland Hills, CA announced; "BG Law, formerly Brutzkus Gubner Rozansky Seror Weber LLP, is pleased to announce its shorter name, effective immediately. Accompanying this name change is a new logo and more focus on its Commercial Bankruptcy, Commercial Collection, Creditors' Rights & Remedies, Trustee and Fiduciary, Litigation, Corporate/Real Estate, and Labor and Employment practice."

7. On January 6, 2022, Susan Seflin, Ryan Coy, and Jessica Bagdanov filed *Notices of Change of Address or Law Fim* with the Court, in which they identify themselves as counsel of record in the case of Allana Baroni, and provide the name of Defendant BG LAW, LLP as the law firm through which they practice.

8. At all times relevant hereto, Defendants Brutzkus Gubner, and BG Law, LLP are professional companies engaged in the practice of law, organized and existing under and by virtue of the laws of the State of California, with its place of business in the County of Los Angeles. Defendants Brutzkus Gubner and BG Law, LLP are referred to together herein as ("BG Law").

9. Defendant Liberty Mutual Insurance Company posted bonds in the sums of $10,117,000 -$45,000,000 covering the relevant period of April 30, 2019 to January 4, 2024, to secure the faithful performance of David Seror's duties as a court-appointed Trustee in Allana Baroni's bankruptcy case. On August 8, 2024, Kathleen J. Campbell, the Clerk of the Central District of California Bankruptcy Court, provided Plaintiff Allana Baroni with the bonds issued by Liberty Mutual Insurance Company, true and correct copies of which are attached hereto as <u>Exhibit 1</u>.

10. Defendant United States Fire Insurance Company posted a bond in the sum of $30,000,000 covering the relevant period of January 4, 2024 to the present, to secure the faithful performance of David Seror's duties as a Court-appointed Trustee in Allana Baroni's bankruptcy case. On August 8, 2024, Kathleen J. Campbell, the Clerk of the

Central District of California Bankruptcy Court, provided Plaintiff Allana Baroni with the bond issued by United Sates Fire Insurance Company, a true and correct copy of which is attached hereto with <u>Exhibit 1</u>.

11.     Defendant Severson & Wersen, A Professional Corporation, is a company engaged in the practice of law, organized and existing under and by virtue of the laws of the State of California, with its place of business at 595 Market Street Suite 2600, San Francisco, CA 94105 in the County of San Francisco, CA, and, 19100 Von Karman Ave #700, Irvine, CA 92612 in Orange County, California. Severson & Wersen asserts it represents, parties involved in Claims 4, 7, 9, 10, and the unsecured Claim 7-2, filed in Allana Baroni's bankruptcy case. Defendant Severson & Werson A Professional Corporation is referred to herein as ("Severson")

12.     Defendant Wells Fargo Bank N. A. is a national bank that designates 101 North Phillips Avenue, Sioux Falls, SD 57104, as its main office. Wells Fargo Bank N.A. does business throughout California, with its California headquarters located at 420 Montgomery Street San Francisco, CA 94104, in the County of San Francisco. Wells Fargo Bank N.A. asserts it is a party involved in Secured Claim 7, Unsecured Claim 7-2, and Secured Claim 9, filed in Allana Baroni's bankruptcy case. Defendant Wells Fargo Bank N.A. is referred to herein as ("Wells Fargo").

Defendants David Seror, Brutzkus Gubner, BG Law LLP, Wells Fargo Bank N.A., and Severson & Werson A Professional Corporation, are referred to together herein as, the ("Plan Defendants").

**PRELIMINARY STATEMENT**

13.     Prepetition, agents for Wells Fargo Bank N.A. responded to Allana's Qualified Written Requests sent under the Real Estate Settlement Procedures Act, 12 U.S.C. 2601 et seq (RESPA), by providing certified copies of two different promissory notes purportedly representing same mortgage debt and asserted both notes were enforceable instruments against the Baronis' Carmel, CA real property. However, one of the promissory notes was fabricated for an improper purpose.

14.     After Wells Fargo's agents failed to explain the two different first position promissory notes encumbering the Baronis' Carmel, CA real property, and while the mortgage payments were current, Allana notified Wells Fargo, through its agent, that the mortgage payments would be paid into a reserve account until the legitimate owner of the debt evidenced by the promissory note(s) is established.

15.     Allana also discussed the two note problem with Adam Levitin, the Anne Fleming Research Professor & Professor of Law, Georgetown University Law Center who explained to Allana that California has no mechanism to preemptively (pre-foreclosure) challenge the enforcement of promissory notes concerning real property. Ultimately, after a productive discussion, Levitin thought bankruptcy was the best venue for the two note problem, "the bankruptcy court will be sympathetic because your note was double sold."

16.     Giving weight to Professor Levitin's experience and instincts, on February 1, 2012, Allana sought protection under U.S. Code Title 11 to establish the legitimacy of Wells Fargo's claims.

17.     On April 15, 2013, the Bankruptcy Court for the Central District of California, (the Honorable Alan M. Ahart) confirmed the *Second Amended Disclosure Statement And Plan Of Reorganization For Allana Baroni* pursuant to U.S. Code Title 11 chapter 11 (the "Plan" and Plan Order"). Contrary to controlling law, the Plan Defendants collaterally attacked and refused to obey the Plan Order by repeatedly and intentionally violating the terms of the confirmed Plan and Plan Order, notwithstanding the following:

18.     Once a chapter 11 plan is confirmed, the plan is res judicata and collateral estoppel applies to its terms.

19.     Orders that violate the terms and conditions of a confirmed plan are ineffective to alter the terms of the confirmed plan;

20.     Orders that violate a confirmed plan and collaterally attack a plan confirmation order are void.

21.     A confirmed plan binds all parties, including the debtor, creditors and purchasers of estate assets, to the terms of the plan, which means that creditors cannot increase their secured or unsecured claims above the amounts and treatment provided in the confirmed chapter 11 plan.

22.     On March 25, 2024, U.S. District Court Judge Michael W. Fitzgerald entered the order holding that once the Plan was confirmed [on April 15, 2013], the Plan was, and remains binding on James Baroni and on ***all parties***:

> "[o]nce a bankruptcy plan is confirmed, it is binding on ***all parties*** and all questions that could have been raised pertaining to the plan are entitled to *res judicata* effect." *Trulis v. Barton*, 107 F.3d 685, 691 (9th Cir. 1995) (citing 11 U.S.C. § 1141(a)) (emphasis added); *see also* 11 U.S.C. § 1141(a) ("[T]he provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan." (emphasis added by USDC) (the "USDC Plan Order") (Case No. 2:23-cv-06235-MWF Doc 40).

23.     Allana Baroni's ("Allana") confirmed chapter 11 Plan accomplishes three main objectives:

> a.     Allana retains ownership of her real property;
>
> b.     Deals with the secured claims by; (1) setting specific dollar amounts of the secured claims; (2) providing the treatment of secured claims; and (3) specifying the terms under which the secured claim amounts are to be paid monthly and over the life of the Plan; and
>
> c.     Allocates $50,000 as the total maximum amount owed and to be paid to all general unsecured claimants (shared pro rata between them).

24.     The conduct of Defendants violated the material Plan provisions, and therefore violated the Plan Order through the following misconduct:

> a.     Seror sold all of the Baronis' real properties in direct violation of the Plan provisions and the terms and goals of the Plan which provided that Allana was to retain her real property. Seror netted at least $1,203,529.42 from the sales. These amounts, in addition to the damages sought herein, including costs and out of pocket expenses that may have been incurred, belong to the Baronis, as Allana was entitled to retain all her real

1  properties pursuant to the confirmed Plan and Plan Order;

2        b.    Although the confirmed Plan dealt with, and particularized specific

3  dollar amounts to be paid to secured claimants monthly and over the life of the Plan, and

4  although Allana turned $743,744 over to Seror, and the tenants renting the Baronis'

5  Camarillo and Carmel properties paid Seror monthly rent of at least $216,059.97 sufficient

6  to pay the secured claims pursuant to the terms of the Plan Order and the confirmed Plan,

7  Seror did not pay the secured claims pursuant to the Plan. Instead, Seror converted the

8  turned over Plan funds and monthly rents, into payments of $1,362,711 to his firm BG Law.

9  This conversion caused the Plan to default because the monthly secured claim payments

  were not paid by Seror; and

10        c.    Though the confirmed Plan capped the amount to be paid to all

11  allowed general unsecured claims at $50,000 total (shared by them pro rata), and does not

12  allow creditors to file claims post Plan confirmation concerning property already dealt with

13  by the Plan, nor to increase the amount of their secured claims, nor to increase the amount

14  of the general unsecured $50,000 pot; Seror violated his duty as trustee and violated the

15  terms of the confirmed Plan by working with and encouraging Wells Fargo Bank N.A. to file

16  a post Plan confirmation general unsecured claim in the amount of $839,944 ("Unsecured

17  Claim 7-2") to block Allana from dismissing her bankruptcy case and exiting bankruptcy.

18  The Unsecured Claim 7-2 concerned property already dealt with by the Plan. Seror further

19  violated his duty as trustee by failing to object to the Unsecured Claim 7-2 that violated the

20  Plan Order and the terms, conditions, and goals of the confirmed Plan. The Bankruptcy

21  Court, at Seror's urging ruled that everyone but David Seror lacked standing to object to the

22  Unsecured Claim 7-2. Through their violations of the Plan Order, including the filing of the

  Unsecured Claim 7-2, Defendants separately and together burdened the estate with

23  $2,024,019 of manufactured unsecured debt not allowed under the terms of the Plan.

24      25.    Defendants' misconduct in violating the Plan Order constitutes contempt of

25  the Plan Oder for which they are liable for the harm their contempt caused to Allana and

26  James Baroni.

27      26.    After burdening the estate with millions more debt than the confirmed Plan

28  allowed, Seror and the other Plan Defendants claimed selling the Baronis' three real

properties was required to make a $60,652 payment toward the $2,024,019 of general unsecured debt they manufactured in violation of the Plan Order in the first instance.

27.    Seror, Brutkuz Gubner, and BG Law distributed approximately $8,264,341 from Allana Baroni's estate, asserting the purpose of these distributions was to justify the $60,652 payment toward the $2,024,019 of unsecured debt created by Defendants. These Defendants then stopped payment on the unsecured distribution checks, thus illuminating their debt manufacturing scheme.

28.    Seror and his law firms collected at least $959,804 from Plaintiffs and the tenants occupying the Baronis' Carmel and Camarillo real properties. Under the Plan Order and the terms and goals of the Plan, these amounts were meant to fund the Plan. Instead of funding the Plan, Seror and BG Law converted these funds to pay themselves $1,362,711, and pay $78,595 to their client Sam Lelsie, who Seror hired as his CPA.

29.    Seror, Brutzkus Gubner and BG Law administered the entire chapter 7 case for their own financial enrichment. Every decision they made was considered through the lens of what would provide these Defendants with the most amount of money from Allana Baroni's estate, and inflict maximum harm to the Plaintiffs without regard to, and contrary to, the terms of the confirmed Plan, and Plan Order.

30.    Seror's administration of the estate without regard to the terms, conditions and goals of the Plan and Plan Order constitutes impermissible collateral attacks on the Plan Order and Allana's confirmed Plan.

31.    Plaintiffs repeatedly opposed Defendants' conduct of violating the confirmed Plan by arguing the confirmed chapter 11 Plan is binding and in effect, to no avail. Plaintiffs' oppositions put Defendants on notice that their conduct in violating the terms and conditions of the Plan, and collaterally attacking the Plan Order, was wrongful.

32.    Allana turned over to Seror an estate that was current on its Plan payments, with both the Baronis' Carmel, CA and Camarillo, CA properties leased to long terms tenants bringing in annual revenue of $114,000, and with the loan on the Baronis' Calabasas, CA residence completely current. The only issue was a distribution from the payments Allana already paid into the Class 7 reserve account pursuant to the Plan.

33. Rather than simply obey the Plan Oder and make the Class 7 distribution, administer and fund the Plan with the $959,804 amounts Seror and BG Law received from the Baronis and the Baronis' tenants, Seror, and BG Law used those funds to pay themselves $1,362,711, and pay $78,595 to their client Sam Leslie of LEA Accountancy, who Seror hired as his CPA. At the time Seror sought to employ Sam Lelsie, Seror and BG Law failed to disclose to the Bankruptcy Court that Sam Lelsie / LEA Accountancy is a client of Seror and BGL Law.

34. Defendants are liable to Plaintiffs for the harm, including financial damage, Defendants' violations of the confirmed Plan and Plan Order caused to Plaintiffs.

35. Defendants are also liable for their malicious and intentional infliction of emotional distress.

36. Defendants are further liable to James Baroni for financial elder abuse, as James was over 65 years old at the time of Defendants' violations of the confirmed Plan and collateral attacks on the Plan Order.

## RELEVANT FACTS | BACKGROUND | WRONGDOING
### Allana Baroni's Chapter 11 Plan of Reorganization

37. On March 20, 2013 Allana Baroni filed her *Chapter 11 Second Amended Disclosure Statement And Plan Of Reorganization* (the "Plan"), a true and correct copy of which is attached hereto as <u>Exhibit 2</u>.

38. On April 15, 2013, the Court entered its order confirming the *Second Amended Disclosure Statement And Plan Of Reorganization For Allana Baroni* (the "Plan Order"), a true and correct copy of which is attached hereto as <u>Exhibit 3</u>.

39. A confirmed chapter 11 plan resembles a consent decree and is construed as a contract.

40. The Plan is a new and binding contract between Allana Baroni and the creditors of her estate.

41. The Plan does not contain a severability clause.

42. The effective date of the Plan is May 1, 2013.

43. No appeal of the Plan Order was taken by Seror nor any other party.

44.     No revocation of the Plan Order was requested or entered under 11 U.S. Code §1144 by Seror nor any other party.

45.     No request to modify the Plan was filed by Seror nor any other party.

46.     No order modifying the Plan or the Plan Order was entered in the case.

47.     The Plan Order is a final order with preclusive effect.

48.     On February 5, 2021, the U.S. District Court for the Central District of California ("USDC") held that the goal of Allana Baroni's Plan is for Allana to retain ownership of her real properties (Case No. 2:20-cv-04338-MWF); no appeal of this holding was taken. This holding is the law of the case.

49.     On March 25, 2024, the USDC entered its order holding that once the Plan was confirmed, it is binding on Mr. Baroni and all parties, including Seror:

> "[o]nce a bankruptcy plan is confirmed, it is binding on *all parties* and all questions that could have been raised pertaining to the plan are entitled to *res judicata* effect." *Trulis v. Barton*, 107 F.3d 685, 691 (9th Cir. 1995) (citing 11 U.S.C. § 1141(a) (emphasis added); *see also* 11 U.S.C. § 1141(a) ("[T]he provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan.") (emphasis added by USDC) (the "USDC Plan Order") (Case No. 2:23-cv-06235-MWF Doc 40).

50.     No appeal of these USDC Plan Order holdings was taken. These holdings are the law of the case.

51.     No request to unwind the Plan was submitted to the Bankruptcy Court, no unwinding of the Plan was ordered, and no unwinding of the Plan took place.

52.     No order has been entered finding that the Plan Order and the terms and goals of the Plan are not binding on all parties, including Seror, creditors of Allana's estate, and purchasers of estate assets.

53.    No order has been entered finding that the Plan Order and the terms and goals of the Plan, are not in full force and effect.

54.    No order has been entered holding that only select provisions of the Plan Order or the terms and goals of the Plan are in effect.

55.    No order has been entered holding that Defendants Seror, or BG Law, may determine which provisions of the Plan Order and terms and goals of the Plan are in effect.

56.    The Plan Order cannot be collaterally attacked.

57.    Prior to the March 25, 2024 entry of the USDC Plan Order, Plaintiffs requested the Bankruptcy Court clarify the status of the Plan after the April 9, 2019 forced conversion from chapter 11 to chapter 7.

58.    Plaintiffs argued the terms of the Plan are in effect and binding through at least the following fourteen filings:

- March 23, 2020 Doc 1142: *Opposition to Doc 1120 Seror's Motion to Approve Compromise Under Rule 9019 with Certain Prepetition Lenders Pursuant to Federal Rule of Bankruptcy Procedure 9019 and Section 363(m) of the Bankruptcy* - p5:19-28, p6:1-25;

- November 17, 2021 Doc 1378: *Notice Of Motion And Motion Of Debtor Allana Baroni, Moving The Bankruptcy Court For An Order Removing Chapter 7 Trustee David Seror For Cause, Pursuant To 11 USC §324(B); And Moving Court To Make Criminal Referrals Of Wells Fargo Bank, Of Bank's Attorney Bernard Kornberg, And Of Seror* - p39:2-28 - p41:1-20;

- November 24, 2021 Doc 1395: *Objection to Doc 1379 Application for Compensation First Interim Application of Brutzkus Gubner, Counsel for the Chapter 7 Trustee, for Compensation of Fees and Expenses* - p7:6-7, p7:18-19, p9:8-15;

- January 14, 2022 Doc 1429: *Further Briefing in Opposition to First Interim Application of Brutzkus Gubner for Compensation of Fees and Expenses* - p5:17-p13:1-2;

- February 17, 2022 Doc 1445: *Notice of Motion and Motion of Debtor Allana Baroni, Moving this Court to Issue a Chapter 11 Discharge to Baroni, Pursuant to Page 40 of Baroni's Confirmed Second Amended Chapter 11 Plan* (Dkt. 376). The entire motion is based on the argument that the Plan is binding and in effect and therefore Allana is entitled to discharge as described on page 40 of the Plan. Following are cites to a few specific excerpts from the motion, but the motion itself relies on the Plan being binding and in effect; p12:5-12, p12:19-22, p14:2-8, p14:26-28-p15:1-2, p17:1-10;

- <u>November 16, 2022 Doc 1636</u>: *Opposition To David Seror's Motion For Order (1) Directing The Debtor To Provide Access To Calabasas Property And To Cooperate In The Sale Of Said Real Property And (2) Awarding Damages To The Trustee For Willful Violation Of Stay* - p18:1-6

- <u>November 30, 2022 Doc 1647</u>: *Notice Of Motion And Motion For Judicial Reassignment Or Recusal* - p20:7-19;

- <u>January 25, 2023 Doc 1709</u>: *Allowance Of Administrative Expenses Pursuant To 11 U.S.C. § 503; Declarations Of Allana Baroni And James Baroni*. The entire motion is based on the argument that the Plan is binding and in effect: "The confirmed

  Chapter 11 Plan is a binding contract and remains in effect. No court has held otherwise;" - p4:23-24

- <u>April 22, 2024 USDC Case 2:23-cv-06689-MWF Doc 17</u>: *Opposition To David Seror's Motion For Entry Of Order (1) Deeming Allana Baroni, James Baroni And Richard Antognini Vexatious Litigants, (2) Barring Further Filings Without A Prior Order Of This Court, And (3) Requiring The Baronis Or Their Agents To Post A Bond In The Amount Of $75,000*. The entire opposition is based on the USDC's holding that the Plan is in effect. The opposition itself relies on the binding effect of the Plan see for example pp7-11. The USDC denied Seror's Vexatious Litigant Motion;

- <u>April 22, 2024 USDC Case 2:23-cv-06689-MWF Doc 18</u>: *Opposition To David Seror's Motion For Entry Of Order (1) Deeming Allana Baroni, James Baroni And Richard Antognini Vexatious Litigants, (2) Barring Further Filings Without A Prior Order Of This Court, And (3) Requiring The Baronis Or Their Agents To Post A Bond In The Amount Of $75,000*. The entire opposition is based on the USDC's holding that the Plan is in effect; see for example pp 5-9. The USDC denied Seror's Vexatious Litigant Motion;

- <u>May 8, 2024 Adversary 1:23-ap-01004 Doc 116</u>: *Notice Of Motion And Motion For Leave To Depose David Seror* - pp15:20-28-16:1-25, pp18:25-28-19:1-4, p19:21-24;

- <u>May 21, 2024 Adversary 1:23-ap-01004 Doc 118</u>: *Response Of Allana Baroni And James Baroni In Opposition To David Seror's Summary Judgment Declarations In Support* - pp13:26-28-14:1-17;

- <u>June 7, 2024 Adversary 1:23-ap-01004 Doc 125</u>: *Response Of Allana Baroni And James Baroni In Opposition To David Seror's Motion To Strike Sham Declaration Of Kelly Dube Filed In Opposition To The Trustee's Motion For Summary Judgment And Evidentiary Objections* - p12:10-13, pp17:8-28-18:1-5; and

1
2
3

- August 1, 2024 Adversary 1:23-ap-01004 Doc 130: *Supplementary Response Of Allana Baroni And James Baroni In Opposition To David Seror's Summary Judgment Declaration Of Richard Antognini In Support* - p3:14-21.

4
5
6

59.     The Bankruptcy Court declined to address Plaintiffs' arguments that the Plan is binding and in effect, and that Defendants' conduct violated the Plan Order and the terms and goals of the Plan.

7
8
9
10
11
12
13

60.     The Plan Order was entered by the Honorable Alan M. Ahart on April 15, 2013. Judge Ahart retired on or about January 1, 2014. On or about March 26, 2015, the Honorable Martin R. Barash, was appointed as the judicial officer to replace Judge Ahart in the bankruptcy case.   After Judge Barash forcibly converted the case to chapter 7 on April 9, 2019, Judge Barash began entering orders that violate and collaterally attack Judge Ahart's Plan Order. Judge Barash declined to clarify the status of the Plan Order after the case was converted. As one example, during a February 21, 2023 hearing, Plaintiffs' counsel directly asked Judge Barash to clarify whether the Plan is still in effect:

14
15

MR. ANTOGNINI: Yes, your Honor. Is the plan still in effect? Is that the Court's view?

16
17

THE COURT(Judge Barash): I don't -- I don't know that I have to rule on that issue …….I don't think I have anything more at this point to say about it.

18
19
20

61.     The Plan Order and terms of the Plan provide:

a.     All unsecured creditors (Class 8 and Class 9) are to be paid a pro rata share of a $50,000 pot;

20
21
22
23

b.     The rights of secured creditors (Classes 4, 5, 6, and 7) can be litigated, and during the pendency of the litigation, the payments required pursuant to the Plan and Plan Order concerning the secured creditor's claims, are to be paid into separate reserve bank accounts for each Class.

24
25
26
27
28

62.     Upon the April 15, 2013 entry of the Plan Order, ownership of all property of the estate was vested in Allana Baroni. Post Plan confirmation, the business and management of all of the property dealt with by the Plan continued to be operated by Allana Baroni; Allana Baroni established and funded the reserve accounts necessary to make distributions under the Plan; distributions under the Plan commenced on May 1, 2013; and

on March 26, 2019, the Baronis sold their Henderson, NV real property pursuant to the terms of the Plan and the Plan Order.

63.    As evidenced by Allana Baroni's filed operating reports, case filings, and accounting provided to the Plan Defendants; commencing May 1, 2013, Allana Baroni made well over a million dollars in payments and distributions pursuant to the Plan Order and the terms of the Plan. These Plan payments include amounts paid into the reserve accounts contemplated by the Plan and Plan Order, and administrative payments made pursuant to the Plan and Plan Order that are the actual, necessary costs and expenses of preserving the estate.

64.    The Plan was substantially consummated.

65.    The Plan Order and the Plan dealt with the Baronis' secured real properties, and reserve accounts as follows:

**TABLE 1:**

**Plan Treatment Of Secured Claims And Reserve Accounts**

| Claim \| Class Real Property | Plan Treatment | Reserve Account and Required Payments |
|---|---|---|
| Claim 10<br>Class 7<br>Camarillo, CA | Entire Claim: $1,401,460.91<br><br>Secured Portion of Claim: $1,145,000<br><br>Unsecured Portion: $256,460.90 [Subject to Pro Rata Share of $50,000 Unsecured Pot]<br><br>Lien is modified as follows:<br>The amount secured by the lien is reduced to $1,145,000<br><br>Allana Baroni retains ownership of the property. | Class Seven Reserve Account required to be opened, and monthly deposits beginning June 1, 2013 in the amounts of:<br><br>$3,339.58 up through the 61st full month following the Effective Date of May 1, 2013<br><br>$3,839.58 for the following 36 months<br><br>$4,435.63 for the remaining term of the promissory note |

ADVERSARY PROCEEDING COMPLAINT OF PLAINTIFFS ALLANA BARONI & JAMES BARONI V. SEROR
(PERSONALLY AND IN HIS CAPACITY AS CHAPTER 7 TRUSTEE) ET AL.; AND JURY DEMAND        14

| Claim \| Class Real Property | Plan Treatment | Reserve Account and Required Payments |
|---|---|---|
| Claim 9<br><br>Class 6<br><br>Carmel, CA | Entire Claim: $1,480,705.83<br><br>Secured Portion of Claim: $1,400,000<br><br>Unsecured Portion of Claim: $80,705.83 [Subject to Pro Rata Share of $50,000 Unsecured Pot]<br><br>Lien is modified as: The amount secured by the lien is reduced to $1,400,00<br><br>Allana Baroni retains ownership of the property | Class Six Reserve Account required to be opened, and monthly deposits beginning June 1, 2013 in the amounts of:<br><br>$4,083.33 up through the 61st full month following the Effective Date of May 1, 2013<br><br>$4,583.33 for the following 36 months<br><br>$5,423.47 for the remaining term of the promissory note |
| **Claim \| Class Real Property** | **Plan Treatment** | **Reserve Account and Required Payments** |
| Claim 7<br><br>Class 5<br><br>Henderson, NV | Entire Claim: $801,712.98<br><br>Secured Portion of Claim: $196,000<br><br>Unsecured Portion of Claim: $605,712.98 [Subject to Pro Rata Share of $50,000 Unsecured Pot]<br><br>The Lien is modified as follows:<br>The amount secured by the lien is reduced to $196,000<br><br>Allana Baroni retains ownership of the property. | Class Five Reserve Account required to be opened, and monthly deposits beginning June 1, 2013 in the amount of:<br><br>$880.13<br><br>Final payment date: 1st business day of the 360th full month following the May 1, 2013 Effective Date |
| **Claim \| Class Real Property** | **Plan Treatment** | **Reserve Account and Required Payments** |
| Claim 3<br><br>Class 4 | Entire Claim is Secured: $1,860,964.23<br><br>The lien is not modified in any way by | Class Four Reserve Account required to be opened, and monthly deposits beginning June 1, 2013 in the |

| Calabasas, CA | the Plan. The Calabasas, CA real property is Debtor's primary residence. The terms of the original note will not be modified in any way except as provided in Proof of Claim No. 3-1, that the total amount of the claim includes arrears in the amount of $110,065.31 | amounts of: $7,562.09 until final payment date: unaltered by note |
|---|---|---|
| | Allana Baroni retains ownership of the property | $2005.98 per month for five years to pay total of $110,065.31 in arrears |

**Events Leading up to Conversion of the Case from U.S.C. Title 11 Chapter 11 to U.S.C. Title 11 Chapter 7**

66.    On August 18, 2016, Allana Baroni prevailed on partial summary adjudication regarding a key issue for her estate and home owners against Severson, and their client, the Bank of New York Mellon, in adversary case no 1:13-ap-01070-MB. The adversary concerned the Baronis' Henderson, NV real property (Claim 4) in the amount of $135,395 (the "Claim 4 Adversary"). Specifically, Allana prevailed when the Bankruptcy Court held that Home Equity Lines of Credit ("HELOC") are not negotiable instruments, and cannot be enforced by possession alone of the HELOC instrument (endorsed to blank) under Uniform Commercial Code Section 3 ("UCC 3"). Rather, ownership of the HELOC debt must be established to lawfully enforce the debt.

67.    After the August 18, 2016 Claim 4 Adversary summary adjudication proceedings, a settlement of the Claim 4 Adversary was triggered with which Allana was very satisfied. As part of the settlement agreement, Severson and the Bank of New York Mellon withdrew Claim 4. Unfortunately, the terms of the settlement that are subject to a non-disclosure agreement also triggered a retaliatory posture toward Allana from Severson, the Bank of New York Mellon and its servicing agents; Specialized Loan Servicing, and Nationstar Mortgage LLC.

68.    Severson, Wells Fargo and the Bank of New York Mellon deployed several tactics to paralyze Allana's efforts to object to their remaining claims in Allana's case. One tactic employed to annoy, harass, alarm and put emotional and financial pressure on the Baronis, was weaponizing the Internal Revenue Service ("IRS") against the Baronis by

1  instigating and supporting a tax audit of the Baronis' 2013 tax return.

2      69.    On January 21, 2016, through the Claim 4 Adversary proceedings, Allana was

3  ordered to produce her tax returns for the years 2010 – 2014 to Severson, for their clients the

4  Bank of New York Mellon, and Specialized Loan Servicing, to which Allana complied under a

5  protective order.

6      70.    The Baronis were subsequently noticed by the IRS that they were being

7  audited and questioned in connection with their 2013 tax return. The audit concerned two

8  forms 1099-C filed in 2013 by the Bank of New York Mellon through its agent Specialized

9  Loan Servicing, against the Baronis social security numbers for mortgage debt forgiveness

10  totaling $611,954. The IRS treated the $611,954 in mortgage debt forgiveness as income on

11  which the Baronis did not pay income taxes. The Baronis did not account for the $611,954 on

12  their 2013 returns because they were not notified of the issuance of the forms 1099-C by the

   Bank of New York Mellon, who also did not reduce its Claim 10 by $611,954.

13      71.    Severson and the Bank of New York Mellon, knew the Baronis did not account

14  for the $611,954 in mortgage debt forgiveness on their 2013 returns because they demanded

15  Allana produced the Baronis' 2013 tax return through discovery in the Claim 4 Adversary.

16      72.    Severson and the Bank of New York Mellon improperly provided the Baronis

17  2013 tax return produced under a protective order, along with information and filings from

18  Allana Baroni's case, to their IRS contact, Kendal Jones, to assist in initiating and

19  sustaining an audit for the purposes of intimidating the Baronis, depleting their assets and

20  their ability to continue to oppose Severson's powerful clients; Wells Fargo, the Bank of New

   York Mellon, and Nationstar Mortgage, LLC.

21      73.    As a result of the Claim 4 Adversary settlement, on July 30, 2018, the Bank

22  of New York Mellon Claim 4 Adversary was dismissed. Three weeks later, on August 21,

23  2018, Severson and Wells Fargo, filed a motion to convert or dismiss Allana's case from

24  chapter 11 to chapter 7.

25      74.    At the time Severson and Wells Fargo sought to convert Allana's case to

26  chapter 7, these Defendants were scheduled to go to trial regarding Wells Fargo's

27  $1,480,705 Claim 9 filed on September 12, 2012, concerning the Baronis' Carmel, CA real

28  property (Adv. Case No. 1:13-ap-01069-MB, the (the "Claim 9 Adversary")). The basis of the

Claim 9 Adversary concerns Wells Fargo's assertion that it has the right to enforce the promissory note attached to Claim 9, by possession of the promissory note alone, under UCC 3. Wells Fargo asserts it does not have to prove it actually owns the debt represented by the promissory note.

75. After fighting for six years for her right to trial, on November 10, 2015, Allana prevailed on appeal against Severson, and Wells Fargo, when Allana's Claim 9 Adversary was remanded to the Bankruptcy Court for trial. Severson, and Wells Fargo's appellate loss was a contributing factor of Severson and Wells Fargo's hostile and retaliatory posture toward Allana.

76. Prior to the November 2015 appellate loss, Wells Fargo and Severson, prevailed in thousands of cases arguing under UCC 3, that ownership of mortgage debt was not required to be established in order to enforce a mortgage or foreclose on American homeowners. All Wells Fargo had to establish was physical possession of a piece of paper – the promissory note endorsed to blank.

77. Wells Fargo could not rely upon the promissory note endorsed to blank in the Claim 9 Adversary proceeding, because Wells Fargo provided two different promissory notes endorsed to blank, but both could not lawfully represent the same debt and be enforced against the Baronis' Carmel real property. Therefore, on remand, Wells Fargo was required to prove up their ownership of the Claim 9 promissory note, or somehow authenticate the conflicting endorsements of the promissory note to blank, which Wells Fargo could not. The possibility of exposure to the public that Wells Fargo could not prove it owned American Homeowners' mortgage debt, caused significant hostility toward Allana.

78. On or about October 18-20, 2018, Allana, Severson, and Wells Fargo went to trial in the Claim 9 Adversary regarding the two promissory notes, both purportedly endorsed to blank, and according to Wells Fargo, both notes are enforceable against the Baronis' Carmel real property. Severson argued on appeal that the two different notes representing the same debt were a result of a photo copy error. The Bankruptcy Appellate Panel of the Ninth Circuit ("BAP") captured the essence of Severson and Wells Fargo's argument; "These are magical endorsements." The BAP's intolerance of Severson, and Wells Fargo's "magical thinking" is set out in the Panel's November 10, 2015, Memorandum

1 Opinion wherein the divergent and conflicting sets of indorsements to the Claim 9

2 promissory note, overcame the presumption that the endorsements are self-authenticating.

3      79. The Claim 10 Adversary concerned Bank of New York Mellon's double

4 recoveries in the case. In 2013 the Bank of New York Mellon, through its servicing agent,

5 Specialized Loan Services filed two forms 1099-C with the IRS taking $611,954 in mortgage

6 debt forgiveness deductions in connection with Baroni's Camarillo, CA real property; but

7 failed to notify the Baronis of the filing of the forms 1099-C and failed to reduce its Claim 10

8 by the same amount, rendering Allana Baroni liable for Claim 10, and the Baronis also

9 liable for $611,954 of mortgage debt forgiveness. The individual IRS employee who initiated

10 the audit was improperly influenced by Severson, Wells Fargo and the Bank of New York

11 Mellon, to initiate the audit and treat the $611,954 as income using the Bank of New York

Mellon forms 1099-C as the cause to assess additional tax amounts on the Baronis.

12      80. After the Claim 10 Adversary against the Bank of New York Mellon was filed

13 on April 9, 2019, and before the Bankruptcy Court entered its Claim 9 Carmel trial decision,

14 Allana's bankruptcy case was forcibly converted from chapter 11 to chapter 7. The

15 conversion was due to attorney Justin Balser's, [on behalf of the Bank Of New York Mellon],

16 motion to convert, which was caused by the controversy over the Bank of New York Mellon's

17 issuance of the forms 1099-C and the subsequent tax audit caused by Severson, Wells Fargo

18 and the Bank of New York Mellon.

19      81. The Bankruptcy Court converted Allana's case to chapter 7 by holding that

20 Allana defaulted on the terms of the Plan by not distributing $238,860.02 from the Claim 9,

Class 7 reserve account to the Bank of New York Mellon, but while the April 2019 Claim 10

21 Adversary against the Bank of New York Mellon concerning the Forms 1099-C was pending.

22      82. Severson, Wells Fargo and the Bank of New York Mellon, advanced the

23 circumstances that lead to the conversion when the forms 1099-C were issued and then used

24 to initiate an audit of the Baronis 2013 tax return.

25      83. The Bankruptcy Court issued its severe conversion consequence, even though

26 Allana opposed the conversion, provided Justin Balser and the Bank of New York Mellon

27 the Class 7 reserve account bank statements showing the Plan payment amounts were

28 deposited into the reserve account, and during the hearing offered to immediately disburse

the amounts to cure the Court identified default: "Mr. Antognini: It would be very simple for Ms. Baroni just to cut a check today, if necessary, and payoff Bank of New York Mellon because all the payments in the reserve account are current, and that would end the dispute." (Hearing Transcript Dkt. No. 966 p.16:11-14).

84.    Based on Mr. Balser's representations, the Bank of New York Mellon wasn't satisfied with the immediate distribution of the Class 7 reserve account amounts of $238,860.02 to it, the implication being that Allana must be punished. Therefore, the Court refused to allow Allana to disburse the Class 7 reserve account amounts to cure, and the conversion to chapter 7 was implemented as a punishment for Allana advocating for her estate against the powerful financial institutions' claims.

## The Post Conversion to Chapter 7 Events

85.    On April 29, 2019, the Region 16 trustee, Peter Anderson filed a *Notice of Appointment of Trustee and Fixing of Bond; Acceptance of Appointment as Interim Trustee*, appointing chapter 7 panel trustee David Seror as the interim trustee in Allana's case and disclosed that this case is covered by the chapter 7 blanket bond on file with the Court.

86.    Seror stepped into the shoes of Allana Baroni as administrator and paying agent of Allana's estate pursuant to the Plan Order and the terms of the Plan.

87.    Chapter 7 panel trustees are not paid a salary to act as a chapter 7 panel trustee.

88.    Chapter 7 panel trustees are paid $60 for no asset cases.

89.    In asset cases, Chapter 7 panel trustees are paid a commission, referred to as a trustee fee based on the amount of moneys distributed, thus monetarily incentivizing Seror, to distribute as much money as possible to increase his commission.

90.    Chapter 7 trustee commission is generally calculated as follows:

    a.  25% of the first $5,000 of all moneys distributed;

    b.  10% on any amounts distributed over $5,000 up to $50,000;

    c.  5% on any amounts distributed over $50,000 up to $1,000,000; and

    d.  3% on amounts distributed over $1,000,000.

91.    The conversion of Allana's case from chapter 11 to chapter 7, did not revoke or alter the Plan Order nor change the terms and goals of the Plan.

92.     Seror did not move the Bankruptcy Court for an order to modify the Plan, nor would it have been proper under 11 U.S. Code §1127.

93.     The U.S. Trustee did not move the Bankruptcy Court for an order to modify the Plan, nor would it have been proper under 11 U.S. Code §1127.

94.     No creditor moved the Bankruptcy Court for an order to modify the Plan, nor would it have been proper under 11 U.S. Code §1127.

95.     To counsel him in this case, Seror hired his own firms in which he is a partner; Brutzkus Guber and BG Law LLP.

96.     For the purpose of funding the Plan pursuant to the Plan Order, on June 20, 2019, Allana, through her counsel, turned over to Seror and Brutzkus Gubner $533,307, which Allana previously paid into the reserve accounts pursuant to the Plan and the Plan Order.

97.     For the purpose of funding the Plan pursuant to the Plan Order, on September 8, 2019, Allana, through her counsel, turned over to Seror and Brutzkus Gubner, an additional $91,967 from the proceeds of the sale of the Baronis' Henderson, NV real property, which was sold pre conversion pursuant to the Plan Order and the terms of the Plan.

98.     For the purpose of funding the Plan pursuant to the Plan Order, on September 23, 2019, Allana, through her counsel, turned over to Seror and Brutzkus Gubner, an additional $9,170 in rents the Baronis received from the tenants leasing the Baronis' Carmel, and Camarillo real properties.

99.     For the purpose of funding the Plan pursuant to the Plan Order, on October 10, 2019, Allana, through her counsel, turned over to Seror and Brutzkus Gubner, an additional $9,300 in rents the Baronis received from the tenants leasing the Baronis' Carmel, and Camarillo real properties.

100.    On or about March 21, 2023, Seror and BG Law LLP seized a $102,045.86 bond James Baroni posted in USDC Case No. 2:20-cv-04338-MWF concerning an appeal proceeding. Seror and BG Law LLP asserted the bond was the Baronis' community property and therefore should be turned over to Seror as part of the sale proceeds from the pre conversion sale of the Baronis' Hendersons, NV real property.

101.    In total, Seror, and BG Law, had at least $743,744.77 in cash from the Baronis to fund the Plan.

102.    On October 9, 2019, Seror and BG LAW, filed their *Motion for Order Authorizing Trustee to Operate Real Property Effective September 9, 2019. On September 4, 2020, Seror and BG Law filed their Motion for Order Authorizing Trustee to Operate Real Property Through and Including September 9, 2021.* On August 30, 2021 Seror and BG Law filed their *Motion for Order Authorizing Trustee to Operate Real Property Through and Including September 9, 2022.*

103.    Pursuant to the terms of the lease between the Baronis' and the Camarillo property tenants (the "Camarillo Lease Agreement"), on or about October 3, 2019, Seror sent a rent demand to Jack Kasarjian and his wife Karlene Kelly, the tenants leasing the Baronis' Camarillo real property for $4,500 per month, directing the tenants to forward all future rents to Seror.

104.    Seror did not deposit any rents received from the Camarillo tenants into a Class 7 reserve account.

105.    Pursuant to the terms of the lease between the Baronis' and the Carmel property tenants (the "Carmel Lease Agreement"), on or about October 8, 2019 Seror sent a rent demand to April and Hans Hess, the tenants leasing the Baronis' Carmel real property for $5,000 per month, directing the tenants to forward all future rents to Seror.

106.    Seror did not deposit any rents received from the Carmel tenants into a Class 6 reserve account.

107.    According to the Monthly Operating Reports filed by Seror, and BG Law, Seror collected at least $216,059.97 in rents from the Baronis' tenants leasing their Camarillo and Carmel, real properties.

108.    In total, Seror, and BG Law, had at least $959,804.76 in cash from the Baronis and the Baronis' tenants to fund the Plan.

109.    Seror, working together with BG Law, violated the Plan Order and defaulted on the Plan, by not creating the Class 6 reserve account required by the Plan Order and the terms of the Plan.

110.    Seror, working together with BG Law, violated the Plan Order and defaulted on the Plan, by not creating the Class 7 reserve account required by the Plan Order and the terms of the Plan.

111.    Seror, working together with BG Law, violated the Plan Order and defaulted on the Plan, by not making the monthly Class 6 (Camarillo property) Plan payments, even though Seror had funds on hand to make the monthly payments, including the $4,500 monthly rent Seror received from the Camarillo tenants.

112.    Seror, working together with BG Law, violated the Plan Order and defaulted on the Plan, by not making the monthly Class 7 (Carmel, property) Plan payments, even though Seror had funds on hand to make the payments, including the $5,000 monthly rent Seror received from the Carmel tenants.

113.    Seror, working with, and on the advice of his counsel, BG Law, violated the Plan Order and defaulted on the Plan, by not making the $238,860 reserve account distribution to the Class 7, Claim 10, claimant the Bank of New York Mellon. This is the same distribution that caused conversion of the case from chapter 11 to chapter 7.

114.    Seror working with and on the advice of his counsel BG Law, tortiously interfered with the Carmel Lease Agreement, violated the Plan Order, and the terms and goals of the Plan by harassing the performing Carmel property tenants, April and Hans Hess, into vacating the property after the Hess' expressed their desire to continue to lease the Carmel property, thus Seror terminated the ability to generate rent revenue for the Plan.

115.    Seror, working with and on the advice of his counsel BG Law, tortiously interfered with the Camarillo Lease Agreement, violated the Plan Order and the terms and goals of the Plan, when, on or about September 23, 2020, he filed an adversary proceeding to evict the performing tenants leasing the Baronis' Camarillo property, who expressed their desire to continue to lease the Camarillo property, thus Seror terminated the ability to generate rent revenue for the Plan.

116.    Neither Seror, nor BG Law, informed Allana, that the amounts received from the Baronis, and the Carmel and Camarillo rents, was insufficient to fund the Plan.

117.    Neither Seror, nor BG Law, requested additional amounts from Allana to fund the Plan.

118.    In his capacity as the trustee of Allana's estate, Seror approved approximately $1,362,711 in fees and costs that his law firm BG Law submitted to Seror, its own partner, for payment from the $959,804 amounts Seror received from Allana and the Baronis' tenants, when these funds were intended to be used to fund the Plan pursuant to the Plan Order.

119.    Seror received a portion of the fees he approved and paid to BG Law using the $959,804 received from Allana and the Baronis' tenants, when those funds were intended to be used to fund the Plan pursuant to the Plan Order.

120.    Seror is accountable for all amounts he received from the Baronis and the tenants occupying the Baronis' Carmel and Camarillo real properties, and is liable for failure to perform his duties to use the amounts he received pursuant to the Plan Order and the terms and conditions of the Plan.

**Further Plan Order Violations**

121.    Having successfully maneuvered and manipulated the bankruptcy system by working together to convert Allana's case to chapter 7, Severson, Wells Fargo and the Bank of New York Mellon, immediately began working with Seror on a strategy to milk the estate of Allana Baroni for their own financial enrichment, and subdue the Baronis from opposing the Plan Defendants' strategy.

122.    Seror is barred from administering Allana's estate solely for the benefit of secured creditors and professionals' fees. In other words, Seror cannot liquidate the Baronis' secured real properties unless doing so would result in a meaningful distribution to unsecured creditors.

123.    The Plan Order and the terms of the Plan cap unsecured debt at $50,000 which Allana paid pre conversion, and the goal of Allana's Plan is for Allana to retain ownership of her real properties. Therefore, the Plan Defendants had problems with their strategy to milk Allana's estate - they had no grounds to liquidate the Baronis secured real properties for their own financial enrichment.

ADVERSARY PROCEEDING COMPLAINT OF PLAINTIFFS ALLANA BARONI & JAMES BARONI V. SEROR (PERSONALLY AND IN HIS CAPACITY AS CHAPTER 7 TRUSTEE) ET AL.; AND JURY DEMAND    24

124.    To remedy the problems with their strategy, namely that Allana's estate did not owe enough unsecured debt sufficient to justify liquidating the Baronis' secured real properties, the Plan Defendants manufactured $2,024,019 of unsecured debt in violation of the Plan Order and the terms and goals of the Plan. The Plan Defendants then, in circular logic, improperly used the manufactured unsecured debt as the reason for liquidating the Baronis' secured property purportedly to satisfy the requirement that the liquidation facilitated a meaningful distribution toward the $2,024,019 of manufactured unsecured debt.

125.    The Plan Defendants never solved the problem that their strategy violated the Plan Order; as the Plan Order and the terms and goals of the Plan cap unsecured debt at $50,000, and provide that Allana is to retain ownership of her properties. Therefore, the Plan Defendants relied on, and abused, the deference Judge Barash gives to trustees and creditors over consumers, like Allana. However, on March 25, 2024, the USDC held that the Plan Order and the terms and goals of the Plan are binding and in effect on all parties, and have been since the Plan Order was entered on April 15, 2013.

126.    The Severson, and Wells Fargo Claim 7, plays a pivotal role in the Plan Defendants' strategy to violate the Plan Order and the terms and goals of the Plan.

127.    Pre conversion, on June 4, 2012 Secured Claim 7 (Class 5, regarding the Baronis' Henderson, NV property) was filed in the amount of $801,712 (the lien was modified to $196,000 through the Plan), in favor of Defendant Wells Fargo Bank N.A., in its capacity as Trustee for Structured Adjustable Rate Mortgage Loan Trust Mortgage Pass-Through Certificates, Series 2005-17. On December 15, 2014, Claim 7 was allowed by the Bankruptcy Court pursuant to UCC 3's bearer note provision, which (together with its official comments) provides that whoever is in physical possession of the original promissory note endorsed to blank, can enforce it, (even if the note is stolen).

128.    Pursuant to the terms of the Plan, Allana disclosed through a February 19, 2019, status report, her intention to sell the Henderson, NV real property. Allana's counsel met and conferenced with Wells Fargo through its counsel Severson, concerning the sale of the Henderson, NV real property pursuant to the treatment of Claim 7 in the Plan and Plan Order.

129.     Pursuant to the Plan Order and terms of the Plan, Wells Fargo provided three payoff demands into the Henderson, NV escrow to fully satisfy their secured and unsecured Claim 7. The final payoff demands the amount of $178,884.

130.     On March 26, 2019, pursuant to the Plan Order and the terms of the Plan, the Baronis sold their Henderson, NV real property. Pursuant to the Plan Order and the terms the Plan, the Claim 7 promissory note obligation was paid in full through the $178,884 escrow distribution to Nationstar Mortgage, LLC dba Mr. Cooper, who asserts it is an agent of Wells Fargo.

131.     Pursuant to the Plan Order, the terms of the Plan, and as a result of the sale of the Baronis Henderson, NV real property, on April 1, 2019, the original Henderson, NV, promissory note and deed of trust were cancelled and returned to the Baronis marked PAID IN FULL along with a letter from Nationstar congratulating the Baronis for paying the loan in full. The Baronis received another congratulatory letter dated April 1, 2019 from Nationstar Mortgage, LLC dba Mr. Cooper, this time signed by its CEO Jay Bray, "YOU MADE BUSINESS A PLEASURE…. Please take a moment to congratulate yourself on a milestone achieved. Your home loan with us is paid in full. It feels great, doesn't it?

132.     Pursuant to the Plan Order and the terms of the Plan, and as a result of the sale of the Baronis' Henderson, NV real property, a Substitution of Trustee and Full Reconveyance dated April 5, 2019 was recorded in the Clark County, NV Recorders' Office on April 11, 2019 as instrument no. 2019411-0000032 wherein it is represented that the promissory note secured by the deed of trust was paid in full: "WHEREAS the current beneficiary having represented to the Trustee that the obligation secured by said Deed of Trust has been fully paid and/or satisfied…."

133.     On or about April 1, 2019, physical possession of the original Henderson, NV promissory note endorsed to blank was transferred from Wells Fargo to the Baronis. Pursuant to the Bankruptcy Court's order allowing Claim 7, and the Ninth Circuit's affirmation of the same; as of the date of the original note's return to the Baronis, only the Baronis can enforce the promissory note (both secured and unsecured) under the provisions of UCC 3.

134.    Wells Fargo never established ownership of the Henderson, NV promissory note. Wells Fargo never established a right to payment under the promissory note without having physical possession of the promissory note. Without physical possession of the Henderson, NV promissory note, which Wells Fargo no longer held as of April 1, 2019, Wells Fargo cannot enforce any portion of the Henderson promissory note (secured or unsecured), under UCC 3.

135.    Seror, and BG Law LLP, refused to allow any party in interest, including Allana Baroni to object to the false $839,944 unsecured Claim 7-2 at no cost to the estate.

136.    Even considering the overwhelming and undisputed evidence establishing the unsecured Claim 7-2 is false, and violates the Plan Order, Seror refused to investigate or object to Claim 7-2 because the Plan Defendants worked together to manufacture Claim 7-2 in violation of the Plan Order and the terms and goals of the Plan.

137.    Susan Seflin, acting on behalf of Defendant Seror, misled Allana's counsel, Mike Riley, when she informed Mr. Riley that Seror, and BG Law, were investigating the unsecured Claim 7-2, when they were not.

138.    Through a January 16, 2020 email Mr. Riley inquired with Ms. Seflin about the purported investigation of Claim 7-2, to which Ms. Seflin never responded because there was no investigation:

> "You advised that you were investigating the unsecured Claim No. 7. However, no motion for 2004 exam has been entered. Please advise of the investigation you conducted. As you are aware, Ms. Baroni has alleged that loan trusts backing mortgage-backed securities cannot and do not own non-mortgage assets. Please advise how you concluded that loan trusts backing mortgage-backed securities could own non-mortgage assets as the unsecured Claim No. 7 asserts. For example, see the attached December 2019 remittance report for SARM 2005-17 publicly available at https://www.ctslink.com/. Page 21 lists all the loans in bankruptcy claimed to be owned by SARM 2005-17. No loan connected with Ms. Baroni's Nevada property is claimed to be owned by SARM 2005-17, nor does SARM 2005-17 claim to own any unsecured assets whatsoever.   A simple resolution would be for you to speak with the Wells Fargo Bank N.A. employee trustee officer assigned to SARM 2005-17. Given that Mr.   was engaged by Nationstar Mortgage, LLC, how did you determine that Nationstar did not file the claim using the name SARM 2005-17 and intends to simply keep any amounts received from the estate?"

---

ADVERSARY PROCEEDING COMPLAINT OF PLAINTIFFS ALLANA BARONI & JAMES BARONI V. SEROR (PERSONALLY AND IN HIS CAPACITY AS CHAPTER 7 TRUSTEE) ET AL.; AND JURY DEMAND          27

139.    During his June 1, 2023 deposition, Seror gave testimony that conflicts with Susan Seflin's promise to Mr. Riley that Seror, and BG Law, were investigating Claim 7-2. Seror testified that he has not investigated Claim 7-2, nor any of the claims, and will not do so until he is preparing his final report…..long after Seror, and BG Law improperly liquidated the Baronis' hard earned real properties in violation of the Plan Order and the terms and goals of the Plan.

140.    The Plan Defendants also contacted Allana Baroni's former attorney, Louis Esbin to solicit him to file unsecured Claim 13, in the amount of $22,559.86 (of which more than half is manufactured interest), which Esbin filed on July 31, 2019.

141.    On December 16, 2019, Allana Baroni, through her counsel, requested Seror object to Mr. Esbin's false claim or allow Allana to object to it at no cost to the estate. Seror's counsel, Susan Seflin, asked Allana's counsel for the basis of the objection, to which her counsel, Mike Riley provided through an email dated January 16, 2020:

> "With respect for the basis of the objection to Mr. Esbin's proof of claim, Ms. Baroni paid Mr. Esbin a $50k retainer in August 2013 and paid him $10k a month thereafter. However, Mr. Esbin failed to provide monthly statements to Ms. Baroni.  Mr. Esbin provided no accounting for how the monthly amounts were applied, what work was performed, etc. Mr. Esbin resigned in February 2016 while out of the country and dealing with a bitter divorce, after which Mr. Esbin's office informed Ms. Baroni that no fees were outstanding. In addition, Mr. Esbin filed an inaccurate declaration with the Court, when Ms. Baroni inquired why Mr. Esbin mislead her and the Court and why he didn't correct the declaration, Mr. Esbin did not respond."

142.    Ms. Seflin, never responded to Mr. Riley concerning the false unsecured Claim 13. Seror refused to allow Allana to object to the Esbin Claim 13 at no expense to the estate, while Seror also refused to investigate or object to this claim because Seror made an improper deal with Mr. Esbin that if he filed the unsecured claim, Seror would not investigate or object to his claim.

143.    Seror owes a duty to preserve estate property and has explicit statutory instruction to examine creditors' claims.   However, during his June 1, 2023 deposition, Defendant Seror testified that he has not investigated the unsecured Claim 7-2 nor any of the claims filed against the estate of Allana Baroni, and will not investigate the claims until

1  he is preparing his final report on some unknown date, but long after Seror used the claims

2  as the basis to liquidate the Baronis' secured real properties in violation of the Plan Order.

3      144.      On June 25, 2019, Allana Baroni filed a motion to dismiss her bankruptcy

4  case in its entirety. The hearing was set for July 17, 2019.

5      145.      Seror and BG Law sought to capture Allana in chapter 7 to milk Allana's

6  estate for their own financial enrichment. Therefore, on the eve of the July 17, 2019 hearing

7  on Allana's motion to dismiss her case, Severson and Wells Fargo, conspired with Seror and

8  BG Law to violate the Plan Order and the terms and goals of the Plan by filing unsecured

9  Claim 7-2 in the amount of $839,944 to interfere with Allana's motion to dismiss her case.

10  The Plan Defendants argued that as a result of the existence of the unsecured Claim 7-2

there is substantial unsecured debt that the chapter 7 estate must address.

11      146.      The July 16, 2019, $839,944 unsecured Claim 7-2 relies upon the Henderson,

12  NV promissory note endorsed to blank that was paid in full pursuant to the Plan and Plan

13  Order, and was cancelled and returned to the Baronis marked PAID IN FULL nearly four

14  months prior to the filing of the unsecured Claim 7-2.

15      147.      Wells Fargo cannot enforce the Claim 7-2 Henderson, NV promissory note

16  under the provisions of UCC 3. Nonetheless, Seror refused to investigate the fabricated

17  unsecured Claim 7-2 because Seror participated in its creation in violation of the Plan Order

18  and Seror's fiduciary duties.

19      148.      Wells Fargo Bank N.A. purported to be acting as trustee for special purpose

20  vehicle, Structured Adjustable Rate Mortgage Loan Trust Mortgage Pass-Through

Certificates, Series 2005-17 ("SARM 2005-17"), when it filed the $839,944 unsecured Claim

21  7-2 on July 16, 2019. However, SARM 2005-17's monthly reports to its investors and the

22  governing documents filed with the U.S. Securities and Exchange Commission, establish

23  that SARM 2005-17 cannot and does not own unsecured assets, and doing so would interfere

24  with its tax status as a pass through Real Estate Mortgage Investment Conduit. SARM

25  2005-17 deals with "mortgage" assets, as its name suggests. Mortgages by definition are

26  secured instruments. The debt underlying the unsecured claim 7-2 is not owned by Wells

27  Fargo Bank or SARM 2005-17 in any capacity.

28

149.     Pursuant to a request under the Real Estate Settlement Procedures Act (12 U.S.C. 2601 et seq.), in July 2023 Wells Fargo provided James Baroni with a true a correct copy of the loan ledger for the loan purportedly underlying Claim 7-2. The ledger established that the loan has a zero balance, and has had a zero balance since the sale of the underlying Henderson, NV real property, on March 26 2019 and the cancellation and reconveyance of the loan instruments.

150.     The debt underlying the July 16, 2019 unsecured Claim 7-2 does not exist in the books and records of Wells Fargo; nor in the books and records of Wells Fargo's servicing agent; nor in the books and records of SARM 2005-17, nor in the books and land records of Clarke County, NV.

151.     The unsecured Claim 7-2, was unlawfully and improperly manufactured by the Plan Defendants in violation of the Plan Order, and is only referenced in Bankruptcy Court filings, nowhere else.

152.     The manufactured $839,944 unsecured Claim 7-2 includes $157,841.72 of attorney's fees, $107,220.96 of which Wells Fargo, and Severson never submitted to the Bankruptcy Court for approval, and were time barred from so doing.

153.     The manufactured $839,944 unsecured Claim 7-2 includes a principal balance of $647,065.93 of unsecured debt with no explanation, and which Wells Fargo cannot enforce under the provisions of UCC 3, because on the date it filed Claim 7-2 it was not in possession of the Henderson, NV promissory note.

154.     Pursuant to the Plan Order and the terms of the Plan, $605,712.98 of the original June 4, 2012 Claim 7, was bifurcated as unsecured debt and only allowed a pro rata share of the $50,000 unsecured pot. The Plan Defendants' resurrection of the bifurcated portion of the original Claim 7 through their filing of the $839,944 unsecured Claim 7-2, violates the Plan Order and the terms and goals of the Plan.

155.     On July 14, 2017, in Case No. 16-1345 Doc 28, the BAP entered its Memorandum Decision holding that Wells Fargo, and Severson's allowed $50,620.76 of attorney's fees in connection with the original June 4, 2012 Claim 7, are unsecured debt subject to a pro rate share of the $50,000 pot pursuant to the Plan Order and the terms of the Plan (the "BAP Attorneys Fees Memo"). The BAP's holding is the law of the case.

156.     The $839,944 Claim 7-2, which includes the improperly resurrected $50,620.76 of attorney's fees, violates the BAP Attorneys Fees Memo, collaterally attacks the Plan Order, violates the Plan Order and the terms and goals of the Plan.

157.     Relying on the existence of the manufactured unsecured Wells Fargo Claim 7-2, the manufactured Esbin Claim 13, and the opposition of the Plan Defendants to Allana's motion to exit bankruptcy, on March 30, 2020 the Bankruptcy Court entered its order denying Allana's motion to dismiss her bankruptcy case in its entirety.

158.     Allana turned over to Seror an estate that was current on its Plan payments, with both the Carmel and Camarillo properties leased to long terms tenants bringing in monthly revenue of $9,500.00, and with the loan on the Baronis' Calabasas residence completely current. The only issue was a distribution from the payments Allana already paid into the Class 7 reserve account.

159.     Rather than simply make the Class 7 distribution, administer and fund the Plan with the $959,804 amounts Seror and BG Law received from the Baronis and the Baronis' tenants, Seror, and BG Law used those funds to pay and enrich themselves $1,362,711, and pay $78,595 to their client Sam Leslie, who Seror hired as his CPA.

160.     On February 21, 2020 the Plan Defendants requested the Bankruptcy Court approve a purported settlement agreement. Seror and Wells Fargo are parties to the agreement. This settlement agreement collaterally attacked the Plan Order, and violated the terms and goals of the Plan Order (Doc. 1120 the "Plan Order Violation Agreement").

161.     The Baronis opposed the Plan Order Violation Agreement.

162.     Notwithstanding the Baronis' opposition to the Plan Order Violation Agreement, and in a collateral attack on Judge Ahart's Plan Order, on May 1, 2020, Judge Barash approved the Plan Order Violation Agreement through docket entries 1200, 1272 and 1273, without Plan analysis and without clarifying the status of the Plan Order.

163.     Post Plan confirmation, Judge Barash's jurisdiction was limited to the interpretation, implementation, consummation, execution, or administration of the confirmed plan.

164.     Post Plan confirmation Judge Barash retained jurisdiction to protect the Plan Order, prevent interference with the execution of the Plan, and otherwise aid in

the Plan's operation.

165.    As demonstrated in Table 2 below, the Plan Order Violation Agreement materially changed the terms, rights and duties of the parties affected by the Plan.

166.    The Plan Order Violation Agreement does not state that it is intended to replace the confirmed Plan, nor was the Plan modified pursuant to §1127(b) of the Bankruptcy Code.

167.    Pursuant to 11 U.S.C. §1144 the Plan Defendants cannot relitigate anything that was dealt with by the Plan.

168.    Judge Barash's order approving the Plan Order Violation Agreement is fundamentally infirm as it collaterally attacks Judge Ahart's Plan Order.

169.    Judge Barash lacks jurisdiction to enter orders that collaterally attack the Judge Ahart's Plan Order, including the Plan Order Violation Agreement.

170.    Orders entered by the Bankruptcy Court without jurisdiction are void.

171.    The Plan Defendants used the materially altered terms, rights and duties of the parties affected by the Plan, contained in the Plan Order Violation Agreement, to improperly liquidate the Baronis' Carmel, and Camarillo real properties.

172.    Seror, BG Law, LoanCare, LLC and CIT Bank N.A. requested Judge Barash approve a purported settlement agreement to which Seror is a party. Seror and BG Law filed this undated, executed agreement on October 18, 2022 with Doc.1577, (the "CIT Plan Order Violation Agreement"). This agreement collaterally attacks Judge Ahart's Plan Oder, and violates the terms and goals of the Plan.

173.    Seror, and BG Law maliciously and tortiously interfered with the Baronis' due process rights to oppose the CIT Plan Order Violation Agreement, by arguing the Baronis do not have standing to oppose the CIT Plan Order Violation Agreement.

174.    The CIT Plan Order Violation Agreement materially changed the terms, rights and duties of the parties affected by the Plan, to the detriment of the Plaintiffs.

175.    The CIT Plan Order Violation Agreement does not state that it is intended to replace or be substituted for the confirmed Plan, nor was the Plan modified pursuant to §1127(b) of the Bankruptcy Code.

176.     Judge Barash's order approving the CIT Plan Order Violation Agreement is fundamentally infirm as it collaterally attacked Judge Ahart's Plan Order, and deprived the Baronis' of their right to due process.

177.     The Bankruptcy Court lacks jurisdiction to enter orders without due process that collaterally attack the Plan Order, including the CIT Plan Order Violation Agreement.

178.     Seror, BG Law, LoanCare, LLC and CIT Bank N.A. used the materially altered terms, rights and duties of the parties affected by the Plan contained in the Plan Order Violation Agreement, to improperly seize and sell the Baronis' Calabasas home of 23 years.

**TABLE 2**

**Plan Treatment of Secured Real Property Claims vs.
Defendants' Treatment of Secured Real Property Claims**

| Claim No. Plan Class and Property | Plan Treatment | Defendants Seror and BG Law's Treatment |
|---|---|---|
| Claim 10<br><br>Class 7, 9<br><br>Camarillo, CA | Total Burden to the Estate: $1,156,597.21 | Total Burden to the Estate: $1,548,359.65<br><br>**Increase in Burden to the Estate from Amount Owed Under Plan: $403,359.65** |
| | Entire Claim: $1,156,597.21<br>Secured Portion: $1,145,000<br>Unsecured Portion: $11,597.21<br><br>[Original Claim: $1,401,460.91 Total bifurcated unsecured amount of $256,460.90 is fully satisfied by $11,597.21 pro rata share of $50,000 unsecured pot]<br><br>Property not to be liquidated | Entire Claim: $1,548,359.65<br>Secured Portion: $1,145,000.00<br>Unsecured Portion: $403,359.65<br><br>Requires property to be liquidated.<br><br>Requires Seror to be paid $75,000 from sale proceeds (Seror was actually paid $90,445.39).<br><br>Allows Seror to keep $178,207.47 of the $533,307.62 reserve account funds turned over by Allana Baroni. |

| | | |
|---|---|---|
| | Lien is modified as follows: The amount secured by the lien is reduced to $1,145,000. | Seror was required to use $238,860.02 of the reserve funds to pay the Class 7 claimant the Bank of New York Mellon, pursuant to the Plan Order and the terms of the Plan. This payment was the entire reason the Bankruptcy Court converted the case to chapter 7. Instead, of paying the Class 7 claimant, Seror used these amounts to pay his law firm $1,362,711.

Improperly resurrects $305,977 of unsecured debt which Bank of New York Mellon admitted was cancelled, by its servicer, Specialized Loan Services, pursuant to the Plan Order and terms of the Plan (Doc. 957, p.2:4-5).

Adds $161,952.20 of unsecured debt for attorneys' fees, that were never reviewed, never applied for, never awarded, and for which Bank of New York Mellon was time barred from seeking. Moreover, the BAP held that all attorney's fees are subject to the $50,000 unsecured pot, nothing more. |
| **Claim No. Plan Class and Property** | **Plan Treatment** | **Plan Defendants' Treatment** |
| Claim 9 Class 6, 9 Carmel, CA | Total Burden to the Estate: $1,403,649.53

Entire Claim: $1,403,649.53 Secured Portion: $1,400,000 Unsecured Portion: $3,649.53

[Original Claim: $1,480,705.83. Total bifurcated unsecured amount of $80,705.83 is fully satisfied by $3,649.53 pro rata share of $50,000 unsecured pot] | Total Burden to the Estate: $1,763,971.98

**Increase in Burden to the Estate from Amount Owed Under Plan: $360,322.45**

Entire Claim: $1,763,971.98 Secured Portion: $1,400,000.00 Unsecured Portion: $363,971.98

Requires property to be liquidated. |

| | | Requires Seror to be paid $75,000 from the sale proceeds. |
| | Property not to be liquidated | |
| | Lien is modified as follows: The amount secured by the lien is reduced to $1,400,00 | Allows Seror to keep $220,593.50 of the $533,307.62 reserve account funds turned over by Allana Baroni; amounts Seror was required to deposit into a Class 6 reserve account pursuant to the Plan. Instead, of depositing into a Class 6 reserve account, Seror used these amounts to pay his law firm $1,362,711.99. |
| **Claim No. Plan Class and Property** | **Plan Treatment** | **Plan Defendants' Treatment** |
| Class 5, 9<br><br>Claim 7<br><br>Henderson, NV | $0.00: Total Burden after the March 26, 2019 sale of the underlying Henderson, NV real property<br><br>Prior to the sale of the underlying Henderson, NV property the total burden to the estate was $222,780<br><br>Secured Portion: $196,000<br>Unsecured Portion: $26,780.00<br>Total bifurcated unsecured amount of $605,712.96 is fully satisfied by $26,780.00 pro rata share of $50,000 unsecured pot<br><br>On March 26, 2019, prior to conversion to chapter 7, this claim was paid in full through escrow during the sale of the underlying Henderson, NV real property.<br><br>The amount secured by the lien is reduced to $196,000. | Total Burden to the Estate: $450,000<br><br>**Increase in Burden to the Estate from Amount Owed Under Plan, after the Sale of the Underlying Henderson Real Property: $450,000**<br><br>Entire Amended Claim 7: $839,944.84<br>Secured Portion: $0.00<br>Unsecured Portion: $839,944.84<br><br>Seror, Brutzkus Guber and BG Law LLP, used this fabricated claim to require the liquidation of the Baronis real properties purportedly to pay this unsecured claim. |

| Claim No. Plan Class and Property | Plan Treatment | Defendants Seror and BG Law, CIT, and LoanCare's Treatment |
|---|---|---|
| Class 4 Claim 3 Calabasas, CA | Total amount of claim: $1,860,964.23 [includes arrears in the amount of $110,065.31 which were paid by Allana Baroni through the Plan prior to conversion] Lien will not be modified Property not to be liquidated | Total Burden to the Estate: $2,561,235.85 **Increase in Burden to the Estate from Amount Owed Under Plan: $810,336.93** Lien Improperly Modified - Entire Claim is Secured: $2,561,235.85 Requires property to be liquidated |
| **Total increase of real property debt added to the burden of the estate: <u>$2,024,019.03</u>** | | |

179.    As the below excerpts from the case claims register set out; Wells Fargo, Severson, and Justin Balser (counsel for the Bank of New York Mellon, who was apparently substituted in place of and instead of Severson, in representing Wells Fargo on January 11, 2024), filed amended claims 7-2, 7-3, 7-4, 9-2, 9-3, 10-2, and 10-3 in violation of the Plan Order and the terms and goals of the Plan:

| 7-2 | 07/16/2019 | Amended Claim #7 filed by WELLS FARGO - SARM 2005-17, Amount claimed: $839,944.84 (, Bernard) |
|---|---|---|
| 7-3 | 12/16/2020 | Amended Claim #7 filed by WELLS FARGO - SARM 2005-17, Amount claimed: $450,000.00 (, Bernard) |
| 7-4 | 01/11/2024 | Amended Claim #7 filed by WELLS FARGO - SARM 2005-17, Amount claimed: $450,000.00 (Balser, Justin) |
| 9-2 | 12/16/2020 | Amended Claim #9 filed by Nationstar Mortgage, LLC, Amount claimed: $1,763,971.98 (, Bernard) |
| 9-3 | 01/12/2024 | Amended Claim #9 filed by Nationstar Mortgage LLC, Amount claimed: $1,763,971.98 (Balser, Justin) |
| 10-2 | 12/18/2020 | Amended Claim #10 filed by Nationstar Mortgage, LLC, Amount claimed: $1548359.65 (Balser, Justin) |
| 10-3 | 01/16/2024 | Amended Claim #10 filed by The Bank of New York Mellon, Amount claimed: $1548359.65 (Balser, Justin) |

180.    Seror and BG Law materially altered terms, rights and duties of the parties affected by the Plan by increasing the Class 8 burden to the estate to $25,543.28, causing

1  $24,333.80 of harm to Allana's estate.

2    181.    Table 3 below, sets out that the total Class 8 (credit card debt) burden to the

3  estate under the Plan and the Plan Order is $1,209.48.

**TABLE 3**

**Plan Treatment of Class 8 Unsecured Credit Card Claims vs. Defendants Seror, Brutzkus Gubner, and BG Law LLP Treatment of Class 8 Unsecured Claims**

| Claim No. Plan Class Creditor | Plan Treatment | Defendant Seror and BG Law's Treatment |
|---|---|---|
| Claim 1 Class 8 FIA Card Services | $873.00 total burden to the estate Original claim: $19,312.01 to receive $873.00 pro rata share of $50,000 unsecured pot which was paid prior to the conversion to chapter 7 | $18,438.72 allowed claim |
| Claim No. Plan Class Creditor | Plan Treatment | Defendant Seror and BG Law's Treatment |
| Claim 6 Class 8 American Express Bank | $178.40 total burden to the estate original claim: $3,945.19 to receive $178.40 pro rata share of $50,000 unsecured pot which was paid prior to the conversion to chapter 7 | $3,766.79 allowed claim |
| Claim No. Plan Class Creditor | Plan Treatment | Defendant Seror and BG Law's Treatment |
| Claim 6 Class 8 American Express Centurian Bank | $158.08 total due original claim: $3,495.85 to receive $158.08 pro rata share of $50,000 unsecured pot which was paid prior to conversion to chapter 7 | $3,337.77 allowed claim |

| | **Total burden of Class 8 unsecured (credit card) claims: $1,209.48** | **Total burden of Class 8 (credit card) unsecured claims: $25,543.28** |
|---|---|---|
| | | **Total harm to the estate by increasing the Class 8 unsecured burden to the estate: $24,333.80** |

182.    The most expeditious administration of Allana's estate, that was in the best interest of all parties, was for Seror, and BG Law, to collect the amounts Allana deposited into the reserve accounts pursuant to the Plan and Plan Order, and collect the rents Allana and Seror received from the Carmel and Camarillo tenants, and use these funds to administer the Plan pursuant to the Plan Order.

183.    Prior to improperly liquidating the Baronis secured real properties, Seror, and BG Law, had actual knowledge that the Plan Order and Plan were binding and in full effect. For example, on March 11, 2020, Seror and BG Law filed Doc. 1132 wherein at p.4:7-9, they admit, "the plan and the confirmation order are binding legal documents. The terms of a plan are not undone merely because a debtor failed to consummate a plan."

184.    Another instance demonstrating that Seror, and BG Law were aware that the Plan was binding and in full effect prior to the improper liquidation of the Baronis' properties, is Doc. 1120 at 20, wherein Seror, and Brutzkus Gubner assert "the bifurcation of the claims under the Plan survived the conversion." Therefore, according to Seror, and BG Law, the terms of the Plan Order and the Plan that bifurcate the secured creditors claims into specific secured and unsecured obligations are binding and in effect after conversion.

185.    Seror, and BG Law refused to apply the terms of the Plan Order and the Plan that cap unsecured amounts at $50,000 because Seror, and BG Law required a large amount of unsecured debt to justify liquidating the Baronis' secured real properties for their own financial enrichment.

186.     Seror and BG Law also refused to apply the terms and goals of the Plan and the Plan Order which provide that Allana retains ownership of her real properties because Seror and BG Law sought to willfully and deliberately liquidate the Baronis' secured real properties for their own financial enrichment.

187.     During his July 15, 2024 deposition, Seror was asked by Plaintiffs' counsel; "you consider yourself bound by the Plan; right?" To which Seror testified; "the Plan is the Plan", and "to a certain extent, the plan continues to exist." Seror's counsel, BG Law was present during Seror's July 15, 2024 deposition.

188.     During Seror's July 15, 2024 deposition, and pursuant to his testimony that the Plan continues to exist, Seror was asked to identify which terms of the Plan are in effect and to which he is bound, and which terms of the Plan are not in effect. In his capacity as trustee and representative of the estate of Allana Baroni, Seror was evasive and refused to identify which terms of the Plan are in effect and to which he is bound, and which terms of the Plan are not in effect.

189.     During Seror's July 15, 2024 deposition, BG Law wrongfully and improperly objected and instructed Seror not to respond to Plaintiffs' request for disclosure of the particular terms of the Plan to which Seror is bound and administering.

190.     Bankruptcy trustees, including Seror, are required to be transparent to ensure the integrity of the bankruptcy process.

191.     Bankruptcy trustees, including Seror, have a duty to furnish information concerning the estate and the estate's administration that is requested by a party in interest.

192.     Neither Seror nor BG Law filed or served on any party in interest, a disclosure of which terms of the Plan and Plan Order are binding and in effect, nor which terms of the Plan Order and the Plan are not binding or in effect.

193.     Seror has a fiduciary duty and responsibility to disclose the affairs of Allana's estate so that the parties in interest will be able to protect their interests in the estate.

194.     Disclosure of which terms of the Plan Order and the Plan, Seror, and BG Law, will obey and administer, and which terms of the Plan Order and Plan, Seror will not, were crucial disclosures needed for Plaintiffs to protect their fundamental rights and

1  interests.

2     195.     Seror, and BG Law, have a financial interest in which terms of the Plan

3  Order and Plan are enforced and administered by Seror, and which terms of the Plan Order

4  and Plan Seror violates.

5     196.     Seror, and BG Law's financial interest in which terms of the Plan Order and

6  the Plan are enforced, and which terms of the Plan Order and the Plan are not enforced,

7  renders these Defendants not disinterested parties in the administration of the estate of

8  Allana Baroni.

9     197.     The Plan was not unwound; the well over a million dollars of payments made

10  by the Baronis pursuant to the Plan Order and terms of the Plan, have not been returned to

11  the Baronis.

12     198.     The sale of the Baronis' Henderson, NV real property, conducted pursuant to

13  the Plan Order and the terms of the Plan was not unwound.

14     199.     Seror does not have a statutory obligation to reduce the Baronis secured real

15  properties to cash to pay creditors. Seror and BG Law, are prohibited from administering

16  secured assets pursuant to the U.S. Trustee Chapter 7 Handbook, the Executive Office of

17  the U.S. Trustee guidance, and controlling legal authorities.

18     200.     The creditors of Allana's estate are bound by the Plan Order and the terms of

19  the Plan.

20     201.     Seror is bound by the Plan Order and has a fiduciary duty and obligation to

21  administer the Plan according to its terms, conditions and goals.

22     202.     In violation of the Plan Order and the terms and goals of the Plan, Seror has

23  distributed approximately $8,264,341.88, including $4,537,549.59 to the secured real

24  property creditors, $1,362,711 to BG Law, for representing Seror in this case, and $78,595 to

25  Seror and BG Law's client LEA Accountancy, from Allana's estate, all purportedly to make

26  a $60,652 distribution toward manufactured unsecured debt, which distribution checks

27  Seror and BG Law subsequently stopped payment. Seror refuses to file operating reports or

28  provide the estate's bank statements after the period ending April 30, 2023, therefore it is

unknown what further amounts Seror has used or distributed.

_____

ADVERSARY PROCEEDING COMPLAINT OF PLAINTIFFS ALLANA BARONI & JAMES BARONI V. SEROR
(PERSONALLY AND IN HIS CAPACITY AS CHAPTER 7 TRUSTEE) ET AL.; AND JURY DEMAND          40

203.     As a result of Seror, and BG Law's defaults under, and violations of the Plan Order and the terms and goals of the Plan, Seror has metastasized his trustee commission to at least $183,623.96. Seror is expected to seek more than this amount as his commission.

204.     BG Law shares in the revenue derived from Seror's trustee commission fees.

205.     Seror, and BG Law were incentivized to default under the terms of the Plan, violate the Plan Order and the terms and goals of the Plan to milk the estate of Allana Baroni to enrich themselves by approximately $1,546,334.96.

206.     Had Seror, and BG Law obeyed the Plan Order, abided by their duty to not harm the estate, and abided by the terms and goals of the Plan, Seror would have primarily been required to distribute the Class 7 reserve account amount of $238,860.02, and the Plan payments that became due after the April 9, 2019 conversion, to June 20, 2019 when Seror received $533,307.62 from Allana Baroni. The costs to the estate would have been a fraction of the $1,546,334.96, Seror and BG Law have milked from Allana's estate so far.

207.     On November 20, 2023 Seror, and BG Law filed their motion *For Order Authorizing Chapter 7 Trustee To Make Interim Distributions To Unsecured Creditors.* Through the motion, Seror, and BG Law sought to consummate the Plan Defendants' strategy to drain Allana's estate by distributing payments for the manufactured $2,024,019 unsecured debt. Seror, and BG Law's motion asserts the total amount of allowed unsecured claims is $1,521,233.77. However, the Plan only allows a total of $50,000 of unsecured debt.

208.     The Plan Defendants did not obey, but rather collaterally attacked the Plan Order, violated the Plan Order, and violated the terms and goals of the Plan, by seeking to sell, and proceeding with the sale of the Baronis' Carmel real property, purportedly on June 23, 2022.

209.     Seror, and BG Law, willfully, intentionally, and improperly collaterally attacked the Plan Order, violated the Plan Order, and violated the terms and goals of the Plan, by seeking to sell, and proceeding with the sale of the Baronis' Camarillo real property on March 16, 2023.

210.     Seror, and BG Law, willfully, intentionally, and improperly collaterally attacked the Plan Order, violated the Plan Order, and violated the terms and goals of the Plan, by seeking to sell, and proceeding with the sale of the Baronis' Calabasas home of 23

1    years on October 16, 2023.

2    211.    Seror, and BG Law failed to disclose to purchasers of estate assets that they
3    are bound by the Plan Order and the terms of the Plan.

4    212.    Seror, and BG Law, collaterally attacked the Plan Order, violated the Plan
5    Order, and violated the terms and goals of the Plan, by unleashing a wholly traumatizing
6    military style operation evicting the Baroni family from their Calabasas home of 23 years on
7    September 29, 2023.

8    213.    Seror, and BG Law, willfully, intentionally, and improperly collaterally
9    attacked the Plan Order, violated the Plan Order, and violated the terms and goals of the
10   Plan, by prosecuting the Baronis without justification on March 3, 2023, for turnover of rent
11   for the period of February 2023 through October 2023, concerning their Calabasas home,
     when the Baronis did not rent out their Calabasas home, they occupied their home.

12   214.    Seror, and BG Law seek retroactive rents from the Baronis concerning their
13   Calabasas home, for the improper purpose of harassing the Baronis into giving up their
14   rights, so Seror, and BG Law, can further financially enrich themselves, and close the case
15   prior to the issues set out herein being heard and decided.

16   215.    To further milk Allana's estate, Seror hired his client LEA Accountancy, LLP
17   to act as CPA for the estate of Allana Baroni without giving any consideration as to whether
18   a conflict or potential conflict exists. LEA Accountancy, whose principal Sam Leslie, also
19   acts as a Region 16 chapter 7 trustee, returned the favor by hiring Seror's Law Firm, BG
     Law LLP as his counsel.

20   216.    Seror approved his firm's legal fees, and paid BG Law from estate funds, for
21   representing Sam Leslie / LEA Accountancy.

22   217.    Seror has or will receive amounts from the attorneys' fees he approved for BG
23   Law's representation of Sam Leslie / LEA Accountancy.

24   218.    Seror harmed Allana's estate by paying inflated, excessive, and willfully
25   exaggerated; insurance premiums, inflated bank fees, and inflated repair and maintenance
26   costs pertaining to the Baronis' real properties. For example; the State Farm Camarillo
27   property insurance paid for by the Baronis had an annual premium of $2,031. According to
28   the monthly operating reports, Seror took out a policy for the Camarillo property for the

period of June 8, 2020, to May 2021; Seror paid $8,422.19 for the policy $6,391.19 more than the Baronis' Camarillo policy. As another example, Seror asserted that the Carmel roof requires replacing at a cost of $49,000. On March 24, 2021, the Trustee paid J.P. Custom Roofing a $15,000.00 deposit. On May 1, 2021, the Baronis solicited and received an estimate to replace the entire roof for $10,000 from the roofing company who installed the original roof and has maintained the roof for 20 years. Seror's May 2021 monthly operating report shows a payment of $32,473.15 for "Repairs" payable to Coastal Restoration & Construction, with no further explanation. Plaintiffs assert this is an inflated amount for undisclosed work. Seror's monthly operating reports also establish that Seror is paying Metropolitan Bank an average of $1,000 a month for "Bank and Technology Services Fees" in a noninterest- bearing account under which Seror cuts less than 6 checks a month. The total bank fees from March 30, 2020, to May 30, 2021, was $12,896.59. Seror was incentivized to pay inflated amounts because his commission is based on the amount he distributes; the higher the distribution the more Seror accrues in commissions and the more his firm BG Law charges in fees for assisting Seror.

219.    On August 14, 2019, Seror abused his position as trustee when he referred Allana Baroni to the U.S. Trustee and U.S. Attorney for criminal prosecution. Seror callously sought to take Allana away from her family, including her minor daughter, by imprisoning her using false assertions. Seror terrorized Allana with criminal prosecution to subdue her, and keep her from opposing Seror's violations of the Plan Order and the terms and goals of the Plan.

220.    Seror's criminal referral concerns Allana's use of the proceeds from the fully transparent and pre conversion March 26, 2019 sale of her Henderson, NV real property.

221.    Seror improperly relied on the manufactured $839,944 Claim 7-2, filed in violation of the Plan Order and the terms and goals of the Plan, to support his need to seize the Henderson, NV sale proceeds and criminally refer Allana, when he informed the U.S. Trustee and the U.S. Attorney that the "claims filed since plan confirmation exceed $800,000."

222.    Seror's criminal referral of Allana Baroni misled the U.S. Trustee and U.S. Attorney when Seror informed them that the Chapter 11 Plan was not substantially

1  consummated, and when Seror asserted that Allana was required to seek permission to sell

2  the Baronis' Henderson, NV real property pre-conversion.

3      223.    At the time Seror submitted his August 2019 criminal referral of Allana

4  Baroni, Seror knew or should have known, his representations to the U.S. Trustee were

5  false:

6          a.    Seror knew that he worked with the other Plan Defendants to

7  manufacture the July 16, 2019, $839,944 Claim 7-2 in violation of the Plan Order and the

8  terms of the Plan;

9          b.    Seror knew that upon entry of the April 15, 2013 Plan Order,

10  ownership of all property of the estate vested in the debtor Allana Baroni; the business and

11  management of all of the property dealt with by the Plan continued to be operated by

12  Allana; Allana established and funded the reserve accounts necessary to make distributions

13  under the Plan; Allana made distributions under the Plan; and therefore, the Plan was

14  substantially consummated over a decade ago; and

15          c.    Seror knew that Allana sold the Baronis' Henderson, NV real property

16  pursuant to the Plan Order and the terms of the Plan, and knew that Allana did not require

    Court permission to sell the Henderson property pursuant to the Plan and Plan Order.

17      224.    On April 13, 2021, Seror made two payments from the reserve account

18  amounts turned over by Allana: $73,854 to Nationstar Mortgage, LLC (Claim 9 regarding

19  the Carmel property) and another payment of $60,652 to Nationstar Mortgage, LLC

20  purportedly on behalf of the Bank of New York Mellon (Claim 10 regarding the Camarillo

    property).

21      225.    In an attempt to redirect $60,652 from the estate for his own benefit, on

22  January 20, 2023, Seror issued another check in the same $60,652 amount, but to conceal

23  the second payment, Seror made the payment payable to the Bank of New York Mellon this

24  time. Anyone writing the loan number on the second check would have seen that the

25  $60,652 was already paid on April 13, 2021.

26      226.    Unlike every other check that is attached to Seror's filed monthly operating

27  reports, the January 2023, $60,652 check does not include the address of where the check

28  was mailed, nor does the back of the check show into which bank account that check was

---

ADVERSARY PROCEEDING COMPLAINT OF PLAINTIFFS ALLANA BARONI & JAMES BARONI V. SEROR
(PERSONALLY AND IN HIS CAPACITY AS CHAPTER 7 TRUSTEE) ET AL.; AND JURY DEMAND            44

1    deposited. Plaintiffs allege that Seror negotiated that check and pocketed the $60,652.

2        227.    Seror is required to maintain and actively participate in an appropriate and

3    comprehensive system of office operations and internal accounting to track case

4    administration and progress, account for all estate property, and generate accurate reports.

5        228.    On March 29, 2023, Allana's counsel, Kathleen March, complained to the

6    Executive Office of the U.S. Trustee about Seror's $60,652 January 20, 2023 check.

7    Therefore, Seror sought to cover his misconduct through the monthly operating report for

8    the period ending April 30, 2023, which shows a deposit of $60,652 payment into the estate's

9    bank account. The report does not establish from whom the funds were received. Seror

10   never filed another operating report after the period ending April 30, 2023, and refuses to

     provide the estate's bank statements dated after April 30, 2023 to Plaintiffs.

11       229.    In or about January 2024, Seror, and BG Law, distributed $60,849, to

12   unsecured creditors, which Seror, and BG Law assert is a 4% pro rata share of the

13   manufactured unsecured debt, including a payment for the contrived $839,944 Wells Fargo

14   Claim 7-2. However, Seror and BG Law then stopped payment on these checks, because the

15   unsecured debt underlying the 4% pro rata share was engineered by the Plan Defendants in

16   the first instance.

17       230.    Rather than obey the Plan Order and administer the terms and goals of the

18   Plan, Seror, and BG Law; (1) opposed Allana's motion for discharge brought pursuant to the

19   Plan Order and the terms and goals of the Plan, (2) failed to unwind the Plan, (3) defaulted

20   under the Plan Order and the terms and goals of the Plan, (4) violated the Plan Order and

     the terms and goals of the Plan, (5) collaterally attacked the Plan Order, (6) engaged in self-

21   dealing rather than pursuing the express purpose of the Plan and the Plan Order, (7)

22   distributed $8,264,341 to justify making a $60,849 distribution payment on debt

23   manufactured by the Plan Defendants, then stopped payment on those distributions; (8)

24   falsely argued that Allana failed to consummate the Plan; (9) abused their powerful

25   positions by referring Allana for criminal prosecution for an improper purpose; (10)

26   interfered with the Baronis' access to the courts for an improper purpose; and (11) conspired

27   with the other plan Defendants to fabricate the claim 7-2 to interfere with Allana's motion

28   to dismiss her bankruptcy case – all to facilitate at least $1,546,334 in payments to Seror

1  and BG Law.

2   231.   Seror was required to have a system in place to identify circumstances that
3  arise during the case creating a lack of disinterestedness. Seror, on advice of his counsel BG
4  Law, violated the Plan Order when he only administered the terms of the Plan that
5  financially enriched Seror and BG Law, while refusing to disclose which terms and goals of
6  the Plan Order and the Plan are in effect and binding. These circumstances render Seror
7  and BG Law not disinterested in the administration of Allana's estate.

8   232.   In his capacity as trustee, Seror is barred from engaging in dishonesty, fraud,
   deceit, misrepresentation, and illegal conduct involving moral turpitude. Seror engaged in
9  such misconduct because his and BG Law's interests in violating the Plan Order for their
10  financial enrichment are materially adverse to Allana's estate and therefore, Seror was
11  required to resign as trustee of Allana's estate.

12   233.   Seror testified during his August 1, 2024 deposition that he has resigned
13  from the Region 16 Chapter 7 Panel of Trustees.

14   234.   Congress did not intend for Chapter 7 to be used as a sword to punish
15  consumer debtors such as Allana, who assert their rights and defend their estate against
16  immensely powerful financial institutions and bankruptcy professionals, such as the Plan
17  Defendants.

18   **FIRST CLAIM FOR REIEF**

19   **For Contempt for Willful Failure to Obey the Plan Order,**
    **For Willful Violations of the Plan Order, and**
20   **For Collaterally Attacking the Plan Order**
    **Against the Plan Defendants**

21

22   235.   Plaintiffs incorporate herein by reference, paragraphs 1 through 234 above,
   as though fully set forth herein.

23
   236.   The Plan Order is valid and lawful.

24
   237.   The Plan Order is clear and unambiguous.

25   238.   The Plan Defendants knew about the Plan Order, and the April 15, 2013
26  entry of the Plan Order.

27   239.   The Plan Defendants had the ability to comply with the Plan Order.

28   240.   The just, speedy and economical resolution of this bankruptcy case, was for

_____

ADVERSARY PROCEEDING COMPLAINT OF PLAINTIFFS ALLANA BARONI & JAMES BARONI V. SEROR
(PERSONALLY AND IN HIS CAPACITY AS CHAPTER 7 TRUSTEE) ET AL.; AND JURY DEMAND          46

1 Seror to obey the Plan Order and administer the terms and goals of the Plan.

2      241.     The Plan Defendants engaged in self-dealing rather than obeying the Plan

3 Order and pursuing the express terms, goals and purpose of the Plan.

4      242.     The Plan Defendants willfully collaterally attacked the Plan Order.

5      243.     The Plan Defendants willfully violated, and failed to obey the Plan Order.

6      244.     Notwithstanding that Seror admitted the Plan is binding, even if Allana

7 failed to fully perform under her Plan, the Plan Defendants worked together to repeatedly

8 violate the Plan Order, act contrary to the terms, conditions and goals of the Plan, and

9 repeatedly moved the Bankruptcy Court to enter orders that collaterally attack the Plan

Order.

10      245.     The Plan Defendants knew their willful failure to obey the Plan Order would

11 harm the Plaintiffs.

12      246.     The Plan Defendants knew their willful collateral attacks on the Plan Order

13 would harm the Plaintiffs.

14      247.     The purpose of the Plan Defendants' willful failure to obey the Plan Order,

15 and collateral attacks on the Plan Order, was to financially enrich the Plan Defendants and

16 inflict maximum harm to the Plaintiffs.

17      248.     The Plan Defendants' contempt is willful, intentional, deliberate and ongoing.

18                **SECOND CLAIM FOR RELIEF**

19         **For Breach Of Fiduciary Duty Against Defendant Seror**

20      249.     Plaintiffs incorporate herein by reference paragraphs 1 through 248 above, as

21 though fully set forth herein.

22      250.     Seror is a fiduciary situated in a significant position of trust and

23 responsibility.

24      251.     Seror owed a fiduciary duty to the estate of Allana Baroni.

     252.     Seror owed a fiduciary duty to the Plaintiffs.

25      253.     Seror owed a fiduciary duty to all parties in interest in the estate of Allana

26 Baroni.

27      254.     Seror was bound to administer the Plan pursuant to the Plan Order.

28      255.     Seror, willfully violated the Plan Order.

256.     Seror, willfully defaulted under the Plan Order and the terms and goals of the Plan.

257.     Seror, willfully collaterally attacked the Plan Order for his and BG Law's financial enrichment.

258.     Seror engaged in self-dealing rather than pursuing the express terms and purpose of the Plan, and Plan Order.

259.     Seror depleted estate funds to pay his firm amounts that should have been used to fund the Plan.

260.     Seror burdened the estate with more debt obligations than if Seror obeyed the Plan Order and administered the Plan in accordance with the terms and goals of the Plan.

261.     Seror failed to monitor all legal fees in the bankruptcy case to ensure that they are reasonable, necessary, and likely to provide a benefit to the estate. This duty conflicts with the objectives of Seror's law firm, BG Law, to whom Seror owes fiduciary duties as a partner. Seror serves two masters when he is (a) required to administer Allana's estate in the best interest of all stakeholders while (b) retaining a substantial pecuniary interest in seeing that he and his law firm obtain fees and costs, regardless of whether such fees are necessary and beneficial to the estate. Seror breached his fiduciary duties in order to maximize fees and costs payable to his firm; fees of which Seror receives a portion. BG Law's fees for actions taken in violation of the Plan Order and the terms and goals of the Plan are not necessary or beneficial to the estate.

262.     Seror failed to act as a reasonable, careful trustee and administrator of the estate of Allana Baroni would have acted under the same or similar circumstances.

263.     As a result of Seror's breach of his fiduciary duties Plaintiffs were harmed, including by causing the taking and liquidation of the Baronis' secured real properties in violation of the Plan Order and the terms and goals of the Plan.

264.     Seror's breach of fiduciary duties is intentional and ongoing.

# THIRD CLAIM FOR RELIEF

### For Aiding and Abetting Breach Of Fiduciary Duty
### Against Defendants BG Law, Severson, and Wells Fargo

265.    Plaintiffs incorporate herein by reference paragraphs 1 through 264 above, as though fully set forth herein.

266.    BG Law, knowingly participated in the breach of Seror's fiduciary duty by actively advising and encouraging Seror to breach his fiduciary duty including; advising and encouraging Seror to default under the Plan and Plan Order, advising and encouraging Seror to violate the Plan Order and the terms and goals of the Plan, and advising and encouraging Seror to collaterally attack the Plan Order.

267.    Severson and Wells Fargo knowingly participated in the breach of Seror's fiduciary duty by actively encouraging Seror to breach his fiduciary duty, including by entering into agreements with Seror that collaterally attack the Plan Order and violate the Plan Order and the terms and goals of the Plan.

268.    Severson and Wells Fargo knowingly participated in the breach of Seror's fiduciary duty by requesting the Bankruptcy Court approve the Plan Violation Agreement.

269.    As a result of BG Law, Severson, and Wells Fargo's, participation and encouragement of Seror to breach his fiduciary duty, Seror did breach his fiduciary duty.

270.    BG Law, Severson, and Wells Fargo financially benefitted from Seror's breach of fiduciary duty.

271.    Plaintiffs were harmed by BG Law, Severson, and Wells Fargo's encouragement and knowing participation in the breach of Seror's fiduciary duty, including by causing the taking and liquidation of the Baronis' secured real properties in violation of the Plan Order and the terms and goals of the Plan.

272.    BG Law, Severson, and Wells Fargo's misconduct in aiding and abetting Seror's breach of fiduciary duties is intentional and ongoing.

# FOURTH CLAIM FOR RELIEF

## For Gross Negligence Against Defendant Seror

273. Plaintiffs incorporate herein by reference paragraphs 1 through 272 above, as though fully set forth herein.

274. Seror failed to use reasonable care to prevent harm to the Plaintiffs.

275. Seror failed to warn or disclose that Seror will not obey the Plan Order, nor administer the terms and goals of the Plan.

276. Seror failed to warn or disclose which terms and goals of the Plan Order and the Plan that Seror would obey and administer.

277. Seror failed to warn or disclose that Seror would administer the Plan Order and the terms and goals of the Plan in a manner that financially enriched Seror, and BG Law to the detriment of Plaintiffs.

278. The harm Seror caused to the Plaintiffs was foreseeable; including the harm caused by Seror failing to obey the Plan Order, defaulting under the Plan Order, violating the terms of the Plan and the Plan Order, collaterally attacking the Plan Order, and engaging in self-dealing rather than pursuing the express purpose of the Plan.

279. The conduct of Seror, who is financially invested in which terms of the Plan Order and the Plan he administers, violated the duty of care owed by Seror to the estate of Allana Baroni and to the Plaintiffs, and constituted gross negligence on his part.

280. Seror's gross negligence, caused an additional $2,070,912 in debt obligations to encumber the estate of Allana Baroni above the amounts allowed under the Plan and Plan Order.

281. Seror's gross negligence caused $1,362,711 in in fees and costs Seror approved and paid his firm BG Law. Had Seror administered the Plan in compliance with the Plan Order and the terms and goals of the Plan, $1,362,711 in in fees and costs would not have been incurred.

282. Seror's gross negligence incurred $78,595 in fees and costs Seror approved and paid his client Sam Leslie of LEA Accountancy. Had Seror administered the Plan in compliance with the Plan Order and the terms and goals of the Plan, $78,595 in in fees and costs would not have been incurred.

283.     Seror's gross negligence metastasized Seror's trustee fee commission to approximately $183,623 (so far). Had Seror administered the Plan in compliance with the Plan Order and the terms and goals of the Plan, the total of $183,623 (so far) in in trustee fees would not have been incurred.

284.     Seror's gross negligence increased the debt obligations to Allana's estate by approximately $3,648,948 more than if Seror obeyed the Plan Order and administered the Plan in accordance with the terms and goals of the Plan.

285.     Seror diverted $743,744, in cash and $216,059 in rental income turned over to Seror to fund the Plan, to his firm BG Law by approving and paying $1,362,711to BG Law, and approving and paying $78,595 to his firms' client Sam Leslie without giving any consideration as to whether a conflict of interested existed when Seror hired his own client.

286.     The Trustee could have, and was obligated to administer the confirmed chapter 11 Plan. Any other services were not in service to the administration of the estate.

287.     Seror failed to unwind the Plan and return the $743,744, in cash the Baronis turned over to Seror, when Seror failed to obey the Plan Order, and the terms and goals of the Plan.

288.     Seror failed to unwind the Plan and return the Plan payments the Baronis paid pursuant to the Plan Order and the terms and goals of the Plan, when Seror failed to obey the Plan Order, and the terms and goals of the Plan.

289.     As a result of Seror's gross negligence, Plaintiffs have been harmed.

290.     Seror's gross negligence in defaulting under the Plan, collaterally attacking and violating the Plan Order, and violating the terms and goals of the Plan, caused the taking and liquidation of the Baronis' hard earned real properties, including their home of 23 years.

291.     Seror tormented the Baronis when he unleashed a US Marshal Services' military style swat operation incorporating over a dozen US Marshal Services personnel to evict the Baronis from their home of 23 years on September 29, 2023. The Baronis were thrown out onto the street, and too traumatized to remove all of their belongings when Seror refused to allow the Baronis to reenter their home. Attached here as <u>Exhibit 4</u> are photos of the US Marshal Services' personnel entering the Baronis' home using a terrifying

1   and unnecessary posture and abuse of force at Seror's and BG Law's direction.

2        292.      There was nothing stopping Seror from obeying the Plan Oder and
3   administering the Plan pursuant to the terms and goals of the Plan.

4        293.      Seror was bound and required to administer the terms and goals of the Plan
5   pursuant to the Plan Order.

6        294.      A reasonable and prudent person would know that pursuant to the Plan
7   Order and the terms and goals of the Plan, Allana should retain ownership of her
8   properties, and that the terms and goals of the Plan do not provide for the taking and
    liquidation of the Baronis' real properties, including their home of 23 years.

9        295.      A reasonable and prudent person would know that Seror failed to obey the
10   Plan Order and the terms and goals of the Plan for his own financial enrichment.

11       296.      A reasonable and prudent person would understand and know that Seror is
12   generally barred from administering secured real property.

13       297.      A reasonable and prudent person would understand and know that Seror is
14   barred from liquidating the Baronis' secured real properties pursuant to the Plan Order and
15   the terms and goals of the Plan.

16       298.      A reasonable and careful person would have abided by the Plan Order and
17   the terms and goals of the Plan in Seror's situation.

18       299.      Seror's gross negligence is intentional and ongoing.

19       300.      Seror and BG Law should be denied any compensation in the case, and the
20   amounts paid to BG Law on an interim basis should be disgorged.

21                        **FIFTH CLAIM FOR RELIEF**

22          **For Tortious Interference with a Contract Against Seror and BG Law**

        301.      Plaintiffs incorporate herein by reference paragraphs 1 through 300 above, as
23   though fully set forth herein.

24       302.      The Plan is a new and binding contract between Allana Baroni and the
25   creditors of her estate. The Plan is valid and existing.

26       303.      BG Law has knowledge of the existence of the Plan contract and the order
27   approving the Plan contract.

28       304.      BG Law knew and admitted that the Plan is valid and existing.

305.     After Seror stepped into the position of Allana Baroni as administrator of her estate, BG Law intentionally encouraged, advised, and induced Seror to breach and disrupt the terms of the Plan's contractual relationships.

306.     BG Law's intentional acts designed to induce breach and disruption of the contract, include advising Seror to collaterally attack the Plan Order, default under the terms of the Plan, and violate the terms and goals of the Plan.

307.     As a result of BG Law's interference with the Plan's contractual arrangements, the terms of the Plan were breached.

308.     As a result of BG Law's interference with Plan's contractual arrangements, BG Law was financially enriched.

309.     BG Law desired to interfere with the Plan's contractual arrangements for financial gain, and knew that its interference was certain, or substantially certain to occur as a result of BG Law's actions.

310.     As a result of BG Law's interference with Plan's contractual arrangements, the Plaintiffs were harmed, including by causing the taking and liquidation of the Baronis secured real properties.

311.     BG Law's tortuous interference is intentional and ongoing.

312.     The Carmel Lease Agreement and the Camarillo Lease Agreement are binding contracts between the Baronis and the tenants of their Carmel and Camarillo properties.

313.     At the time of Seror's and BG Law's misconduct alleged herein, the Carmel Lease Agreement and the Camarillo Lease Agreement were valid and existing.

314.     Seror and BG Law had knowledge of the existence of the Carmel Lease Agreement and the Camarillo Lease Agreement.

315.     Seror and BG Law knew and admitted that the Carmel Lease Agreement and the Camarillo Lease Agreement were valid and existing.

316.     After Seror stepped into the position of Allana Baroni as administrator of her estate, Seror and BG Law breached and disrupted the terms and contractual relationships of the Carmel Lease Agreement and the Camarillo Lease Agreement.

317.     Seror's and BG Law's intentional acts of breach and disruption of the Carmel

Lease Agreement and the Camarillo Lease Agreement, include harassment and improper eviction of the tenants.

318.    As a result of Seror's and BG Law's interference with the Carmel Lease Agreement's and the Camarillo Lease Agreement's contractual arrangements, the terms of the Carmel Lease Agreement, and the Camarillo Lease Agreement were breached.

319.    As a result of Seror's and BG Law's interference with Carmel Lease Agreement's, and the Camarillo Lease Agreement's contractual arrangements, Seror and BG Law were financially enriched.

320.    Seror and BG Law desired to interfere with the Carmel Lease Agreement, and the Camarillo Lease Agreement for financial gain, and knew that their interference was certain, or substantially certain to occur as a result of Seror and BG Law's actions.

321.    As a result of Seror and BG Law's interference with the Carmel Lease Agreement, and the Camarillo Lease Agreement, the Baronis were harmed, including by causing the taking and liquidation of the Baronis' secured Camarillo and Carmel real properties.

322.    Seror and BG Law's tortuous interference is intentional and ongoing.


## SIXTH CLAIM FOR RELIEF

### For Elder Abuse Against the Plan Defendants

323.    Plaintiffs incorporate herein by reference, paragraphs 1 through 322 above, as though fully set for herein.

324.    James Baroni was over the age of 65 during all times of the Plan Defendants' collateral attacks on the Plan Order, violations of the Plan Order and the terms and goals of the Plan.

325.    James Baroni was over the age of 65 during all times of Defendant Seror's, defaults under the Plan Order and the terms and goals of the Plan.

326.    James Baroni was over the age of 65 during all times that the Plan Defendants caused the taking and liquidating of Mr. Baroni's property in violation of the Plan Order and the terms and goals of the Plan.

327.    The Plan Defendants' actions and inactions harmed James Baroni.

328.     The Plan Defendants failure to obey the Plan Order and the terms and goals of the Plan resulted in the improper taking of James Baroni's hard earned property including; significant amounts of money, his Carmel and Camarillo real properties, his Calabasas home of 23 years, his family heirlooms, his minor daughters' artwork and photos, his book collection, furniture and furnishing collected from his decades of travel as a pilot, and the mature memorial trees planted in his back yard in honor of his deceased relatives.

329.     The Plan Defendants knew or should have known that their misconduct was likely to be harmful to James Baroni.

330.     The Plan Defendants misconduct was reckless, oppressive, and fraudulent.

331.     The Plan Defendants acted with malice.

332.     The Plan Defendants' Elder Abuse is intentional and ongoing.

## SEVENTH CLAIM FOR RELIEF

### For Intentional Infliction Of Emotional Distress
### Against the Plan Defendants

333.     Plaintiffs incorporate herein by reference, paragraphs 1 through 332 above, as though fully set forth herein.

334.     Seror's repugnant terrorizing of Allana, and malicious intent to take Allana away from her family through his improper August 2019 criminal referral, caused Allana severe emotional distress.

335.     Seror knew that he was entrusted with power such that U.S. Trustee and U.S. attorney give significant weight to trustee criminal referrals. Seror abused his trustee position and improperly exercised his authority when he criminally referred Allana for prosecution to paralyze her from objecting to his collateral attacks on the Plan Order, violations of the Plan Order and of terms and goals of the Plan. Seror abused the power of his position for his and BG Law's financial enrichment.

336.     Seror has not withdrawn his referral to the U.S. Trustee and U.S. Attorney of Allana for criminal prosecution. Seror's misconduct is intentional and ongoing.

337.     The Plan Defendants' collateral attacks on the Plan Order, failure to obey the Plan Order and violations of the terms and goals of the Plan, resulted in the improper taking of the Baronis' hard earned property, including; significant amounts of money, their

1 Carmel and Camarillo real properties, their Calabasas home of 23 years, their family

2 heirlooms, their minor daughters' artwork and photos, their books, furniture and

3 furnishing collected from Mr. Baronis' decades of travel as a pilot, and the mature

4 memorial trees planted in their yard in honor of deceased relatives.

5      338.     The Plan Defendants' collateral attacks on the Plan Order, failure to obey the

6 Plan Order and the terms and goals of the Plan, resulted in the improper unleashing of the

7 US Marshal Services' fully armed, and terrorizing swat operation to remove the Baronis

8 from their home of 23 years.

9      339.     BG Law attorney Jason Komorsky callously laughed at the Baronis during

the September 29, 2023 US Marshal Services' eviction operation.

10      340.     After the US Marshal Services' operation, Mr. Komorsky also appallingly

11 laughed at Allana along with Jimmy Clausen, the buyer to whom Seror improperly sold the

12 Baronis' home of 23 years, while Mr. Clausen cruelly and sarcastically laughed and waived

13 at Allana who was on the street after having been improperly banished from her home of 23

14 years.

15      341.     Severson, Wells Fargo and the Bank of New York Mellon's unleashing of the

16 IRS to terrorize the Baronis, was implemented for the purpose of paralyzing Allana from

17 continuing her objections to their clients' claims filed against Allana's estate, and objecting

18 to their collateral attacks on the Plan Order, and their violations of the Plan Order and

19 terms and goals of the Plan. Neither Severson, Wells Fargo nor the Bank of New York

20 Mellon withdrew their attempts to induce an audit of the Baronis by the IRS. Their

misconduct is intentional and ongoing.

21      342.     The Plan Defendants' misconduct caused Plaintiff Allana Baroni to suffer

22 serious emotional distress in the form of night terrors, anguish, fear, horror, nervousness,

23 grief, anxiety, worry, shock, humiliation, shame, depression, severe hair loss, post-traumatic

24 stress, and suicidal thoughts, such that it made it difficult for Allana to engage with and

25 take care of her family and herself, made it difficult for Allana to work or engage in creating

26 new business, and made it tremendously painful for Allana to engage socially with family,

27 friends and colleagues.

28

343.     The Plan Defendants' misconduct described herein, is a substantial factor in causing Allana Baroni's serious emotional distress.

344.     The Plan Defendants' misconduct rises to the level of despicable conduct, that is so mean, vile, and contemptible that it would be looked down on and despised by reasonable people.

345.     The Plan Defendants' Intentional Infliction of Emotional Distress is intentional and ongoing.

## EIGHTH CLAIM FOR RELIEF

### For Declaratory Relief

346.     Plaintiffs incorporate herein by reference, paragraphs 1 through 345 above, as though fully set forth herein.

347.     The Bankruptcy Court orders that collaterally attack the Plan Order and the terms and conditions of the Plan, are not effective and do not alter the terms and conditions of the Plan.

348.     The Bankruptcy Court orders that collaterally attack the Plan Order are so fundamentally infirm that they are unenforceable, including but not limited to the following:

| Date | Doc. No. | Docket Entry |
|---|---|---|
| 12/04/2020 | 1272 | Findings of Fact and Conclusions of Law Motion to Approve Compromise With Certain Prepetition Lenders filed by Trustee David Seror |
| 12/04/2020 | 1273 | Order Granting Chapter 7 Trustee's Motion for Approval of Compromise with Certain Prepetition Lenders Pursuant to Federal Rule of Bankruptcy Procedure 9019 and Section 363(m) of the Bankruptcy Code. Signed on 12/4/2020. |
| 12/16/2020 | 1287 | Order Granting Motion To: (1) Approve Sale of Real Property Free and Clear of all Liens, Interests, Claims, and Encumbrances with Such Liens, Interests, Claims, and Encumbrances to Attach to Proceeds Pursuant to 11 U.S.C. sections 363(b) and (f); (2) Approve Overbid Procedures; and (3) Determine that Buyer is Entitled to Protection Pursuant to 11 U.S.C. section 363(m) Signed on 12/16/2020 |

| 03/01/2023 | 1774 | Order Granting Chapter 7 Trustee's Amended Motion to: (1) Approve Sale of Real Property Free and Clear of All Liens, Interests, Claims, and Encumbrances With Such Liens, Interests, Claims, and Encumbrances to Attach to Proceeds Pursuant to 11 U.S.C. sections 363(b) and (f); (2) Approve Overbid Procedures; and (3) Determine That Buyer is Entitled to Protection Pursuant to 11 U.S.C. section 363(m) Signed on 3/1/2023 |
|---|---|---|
| 02/13/2023 | 1756 | Order on Trustee's Motion for Approval of Compromise with CIT Bank, N.A., and LoanCare, LLC, Pursuant to Federal Rule of Bankruptcy Procedure 9019. Signed on 2/13/2023 |
| 07/27/2023 | 1919 | Order On Chapter 7 Trustee's Motion To: (1) Approve Sale of Real Property Free and Clear of All Liens, Interests, Claims, And Encumbrances With Such Liens, Interests, Claims, And Encumbrances To Attach To Proceeds Pursuant To 11 U.S.C. §§ 363(b) and (f); (2) Approve Overbid Procedures; (3) Hold Homestead Funds In Estate Pending Reinvestment Pursuant To CCP §704.720(b); And (4) Determine That Buyer Is Entitled To Protection Pursuant To 11 U.S.C. §363(m). 7/27/2023. |

349.    The Baronis seek damages as a result of the requests for entry of these orders.

350.    The Baronis' rights under the Fourteenth Amendment due process clause were violated when the Baronis' were barred from opposing the CIT Plan Violation Agreement, the approval of which led to the improper sale of the Baronis' home of 23 years in violation of the Plan Order and of the terms and goals of the Plan.

351.    Judge Barash lacks jurisdiction to enter orders without due process.

352.    Judge Barash was required to enforce Judge Ahart's Plan Order according to its terms.

353.    Judge Barash does not have jurisdiction to void parts of Judge Ahart's Plan Order.

354.    Judge Barash lacks jurisdiction to enter orders that collaterally attack Judge Ahart's Plan Order.

355.    Orders entered by the Bankruptcy Court without jurisdiction are void.

356.     Seror and BG Law's self-dealing financial interest in which terms of the Plan Order and the Plan are administered and enforced by Seror, and which terms of the Plan Order and the Plan are not administered and enforced by Seror, renders Seror and BG Law not disinterested parties in the administration of the estate of Allana Baroni.

**NINTH CLAIM FOR RELIEF**

**Recovery on the Bonds Against Defendants Liberty Mutual Insurance Company And United States Fire Insurance Company**

357.     Plaintiffs incorporate herein by reference, paragraphs 1 through 356 above, as though fully set for herein.

358.     Liberty Mutual Insurance Company and United States Fire Insurance Company, issued bonds securing the faithful performance of Seror's duties as the appointed trustee in this case.

359.     Seror's faithful performance of his duties required him to comply with the Plan Order.

360.     The claims alleged herein entitle Plaintiffs to recover on the bonds securing the faithful performance of Seror's duties, including recovery for the harm caused by Seror's misconduct when he; failed to obey the Plan Order, defaulted under the Plan Order, violated the Plan Order, collaterally attacked the Plan Order, breached the terms and goals of the Plan, colluded with the other Plan Defendants to collaterally attack and violate the Plan Order, terrorized the Baronis' and abused James Baroni, an elderly military veteran.

WHEREFORE, Plaintiffs demand judgment against Defendants as follows:

1.  For compensatory damages in an amount subject to proof at trial;
2.  For punitive damages in an amount subject to proof at trial;
3.  For disgorgement of all fees and costs paid to Defendants Brutzkus Gubner, and BG Law LLP on an interim basis;
4.  For injunctive relief barring further collateral attacks on the Plan Order;
5.  For declaratory relief from all orders entered in the case that collaterally attack

the Plan Order, violate the Plan Order and violate the terms and goals of the
Plan;

6. For declaratory relief from the violations of the Baronis' Fourteenth Amendment
   due process rights;

7. For declaratory relief finding that Seror and BG Law are not disinterred parties
   in the administration of the Plan and Plan Order, and in the estate of Allana
   Baroni;

8. For Plaintiffs' attorneys fees incurred in all proceedings that arise from
   collateral attacks on the Plan Order, violations of the Plan Order and the terms
   and goals of the Plan, Serer's defaults under the Plan Order and the terms and
   goals of the Plan; and

9. For judgment against Liberty Mutual Insurance Company, and United States
   Fire Insurance Company, for amounts subject to proof at trial.

Dated: November 1, 2024                    LAW OFFICE OF RICHARD L. ANTOGNINI

                                           /s/ Richard L. Antognini
                                           _____
                                           Richard L. Antognini, Esq.
                                           *Attorneys for Plaintiffs*


                                           MORDENTE LAW FIRM, LLC

                                           /s/ Anthony R. Mordente
                                           _____
                                           Anthony R. Mordente, Esq.
                                           *Attorneys for Plaintiffs*

1    **DEMAND FOR JURY TRIAL**

2          Pursuant to Federal Rule of Civil Procedure 38(b), Federal Rule of

3    Bankruptcy Procedure 9015, and the United States Constitution, Plaintiffs hereby demand

4    this adversary proceeding be tried by jury and be presided over by the United State District

5    Court. Plaintiffs do not consent to a jury trial presided over by a Bankruptcy Judge.

6

7

8

9    Dated: November 1, 2024              LAW OFFICE OF RICHARD L. ANTOGNINI

10                                        /s/ Richard L. Antognini

11                                        _____

                                          Richard L. Antognini, Esq.
12                                        *Attorneys for Plaintiffs*

13

14                                        MORDENTE LAW FIRM, LLC

15                                        /s/ Anthony R. Mordente

16                                        _____

                                          Anthony R. Mordente, Esq.
17                                        *Attorneys for Plaintiffs*

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **EXHIBIT 1**



# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
### OFFICE OF THE CLERK

**KATHLEEN J. CAMPBELL**
Executive Officer
Clerk of Court

August 8, 2024

Ms. Allana Baroni
c/o Kathleen P. March, Esq.
The Bankruptcy Law Firm, P.C.
10524 West Pico Boulevard
Suite 212
Los Angeles, California 90064

Re:    Request for Copy of Trustee's Blanket Bond
Allana Baroni, Debtor
Chapter 7 Case No. 1:12-bk-10986-MB

Dear Ms. Baroni:

On July 19, 2024, I received your email request, which was directed to a Clerk's Office staff member, and was properly routed to me as Clerk of Court. Your email requested a copy of trustee David Seror's blanket bond, as Mr. Seror is the trustee appointed to your case. Specifically, you requested the following:

*All bonds that cover(ed) the faithful performance of Chapter 7 Trustee David Seror for the period of April 15, 2019 to the present… please provide the U.S. Fire Insurance bond as well as the bond that covered Mr. Seror's performance for the period from April 15, 2019 to January 22, 2024.*

Pursuant to Section 840(b)(3) of the *Guide to Judiciary Policy*, Vol. 20, Ch 8. (Publicly accessible: https://www.uscourts.gov/rules-policies/judiciary-policies/subpoena-regulations), I am the determining officer, and having reviewed the guidelines set forth in Section 850(a), I have no objection to producing the requested documents. I hereby grant your request.

Enclosed are the bond documents specified in your request.

Sincerely,

*Kathleen J. Campbell*

Kathleen J. Campbell
Executive Officer/Clerk of Court

KJC:jk/lq
Enclosures

cc:    Hon. Theodor C. Albert, Chief Bankruptcy Judge

Edward R. Roybal Federal Building and Courthouse ◆255 East Temple Street ◆Suite 1050 ◆Los Angeles, California 90012

Bond #016030867

### AMENDED SCHEDULE "A"

This Amended Schedule "A" is attached to and made a part of Chapter 7 Blanket Bond # 016030867 filed with the U. S. Trustee and the U. S. Bankruptcy Court for the Central District of California.

| PRINCIPAL | AGGREGATE LIMIT PER TRUSTEE |
|---|---|
| WENETA M. A. KOSMALA | 1,800,000.00 |
| BRAD D. KRASNOFF | 4,100,000.00 |
| HEIDE KURTZ | 4,500,000.00 |
| SAM S. LESLIE | 9,500,000.00 |
| RICHARD A. MARSHACK | 15,700,000.00 |
| PETER J. MASTAN | 4,300,000.00 |
| SANDRA K. MCBETH | 2,800,000.00 |
| JOHN J. MENCHACA | 5,800,000.00 |
| ELISSA MILLER | 10,000,000.00 |
| JERRY NAMBA | 2,300,000.00 |
| KAREN S. NAYLOR | 3,250,000.00 |
| JOHN P. PRINGLE | 2,900,000.00 |
| JASON RUND | 16,000,000.00 |
| DAVID SEROR | 10,117,000.00 |
| ALFRED H. SIEGEL | 5,200,000.00 |
| LARRY D. SIMONS | 2,700,000.00 |
| STEPHEN M. SPEIER | 2,700,000.00 |
| DIANE WEIL | 4,100,000.00 |
| ROBERT S. WHITMORE | 1,715,000.00 |
| JOHN M. WOLFE | 926,400.00 |
| EDWARD M. WOLKOWITZ | 750,000.00 |
| TIMOTHY YOO | 1,600,000.00 |
| NANCY H. ZAMORA | 6,000,000.00 |

PAGE 2 - BOND # 016030867
         CONT'D


     The attached bond shall be subject to all its agreements,
limitations and conditions except as herein expressly amended and
further that the liability of the surety under the attached bond
with amended schedule shall not be cumulative.  The surety shall
have no liability for any losses caused by conduct in which any of
the said named principals engaged prior to the effective date of
the original bond, this renewal or the date of any principal being
added to this bond.

     THIS RENEWAL IS EFFECTIVE THE 4th DAY OF JANUARY, 2019.

     SIGNED AND SEALED THIS 15th DAY OF JANUARY, 2019.


                         LIBERTY MUTUAL INSURANCE COMPANY


                    BY: _____
                         ELIZABETH SCHOTT
                         ATTORNEY-IN-FACT

THIS POWER OF ATTORNEY IS NOT VALID UNLESS IT IS PRINTED ON RED BACKGROUND.
This Power of Attorney limits the acts of those named herein, and they have no authority to bind the Company except in the manner and to the extent herein stated.

Certificate No. 8160954

Liberty Mutual Insurance Company
The Ohio Casualty Insurance Company      West American Insurance Company

# POWER OF ATTORNEY

KNOWN ALL PERSONS BY THESE PRESENTS: That The Ohio Casualty Insurance Company is a corporation duly organized under the laws of the State of New Hampshire, that Liberty Mutual Insurance Company is a corporation duly organized under the laws of the State of Massachusetts, and West American Insurance Company is a corporation duly organized under the laws of the State of Indiana (herein collectively called the "Companies"), pursuant to and by authority herein set forth, does hereby name, constitute and appoint, Stephen Beahm; Andrea Becker; Darlene A. Bornt; Roxanne Craven; Sara S. DeJarnette; Kristine Donovan; Elizabeth C. Dukes; Clark P. Fitz-Hugh; R. Tucker Fitz-Hugh; Candice T. Gros; David C. Joseph; Elizabeth W. Kearney; Catherine C. Kehoe; Conway C. Marshall; Jessica Palmeri; Margaret Schatzman; Elizabeth Schott; Linda C. Sheffield

all of the city of New Orleans , state of LA each individually if there be more than one named, its true and lawful attorney-in-fact to make, execute, seal, acknowledge and deliver, for and on its behalf as surety and as its act and deed, any and all undertakings, bonds, recognizances and other surety obligations, in pursuance of these presents and shall be as binding upon the Companies as if they have been duly signed by the president and attested by the secretary of the Companies in their own proper persons.

IN WITNESS WHEREOF, this Power of Attorney has been subscribed by an authorized officer or official of the Companies and the corporate seals of the Companies have been affixed thereto this 26th day of July , 2018 .



The Ohio Casualty Insurance Company
Liberty Mutual Insurance Company
West American Insurance Company

By: _David M. Carey_
David M. Carey, Assistant Secretary

STATE OF PENNSYLVANIA    ss
COUNTY OF MONTGOMERY

On this 26th day of July , 2018 , before me personally appeared David M. Carey, who acknowledged himself to be the Assistant Secretary of Liberty Mutual Insurance Company, The Ohio Casualty Company, and West American Insurance Company, and that he, as such, being authorized so to do, execute the foregoing instrument for the purposes therein contained by signing on behalf of the corporations by himself as a duly authorized officer.

IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed my notarial seal at King of Prussia, Pennsylvania, on the day and year first above written.



COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Teresa Pastella, Notary Public
Upper Merion Twp., Montgomery County
My Commission Expires March 28, 2021
Member, Pennsylvania Association of Notaries

By: _Teresa Pastella_
Teresa Pastella, Notary Public

This Power of Attorney is made and executed pursuant to and by authority of the following By-laws and Authorizations of The Ohio Casualty Insurance Company, Liberty Mutual Insurance Company, and West American Insurance Company which resolutions are now in full force and effect reading as follows:

ARTICLE IV – OFFICERS – Section 12. Power of Attorney. Any officer or other official of the Corporation authorized for that purpose in writing by the Chairman or the President, and subject to such limitation as the Chairman or the President may prescribe, shall appoint such attorneys-in-fact, as may be necessary to act in behalf of the Corporation to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations. Such attorneys-in-fact, subject to the limitations set forth in their respective powers of attorney, shall have full power to bind the Corporation by their signature and execution of any such instruments and to attach thereto the seal of the Corporation. When so executed, such instruments shall be as binding as if signed by the President and attested to by the Secretary. Any power or authority granted to any representative or attorney-in-fact under the provisions of this article may be revoked at any time by the Board, the Chairman, the President or by the officer or officers granting such power or authority.

ARTICLE XIII – Execution of Contracts – SECTION 5. Surety Bonds and Undertakings. Any officer of the Company authorized for that purpose in writing by the chairman or the president, and subject to such limitations as the chairman or the president may prescribe, shall appoint such attorneys-in-fact, as may be necessary to act in behalf of the Company to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations. Such attorneys-in-fact subject to the limitations set forth in their respective powers of attorney, shall have full power to bind the Company by their signature and execution of any such instruments and to attach thereto the seal of the Company. When so executed such instruments shall be as binding as if signed by the president and attested by the secretary.

Certificate of Designation – The President of the Company, acting pursuant to the Bylaws of the Company, authorizes David M. Carey, Assistant Secretary to appoint such attorneys-in-fact as may be necessary to act on behalf of the Company to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations.

Authorization – By unanimous consent of the Company's Board of Directors, the Company consents that facsimile or mechanically reproduced signature of any assistant secretary of the Company, wherever appearing upon a certified copy of any power of attorney issued by the Company in connection with surety bonds, shall be valid and binding upon the Company with the same force and effect as though manually affixed.

I, Renee C. Llewellyn, the undersigned, Assistant Secretary, The Ohio Casualty Insurance Company, Liberty Mutual Insurance Company, and West American Insurance Company do hereby certify that the original power of attorney of which the foregoing is a full, true and correct copy of this Power of Attorney executed by said Companies, is in full force and effect and has not been revoked.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the seals of said Companies this _____ day of _____ , 20____.



By: _Renee C. Llewellyn_
Renee C. Llewellyn, Assistant Secretary

LMS_12873_022017

765 of 1000

(left margin, vertical text) Not valid for mortgage, note, loan, letter of credit, currency rate, interest rate or residual value guarantees.

(right margin, vertical text) To confirm the validity of this Power of Attorney call 1-610-832-8240 between 9:00 am and 4:30 pm EST on any business day.

**RIDER**

To be attached to and form a part of Chapter 7 Blanket Bond

#016030867, issued by: Liberty Mutual Insurance Company, as surety,

on behalf of: VARIOUS TRUSTEES as principals in the penal sum of:

**VARIOUS**

In consideration of the premium charged for the attached bond, it is
hereby agreed that the attached bond be amended as follows:

INCREASE THE AGGREGATE LIMIT FOR THE FOLLOWING TRUSTEE:

|  | FROM | TO |
|---|---|---|
| DAVID SEROR | $11,040,229.00 | $11,069,310.00 |

  However, that the attached bond shall be subject to all its
agreements, limitations and conditions except as herein expressly
modified, and further that the liability of the Surety under the
attached bond and the attached bond as amended by this rider shall
not be cumulative. The surety shall have no liability for any losses
caused by conduct in which said name Principal or Principals engaged
prior to the inception date of this bond. This bond is continuous.

This rider shall become effective as of the 7th day of July, 2020.

Signed, sealed and dated this 23rd day of July, 2020.

                         Liberty Mutual Insurance Company


                         BY: ELIZABETH SCHOTT
                             ATTORNEY-IN-FACT

This Power of Attorney limits the acts of those named herein, and they have no authority to
bind the Company except in the manner and to the extent herein stated.



Liberty Mutual Insurance Company
The Ohio Casualty Insurance Company
West American Insurance Company

Certificate No: **8198098-016083**

# POWER OF ATTORNEY

**KNOWN ALL PERSONS BY THESE PRESENTS:** That The Ohio Casualty Insurance Company is a corporation duly organized under the laws of the State of New Hampshire, that
Liberty Mutual Insurance Company is a corporation duly organized under the laws of the State of Massachusetts, and West American Insurance Company is a corporation duly organized
under the laws of the State of Indiana (herein collectively called the "Companies"), pursuant to and by authority herein set forth, does hereby name, constitute and appoint, Stephen
Beahm; Andrea Becker; Darlene A. Bornt; Roxanne Craven; Sara S. DeJarnette; Kristine Donovan; Elizabeth C. Dukes; Clark P. Fitz-Hugh; R. Tucker Fitz-Hugh;
Candice T. Gros; David C. Joseph; Elizabeth W. Kearney; Catherine C. Kehoe; Conway C. Marshall; Jessica Palmeri; Margaret Schatzman; Elizabeth Schott; Linda C.
Sheffield

all of the city of ___New Orleans___ state of ___LA___    each individually if there be more than one named, its true and lawful attorney-in-fact to make,
execute, seal, acknowledge and deliver, for and on its behalf as surety and as its act and deed, any and all undertakings, bonds, recognizances and other surety obligations, in pursuance
of these presents and shall be as binding upon the Companies as if they have been duly signed by the president and attested by the secretary of the Companies in their own proper
persons.

**IN WITNESS WHEREOF,** this Power of Attorney has been subscribed by an authorized officer or official of the Companies and the corporate seals of the Companies have been affixed
thereto this ___3rd___ day of ___December___, ___2018___.




Liberty Mutual Insurance Company
The Ohio Casualty Insurance Company
West American Insurance Company

By: _David M. Carey_
David M. Carey, Assistant Secretary

State of PENNSYLVANIA    ss
County of MONTGOMERY

On this ___3rd___ day of ___December___, ___2018___ before me personally appeared David M. Carey, who acknowledged himself to be the Assistant Secretary of Liberty Mutual Insurance
Company, The Ohio Casualty Company, and West American Insurance Company, and that he, as such, being authorized so to do, execute the foregoing instrument for the purposes
therein contained by signing on behalf of the corporations by himself as a duly authorized officer.

**IN WITNESS WHEREOF,** I have hereunto subscribed my name and affixed my notarial seal at King of Prussia, Pennsylvania, on the day and year first above written.



COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Teresa Pastella, Notary Public
Upper Merion Twp., Montgomery County
My Commission Expires March 28, 2021
Member, Pennsylvania Association of Notaries

By: _Teresa Pastella_
Teresa Pastella, Notary Public

This Power of Attorney is made and executed pursuant to and by authority of the following By-laws and Authorizations of The Ohio Casualty Insurance Company, Liberty Mutual
Insurance Company, and West American Insurance Company which resolutions are now in full force and effect reading as follows:

**ARTICLE IV – OFFICERS:** Section 12. Power of Attorney.
Any officer or other official of the Corporation authorized for that purpose in writing by the Chairman or the President, and subject to such limitation as the Chairman or the
President may prescribe, shall appoint such attorneys-in-fact, as may be necessary to act in behalf of the Corporation to make, execute, seal, acknowledge and deliver as surety
any and all undertakings, bonds, recognizances and other surety obligations. Such attorneys-in-fact, subject to the limitations set forth in their respective powers of attorney, shall
have full power to bind the Corporation by their signature and execution of any such instruments and to attach thereto the seal of the Corporation. When so executed, such
instruments shall be as binding as if signed by the President and attested to by the Secretary. Any power or authority granted to any representative or attorney-in-fact under the
provisions of this article may be revoked at any time by the Board, the Chairman, the President or by the officer or officers granting such power or authority.

**ARTICLE XIII – Execution of Contracts:** Section 5. Surety Bonds and Undertakings.
Any officer of the Company authorized for that purpose in writing by the chairman or the president, and subject to such limitations as the chairman or the president may prescribe,
shall appoint such attorneys-in-fact, as may be necessary to act in behalf of the Company to make, execute, seal, acknowledge and deliver as surety any and all undertakings,
bonds, recognizances and other surety obligations. Such attorneys-in-fact subject to the limitations set forth in their respective powers of attorney, shall have full power to bind the
Company by their signature and execution of any such instruments and to attach thereto the seal of the Company. When so executed such instruments shall be as binding as if
signed by the president and attested by the secretary.

**Certificate of Designation** – The President of the Company, acting pursuant to the Bylaws of the Company, authorizes David M. Carey, Assistant Secretary to appoint such attorneys-in-
fact as may be necessary to act on behalf of the Company to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety
obligations.

**Authorization** – By unanimous consent of the Company's Board of Directors, the Company consents that facsimile or mechanically reproduced signature of any assistant secretary of the
Company, wherever appearing upon a certified copy of any power of attorney issued by the Company in connection with surety bonds, shall be valid and binding upon the Company with
the same force and effect as though manually affixed.

I, Renee C. Llewellyn, the undersigned, Assistant Secretary, The Ohio Casualty Insurance Company, Liberty Mutual Insurance Company, and West American Insurance Company do
hereby certify that the original power of attorney of which the foregoing is a full, true and correct copy of the Power of Attorney executed by said Companies, is in full force and effect and
has not been revoked.

**IN TESTIMONY WHEREOF,** I have hereunto set my hand and affixed the seals of said Companies this _____ day of _____, _____.





By: _Renee C. Llewellyn_
Renee C. Llewellyn, Assistant Secretary

LMS-12873 LMIC OCIC WAIC Multi Co_062018

*(left margin, rotated)* Not valid for mortgage, note, loan, letter of credit, currency rate, interest rate or residual value guarantees.

*(right margin, rotated)* To confirm the validity of this Power of Attorney call 1-610-832-8240 between 9:00 am and 4:30 pm EST on any business day

**RIDER**

To be attached to and form a part of Chapter 7 Blanket Bond

#016030867, issued by: Liberty Mutual Insurance Company, as surety,

on behalf of: VARIOUS TRUSTEES as principals in the penal sum of:

**VARIOUS**

In consideration of the premium charged for the attached bond, it is
hereby agreed that the attached bond be amended as follows:

INCREASE THE AGGREGATE LIMIT FOR THE FOLLOWING TRUSTEE:

|  | FROM | TO |
|---|---|---|
| DAVID SEROR | $11,040,229.00 | $11,069,310.00 |

    However, that the attached bond shall be subject to all its
agreements, limitations and conditions except as herein expressly
modified, and further that the liability of the Surety under the
attached bond and the attached bond as amended by this rider shall
not be cumulative. The surety shall have no liability for any losses
caused by conduct in which said name Principal or Principals engaged
prior to the inception date of this bond. This bond is continuous.

This rider shall become effective as of the 7th day of July, 2020.

Signed, sealed and dated this 23rd day of July, 2020.

                          Liberty Mutual Insurance Company


                          BY: ELIZABETH SCHOTT
                              ATTORNEY-IN-FACT

This Power of Attorney limits the acts of those named herein, and they have no authority to
bind the Company except in the manner and to the extent herein stated.



Liberty Mutual Insurance Company
The Ohio Casualty Insurance Company
West American Insurance Company

Certificate No: **8198098-016083**

# POWER OF ATTORNEY

**KNOWN ALL PERSONS BY THESE PRESENTS:** That The Ohio Casualty Insurance Company is a corporation duly organized under the laws of the State of New Hampshire, that Liberty Mutual Insurance Company is a corporation duly organized under the laws of the State of Massachusetts, and West American Insurance Company is a corporation duly organized under the laws of the State of Indiana (herein collectively called the "Companies"), pursuant to and by authority herein set forth, does hereby name, constitute and appoint, Stephen Beahm; Andrea Becker; Darlene A. Bornt; Roxanne Craven; Sara S. DeJarnette; Kristine Donovan; Elizabeth C. Dukes; Clark P. Fitz-Hugh; R. Tucker Fitz-Hugh; Candice T. Gros; David C. Joseph; Elizabeth W. Kearney; Catherine C. Kehoe; Conway C. Marshall; Jessica Palmeri; Margaret Schatzman; Elizabeth Schott; Linda C. Sheffield

all of the city of _____ New Orleans _____ state of _____ LA _____ each individually if there be more than one named, its true and lawful attorney-in-fact to make, execute, seal, acknowledge and deliver, for and on its behalf as surety and as its act and deed, any and all undertakings, bonds, recognizances and other surety obligations, in pursuance of these presents and shall be as binding upon the Companies as if they have been duly signed by the president and attested by the secretary of the Companies in their own proper persons.

**IN WITNESS WHEREOF,** this Power of Attorney has been subscribed by an authorized officer or official of the Companies and the corporate seals of the Companies have been affixed thereto this ___ 3rd ___ day of ___ December ___ , ___ 2018 ___ .




Liberty Mutual Insurance Company
The Ohio Casualty Insurance Company
West American Insurance Company

By: _David M. Carey_
David M. Carey, Assistant Secretary

State of PENNSYLVANIA
County of MONTGOMERY ss

On this ___ 3rd ___ day of ___ December ___ , ___ 2018 ___ before me personally appeared David M. Carey, who acknowledged himself to be the Assistant Secretary of Liberty Mutual Insurance Company, The Ohio Casualty Company, and West American Insurance Company, and that he, as such, being authorized so to do, execute the foregoing instrument for the purposes therein contained by signing on behalf of the corporations by himself as a duly authorized officer.

**IN WITNESS WHEREOF,** I have hereunto subscribed my name and affixed my notarial seal at King of Prussia, Pennsylvania, on the day and year first above written.



COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Teresa Pastella, Notary Public
Upper Merion Twp., Montgomery County
My Commission Expires March 28, 2021
Member, Pennsylvania Association of Notaries

By: _Teresa Pastella_
Teresa Pastella, Notary Public

This Power of Attorney is made and executed pursuant to and by authority of the following By-laws and Authorizations of The Ohio Casualty Insurance Company, Liberty Mutual Insurance Company, and West American Insurance Company which resolutions are now in full force and effect reading as follows:

**ARTICLE IV – OFFICERS: Section 12. Power of Attorney.**
Any officer or other official of the Corporation authorized for that purpose in writing by the Chairman or the President, and subject to such limitation as the Chairman or the President may prescribe, shall appoint such attorneys-in-fact, as may be necessary to act in behalf of the Corporation to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations. Such attorneys-in-fact, subject to the limitations set forth in their respective powers of attorney, shall have full power to bind the Corporation by their signature and execution of any such instruments and to attach thereto the seal of the Corporation. When so executed, such instruments shall be as binding as if signed by the President and attested to by the Secretary. Any power or authority granted to any representative or attorney-in-fact under the provisions of this article may be revoked at any time by the Board, the Chairman, the President or by the officer or officers granting such power or authority.

**ARTICLE XIII – Execution of Contracts: Section 5. Surety Bonds and Undertakings.**
Any officer of the Company authorized for that purpose in writing by the chairman or the president, and subject to such limitations as the chairman or the president may prescribe, shall appoint such attorneys-in-fact, as may be necessary to act in behalf of the Company to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations. Such attorneys-in-fact subject to the limitations set forth in their respective powers of attorney, shall have full power to bind the Company by their signature and execution of any such instruments and to attach thereto the seal of the Company. When so executed such instruments shall be as binding as if signed by the president and attested by the secretary.

**Certificate of Designation** – The President of the Company, acting pursuant to the Bylaws of the Company, authorizes David M. Carey, Assistant Secretary to appoint such attorneys-in-fact as may be necessary to act on behalf of the Company to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations.

**Authorization** – By unanimous consent of the Company's Board of Directors, the Company consents that facsimile or mechanically reproduced signature of any assistant secretary of the Company, wherever appearing upon a certified copy of any power of attorney issued by the Company in connection with surety bonds, shall be valid and binding upon the Company with the same force and effect as though manually affixed.

I, Renee C. Llewellyn, the undersigned, Assistant Secretary, The Ohio Casualty Insurance Company, Liberty Mutual Insurance Company, and West American Insurance Company do hereby certify that the original power of attorney of which the foregoing is a full, true and correct copy of the Power of Attorney executed by said Companies, is in full force and effect and has not been revoked.

**IN TESTIMONY WHEREOF,** I have hereunto set my hand and affixed the seals of said Companies this _____ day of _____ , _____ .





By: _Renee C. Llewellyn_
Renee C. Llewellyn, Assistant Secretary

*(left margin)* Not valid for mortgage, note, loan, letter of credit, currency rate, interest rate or residual value guarantees.

*(right margin)* To confirm the validity of this Power of Attorney call 1-610-832-8240 between 9:00 am and 4:30 pm EST on any business day.

LMS-12873 LMIC OCIC WAIC Multi Co_062018

Bond #016030867

## AMENDED SCHEDULE "A"

     This Amended Schedule "A" is attached to and made a part of
Chapter 7 Blanket Bond # 016030867 filed with the U. S. Trustee and
the U. S. Bankruptcy Court for the Central District of California.

| PRINCIPAL | AGGREGATE LIMIT PER TRUSTEE |
|---|---|
| WENETA M. A. KOSMALA | 1,500,000.00 |
| BRAD D. KRASNOFF | 3,400,000.00 |
| HEIDE KURTZ | 6,500,000.00 |
| SAM S. LESLIE | 3,000,000.00 |
| RICHARD A. MARSHACK | 17,400,000.00 |
| PETER J. MASTAN | 2,500,000.00 |
| SANDRA K. MCBETH | 3,500,000.00 |
| JOHN J. MENCHACA | 3,000,000.00 |
| ELISSA MILLER | 9,300,000.00 |
| JERRY NAMBA | 2,300,000.00 |
| KAREN S. NAYLOR | 6,000,000.00 |
| JOHN P. PRINGLE | 3,100,000.00 |
| JASON RUND | 9,000,000.00 |
| DAVID SEROR | 11,040,229.00 |
| ALFRED H. SIEGEL | 2,730,000.00 |
| LARRY D. SIMONS | 5,500,000.00 |
| STEPHEN M. SPEIER | 2,500,000.00 |
| DIANE WEIL | 4,100,000.00 |
| ROBERT S. WHITMORE | 3,250,000.00 |
| JOHN M. WOLFE | 665,000.00 |
| EDWARD M. WOLKOWITZ | 1,000,000.00 |
| TIMOTHY YOO | 5,900,000.00 |
| NANCY H. ZAMORA | 5,000,000.00 |

PAGE 2 - BOND # 016030867
        CONT'D


        The attached bond shall be subject to all its agreements,
limitations and conditions except as herein expressly amended and
further that the liability of the surety under the attached bond
with amended schedule shall not be cumulative.  The surety shall
have no liability for any losses caused by conduct in which any of
the said named principals engaged prior to the effective date of
the original bond, this renewal or the date of any principal being
added to this bond.

        THIS RENEWAL IS EFFECTIVE THE 4th DAY OF JANUARY, 2020.

        SIGNED AND SEALED THIS 6th DAY OF JANUARY, 2020.


                        LIBERTY MUTUAL INSURANCE COMPANY


                        BY: _____
                            ELIZABETH SCHOTT
                            ATTORNEY-IN-FACT

This Power of Attorney limits the acts of those named herein, and they have no authority to
bind the Company except in the manner and to the extent herein stated.

**Liberty Mutual.**
SURETY

Liberty Mutual Insurance Company
The Ohio Casualty Insurance Company        Certificate No: **8198098-016083**
West American Insurance Company

# POWER OF ATTORNEY

KNOWN ALL PERSONS BY THESE PRESENTS: That The Ohio Casualty Insurance Company is a corporation duly organized under the laws of the State of New Hampshire, that Liberty Mutual Insurance Company is a corporation duly organized under the laws of the State of Massachusetts, and West American Insurance Company is a corporation duly organized under the laws of the State of Indiana (herein collectively called the "Companies"), pursuant to and by authority herein set forth, does hereby name, constitute and appoint, Stephen Beahm; Andrea Becker; Darlene A. Bornt; Roxanne Craven; Sara S. DeJarnette; Kristine Donovan; Elizabeth C. Dukes; Clark P. Fitz-Hugh; R. Tucker Fitz-Hugh; Candice T. Gros; David C. Joseph; Elizabeth W. Kearney; Catherine C. Kehoe; Conway C. Marshall; Jessica Palmeri; Margaret Schatzman; Elizabeth Schott; Linda C. Sheffield

all of the city of    New Orleans    state of    LA    each individually if there be more than one named, its true and lawful attorney-in-fact to make, execute, seal, acknowledge and deliver, for and on its behalf as surety and as its act and deed, any and all undertakings, bonds, recognizances and other surety obligations, in pursuance of these presents and shall be as binding upon the Companies as if they have been duly signed by the president and attested by the secretary of the Companies in their own proper persons.

IN WITNESS WHEREOF, this Power of Attorney has been subscribed by an authorized officer or official of the Companies and the corporate seals of the Companies have been affixed thereto this    3rd    day of    December  ,  2018  .

  

Liberty Mutual Insurance Company
The Ohio Casualty Insurance Company
West American Insurance Company

By:
David M. Carey, Assistant Secretary

State of PENNSYLVANIA
County of MONTGOMERY    ss

On this    3rd    day of    December  ,  2018    before me personally appeared David M. Carey, who acknowledged himself to be the Assistant Secretary of Liberty Mutual Insurance Company, The Ohio Casualty Company, and West American Insurance Company, and that he, as such, being authorized so to do, execute the foregoing instrument for the purposes therein contained by signing on behalf of the corporations by himself as a duly authorized officer.

IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed my notarial seal at King of Prussia, Pennsylvania, on the day and year first above written.



COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Teresa Pastella, Notary Public
Upper Merion Twp., Montgomery County
My Commission Expires March 28, 2021
Member, Pennsylvania Association of Notaries

By:
Teresa Pastella, Notary Public

This Power of Attorney is made and executed pursuant to and by authority of the following By-laws and Authorizations of The Ohio Casualty Insurance Company, Liberty Mutual Insurance Company, and West American Insurance Company which resolutions are now in full force and effect reading as follows:

ARTICLE IV – OFFICERS: Section 12. Power of Attorney.
Any officer or other official of the Corporation authorized for that purpose in writing by the Chairman or the President, and subject to such limitation as the Chairman or the President may prescribe, shall appoint such attorneys-in-fact, as may be necessary to act in behalf of the Corporation to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations. Such attorneys-in-fact, subject to the limitations set forth in their respective powers of attorney, shall have full power to bind the Corporation by their signature and execution of any such instruments and to attach thereto the seal of the Corporation. When so executed, such instruments shall be as binding as if signed by the President and attested to by the Secretary. Any power or authority granted to any representative or attorney-in-fact under the provisions of this article may be revoked at any time by the Board, the Chairman, the President or by the officer or officers granting such power or authority.

ARTICLE XIII – Execution of Contracts: Section 5. Surety Bonds and Undertakings.
Any officer of the Company authorized for that purpose in writing by the chairman or the president, and subject to such limitations as the chairman or the president may prescribe, shall appoint such attorneys-in-fact, as may be necessary to act in behalf of the Company to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations. Such attorneys-in-fact subject to the limitations set forth in their respective powers of attorney, shall have full power to bind the Company by their signature and execution of any such instruments and to attach thereto the seal of the Company. When so executed such instruments shall be as binding as if signed by the president and attested by the secretary.

Certificate of Designation – The President of the Company, acting pursuant to the Bylaws of the Company, authorizes David M. Carey, Assistant Secretary to appoint such attorneys-in-fact as may be necessary to act on behalf of the Company to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations.

Authorization – By unanimous consent of the Company's Board of Directors, the Company consents that facsimile or mechanically reproduced signature of any assistant secretary of the Company, wherever appearing upon a certified copy of any power of attorney issued by the Company in connection with surety bonds, shall be valid and binding upon the Company with the same force and effect as though manually affixed.

I, Renee C. Llewellyn, the undersigned, Assistant Secretary, The Ohio Casualty Insurance Company, Liberty Mutual Insurance Company, and West American Insurance Company do hereby certify that the original power of attorney of which the foregoing is a full, true and correct copy of the Power of Attorney executed by said Companies, is in full force and effect and has not been revoked.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the seals of said Companies this _____ day of _____, _____.

  

By:
Renee C. Llewellyn, Assistant Secretary

Not valid for mortgage, note, loan, letter of credit, currency rate, interest rate or residual value guarantees.

To confirm the validity of this Power of Attorney call 1-610-832-8240 between 9:00 am and 4:30 pm EST on any business day.

LMS-12873 LMIC OCIC WAIC Multi Co_062018

BOND #016229731

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
### WOODLAND HILLS DIVISION
#### BLANKET BOND OF TRUSTEES IN CASES UNDER CHAPTER 7
##### AND CHAPTER 11, PROVIDED IT IS A LIQUIDATION
###### AND NOT A REORGANIZATION
###### UNITED STATES BANKRUPTCY CODE

## KNOW ALL MEN BY THESE PRESENTS:

That we, Interim Trustees and/or Trustees named in the attached schedule by reference made part hereof as Principals and those who may from time to time be added by amendment, and LIBERTY MUTUAL INSURANCE COMPANY, a corporation duly licensed to do business in the State of California, as Surety, are held and firmly bound unto the United States of America in the amount of FORTY FIVE MILLION AND 00/100 DOLLARS $45,000,000.00 Dollars in lawful money of the United States, to be paid to the United States, for which payment, well and truly to be made, we bind ourselves and our heirs, executors, administrators and successors and assigns, jointly and severally, by these presents. Provided, however, that each individual Trustee shall be liable only for his/her individual responsibilities as Trustee.

### THE CONDITION OF THIS OBLIGATION IS SUCH THAT:

**WHEREAS,** the United States Trustee for the Central District of California, or his/her designate, has or will appoint Trustees in cases under Chapter 7 and Chapter 11, provided it is a liquidation and not a reorganization of the United States Bankruptcy Code;

**WHEREAS,** the said Principals named or subsequently added thereto by amendment may have been appointed or may hereafter be appointed to serve as such Trustee in one or more of such cases;

**NOW THEREFORE,** if the said Principals named or subsequently added thereto as Trustee as aforesaid shall obey such orders as the United States Bankruptcy Court or the United States District Court or any of the Judges of such court may make in relation to the trust undertaken by said Trustee, and shall faithfully and truly account for all moneys, assets and effects of the estate in each case in which he or she has been appointed or will be appointed, and shall in all respects faithfully perform all his or her official duties as Trustee, then this obligation to be void otherwise, to remain in full force and effect.

Page 2

**BOND #016229731**

The aggregate liability of the Surety for all claims asserted against this bond shall be limited to the face amount of the bond regardless of the number of years it is in effect and regardless of the number of cases involved. In no event shall the Surety's liability exceed the amount of this bond, notwithstanding the number of trustees named as principals. The Surety's liability in each case covered by this bond shall become effective on the date of this bond.

This bond shall remain in full force and effect with respect to all cases pending in this court until the Surety has terminated further liability after 60 days written notice filed with the United States Trustee for the Central District of California and/or with the Clerk of the Bankruptcy Court for the District of Central District of California, **OR** the Surety obtains written authorization from the U.S. Trustee or his/her designate releasing the surety company from any further liability under the bond.

**EFFECTIVE THE 4th DAY OF JANUARY, 2021.**

**SIGNED AND SEALED THE 4th DAY OF JANUARY, 2021.**

LIBERTY MUTUAL INSURANCE COMPANY

BY: _Elizabeth Schott_
ELIZABETH SCHOTT
ATTORNEY-IN-FACT

ACCEPTED:

Peter C. Anderson    Digitally signed by Peter C. Anderson
                     Date: 2021.01.04 13:24:31 -08'00'
_____
U. S. Trustee's Office
Central District of California
Woodland Hills Division

Page 3

**BOND #016229731**

### SCHEDULE "A"

This Schedule "A" is attached to and made a part of the Chapter 7 Blanket Bond #016229731 filed with the U. S. Trustee and the U.S. Bankruptcy Court for the Central District of California, Woodland Hills Division.

### PRINCIPALS

JEREMY W. FAITH
AMY L. GOLDMAN
DAVID K. GOTTLIEB
DAVID HAGEN
SANDRA K. MCBETH
JERRY NAMBA
DAVID SEROR
DIANE WEIL
NANCY H. ZAMORA

This Power of Attorney limits the acts of those named herein, and they have no authority to
bind the Company except in the manner and to the extent herein stated.

Liberty Mutual.
SURETY

Liberty Mutual Insurance Company
The Ohio Casualty Insurance Company
West American Insurance Company

Certificate No: **8198098-016083**

# POWER OF ATTORNEY

KNOWN ALL PERSONS BY THESE PRESENTS: That The Ohio Casualty Insurance Company is a corporation duly organized under the laws of the State of New Hampshire, that Liberty Mutual Insurance Company is a corporation duly organized under the laws of the State of Massachusetts, and West American Insurance Company is a corporation duly organized under the laws of the State of Indiana (herein collectively called the "Companies"), pursuant to and by authority herein set forth, does hereby name, constitute and appoint, Stephen Beahm; Andrea Becker; Darlene A. Bornt, Roxanne Craven, Sara S. DeJarnette; Kristine Donovan; Elizabeth C. Dukes; Clark P. Fitz-Hugh; R. Tucker Fitz-Hugh; Candice T. Gros; David C. Joseph; Elizabeth W. Kearney; Catherine C. Kehoe; Conway C. Marshall; Jessica Palmeri; Margaret Schatzman; Elizabeth Schott; Linda C Sheffield

all of the city of _____New Orleans_____ state of _____LA_____ each individually if there be more than one named, its true and lawful attorney-in-fact to make, execute, seal, acknowledge and deliver, for and on its behalf as surety and as its act and deed, any and all undertakings, bonds, recognizances and other surety obligations, in pursuance of these presents and shall be as binding upon the Companies as if they have been duly signed by the president and attested by the secretary of the Companies in their own proper persons.

IN WITNESS WHEREOF, this Power of Attorney has been subscribed by an authorized officer or official of the Companies and the corporate seals of the Companies have been affixed thereto this ___3rd___ day of ___December___, 2018.



Liberty Mutual Insurance Company
The Ohio Casualty Insurance Company
West American Insurance Company

By: _____
David M. Carey, Assistant Secretary

State of PENNSYLVANIA
County of MONTGOMERY  ss

On this ___3rd___ day of ___December___, 2018 before me personally appeared David M. Carey, who acknowledged himself to be the Assistant Secretary of Liberty Mutual Insurance Company, The Ohio Casualty Company, and West American Insurance Company, and that he, as such, being authorized so to do, execute the foregoing instrument for the purposes therein contained by signing on behalf of the corporations by himself as a duly authorized officer.

IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed my notarial seal at King of Prussia, Pennsylvania, on the day and year first above written.



COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Teresa Pastella, Notary Public
Upper Merion Twp., Montgomery County
My Commission Expires March 28, 2021
Member, Pennsylvania Association of Notaries

By: _____
Teresa Pastella, Notary Public

This Power of Attorney is made and executed pursuant to and by authority of the following By-laws and Authorizations of The Ohio Casualty Insurance Company, Liberty Mutual Insurance Company, and West American Insurance Company which resolutions are now in full force and effect reading as follows:

**ARTICLE IV – OFFICERS:** Section 12. Power of Attorney.
Any officer or other official of the Corporation authorized for that purpose in writing by the Chairman or the President, and subject to such limitation as the Chairman or the President may prescribe, shall appoint such attorneys-in-fact, as may be necessary to act in behalf of the Corporation to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations. Such attorneys-in-fact, subject to the limitations set forth in their respective powers of attorney, shall have full power to bind the Corporation by their signature and execution of any such instruments and to attach thereto the seal of the Corporation. When so executed, such instruments shall be as binding as if signed by the President and attested to by the Secretary. Any power or authority granted to any representative or attorney-in-fact under the provisions of this article may be revoked at any time by the Board, the Chairman, the President or by the officer or officers granting such power or authority.

**ARTICLE XIII – Execution of Contracts:** Section 5. Surety Bonds and Undertakings.
Any officer of the Company authorized for that purpose in writing by the chairman or the president, and subject to such limitations as the chairman or the president may prescribe, shall appoint such attorneys-in-fact, as may be necessary to act in behalf of the Company to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations. Such attorneys-in-fact subject to the limitations set forth in their respective powers of attorney, shall have full power to bind the Company by their signature and execution of any such instruments and to attach thereto the seal of the Company. When so executed such instruments shall be as binding as if signed by the president and attested by the secretary.

**Certificate of Designation** – The President of the Company, acting pursuant to the Bylaws of the Company, authorizes David M. Carey, Assistant Secretary to appoint such attorneys-in-fact as may be necessary to act on behalf of the Company to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations.

**Authorization** – By unanimous consent of the Company's Board of Directors, the Company consents that facsimile or mechanically reproduced signature of any assistant secretary of the Company, wherever appearing upon a certified copy of any power of attorney issued by the Company in connection with surety bonds, shall be valid and binding upon the Company with the same force and effect as though manually affixed.

I, Renee C. Llewellyn, the undersigned, Assistant Secretary, The Ohio Casualty Insurance Company, Liberty Mutual Insurance Company, and West American Insurance Company do hereby certify that the original power of attorney of which the foregoing is a full, true and correct copy of the Power of Attorney executed by said Companies, is in full force and effect and has not been revoked.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the seals of said Companies this _____ day of _____, _____.



By: _____
Renee C. Llewellyn, Assistant Secretary

*Sidebar left:* Not valid for mortgage, note, loan, letter of credit, currency rate, interest rate or residual value guarantees.

*Sidebar right:* To confirm the validity of this Power of Attorney call 1-610-832-8240 between 9:00 am and 4:30 pm EST on any business day.

LMS-12873 LMIC OCIC WAIC Multi Co_052018

BOND #016229731

## RENEWAL CERTIFICATE

    This Amended Schedule "A" is attached to and made a part of Chapter 7 Blanket Bond #016229731 filed with the U. S. Trustee and the U. S. Bankruptcy Court for the Central District of California – Woodland Hills Division.

    The attached bond shall be subject to all its agreements, limitations and conditions except as herein expressly amended and further that the liability of the Surety under the attached bond shall not exceed the amount of $30,000,000.00 and shall not be cumulative. The Surety shall have no liability for any losses caused by conduct in which any of the said named principals engaged prior to the effective date of the original bond or the effective date of their being added to the bond.

## PRINCIPAL

JEREMY W. FAITH
AMY L. GOLDMAN
DAVID K. GOTTLIEB
SANDRA K. MCBETH
JERRY NAMBA
DAVID SEROR
DIANE WEIL
NANCY H. ZAMORA

       **THIS RENEWAL IS EFFECTIVE THE 4th DAY OF JANUARY, 2022.**

       **SIGNED AND SEALED THIS 29th DAY OF DECEMBER, 2021.**

                  **LIBERTY MUTUAL INSURANCE COMPANY**

                  **BY:** _____
                        ELIZABETH SCHOTT
                        ATTORNEY-IN-FACT

ACCEPTED:

_____
U. S. Trustee's Office
Central District of California
Woodland Hills Division



This Power of Attorney limits the acts of those named herein, and they have no authority to
bind the Company except in the manner and to the extent herein stated.

Liberty Mutual Insurance Company
The Ohio Casualty Insurance Company
West American Insurance Company

Certificate No: **8206836-016083**

# POWER OF ATTORNEY

KNOWN ALL PERSONS BY THESE PRESENTS: That The Ohio Casualty Insurance Company is a corporation duly organized under the laws of the State of New Hampshire, that Liberty Mutual Insurance Company is a corporation duly organized under the laws of the State of Massachusetts, and West American Insurance Company is a corporation duly organized under the laws of the State of Indiana (herein collectively called the "Companies"), pursuant to and by authority herein set forth, does hereby name, constitute and appoint,  Amanda Riedl; Candice T. Gros; Catherine C. Kehoe; Clark P. Fitz-Hugh; Conway C. Marshall; Darlene A. Bornt; David C. Joseph; Elizabeth C. Dukes; Elizabeth Schott; Jessica Palmeri; Kristine Donovan; R. Tucker Fitz-Hugh; Sara S. DeJarnette; Stephen Beahm

all of the city of _____ New Orleans _____ state of _____ LA _____ each individually if there be more than one named, its true and lawful attorney-in-fact to make, execute, seal, acknowledge and deliver, for and on its behalf as surety and as its act and deed, any and all undertakings, bonds, recognizances and other surety obligations, in pursuance of these presents and shall be as binding upon the Companies as if they have been duly signed by the president and attested by the secretary of the Companies in their own proper persons.

IN WITNESS WHEREOF, this Power of Attorney has been subscribed by an authorized officer or official of the Companies and the corporate seals of the Companies have been affixed thereto this  19th  day of  November , 2021 .

 

Liberty Mutual Insurance Company
The Ohio Casualty Insurance Company
West American Insurance Company

By: _____
David M. Carey, Assistant Secretary

State of PENNSYLVANIA    ss
County of MONTGOMERY

On this  19th  day of  November , 2021  before me personally appeared David M. Carey, who acknowledged himself to be the Assistant Secretary of Liberty Mutual Insurance Company, The Ohio Casualty Company, and West American Insurance Company, and that he, as such, being authorized so to do, execute the foregoing instrument for the purposes therein contained by signing on behalf of the corporations by himself as a duly authorized officer.

IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed my notarial seal at King of Prussia, Pennsylvania, on the day and year first above written.



Commonwealth of Pennsylvania - Notary Seal
Teresa Pastella, Notary Public
Montgomery County
My commission expires March 28, 2025
Commission number 1126044
Member: Pennsylvania Association of Notaries

By: _____
Teresa Pastella, Notary Public

This Power of Attorney is made and executed pursuant to and by authority of the following By-laws and Authorizations of The Ohio Casualty Insurance Company, Liberty Mutual Insurance Company, and West American Insurance Company which resolutions are now in full force and effect reading as follows:

ARTICLE IV – OFFICERS: Section 12. Power of Attorney.
Any officer or other official of the Corporation authorized for that purpose in writing by the Chairman or the President, and subject to such limitation as the Chairman or the President may prescribe, shall appoint such attorneys-in-fact, as may be necessary to act in behalf of the Corporation to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations. Such attorneys-in-fact, subject to the limitations set forth in their respective powers of attorney, shall have full power to bind the Corporation by their signature and execution of any such instruments and to attach thereto the seal of the Corporation. When so executed, such instruments shall be as binding as if signed by the President and attested to by the Secretary. Any power or authority granted to any representative or attorney-in-fact under the provisions of this article may be revoked at any time by the Board, the Chairman, the President or by the officer or officers granting such power or authority.

ARTICLE XIII – Execution of Contracts: Section 5. Surety Bonds and Undertakings.
Any officer of the Company authorized for that purpose in writing by the chairman or the president, and subject to such limitations as the chairman or the president may prescribe, shall appoint such attorneys-in-fact, as may be necessary to act in behalf of the Company to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations. Such attorneys-in-fact subject to the limitations set forth in their respective powers of attorney, shall have full power to bind the Company by their signature and execution of any such instruments and to attach thereto the seal of the Company. When so executed such instruments shall be as binding as if signed by the president and attested by the secretary.

Certificate of Designation – The President of the Company, acting pursuant to the Bylaws of the Company, authorizes David M. Carey, Assistant Secretary to appoint such attorneys-in-fact as may be necessary to act on behalf of the Company to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations.

Authorization – By unanimous consent of the Company's Board of Directors, the Company consents that facsimile or mechanically reproduced signature of any assistant secretary of the Company, wherever appearing upon a certified copy of any power of attorney issued by the Company in connection with surety bonds, shall be valid and binding upon the Company with the same force and effect as though manually affixed.

I, Renee C. Llewellyn, the undersigned, Assistant Secretary, The Ohio Casualty Insurance Company, Liberty Mutual Insurance Company, and West American Insurance Company do hereby certify that the original power of attorney of which the foregoing is a full, true and correct copy of the Power of Attorney executed by said Companies, is in full force and effect and has not been revoked.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the seals of said Companies this _____ day of _____ , _____ .

  

By: _____
Renee C. Llewellyn, Assistant Secretary

*Vertical left margin:* Not valid for mortgage, note, loan, letter of credit, currency rate, interest rate or residual value guarantees.

*Vertical right margin:* For bond and/or Power of Attorney (POA) verification inquiries, please call 610-832-8240 or email HOSUR@libertymutual.com.

LMS-12873 LMIC OCIC WAIC Multi Co 02/21

BOND #016229731

## RENEWAL CERTIFICATE

This Amended Schedule "A" is attached to and made a part of Chapter 7 Blanket Bond #016229731 filed with the U. S. Trustee and the U. S. Bankruptcy Court for the Central District of California – Woodland Hills Division.

The attached bond shall be subject to all its agreements, limitations and conditions except as herein expressly amended and further that the liability of the Surety under the attached bond shall not exceed the amount of $35,000,000.00 and shall not be cumulative. The Surety shall have no liability for any losses caused by conduct in which any of the said named principals engaged prior to the effective date of the original bond or the effective date of their being added to the bond.

## PRINCIPAL

JEREMY W. FAITH
AMY L. GOLDMAN
DAVID K. GOTTLIEB
SANDRA K. MCBETH
JERRY NAMBA
DAVID SEROR
DIANE C. WEIL
NANCY H. ZAMORA

**THIS RENEWAL IS EFFECTIVE THE 4th DAY OF JANUARY, 2023.**

**SIGNED AND SEALED THIS 30th DAY OF DECEMBER, 2022.**

LIBERTY MUTUAL INSURANCE COMPANY

BY: *Elizabeth Schott*

ELIZABETH SCHOTT
ATTORNEY-IN-FACT

ACCEPTED:

_____

U. S. Trustee's Office
Central District of California
Woodland Hills Division

This Power of Attorney limits the acts of those named herein, and they have no authority to
bind the Company except in the manner and to the extent herein stated.

**Liberty Mutual** SURETY

Liberty Mutual Insurance Company
The Ohio Casualty Insurance Company
West American Insurance Company

Certificate No: **8206836-016083**

# POWER OF ATTORNEY

**KNOWN ALL PERSONS BY THESE PRESENTS:** That The Ohio Casualty Insurance Company is a corporation duly organized under the laws of the State of New Hampshire, that Liberty Mutual Insurance Company is a corporation duly organized under the laws of the State of Massachusetts, and West American Insurance Company is a corporation duly organized under the laws of the State of Indiana (herein collectively called the "Companies"), pursuant to and by authority herein set forth, does hereby name, constitute and appoint, Amanda Riedl; Candice T Gros; Catherine C. Kehoe; Clark P. Fitz-Hugh; Conway C. Marshall; Darlene A. Bornt; David C. Joseph; Elizabeth C. Dukes; Elizabeth Schott; Jessica Palmeri; Kristine Donovan; R. Tucker Fitz-Hugh; Sara S. DeJarnette; Stephen Beahm

all of the city of _____ New Orleans _____ state of _____ LA _____ each individually if there be more than one named, its true and lawful attorney-in-fact to make, execute, seal, acknowledge and deliver, for and on its behalf as surety and as its act and deed, any and all undertakings, bonds, recognizances and other surety obligations, in pursuance of these presents and shall be as binding upon the Companies as if they have been duly signed by the president and attested by the secretary of the Companies in their own proper persons.

**IN WITNESS WHEREOF,** this Power of Attorney has been subscribed by an authorized officer or official of the Companies and the corporate seals of the Companies have been affixed thereto this _____ 19th _____ day of _____ November _____ , 2021 .

 

Liberty Mutual Insurance Company
The Ohio Casualty Insurance Company
West American Insurance Company

By: _____
David M. Carey, Assistant Secretary

State of PENNSYLVANIA
County of MONTGOMERY    ss

On this _____ 19th _____ day of _____ November _____ , 2021 before me personally appeared David M. Carey, who acknowledged himself to be the Assistant Secretary of Liberty Mutual Insurance Company, The Ohio Casualty Company, and West American Insurance Company, and that he, as such, being authorized so to do, execute the foregoing instrument for the purposes therein contained by signing on behalf of the corporations by himself as a duly authorized officer.

**IN WITNESS WHEREOF,** I have hereunto subscribed my name and affixed my notarial seal at King of Prussia, Pennsylvania, on the day and year first above written.



Commonwealth of Pennsylvania - Notary Seal
Teresa Pastella, Notary Public
Montgomery County
My commission expires March 28, 2025
Commission number 1126044
Member, Pennsylvania Association of Notaries

By: _____
Teresa Pastella, Notary Public

This Power of Attorney is made and executed pursuant to and by authority of the following By-laws and Authorizations of The Ohio Casualty Insurance Company, Liberty Mutual Insurance Company, and West American Insurance Company which resolutions are now in full force and effect reading as follows:

**ARTICLE IV – OFFICERS:** Section 12. Power of Attorney.
Any officer or other official of the Corporation authorized for that purpose in writing by the Chairman or the President, and subject to such limitation as the Chairman or the President may prescribe, shall appoint such attorneys-in-fact, as may be necessary to act in behalf of the Corporation to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations. Such attorneys-in-fact, subject to the limitations set forth in their respective powers of attorney, shall have full power to bind the Corporation by their signature and execution of any such instruments and to attach thereto the seal of the Corporation. When so executed, such instruments shall be as binding as if signed by the President and attested to by the Secretary. Any power or authority granted to any representative or attorney-in-fact under the provisions of this article may be revoked at any time by the Board, the Chairman, the President or by the officer or officers granting such power or authority.

**ARTICLE XIII – Execution of Contracts:** Section 5. Surety Bonds and Undertakings.
Any officer of the Company authorized for that purpose in writing by the chairman or the president, and subject to such limitations as the chairman or the president may prescribe, shall appoint such attorneys-in-fact, as may be necessary to act in behalf of the Company to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations. Such attorneys-in-fact subject to the limitations set forth in their respective powers of attorney, shall have full power to bind the Company by their signature and execution of any such instruments and to attach thereto the seal of the Company. When so executed such instruments shall be as binding as if signed by the president and attested by the secretary.

**Certificate of Designation** – The President of the Company, acting pursuant to the Bylaws of the Company, authorizes David M. Carey, Assistant Secretary to appoint such attorneys-in-fact as may be necessary to act on behalf of the Company to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations.

**Authorization** – By unanimous consent of the Company's Board of Directors, the Company consents that facsimile or mechanically reproduced signature of any assistant secretary of the Company, wherever appearing upon a certified copy of any power of attorney issued by the Company in connection with surety bonds, shall be valid and binding upon the Company with the same force and effect as though manually affixed.

I, Renee C. Llewellyn, the undersigned, Assistant Secretary, The Ohio Casualty Insurance Company, Liberty Mutual Insurance Company, and West American Insurance Company do hereby certify that the original power of attorney of which the foregoing is a full, true and correct copy of the Power of Attorney executed by said Companies, is in full force and effect and has not been revoked.

**IN TESTIMONY WHEREOF,** I have hereunto set my hand and affixed the seals of said Companies this _____ day of _____ , _____ .

  

By: _____
Renee C. Llewellyn, Assistant Secretary

LMS-12873 LMIC OCIC WAIC Multi Co 02/21

*Sidebar left (rotated):* Not valid for mortgage, note, loan, letter of credit, currency rate, interest rate or residual value guarantees.

*Sidebar right (rotated):* For bond and/or Power of Attorney (POA) verification inquiries, please call 610-832-8240 or email HOSUR@libertymutual.com.

BOND #612419604

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA – REGION 16
BLANKET BOND OF TRUSTEES IN CASES UNDER CHAPTER 7
AND CHAPTER 11, PROVIDED IT IS A LIQUIDATION
AND NOT A REORGANIZATION
UNITED STATES BANKRUPTCY CODE

**KNOW ALL MEN BY THESE PRESENTS:**

That we, Interim Trustees and/or Trustees named in the attached schedule by reference made part hereof as Principals and those who may from time to time be added by amendment, and UNITED STATES FIRE INSURANCE COMPANY, a corporation duly licensed to do business in the State of California, as Surety, are held and firmly bound unto the United States of America in the amount of THIRTY MILLION AND 00/100 DOLLARS $30,000,000.00 Dollars in lawful money of the United States, to be paid to the United States, for which payment, well and truly to be made, we bind ourselves and our heirs, executors, administrators and successors and assigns, jointly and severally, by these presents. Provided, however, that each individual Trustee shall be liable only for his/her individual responsibilities as Trustee.

**THE CONDITION OF THIS OBLIGATION IS SUCH THAT:**

**WHEREAS,** the United States Trustee for the Central District of California, or his/her designate, has or will appoint Trustees in cases under Chapter 7 and Chapter 11, provided it is a liquidation and not a reorganization of the United States Bankruptcy Code;

**WHEREAS,** the said Principals named or subsequently added thereto by amendment may have been appointed or may hereafter be appointed to serve as such Trustee in one or more of such cases;

**NOW THEREFORE,** if the said Principals named or subsequently added thereto as Trustee as aforesaid shall obey such orders as the United States Bankruptcy Court or the United States District Court or any of the Judges of such court may make in relation to the trust undertaken by said Trustee, and shall faithfully and truly account for all moneys, assets and effects of the estate in each case in which he or she has been appointed or will be appointed, and shall in all respects faithfully perform all his or her official duties as Trustee, then this obligation to be void otherwise, to remain in full force and effect.

Page 2

**BOND #612419604**

The aggregate liability of the Surety for all claims asserted against this bond shall be limited to the face amount of the bond regardless of the number of years it is in effect and regardless of the number of cases involved. In no event shall the Surety's liability exceed the amount of this bond, notwithstanding the number of trustees named as principals. The Surety's liability in each case covered by this bond shall become effective on the date of this bond.

This bond shall remain in full force and effect with respect to all cases pending in this court until the Surety has terminated further liability after 60 days written notice filed with the United States Trustee for the Central District of California and/or with the Clerk of the Bankruptcy Court for the Central District of California, **OR** the Surety obtains written authorization from the United States Trustee or his/her designate releasing the surety company from any further liability under the bond.

**EFFECTIVE THE 4th DAY OF JANUARY 2024.**

**SIGNED AND SEALED THE 22nd DAY OF JANUARY 2024.**

UNITED STATES FIRE INSURANCE COMPANY

BY: *Elizabeth Schott*

ELIZABETH SCHOTT
ATTORNEY-IN-FACT

Page 3

**BOND #612419604**

## SCHEDULE "A"

This Schedule "A" is attached to and made a part of the Chapter 7 Blanket Bond #612419604 filed with the United States Trustee and the United States Bankruptcy Court for the Central District of California.

### PRINCIPALS

JEREMY W. FAITH
AMY L. GOLDMAN
DAVID K. GOTTLIEB
SANDRA K. MCBETH
JERRY NAMBA
DAVID SEROR
DIANE WEIL
NANCY H. ZAMORA

POWER OF ATTORNEY
# UNITED STATES FIRE INSURANCE COMPANY
## PRINCIPAL OFFICE - MORRISTOWN, NEW JERSEY

**KNOW ALL MEN BY THESE PRESENTS:** That United States Fire Insurance Company, a corporation duly organized and existing under the laws of the state of Delaware, has made, constituted and appointed, and does hereby make, constitute and appoint: **Clark Fitz-Hugh; Conway C. Marshall; Sara S. DeJarnette; Linda C. Sheffield; Catherine C. Kehoe; Stephen Beahm; Kristine Donovan; Jessica Palmeri; Elizabeth Schott; David C. Joseph; Kelli Cross; Amanda Riedl; Andre Autin; Taylor Coss; Francesca Menard; Victoria Scruggs of International Sureties, Ltd.**

each, its true and lawful Attorney(s)-In-Fact, with full power and authority hereby conferred in its name, place and stead, to execute, acknowledge and deliver: Any and all bonds and undertakings of surety and other documents that the ordinary course of surety business may require, and to bind United States Fire Insurance Company thereby as fully and to the same extent as if such bonds or undertakings had been duly executed and acknowledged by the regularly elected officers of United States Fire Insurance Company at its principal office, in amounts or penalties: **One Hundred Twenty Five Million Eight Hundred Thousand Dollars ($125,800,000)**

This Power of Attorney limits the act of those named therein to the bonds and undertakings specifically named therein, and they have no authority to bind United States Fire Insurance Company except in the manner and to the extent therein stated.

This Power of Attorney revokes all previous Powers of Attorney issued on behalf of the Attorneys-In-Fact named above.

This Power of Attorney is granted pursuant to Article IV of the By-Laws of United States Fire Insurance Company as now in full force and effect, and consistent with Article III thereof, which Articles provide, in pertinent part:

Article IV, Execution of Instruments - Except as the Board of Directors may authorize by resolution, the Chairman of the Board, President, any Vice-President, any Assistant Vice President, the Secretary, or any Assistant Secretary shall have power on behalf of the Corporation:

(a) to execute, affix the corporate seal manually or by facsimile to, acknowledge, verify and deliver any contracts, obligations, instruments and documents whatsoever in connection with its business including, without limiting the foregoing, any bonds, guarantees, undertakings, recognizances, powers of attorney or revocations of any powers of attorney, stipulations, policies of insurance, deeds, leases, mortgages, releases, satisfactions and agency agreements;
(b) to appoint, in writing, one or more persons for any or all of the purposes mentioned in the preceding paragraph (a), including affixing the seal of the Corporation.

Article III, Officers, Section 3.11, Facsimile Signatures. The signature of any officer authorized by the Corporation to sign any bonds, guarantees, undertakings, recognizances, stipulations, powers of attorney or revocations of any powers of attorney and policies of insurance issued by the Corporation may be printed, facsimile, lithographed or otherwise produced. In addition, if and as authorized by the Board of Directors, dividend warrants or checks, or other numerous instruments similar to one another in form, may be signed by the facsimile signature or signatures, lithographed or otherwise produced, of such officer or officers of the Corporation as from time to time may be authorized to sign such instruments on behalf of the Corporation. The Corporation may continue to use for the purposes herein stated the facsimile signature of any person or persons who shall have been such officer or officers of the Corporation, notwithstanding the fact that he may have ceased to be such at the time when such instruments shall be issued.

**IN WITNESS WHEREOF,** United States Fire Insurance Company has caused these presents to be signed and attested by its appropriate officer and its corporate seal hereunto affixed this 28th day of September, 2021.

UNITED STATES FIRE INSURANCE COMPANY



Matthew E. Lubin,  President

State of New Jersey}
County of Morris   }

On this 28th day of September, 2021, before me, a Notary public of the State of New Jersey, came the above named officer of United States Fire Insurance Company, to me personally known to be the individual and officer described herein, and acknowledged that he executed the foregoing instrument and affixed the seal of United States Fire Insurance Company thereto by the authority of his office.

MELISSA H. D'ALESSIO
NOTARY PUBLIC OF NEW JERSEY
Commission # 50125833
My Commission Expires 4/7/2026

Melissa H. D'Alessio   (Notary Public)

I, the undersigned officer of United States Fire Insurance Company, a Delaware corporation, do hereby certify that the original Power of Attorney of which the foregoing is a full, true and correct copy is still in force and effect and has not been revoked.

**IN WITNESS WHEREOF,** I have hereunto set my hand and affixed the corporate seal of United States Fire Insurance Company on the 4th day of January    2024

UNITED STATES FIRE INSURANCE COMPANY

Michael C. Fay

Michael C. Fay, Senior Vice President

*For verification of the authenticity of the Power of Attorney, please contact Pat Taber at 860-956-3424 or email: SuretyInquiries@amyntagroup.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

# **EXHIBIT 2**

27
28

Ian S. Landsberg, Esq. (SBN: 137431)
**LANDSBERG & ASSOCIATES**
**A Professional Law Corporation**
5950 Canoga Avenue, Suite 605
Woodland Hills, CA. 91367
Telephone: (818) 855-5900
Facsimile: (818) 855-5910
Email: ilandsberg@landsberg-law.com

Attorneys for Debtor and Debtor in Possession

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re | Case No. 1:12-bk-10986-AA |
| | |
| ALLANA BARONI, | Chapter 11 |
| | **SECOND AMENDED DISCLOSURE STATEMENT AND PLAN OF REORGANIZATION FOR ALLANA BARONI** |
| Debtor and Debtor in Possession. | |
| | Date: April 3, 2013 |
| | Time: 10:00 a.m. |
| | Ctrm: "303" |

| | |
|---|---|
| 1 | <div align="center">**Table of Contents**</div> |

| | | |
|---|---|---|
| 2 | I. | Introduction ……………………………………………………………… | 2 |
| 3 | II. | General Disclaimer and Voting Procedure ………………………………………… | 2 |
| 4 | III. | Who May Object to Confirmation of the Plan ………………………………………… | 3 |
| 5 | IV. | Who May Vote to Accept or Reject the Plan ………………………………….. | 4 |
| 6 | V. | Votes Necessary to Confirm the Plan ………………………………………… | 6 |
| 7 | VI. | Information Regarding Voting in This Case ……………………………………... | 6 |
| 8 | VII. | Description of Debtor's Past and Future Business and Events Precipitating Bankruptcy | |
| 9 | | Filing ……………………………………………………………………... | 7 |
| 10 | VIII. | Pre-Confirmation Requirements of Debtor ………………………………………… | 11 |
| 11 | IX. | Critical Plan Provisions …………………………………………………….. | 11 |
| 12 | X. | Description of Treatment of Claims ………………………………………………... | 12 |
| 13 | | a. Overview of Plan Payments ……………………………………………… | 12 |
| 14 | | b. Wholly and Partially Unsecured Liens to be Stripped from Rental Properties ….. | 15 |
| 15 | | c. Disputed Claims Reserve ………………………………………………… | 17 |
| 16 | | d. Administrative Expenses ………………………………………………… | 18 |
| 17 | | Administrative Expense #1…………………………………………….. | 19 |
| 18 | | Administrative Expense #2…………………………………………….. | 19 |
| 19 | | Administrative Expense #3…………………………………………….. | 19 |
| 20 | | Administrative Expense #4…………………………………………….. | 19 |
| 21 | | Administrative Expense #5…………………………………………….. | 19 |
| 22 | | e. Unsecured Tax Claims ………………………………………………. | 20 |
| 23 | | Tax Claim #1……………………………………………………………… | 20 |
| 24 | | f. Class One …………………………………………………………….. | 20 |
| 25 | | g. Class Two …………………………………………………………….. | 21 |
| 26 | | h. Class Three …………………………………………………………….. | 21 |
| 27 | | i. Class Four ……………………………………………………………. | 22 |
| 28 | | j. Class Five…………………………………………………………… | 24 |

1        k.  Class Six ……………………………………………………………    26

2        l.  Class Seven………………………………………………………………    28

3        m.  Class Eight ……………………………………………………………    30

4        n.  Class Nine ……………………………………………………………    31

5   XI.    Source of Money to Pay Claims …………………………………………………    32

6   XII.    Financial Records to Assist in Determining Whether Proposed Payment is Feasible ……    33

7   XIII.    Assests and Liabilities of the Estate ……………………………………………...    33

8        a.  Assets …………………………………………………………………...    33

9        b.  Liabilities …………………………………………………………………    33

10        c.  Summary ……………………………………………………………………    33

11   XIV.    Treatment of Nonconsenting Classes ……………………………………………    34

12   XV.    Treatment of Nonconsenting Members of Consenting Class (Chapter 7 Liquidation

13        Analysis) ……………………………………………………………………    35

14   XVI.    Future Debtor ………………………………………………………………    36

15        a.  Management of Debtor ………………………………………………………...    36

16        b.  Disbursing Agent ……………………………………………………………    36

17        c.  Future Financial Outlook ……………………………………………………    36

18   XVII.    Sale or Transfer of Property; Assumption of Contracts and Leases; Other Provisions …..    38

19   XVIII.   Bankruptcy Proceedings ……………………………………………………    38

20   XVIX.    Tax Consequences of Plan …………………………………………………...    39

21   XX.    Effect of Confirmation of Plan ……………………………………………………...    39

22        a.  General Comments ……………………………………………………………    39

23        b.  Discharge of liability for payment of debts; status of liens; equity security

24        holders …………………………………………………………………    40

25        c.  Modification of the Plan ……………………………………………………    41

26        d.  Post-Confirmation Causes of Action …………………………………………..    41

27        e.  Final Decree ……………………………………………………………    41

28   XXI.    Declaration in Support of Disclosure Statement and Plan ……………………………..    42

I.    **INTRODUCTION**

On February 1, 2012, Allana Baroni, debtor and debtor in possession ("Debtor") filed a

bankruptcy petition under Chapter 13 of the Bankruptcy Code ("Code").  On February 29, 2012,

the case was converted to Chapter 11.  The document you are reading is <u>both</u> the Plan of

Reorganization ("Plan") and the Disclosure Statement. Debtor ("Proponent") has proposed the Plan

to treat the claims of the Debtor's creditors and, if applicable, the interests of shareholders or

partners and to reorganize the Debtor's business affairs.  A disclosure statement describes the

assumptions that underlie the Plan and how the Plan will be executed.  The Bankruptcy Court

("Court") has approved the form of this document as an adequate disclosure statement, containing

enough information to enable parties affected by the Plan to make an informed judgment about the

Plan.  The Court has not yet confirmed the Plan, which means the terms of the Plan are not now

binding on anyone.

The Proponent has reserved April 3, 2013 at 10:00 a.m. in Courtroom 1375 for a hearing to

determine whether the Court will confirm the Plan.

Any interested party desiring further information should contact: Ian S. Landsberg at

Landsberg & Associates, A Professional Law Corporation, 5950 Canoga Avenue, Suite 605,

Woodland Hills, California 91367.(818) 855-5900.


II.    **GENERAL DISCLAIMER AND VOTING PROCEDURE**

PLEASE READ THIS DOCUMENT, INCLUDING THE ATTACHED EXHIBITS,

CAREFULLY. IT EXPLAINS WHO MAY OBJECT TO CONFIRMATION OF THE PLAN.  IT

EXPLAINS WHO IS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN.  IT ALSO

TELLS ALL CREDITORS AND ANY SHAREHOLDERS OR PARTNERS WHAT

DISCLOSURE STATEMENT AND PLAN OF ALLANA BARONI

TREATMENT THEY CAN EXPECT TO RECEIVE UNDER THE PLAN, SHOULD THE PLAN

BE CONFIRMED BY THE COURT.

THE SOURCES OF FINANCIAL DATA RELIED UPON IN FORMULATING THIS

DOCUMENT ARE SET FORTH IN THE DECLARATION IN SECTION XXI BELOW.  ALL

REPRESENTATIONS ARE TRUE TO THE PROPONENT'S BEST KNOWLEDGE.


NO REPRESENTATIONS CONCERNING THE DEBTOR THAT ARE INCONSISTENT WITH

ANYTHING CONTAINED HEREIN ARE AUTHORIZED EXCEPT TO THE EXTENT, IF AT

ALL, THAT THE COURT ORDERS OTHERWISE.

After carefully reviewing this document and the attached exhibits, please vote on the

enclosed ballot and return it in the enclosed envelope.

The Proponent has reserved a hearing date for a hearing to determine whether the Court will

confirm the Plan.  Please refer to Section I above for the specific hearing date.  If, after receiving

the ballots, it appears that the Proponent has the requisite number of votes required by the Code,

the Proponent will file a motion for an order confirming the Plan.

The Motion shall at least be served on all impaired creditors and partners or shareholders

who reject the Plan and on the Office of the United States Trustee.  Any opposition to the Motion

shall be filed and served on the Proponent no later than fourteen days prior to the hearing date.

Failure to oppose the confirmation of the Plan may be deemed consent to the Plan's confirmation.


**III.     WHO MAY OBJECT TO CONFIRMATION OF THE PLAN**

Any party in interest may object to confirmation of the Plan, but as explained below not

everyone is entitled to vote to accept or reject the Plan.

1    **IV.    WHO MAY VOTE TO ACCEPT OR REJECT THE PLAN**

2
3        It requires both an allowed and impaired claim or interest in order to vote either to accept
4    or reject the Plan.  A claim is defined by the Code to include a right to payment from the Debtor.
5    An interest represents an ownership stake in the Debtor.
6
7    In order to vote a creditor or interest-holder must first have an <u>allowed claim or interest</u>. With the
8    exceptions explained below, a claim is allowed if proof of the claim or interest is properly filed
9    before any bar date and no party in interest has objected, or if the court has entered an order
10   allowing the claim or interest.  Please refer to Section VI below for specific information regarding
11   bar dates in this case.
12
13       Under certain circumstances a creditor may have an allowed claim even if a proof of claim
14   was not filed and the bar date for filing a proof of claim has passed.  A claim is deemed allowed if
15   the claim is listed on the Debtor's schedules and is not scheduled as disputed, contingent, or
16   unliquidated.  **Exhibit "1"** contains a list of claims that are not scheduled as disputed, contingent,
17   or unliquidated.
18
19       Similarly, an interest is deemed allowed if it is shown on the list of equity security holders
20   filed by the Debtor with the court and is not scheduled as disputed.
21       In order to vote, an allowed claim or interest must also be impaired by the Plan.
22       <u>Impaired creditors</u> include those whose legal, equitable, and contractual rights are altered by
23   the Plan, even if the alteration is beneficial to the creditor.  A contract provision that entitles a
24   creditor to accelerated payment upon default does not, however, necessarily render the claimant
25   impaired, even if the Debtor defaulted and the Plan does not provide the creditor with accelerated
26   payment.  The creditor is deemed unimpaired so long as the Plan cures the default, reinstates the
27
28
                                          4              Case No. 1:12-bk-10986-AA
            DISCLOSURE STATEMENT AND PLAN OF ALLANA BARONI

maturity of such claim as it existed before default, compensates for any damages incurred as a result of reasonable reliance upon the acceleration clause, and (except for a default arising from failure to operate a nonresidential lease subject to 11 U.S.C.A. § 365 (b)(1)(A) (West Supp. 2006)) compensates for any actual pecuniary loss incurred as a result of any failure to perform a non-monetary obligation.

_Impaired interest-holders_ include those whose legal, equitable, and contractual rights are altered by the Plan, even if the alteration is beneficial to the interest holder.

There are also some types of claims that the Code requires be treated a certain way. For that reason they are considered unimpaired and therefore holders of these claims cannot vote.

_To summarize, there are two prerequisites to voting: a claim or interest must be both allowed and impaired under the Plan._

If a creditor or interest-holder has an allowed and impaired claim or interest, then he or she may vote either to accept or reject the Plan (unimpaired claimants or interest-holders are deemed to have accepted the Plan). Impaired claims or interests are placed in classes and it is the class that must accept the Plan. Members of unimpaired classes do not vote, although as stated above, they may object to confirmation of the Plan. Even if all classes do not vote in favor of the Plan, the Plan may nonetheless be confirmed if the dissenting classes are treated in a manner prescribed by the Code. Please refer to Section VI below for information regarding impaired and unimpaired classes in this case.

Section IX sets forth which claims are in which class. Secured claims are placed in separate classes from unsecured claims. Fed. R. Bankr. P. 3018(d) provides: "A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim shall be entitled to accept or reject a plan in both capacities."

1    **V.    VOTES NECESSARY TO CONFIRM THE PLAN**

2            The Court may confirm the Plan if at least one noninsider impaired class of claims has

3    accepted and certain statutory requirements are met as to both nonconsenting members within a

4    consenting class and as to dissenting classes.  A class of claims has accepted the Plan when more

5    than one-half in number and at least two-thirds in amount of the allowed claims actually voting,

6    vote in favor of the Plan.  A class of interests has accepted the Plan when at least two-thirds in

7    amount of the allowed interests of such class actually voting have accepted it.  It is important to

8    remember that even if the requisite number of votes to confirm the Plan are obtained, the Plan will

9    not bind the parties unless and until the Court makes an independent determination that

10   confirmation is appropriate.  That is the subject of any upcoming confirmation hearing.

11

12

13   **VI.    INFORMATION REGARDING VOTING IN THIS CASE**

14          The bar date for filing a proof of claim in this case was September 17, 2012.

15          The bar date for objecting to claims has not yet been set by the Court.

16          In this case the Proponent believes that classes one through nine are impaired and therefore

17   entitled to vote.  There are no unimpaired who are not entitled to vote.  A party that disputes the

18   Proponent's characterization of its claim or interest as unimpaired may request a finding of

19   impairment from the Court in order to obtain the right to vote.

20          Ballots must be received by the Proponent, addressed to Summer Saad, Landsberg &

21   Associates, A Professional Law Corporation, 5950 Canoga Avenue, Suite 605, Woodland Hills,

22   California by February 6, 2013 by 5:00 p.m.

23   //

24

25

26

27

28
                                                     6                    Case No.  1:12-bk-10986-AA
                          DISCLOSURE STATEMENT AND PLAN OF ALLANA BARONI

## VII.   DESCRIPTION OF DEBTOR'S PAST AND FUTURE BUSINESS AND EVENTS

## PRECIPITATING BANKRUPTCY FILING

The Debtor is an individual. The Debtor is not a small business debtor as defined in 11

U.S.C.A. § 101(51D) (West Supp. 2006).

Debtor conducts 100% of her business activity in the state of California.  Although,

Debtor's business includes much travel to locations outside the state of California.

What follows is a brief summary of the dates and circumstances that led Debtor to file

bankruptcy.

Debtor has three rental properties.  Due to the economic downturn, she has been forced to

lower the rent due from tenants in each of the rentals in order to keep each property occupied.  For

example, Debtor's rental property in Carmel, California initially rented for $4,500 per month but

had to be reduced to as low as $2,800.  This was insufficient to cover the mortgage on the

property.  Also, Debtor's rental property in Henderson, Nevada used to rent for $3,500 per month

but now only rents for $2,000 per month. It is insufficient to cover the mortgage.  Finally, Debtor's

rental property in Camarillo, California used to rent for $5,400 per month but now only rents for

$4,500 per month.  The rental income cannot service the debt.  Pre-petition, Debtor received

communications from parties purporting to be able to restructure the debt on each property and

Debtor engaged in discussions in hopes of obtaining a restructure that could turn the properties

around such that they could service the debt and pay the HOA, taxes, insurance and other

maintenance expenses.  However, Debtor encountered problems reaching the entity that had the

authority to restructure the debt.  In attempting to reach that entity, Debtor discovered that much

trouble existed with respect to the mortgages. Debtor has since hired special litigation counsel

whose investigation reveals that the alleged lenders utilized the then prevailing technique of loan

7

DISCLOSURE STATEMENT AND PLAN OF ALLANA BARONI

securitization and are not the persons entitled to enforce the claims.  With just a cursory review,

and consistent with industry practice, the alleged creditor banks have failed to disclose payments

made as a result of the debt and further failed to disclose that they have pledged the same first

position debt into multiple income streams fabricating notes and conveying them into numerous

domestic and offshore failed trusts.  By the alleged lenders conduct they have violated numerous

state and federal statutory provisions and by then attempting to enforce these improper claims the

bank (creditors) have breached their common law duties to Debtor.  The potential causes of action

arising from such facts are identified on **Exhibit 2** and may result in a setoff of various secured

claims as described below.  Debtor will seek to achieve through this Chapter 11 Plan what she

attempted pre-petition -- to restructure secured debt on rental properties so that the rental income

can service the debt and cover HOA dues, property taxes, insurance and other maintenance

expenses. The Plan will also create reserve accounts where appropriate to ensure plan payments are

not disbursed to the wrong party and will hold plan payments in trust for the allowed claim holder

as described below.

   After discovering the problems with her rental properties, Debtor began an investigation

into whether payments on her home mortgage were being directed to the appropriate claimant.  She

engaged in multiple discussions with One West Bank, the most-recent entity to assert that it was

the first trust deed holder.  However, this created much confusion.  For example, the One West

Bank indicated that it was attempting to collect on a 30 year fixed rate note but Debtor had

executed a 40 adjustable rate year note. Needless to say, Debtor was extremely troubled by this.

One West Bank agreed that an investigation was appropriate and that during the investigation,

Debtor would set aside mortgage payments instead of making them to One West and that during

such period, no late fees would be assessed and no negative reporting to credit agencies would be

made. However, One West breached that agreement and initiated foreclosure proceedings. Debtor was forced to file for relief under the bankruptcy code to avoid the foreclosure. Debtor is now presenting a Chapter 11 Plan of Reorganization which restructures debt on the rental properties and creates protections against paying the wrong party on the wrong note, while preserving all claims and rights to setoffs that may exist, which special counsel is pursuing.

What follows is a <u>brief</u> description of the Debtor's business and future business plans. Further details relating to the Debtor's financial condition and post-confirmation operation of the Debtor are found in sections X, XI, XII, XVI, and XV.

Debtor has three sources of income. The first is the compensation she earns from her personal services. She performs such services by and through an entity wholly owned by Debtor and her spouse, Baroni Enterprises, LLC. Debtor's average monthly income received from Baroni Enterprises is $5,884.55. The second source of income is the regular contribution to household expenses from her spouse who also receives compensation for personal services performed by and through Baroni Enterprises. The average monthly income of Debtor's spouse received from Baroni Enterprises is $16,686. Collectively, Debtor and Debtor's spouse will continue to perform such personal services and expect to earn the same collective average monthly income post-petition.

More specifically, and as disclosed in Debtor's Amended Schdule I, Debtor and her spouse earn income as follows: Baroni Enterprises, LLC is a personal services corporation, which generates revenue solely from the personal services performed by Debtor and her spouse. As such, it would have no value, if sold. Debtor and her spouse perform personal services through Baroni Enterprises, LLC and receive from Baroni Enterprises, LLC the average monthly income reflected in Amended Schedule I, specifically, Debtor receives $5,884.55 for her personal services rendered as an author and spokeswoman; and Debtor's spouse receives an average of $16,686 per month for

his personal services rendered as a business aviation consultant.  These figures are disclosed in line

7  of Schedule I "Regular Income from operation of business or profession or farm."  Debtor and

her spouse also receive "Income from real property" in the amount of $9,800, which is also

disclosed in Amended Schedule I, line 8 (appearing in the right column).  This income is not

generated from Baroni Enterprises, LLC,  but instead is the rental income Debtor and her spouse

receive from the rental properties described below.   The total combined average monthly income

on line 16 of Amended Schedule I is "$32,370.55 (e.g., the sum of (1) Debtor's monthly income for

personal services rendered through Baroni Enterprises, LLC - $5,884.55;  (2) Debtor's spouse's

average monthly income received for personal services rendered through Baroni Enterprises, LLC -

$16,686; and (3) the monthly rental income Debtor and her spouse receive from the rental

properties described in this Disclosure Statement - $9,800).

        The rental income is derived  from 4 rental properties she owns, each of which is listed

below:

Carmel Rental:

1. Single family residence located at 3435 Rio Road, Carmel, California

2. 3700 square feet

3. 100% Occupancy Rate

4. Debtor will continue to lease this property.

Henderson Rental:

1. Condominium located at 2240 Village Walk Drive, Unit 2311, Henderson, Nevada

2. 1800 square feet

3. 100% Occupancy Rate

4. Debtor will continue to lease this property.

Camarillo Rental:

1. Single family residence located at 5390 Plata Rosa Court, Camrillo, California

2. 4834 square feet

3. 100% Occupancy Rate

4. Debtor will continue to lease this property.


**VIII.    PRE-CONFIRMATION REQUIREMENTS OF DEBTOR**

Debtor has provided her most recently filed tax documents with the Office of the United States Trustee.  Debtor does not have any domestic support obligations that she is required to pay or that have become payable post-petition.


**IX.    CRITICAL PLAN PROVISIONS**

Listed below are the sources of money earmarked to pay creditors.

a.  All or such portion of earnings from personal services performed by the Debtor after the commencement of the case or other future income of the Debtor as is necessary for the execution of the Plan.

b.  Income received from Debtor's rental properties.

c.  A portion of cash on hand on the Effective Date.


Most likely, general unsecured creditors can expect payment on:

a. the first business day of the sixth full month following the Effective Date

b. in the amount of $5,000

c. and continuing every six months for five years.

Debtor will make distributions every six months instead of monthly for two reasons: (1) to allow sufficient cash on hand to pay administrative claims in the first month of the plan; and (2) for the

administrative convenience of disbursing funds to classes containing numerous creditors in larger installment payments twice per year instead of smaller payments each month.

## X.   DESCRIPTON OF TREATMENT OF CLAIMS

    a.   <u>Overview of Plan Payments</u>

Below is a summary of who gets paid what and when and from what source.  The identity of members within a particular class is explained beginning on the next page.  The second column lists two amounts.  First, the amount of each payment, or if only one is to be made, then that amount; second, the total amount that will be paid.  <u>The Proponent is usually not required by law to pay an unsecured creditor or interest holder everything it would otherwise be entitled to, had a bankruptcy case not commenced.</u>  The "Payment Due Date" column states the frequency with which payments will be made and the starting and ending dates.  Look at the starting date to figure out who will be paid before and after you and in what amount.  The "Source of Payment" column describes the expected source of payment.  Further details regarding the source of payment are found in sections XI and XII.

The timing of payments to many creditors is determined by the "Effective Date."  Administrative claims, unless otherwise stated, must be paid by the Effective Date.  The timing of payments to impaired creditors is measured from the Effective Date.  In this case, the Effective Date is May 1, 2013.

| Payment Recipient | Amount of each Payment<br><br>Total Claim | Payment Due Date | Source of Payment |
|---|---|---|---|
| Landsberg & | $75,000 (estimated to | Effective Date | Cash on Hand on the |

| Associates, A Professional Law Corporation (general bankruptcy counsel) | be due on the Effective Date, could be more or less) | | Effective Date |
|---|---|---|---|
| Michael S. Riley (special counsel) | $75,000 (estimated to be due on the Effective Date, could be more or less) | Effective Date | Cash on Hand on the Effective Date |
| Law Offices of Linda M. Blank (prior general bankruptcy counsel) | $0 (estimated to be due on the Effective Date) | Effective Date | Cash on Hand on the Effective Date but if any unresolved issues exist on the Effective Date respecting allowance or disgorgement of fees, amounts will be held in an account for disputed administrative claims |
| Goodman Faith, LLP (prior general bankruptcy counsel) | $0 (estimated to be due on the Effective Date) | Effective Date | Cash on Hand on the Effective Date but if any unresolved issues exist on the Effective Date respecting allowance or disgorgement of fees, amounts will be held in an account for disputed administrative claims |
| Office of the United States Trustee | $ 975.00 (quarterly fees) | Effective Date | Cash on Hand on the Effective Date |
| Class One – Secured Claim of Ventura County | $1,627.01 $4,881.02 | 1st business day of the sixth full month following the Effective Date | Post-confirmation Income |
| Class Two – Secured Claim of Condos at the District HOA | $1,000 on Effective date, followed by monthly installments in the amount of | The Effective date, followed by monthly installments commencing the first | Cash on Hand on the Effective Date; and Post-confirmation Income |

Case No. 1:12-bk-10986-AA
DISCLOSURE STATEMENT AND PLAN OF ALLANA BARONI

| | | | |
|---|---|---|---|
| | $202.71<br><br>$6,899.15 | business day of the 2nd full month following the Effective Date | |
| Class Three -- Secured Claim of The District at Green Valley Ranch | $500 on Effective date, followed by monthly installments in the amount of $117.07<br><br>$1,886.05 | The Effective date, followed by monthly installments commencing the first business day of the 2nd full month following the Effective Date | Cash on Hand on the Effective Date; and Post-confirmation Income |
| Class Four – Secured Claim of 1st Trust Deed Holder secured by Debtor's Residence | $7,562.09<br><br>$1,860,964 (subject to dispute and setoff) | 1st business day day of the first full month following the Effective Date | Post-confirmation Income |
| Class Five – Secured Claim of 1st Trust Deed Holder secured by Henderson Rental Property | $880.13<br><br>$196,000 (subject to dispute and setoff) | 1st business day of the first full month following the Effective Date | Post-confirmation Income |
| Class Six – Secured Claim of 1st Trust Deed Holder secured by Carmel Rental Property<br><br>///<br><br>/// | $4,083.33for first 5 years, then $4,583.33 for the following 3 years; then $5,423.47for remaining term<br><br>$1,400,000 (subject to dispute and setoff) | 1st business day of the first full month following the Effective Date | Post-confirmation Income |
| Class Seven -- Secured Claim of 1st Trust Deed Holder secured by Camarillo Rental Property | $3,339.58for first 5 years, then $3,839.58for next 3 years; then $4,435.63for remaining term)<br><br>$1,145,000 (subject to | 1st business day of the first full month following the Effective Date | Post-confirmation Income |

14

| | | | |
|---|---|---|---|
| | dispute and setoff) | | |
| Class Eight – Undisputed General Unsecured Claims | Pro-rata share of a total of $50,000 distributed to Classes 8 and 9 in $5,000 installments every six months<br><br>$27,000 | 1st business day of the 6th full month following the Effective Date | Post-confirmation Income |
| Class Nine – Disputed General Unsecured Claims | Pro-rata share of a total of $50,000 distributed to Classes 8 and 9 in $5,000 installments every six months<br><br><br>$1,078,275.30 (subject to dispute and setoff)(all but $135,395.60 subject to 1111(b)(Election) | 1st business day of the 6th full month following the Effective Date | Post-confirmation Income |

b.    <u>Wholly and Partially Unsecured Liens to be Stripped from Rental Properties</u>

The current fair market value of each of Debtor's rental properties are exceeded by the claims of trust deed holders.  Appraisals establishing the value of each rental property are attached hereto as **Exhibits 4, 5, and 6**.  The claim of the second trust deed holder secured by the Henderson Property is wholly unsecured and will therefore be avoided upon plan confirmation and will no longer be a lien or encumbrance on the property.  The party determined to be the allowed claim holder of such junior lien will receive a distribution as a general unsecured creditor in Class Nine.  Only allowed claims will receive a distribution under the Plan.

Each of the first trust deed holders (herein after "senior lienholders") is partially unsecured. The plan bifurcates the claims of such allowed senior lienholders into secured and unsecured claims.  Specifically, the plan provides each allowed senior lienholder with a secured claim in the

amount of the value of the property, established by the attached appraisal respecting such property, and an unsecured claim for the balance.  Accordingly, to the extent of their allowed claims, they will receive two distributions:  one pursuant to the secured portion of the claim and one pursuant to the unsecured portion of the claim.  They will have the right to vote in two classes, their own secured class and Class Nine.  However, senior lienholders may elect different treatment as described below.

Senior lienholders have the right to make an "1111(b) Election."  This election is premised on Bankruptcy code section 1111(b)(2, which states:  "[i]f such an election is made, then . . . such claim is a secured claim to the extent that such claim is allowed." 11 U.S.C. § 1111(b)(2).  In other words, making the election indicates that the creditor elects to have both the unsecured and secured portions of its claim treated as a secured claim and to relinquish its right to vote on the plan as a general unsecured creditor and share in the distribution to general unsecured creditors.  It will also permit the creditor to retain its lien in the full amount of its claim.  Making an 1111(b) election will result in the entire claim being paid at 0% interest as opposed to the interest rate proposed by the Plan for payment of the secured portion of the claim.  This is because, irrespective of whether the creditor makes an 1111(b) election, <u>the present value of the distribution to senior lienholders is equal to the value of the property securing their claim.</u>

Debtor proposes a Plan to bifurcate the secured portion of the claim (which is equal to the value of the collateral) from the unsecured portion of the claim.  The Plan proposes to restructure each loan so as to pay the secured portion of the claim the highest interest rate feasible for that particular property, given the net income derived by the property.  The goal of the restructure is to make each rental property cash flow positive.  Currently, the rent generated by each property is insufficient to cover the first mortgage on each property.  Other expenses including taxes, insurance, HOA dues and maintenance associated with each such property further drain the Debtor's resources.  A certain monthly payment was reached when calculating the selected interest rates designed to make each property cash flow.  If the creditor makes an 1111(b) Election, the monthly installment payment will be the same amount.  However, because the monthly installment

16

DISCLOSURE STATEMENT AND PLAN OF ALLANA BARONI

1  payment is reflective of present value, the creditor will not be paid any interest on a restructured

2  loan of an amount larger than present value of the property, as that would exceed the payment to

3  which the secured creditor is entitled. Senior lienholders may determine that it is in their best

4  interest to decline to make the 1111(b) Election so that they can earn interest on the secured portion

5  of their claim.  Senior lienholders must decide between earning interest on the secured portion of

6  their claim and retaining their liens for the full amount of the claim without earning interest on any

7  portion of the claim.

8        c.      Disputed Claims Reserve

9        Certain claims listed below are disputed.  For such disputed claims, as identified below, on

10 each installment payment date provided for the treatment of such class, the Disbursing Agent will

11 deposit into a segregated account ("Reserve Account") earmarked for such disputed claim, an

12 amount of cash equal to the installment payment due on such date. The cash in each Reserve

13 Account with the interest accruing thereon will be held in trust for the benefit of the holder of the

14 disputed claim.

15

16       A separate Reserve Account will be held for each disputed priority, administrative, and

17 secured claim.  When a disputed priority, administrative, or secured claim becomes allowed, the

18 Disbursing Agent will distribute to the holder thereof an amount equal to the amount in the Reserve

19 Account held for such claimant, within 10 business days of entry of an order identifying the

20 allowed claim holder.  The Disbursing Agent will thereafter distribute directly to the allowed claim

21 holder all future installment payments due under the Plan on such claim, on such future installment

22 due date,  if any.  If a surplus arises from the fact that not all claims are allowed, then that money

23 shall revert back to the Debtor.  If the disputed claim is disallowed, all funds in the Reserve

24 Account held for that claim holder will revert back to the Debtor upon entry of an order

25 disallowing the claim.

26

27

28

A single Reserve Account will be held for all disputed general unsecured claims ("General Unsecured Reserve Account").  The Disbursing Agent will distribute to the Reserve Account all amounts representing the total pro-rata distribution representing the pool of disputed claims on the date an installment payment is due to general unsecured creditors.  The Disbursing Agent will keep an accounting of which amounts represent the pro-rata share for each disputed claimant.  When a disputed general unsecured claim becomes allowed, the Disbursing Agent will distribute to the holder thereof an amount equal to funds in the General Unsecured Reserve Account earmarked for such allowed claim holder.  The Disbursing Agent will thereafter distribute directly to such allowed claim holder their pro-rata share of all future installment payments due under the Plan on such claim, on such future installment due date, if any.  If a surplus arises from the fact that not all claims are allowed, then that money shall revert back to the Debtor who will first distribute such surplus to general unsecured creditors to share in a pro-rata distribution until such funds are exhausted or until unsecured creditors are paid in full, in which case any excess would revert back to Debtor.  If the disputed claim is disallowed, all funds earmarked for that claim holder will revert back to the Debtor who will first distribute such surplus to general unsecured creditors to share in a pro-rata distribution until such funds are exhausted or until unsecured creditors are paid in full, in which case any excess would revert back to Debtor.

Below is a detailed description and treatment of administrative expenses, claims and interests.

     d.    <u>Administrative Expenses</u>

     1.  These include the "actual, necessary costs and expenses of preserving the estate" as determined by the Court after notice to creditors of a request for payment and after a hearing thereon.

     2.  The Code requires that allowed administrative expenses be paid on the effective

date unless the party holding the administrative expense agrees otherwise.  The

claimant has not agreed otherwise.

<u>Administrative Expense #1</u>

Claimant: Landsberg & Associates, A Professional Law Corporation

$75,000 (estimated could be lower or higher), subject to court approval.

<u>Administrative Expense #2</u>

Claimant: Michael S. Riley $75,000 (estimated could be lower or higher), subject to

court approval.

<u>Administrative Expense #3</u>

Claimant: Law Offices of Linda M. Blank $0 (estimated could be lower or higher),

subject to court approval.

<u>Administrative Expense #4</u>

Claimant: Goodman Faith, LLP $0 (estimated could be lower or higher), subject to

court approval.

<u>Administrative Expense #5</u>

Claimant: Office of the United States Trustee $975 (estimated).

e.    <u>Unsecured Tax Claims</u>

1.    These include certain types of property, sales and income taxes.

2.    The Code requires that the holders of such claims receive regular installment

payments in cash over a period ending not later than five years after the date of the

order for relief, unless agreed otherwise.  The claimant has not agreed otherwise.

The total cash payments must have a present value equal to the amount of the

allowed claim.  The total cash payments must have a present value equal

DISCLOSURE STATEMENT AND PLAN OF ALLANA BARONI

to the amount of the allowed claim.  The treatment of this claim is in a manner not less favorable than the most favored nonpriority unsecured claim provided in this Plan (other than any cash payments to an administratively convenient class).  The amount of the allowed claim includes the amount of tax owed plus interest of 4%. The present value is calculated as of the Effective Date.

Tax Claim #1.

There are no Priority Tax Claims

f. Class One

Secured Claim of Ventura County Treasurer and Tax Collector

Total amount of allowed claim:  $4,881.02

Total amount of payments (over time) to satisfy the secured claim: $4,881.03

Interest rate (to compensate creditor because claim is paid over time): 0%

Impaired

First payment date: 1st day of the sixth full month following the Effective Date and ontinue every six months thereafter until the third and final payment is made.

Amount of each installment: $1,627.01

Frequency of payments: Every Six Months

Total yearly payments: 2

Final payment date: November 1 1, 2015

Lien is not modified in any way by the Plan.

Description of Collateral: Real Property located at:  3339 via Verde Ct., Calabasas, California.

Additional Comments: None

g. <u>Class Two</u>

    <u>Secured Claim of Condos at the District HOA</u>

    Total amount of allowed claim:  $6,899.15

    Total amount of payments (over time) to satisfy the secured claim: $7,081.23

    Interest rate (to compensate creditor because claim is paid over time): 2.5%

    Impaired

    First payment date: Effective Date

    Amount of each installment: 1-time $1,000 payment on the Effective Date followed by monthly installments of $202.71 commencing on the first business day of the 2nd full month following the Effective Date

    Frequency of payments: Monthly

    Total yearly payments: 12

    Final payment date: 1st business day of the 30th full month following the Effective Date

    Lien is not modified in any way by the Plan.

    Description of Collateral: Real Property located at 2240 Village Walk Dr., #2311, Henderson, Nevada.

Additional Comments:  This HOA lien has super priority pursuant to Nevada statues NRS 116.3116 and NRS 116.310312 and is therefore not modified and will not be subject to lien-stripping.

h. <u>Class Three</u>

    <u>Secured Claim of The District at Green Valley Ranch</u>

    Total amount of allowed claim:  $1,886.05

DISCLOSURE STATEMENT AND PLAN OF ALLANA BARONI

Total amount of payments (over time) to satisfy the secured claim: $1,904.89

Interest rate (to compensate creditor because claim is paid over time): 2.5%

Impaired

First payment date: Effective Date

Amount of each installment: 1-time $500 payment on the Effective Date followed by

monthly installments in the amount of $117.07 commencing the 1st business day of the 2nd full

month following the Effective Date

Frequency of payments: Monthly

Total yearly payments: 12

Final payment date: 1st business day of the 12th full month following the Effective

Date

Lien is not modified in any way by the Plan.

Description of Collateral:  Real Property located at 2240 Village Walk Dr., #2311,

Henderson, Nevada.

Additional Comments:  This HOA lien has super priority pursuant to Nevada statues NRS

116.3116 and NRS 116.310312 and is therefore not modified and will not be subject to lien-

stripping.

i. Class Four

Secured Claim of the first deed of trust holder, First Federal Bank of California or its

legitimate successor or assign established to be the allowed claim holder of Class Four.  This is a

Disputed Claim for the reasons described in Section VII.  Proof of Claim number 3-1 filed by  One

West Bank, FSB is duplicative of this claim and is subject to dispute and setoff by potential claims

listed on **Exhibit 2**.  The Disbursing Agent will create a "Class Four Reserve Account" which will

be held in trust for the allowed claim holder as described above in Section X.  The allowed claim

will be given the following treatment.

    Total amount of claim:  $1,860,964.23  (subject to dispute and setoff)

    Interest rate to compensate creditor because claims paid overtime: unaltered from

note

    Impaired

    First payment date: The first business day of the first full month following the

Effective Date.

    Amount of each installment: $7,562.09

    Frequency of payments: Monthly

    Total yearly payments: 12

    Final payment date: unaltered by note

    Lien is not modified in any way by the Plan.

    Description of Collateral:  Real Property located at:  3339 via Verde Ct., Calabasas,

California.

    Additional comments: The collateral is Debtor's primary residence.  The terms of the

original note will not be modified in any way except.  As provided in Proof of Claim No. 3-1, the

total amount of the claim includes arrears in the amount of $110,065.31 (subject to dispute and

setoff).  The arrears will be cured within 5 years of the Effective Date as follows:  Debtor will

make equal monthly installments in the amount of $2005.98 commencing on the first business day

of the first full month following the Effective Date.  This amount includes interest at the current

contract rate.

In the event claim objections and litigation result in a setoff against this claim, the setoff will apply first against the arrears, then against the principal balance and any remaining balance will be paid in regular monthly installments.

j. Class Five

Secured Claim of the first deed of trust holder, Countrywide Home Loans, Inc., or its legitimate successor or assign established to be the allowed claim holder of Class Five. This is a Disputed Claim for the reasons described in Section VII. Proof of Claim number 7-1 filed by Bank of America, N.A. is duplicative of this claim and is subject to dispute and setoff by potential claims listed on **Exhibit 2**. The Disbursing Agent will create a "Class Five Reserve Account" which will be held in trust for the allowed claim holder as described above in Section X. The allowed claim will be given the following treatment.

Entire Claim (subject to claim objection and setoff): $801,712.98

Secured Portion of Claim (subject to claim objection and setoff): $196,000

Unsecured Portion of Claim (subject to claim objection and setoff): $605,712.98 (See Class Nine for Treatment of Unsecured Portion of Claim)

Total amount of payments (over time) to satisfy the secured claim: $316,845.93

Interest rate (to compensate creditor because claim is paid over time): 3.5%

Impaired

First payment date: 1st business day of the first full month following the Effective Date

Amount of each installment: $880.13

Frequency of payments: Monthly

Total yearly payments: 12

Final payment date: 1st business day of the 360th full month following the Effective Date, unless 1111(b) Election is made, in which case, not until final payment of the Entire Allowed Claim is made.

Lien is modified as follows: The amount secured by the lien is reduced to the value of the Property which according to the Appraisal attached hereto as **Exhibit 4** is $196,000.

Description of Collateral:  Real Property located at 2240 Village Walk Drive, Unit 2311, Henderson Nevada

Additional Comments: The secured portion of the claim could be as high as the Entire Amount of the Claim listed above, depending on the following factors: (1) If Debtor's claim objection is overruled and no setoffs are applied against the total amount in the proof of claim; and (2) The claim holder elects treatment under 11 U.S.C. §1111(b) and chooses to retain its lien for the entire amount of the claim (hereinafter referred to as the "1111(b) Election").

If the allowed claim holder does not make the 1111(b) Election, it will accrue interest and receive payments as described above in addition to receipt of a pro-rata distribution on the unsecured portion of its claim as provided in Class Nine, to the extent an allowed claim thereunder exists.  The allowed claim holder will also be entitled to cast a ballot as a Class Nine member in addition to voting in this class.  Upon Debtor's completion of payments of the secured portion of the claim, a reconveyance of the deed of trust securing the claim shall be made.

In the event the allowed claim holder makes the 1111(b) Election, it will <u>not</u> accrue any interest on its claim; it will not receive any distribution under Class Nine and it will not be entitled to vote in Class Nine.  The allowed claim holder will receive the same monthly installment payments described above in the until the entire amount of the allowed claim is paid in full, at

which time a reconveyance of the deed of trust shall be made. The maturity date shall be extended
to accommodate such payments.

The allowed claim holder may make the 1111(b) Election at any time prior to the
conclusion of the hearing on the Disclosure Statement or within such time as the court may fix.

In the event claim objections and litigation result in a setoff against this claim, the setoff
will apply first against the principal balance and any remaining balance will be paid in regular
monthly installments pursuant to the treatment prescribed herein.

k. Class Six

Secured Claim of the first deed of trust holder, Platinum Capital Group, or its legitimate
successors or assigns established to be the allowed claim holder of Class Six.  This is a Disputed
Claim for the reasons described in Section VII.  Proof of Claim number 9-1 filed by NationStar
Mortgage, LLC, is duplicative of this claim and is subject to dispute and setoff by potential claims
listed on **Exhibit 2**.  The Disbursing Agent will create a "Class Six Reserve Account" which will
be held in trust for the allowed claim holder as described above in Section X.  The allowed claim
will be given the following treatment.

Entire Claim (subject to claim objection and setoff): $1,480,705.83

Secured Portion of Claim (subject to claim objection and setoff): $1,400,000

Unsecured Portion of Claim (subject to claim objection and setoff): $80,705.83  (See Class
Nine for Treatment of Unsecured Portion of Claim)

Total amount of payments (over time) to satisfy the secured claim: $2,603,267.26

Interest rate (to compensate creditor because claim is paid over time): 3.5%

Impaired

First payment date: 1st business day of the first full month following the Effective Date

Amount of each installment: $4,083.33up through the 61st full month following the Effective Date (amount reflects interest-only); $4,583.33for the following 36 months (reflects interest only plus $500 principal payment); $5,423.47for the remaining term (reflects fully amortized payment).

Frequency of payments: Monthly

Total yearly payments: 12

Final payment date: 1st business day of the 481st full month following the Effective Date unless 1111(b) Election is made, in which case, not until final payment of the Entire Allowed Claim is made.

Lien is modified as follows: The amount secured by the lien is reduced to the value of the Property which according to the Appraisal attached hereto as **Exhibit 5** is $1,400,000

Description of Collateral: Real Property located at 3435 Rio Road, Carmel, California

Additional Comments: The secured portion of the claim could be as high as the Entire Amount of the Claim listed above, depending on the following factors: (1) If Debtor's claim objection is overruled and no setoffs are applied against the total amount in the proof of claim; and (2) The claim holder elects treatment under 11 U.S.C. §1111(b) and chooses to retain its lien for the entire amount of the claim (hereinafter referred to as the "1111(b) Election").

If the allowed claim holder does not make the 1111(b) Election, it will accrue interest and receive payments as described above in addition to receipt of a pro-rata distribution on the unsecured portion of its claim as provided in Class Nine, to the extent an allowed claim thereunder exists. The allowed claim holder will also be entitled to cast a ballot as a Class Nine member in addition to voting in this class. Upon Debtor's completion of payments of the secured portion of the claim, a reconveyance of the deed of trust securing the claim shall be made.

In the event the allowed claim holder makes the 1111(b) Election, it will <u>not</u> accrue any

interest on its claim; it will not receive any distribution under Class Nine and it will not be entitled

to vote in Class Nine.  The allowed claim holder will receive the same monthly installment

payments described above until the entire amount of the allowed claim is paid in full, at which time

a reconveyance of the deed of trust shall be made.  The maturity date shall be extended to

accommodate such payments.

The allowed claim holder may make the 1111(b) Election at any time prior to the

conclusion of the hearing on the Disclosure Statement or within such time as the court may fix.

In the event claim objections and litigation result in a setoff against this claim, the setoff

will apply first against the principal balance and any remaining balance will be paid in regular

monthly installments pursuant to the treatment prescribed herein.

l. <u>Class Seven</u>

<u>Secured Claim of the first deed of trust holder, Countrywide Home Loans, Inc., or its</u>

<u>legitimate successors or assigns established to be the allowed claim holder of Class Seven.</u>  This is

a Disputed Claim for the reasons described in Section VII.  Proof of Claim number 10-1 filed by

The Bank of New York Mellon, et.al., is duplicative of this claim and is subject to dispute and

setoff by potential claims listed on **Exhibit 2**.  The Disbursing Agent will create a "Class Seven

Reserve Account" which will be held in trust for the allowed claim holder as described above in

Section X.  The allowed claim will be given the following treatment.

Entire Claim (subject to claim objection and setoff): $1,401,460.91

Secured Portion of Claim (subject to claim objection and setoff): $1,145,000

Unsecured Portion of Claim (subject to claim objection and setoff): $256,460.90 (See Class

Nine for Treatment of Unsecured Portion of Claim)

Case No.  1:12-bk-10986-AA
DISCLOSURE STATEMENT AND PLAN OF ALLANA BARONI

Total amount of payments (over time) to satisfy the secured claim: $2,129,100.72

Interest rate (to compensate creditor because claim is paid over time): 3.5%

Impaired

First payment date: 1st day of the first full month following the Effective Date

Amount of each installment: $3,339.58up through the 61st full month following the Effective Date (amount reflects interest-only); $3,839.58for the following 36 months (reflects interest only plus $500 principal payment); $4,435.63for the remaining term (reflects fully amortized payment).

Frequency of payments: Monthly

Total yearly payments: 12

Final payment date:  1st business day of the 481st full month following the Effective Date unless 1111(b) Election is made, in which case, not until final payment of the Entire Allowed Claim is made.

Lien is modified as follows:  The amount secured by the lien is reduced to the value of the Property which according to the Appraisal attached hereto as **Exhibit 6** is $1,145,000.

Description of Collateral: Real Property Located at 5390 Plata Rosa Court, Camarillo, California

Additional Comments: The secured portion of the claim could be as high as the Entire Amount of the Claim listed above, depending on the following factors: (1) If Debtor's claim objection is overruled and no setoffs are applied against the total amount in the proof of claim; and (2) The claim holder elects treatment under 11 U.S.C. §1111(b) and chooses to retain its lien for the entire amount of the claim (hereinafter referred to as the "1111(b) Election").

If the allowed claim holder does not make the 1111(b) Election, it will accrue interest and receive payments as described above in addition to receipt of a pro-rata distribution on the unsecured portion of its claim as provided in Class Nine, to the extent an allowed claim thereunder exists.  The allowed claim holder will also be entitled to cast a ballot as a Class Nine member in addition to voting in this class.  Upon Debtor's completion of payments of the secured portion of the claim, a reconveyance of the deed of trust securing the claim shall be made.

In the event the allowed claim holder makes the 1111(b) Election, it will <u>not</u> accrue any interest on its claim; it will not receive any distribution under Class Nine and it will not be entitled to vote in Class Nine.  The allowed claim holder will receive the same monthly installment payments as described above until the entire amount of the allowed claim is paid in full, at which time a reconveyance of the deed of trust shall be made.  The maturity date shall be extended to accommodate such payments.

The allowed claim holder may make the 1111(b) Election at any time prior to the conclusion of the hearing on the Disclosure Statement or within such time as the court may fix.

In the event claim objections and litigation result in a setoff against this claim, the setoff will apply first against the principal balance and any remaining balance will be paid in regular monthly installments pursuant to the treatment prescribed herein.

m. <u>Class Eight</u>

<u>Undisputed General Unsecured Claims</u>

Total amount of allowed claims: $27,388.77

Total amount of payments (over time) to satisfy claims: Pro-rata share of $50,000 to be distributed between Classes 8 and 9 but not to exceed 100% of allowed claims.

Interest rate: 0%

Case No.  1:12-bk-10986-AA

DISCLOSURE STATEMENT AND PLAN OF ALLANA BARONI

Impaired

First payment date: 1st business day of the 6th full month following the Effective Date

Amount of each installment: Pro-rata share of $5,000 to be distributed to Classes 8 and 9

Frequency of payments: Every 6 months

Total yearly payments: 2

Final payment date: 1st day of the 61st full month following the Effective Date

Additional Comments: In the event claim objections or 1111(b) Elections result in Debtor's ability to pay Class 8 claimants early on their pro-rata share of the total $50,000 to be distributed among Classes 8 and 9, Debtor may but is not required to do so and may thereafter seek entry of discharge early.

n.  Class Nine

Disputed General Unsecured Claims of Junior and Stripped Mortgage Holders where the identity of the legitimate claimholder is in dispute and claims are subject to setoff.

Total amount of claims (assuming no 1111(b) Elections are made):  1,078,275.30

Total amount of payments (over time) to satisfy claims: Pro-rata share of $50,000 to be distributed between Classes 8 and 9 but not to exceed 100% of allowed claims.

Interest rate: 0%

Impaired

First payment date: 1st business day of the 6th full month following the Effective Date

Amount of each installment: Pro-rata share of $5,000 to be distributed to Classes 8 and 9

Frequency of payments: Every 6 months

Total yearly payments: 2

Final payment date: 1st day of the 61st full month following the Effective Date

DISCLOSURE STATEMENT AND PLAN OF ALLANA BARONI

Additional Comments:  Class Nine includes the unsecured portion of Classes Five, Six and Seven (including the duplicative proofs of claims identified therein) and the claim of a wholly unsecured junior lienholder of a second positioned deed of trust encumbering the Henderson Property in the amount of $135,395.60, which has been scheduled as the disputed secured claim of Countrywide Home Loans, Inc., and for which a duplicative claim has been filed by Green Tree Servicing, LLC in proof of claim number 4-1.  There will be protracted litigation and claim objections relating to these claims which may result in setoffs against such claims.  For this reason, they are separately classified from the undisputed general unsecured claims.   The Disbursing Agent will open a "General Unsecured Reserve Account" which will be held in trust for allowed claim holders as described above in Section X.

## XI.    SOURCE OF MONEY TO PAY CLAIMS

The Plan cannot be confirmed unless the Court finds that it is "feasible," which means that the Proponent has timely submitted evidence establishing that the Debtor will have sufficient funds available to satisfy all expenses, including the scheduled creditor payments discussed above. Attached as **Exhibit 8**  is a statement of projected cash flow for the duration of the Plan.  The focus is on projected cash receipts and cash disbursements.  All non-cash items such as depreciation, amortization, gains and losses are omitted.  A positive number reflects a source of cash; a (negative number) reflects a use of cash.

SECTION XVI(c) states the assumptions and details surrounding the statement of projected cash flow.

On the Effective Date, the Plan pays up to $150,000 in administrative claims; and $1,500 in payment of certain secured claims.  The source of payments for administrative claims is:

cash on hand on the Effective Date.  The Debtor's current cash on hand is reflected in the most

recently filed Monthly Operating Report, which is attached hereto as **Exhibit 7**.  The total cash on

hand as of August 31, 2012 was $390,000.  See Exhibit 7, pg. 94-122.


**XII.      FINANCIAL RECORDS TO ASSIST IN DETERMINING WHETHER**

**PROPOSED PAYMENT IS FEASIBLE**


Attached as **Exhibit 7** are the Debtors' monthly operating reports filed with the Court,

which include three types of financial documents, including balance sheets, cash flow statements

and income and expense statements for the period commencing February 2012 to date.


**XIII.     ASSETS AND LIABILITIES OF THE ESTATE**

a.  Assets

The identity and fair market value of the estate's assets are listed in **Exhibit "3"** so that the

reader can assess what assets are at least theoretically available to satisfy claims and to evaluate the

overall worth of the bankruptcy estate.  Whether the Plan proposes to sell any of these assets is

discussed in **Section XVII.**

b. Liabilities

**Exhibit "1"** shows the allowed scheduled claims and the filed disputed and undisputed

claims against the estate, claims whose treatment is explained in detail by **Section X.**

c. Summary

The fair market value of all assets equals 5,589,711.  Total liabilities equal 5,794,769.

DISCLOSURE STATEMENT AND PLAN OF ALLANA BARONI

# XIV.    TREATMENT OF NONCONSENTING CLASSES

As stated above, even if all classes do not consent to the proposed treatment of their claims under the Plan, the Plan may nonetheless be confirmed if the dissenting classes are treated in a manner prescribed by the Code.  The process by which dissenting classes are forced to abide by the terms of a plan is commonly referred to as "cramdown."  The Code allows dissenting classes to be crammed down if the Plan does not "discriminate unfairly" and is "fair and equitable."  The Code does not define discrimination, but it does provide a minimum definition of "fair and equitable." The term can mean that secured claimants retain their liens and receive cash payments whose present value equals the value of their security interest.  For example, if a creditor lends the Debtor $100,000 and obtains a security interest in property that is worth only $80,000, the "fair and equitable" requirement means that the claimant is entitled to cash payments whose present value equals $80,000 and not $100,000.  The term means that unsecured claimants whose claims are not fully satisfied at least know that no claim or interest that is junior to theirs will receive anything under the Plan, except where the Debtor is an individual, has elected to retain property included in the Estate under 11 U.S.C.A. § 1115 (West Supp. 2006) and has satisfied 11 U.S.C.A. § 1129(b)(2)(B)(ii) (West Supp. 2006).  "Fair and equitable" means that each holder of an interest must receive the value of such interest or else no junior interest is entitled to receive anything.

Therefore, if a class of general unsecured claims votes against the Plan, the Plan cannot be confirmed where the Debtor or a class of interest holders (e.g. shareholders or partners) will receive or retain any property under the Plan, unless the Plan provides that the class of general unsecured claims shall be paid in full with interest.  These are complex statutory provisions and the preceding paragraphs do not purport to state or explain all of them.

# XV.   TREATMENT OF NONCONSENTING MEMBERS OF CONSENTING CLASS (CHAPTER 7 LIQUIDATION ANALYSIS)

The Plan must provide that a nonconsenting impaired claimant or interest holder of a consenting class receive at least as much as would be available had the Debtor filed a Chapter 7 petition instead.

In a Chapter 7 case the general rule is that the Debtor's assets are sold by a trustee. Unsecured creditors generally share in the proceeds of sale only after secured creditors and administrative claimants are paid.  Certain unsecured creditors get paid before other unsecured creditors do.  Unsecured creditors with the same priority share in proportion to the amount of their allowed claim in relationship to the total amount of allowed claims.

A creditor would recover from the assets of the bankruptcy estate less under Chapter 7 than under Chapter 11 for the following reasons.   First, in a chapter 7 case a trustee is appointed and is entitled to compensation from the bankruptcy estate in an amount no more than 25% of the first $5,000 of all moneys disbursed, 10% on any amounts over $5,000 and up to $50,000, 5% on all amounts over $50,000 and up to $1,000,000, and such reasonable compensation no more than 3% of moneys over $1,000,000.  Also, a chapter 7 recovery may be less because an individual debtor is permitted to exempt a certain amount of the sales proceeds before unsecured creditors are paid anything.  Attached **Exhibit 3** provides a detailed description of the value of Debtor's assets, the encumbrances against such assets, the exemptions that could be asserted in a Chapter 7 liquidation and the administrative costs that would apply in a Chapter 7 liquidation.  It reveals that a Chapter 7 liquidation would result in no distribution to general unsecured creditors.

**XVI.**        **FUTURE DEBTOR**

 a.        <u>Management of Debtor</u>

 1.        Names of persons who will manage the Debtor's business affairs: The Debtor

 shall be the person responsible for managing her financial affairs.

 2.        Proposed compensation to persons listed above:  N/A

 3.        Qualifications: N/A

 4.        Affiliation of persons to Debtor: N/A

 5.        Job description: N/A


 b.        <u>Disbursing Agent</u>

 The Debtor will serve as the Disbursing Agent and will be responsible for creating

maintaining and administering all reserve accounts described herein; and for collecting money

intended for distribution to allowed claim holders and transmitting it to them.  The Disbursing

Agent's address is: 3339 Via Verde Ct., Calabasas, California.

 1.        Proposed compensation to person listed above: N/A

 2.        Qualifications: N/A

 3.        Affiliation of person to Debtor: N/A

 4.        Job description: Properly disbursing to allowed claimholders the plan

 payments provided for under this Plan, and regularly providing reports to the

 United States Bankruptcy Court, the creditors, and other interested parties as

 required by the Court or under the Plan.

 c.        <u>Future Financial Outlook</u>

 The Proponent believes that the Debtor's economic health will improve from its

prebankrutpcy state for the following reasons.  The plan will reduce mortgage payments on rental

properties so that the rent generated from each property will be sufficient to service the debt and

pay the property taxes, insurance, HOA dues and maintenance for each property.  Debtor does not

foresee any adverse changes in the compensation she or her spouse expect to receive from their

personal services and expect post-petition earnings for personal services to remain the same.

Section XI provides a summary of the projected cash flow of the Debtor for the duration of

the Plan.  The following assumptions underlie the projections.  Debtor will continue to lease each

rental property for at least the same amount of rent currently generated by each property for the

duration of the Plan.  Debtor and Debtor's spouse will continue to earn at least the some average

monthly income for the duration of the Plan.   Expenses will remain the same for the next 5 years

with the exception of decreasing plan payments as payments are made.

As previously stated, Plan payments will come from the continued collection of rent and

compensation for the personal services of Debtor and her spouse.  If such revenue is insufficient

funds to provide all of the Plan payments, then the Proponent will make up the shortfall under the

following conditions and subject to the following terms.  All cash currently being held for the

benefit of creditors whose claims are secured by the rental properties will revert to Debtor on the

Effective Date and will serve as a savings account for Debtor in the event of unexpected

emergencies and to cover shortfalls in Plan payments resulting therefrom or resulting from

unforeseen circumstances that adversely affect Debtor's revenue.  The Proponent's financial

solvency, which is relevant to her ability to honor her commitment to make up any shortfall, is

demonstrated by the following facts.  The most recently filed Monthly Operating Report reflects a

total of $256,030.59 of cash collateral which will revert to the Debtor upon the Effective Date.  All

cash collateral will revert to the Debtor on the Effective Date.

//

//

DISCLOSURE STATEMENT AND PLAN OF ALLANA BARONI

**XVII. SALE OR TRANSFER OF PROPERTY; ASSUMPTION OF CONTRACTS AND LEASES; OTHER PROVISIONS**

The Plan provides for the following:  Debtor will retain all assets and assume all executor contracts and unexpired leases.  Debtor is not in default of any executory contract or unexpired lease and therefore no cure payments are required.

The Court must make certain findings of fact before approving the aforementioned provisions as part of the Plan.  The Proponent will request that the Court make the appropriate findings at the confirmation hearing, based upon evidence submitted in support of the confirmation motion.

**XVIII.         BANKRUPTCY PROCEEDINGS**

The following significant events occurred during the bankruptcy case.  The court approved the employment of general bankruptcy counsel who have been substituted for Landsberg & Associates, A Professional Law Corporation ("L&A") whose employment has also been approved by the Court.  L&A was employed by Debtor after prior counsel's performance resulted in the Court granting relief from the automatic stay respecting Debtor's home, at the request of One West Bank (who may not even have an allowed claim).  L&A filed an emergency motion for reconsideration which resulted in the Court reimposing the automatic stay just before a foreclosure of Debtor's home was scheduled.

The Court has also employed special counsel Michael S. Riley who will continue investigating and pursuing the claims described in attached **Exhibit 2**.

Debtor has also obtained authority to use cash collateral derived from rental income.

1  Debtor will be seeking disgorgement of fees from prior general bankruptcy counsel, Linda Blank

2  and Goodman Faith, LLP and will object to any further administrative claims sought by either of

3  them.

4        Through special counsel, Debtor will also be continuing the investigation and pursuit of all

5  claims identified on the attached **Exhibit 2** which will affect claim objections and setoffs described

6  in above.

7

8  **XVIX.        TAX CONSEQUENCES OF PLAN**

9

10        CREDITORS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX

11  LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORENYS,

12  AND/OR ADVISORS.  The following disclosure of possible tax consequences is intended solely

13  for the purpose of alerting readers about possible tax issues the Plan may present to the Debtor.

14  The Debtor CANNOT and DOES NOT represent that the tax consequences contained below are

15  the only tax consequences of the Plan because the Tax Code embodies many complicated rules

16  which make it difficult to state completely and accurately all of the tax implications of any action.

17        The Debtor does not anticipate that confirmation of the Plan will have a significant or

18  material affect on her tax liability.  The Debtor makes no representations regarding the potential tax

19  consequences to creditors.

20

21  **XX.    EFFECT OF CONFIRMATION OF PLAN**

22        a.    <u>General Comments</u>

23        The provisions of a confirmed Plan bind the Debtor, any entity acquiring property under the

24  Plan, and any creditor, interest holder, or general partner of the Debtor, even those who do not vote

25  to accept the Plan.

26

27

28

1 The confirmation of the Plan vests all property of the estate in the Debtor.

2 The automatic stay is lifted upon confirmation as to property of the estate.  However, the

3 stay continues to prohibit collection or enforcement of pre-petition claims against the Debtor or the

4 Debtor's property until the date the Debtor receives a discharge, if any.  If the Debtor does not seek

5 a discharge, the discharge is deemed denied, and the stay as to the Debtor and the Debtor's property

6

7 terminates upon entry of the order confirming the Plan.

8  b. <u>Discharge of liability for payment of debts; status of liens; equity security holders</u>

9 Unless the Debtor is not entitled to receive a discharge pursuant to 11 U.S.C.A. 1141(d)(3)

10 (West 2004), the debtor may obtain a discharge only upon specific order of the Court.

11 A discharge does not discharge a debt excepted from discharge under 11 U.S.C.A. § 523

12 (West 2004 & Supp. 2006).  Additionally, confirmation of the Plan does not discharge any debt

13 provided for in the Plan until the Court grants a discharge on completion of all payments under the

14

15 Plan.  At any time after the confirmation of the Plan, and after notice and a hearing, the Court may

16 grant a discharge to the Debtor who has not completed payments under the Plan if – (i) the value,

17 as of the Effective Date of the Plan, of property actually distributed under the Plan on account of

18 each allowed unsecured claim is not less than the amount that would have been paid on such claim

19 if the estate of the debtor had been liquidated under Chapter 7 on such date; and (ii) modification of

20 the Plan under section 1127 is not practicable, unless the Court finds that there is no reasonable

21

22 cause to believe that – (i) section 522(q)(1) may be applicable to the Debtor; and (ii) there is

23 pending any proceeding in which the Debtor may be found guilty of a felony of the kind described

24 in section 522(q)(1)(A) or liable for a debt of the kind described in section 522(q)(1)(B).  *See* 11

25 U.S.C.A. § 522(q)(1)(A)-(B) (West Supp. 2006).

26

27

28

1          c.      Modification of the Plan

2   The Proponent may modify the Plan pursuant to 11 U.S.C.A. §1127 (West  2004 & Supp. 2006).

3          d.      Post-Confirmation Causes of Action

4          To the best knowledge of the Proponent, the estate has the causes of action listed on

5   **Exhibit 2** attached hereto.  The estate also has a claim for disgorgement of fees paid to prior

6   general bankruptcy counsel and potential malpractice claims identified in Schedule B.

7          Debtor is designated as representative of the estate under 11 U.S.C. 1123(b)(3) (West 2004)

8   and shall have the right to assert any or all of the above causes of action post-confirmation.  Post-

9   confirmation, all causes of action which will revert to the Debtor.  Debtor shall have the right to

10  assert any or all of the above causes of action post-confirmation in accordance with applicable law.

11         e.      Final Decree

12         Once the Plan has been consummated, a final decree may be entered upon motion of the

13  Proponent.  The effect of the final decree is to close the bankruptcy case.  After such closure, a

14  party seeking any type of relief relating to a Plan provision can seek such relief in a state court of

15  general jurisdiction.

16

17

18

19

20

21

22

23

24

25

26

27

28
                                                    41                    Case No.  1:12-bk-10986-AA
                              DISCLOSURE STATEMENT AND PLAN OF ALLANA BARONI

# XXI.   DECLARATION IN SUPPORT OF DISCLOSURE STATEMENT AND PLAN

I, Allana Baroni, declare under penalty of perjury under the laws of the United States of America that the following statements are true and based upon personal knowledge.

1.      Summer Saad, of Landsberg & Associates, A Professional Law Corporation, general bankruptcy counsel, is the individual who prepared this document from information provided by Allana Baroni.

2.      The source of all financial data is Allana Baroni's personal knowledge of her financial affairs and all information she keeps with respect thereto.

3.      All facts and representations in the Plan and Disclosure Statement are true to the best of my knowledge.

4.      No fact material to a claimant or equity security holder in voting to accept or reject the proposed Plan has been omitted.

5.      The name of the person who prepared the cash flow projections and the other financial documents is Debtor, Allana Baroni.

6.      The accounting method(s) used to prepare the cash flow projections and the other financial documents is cash basis.

Executed this 20th day of March 2012.


 */s/ Allana Baroni*
ALLANA BARONI

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 3

ADVERSARY PROCEEDING COMPLAINT OF PLAINTIFFS ALLANA BARONI & JAMES BARONI V. SEROR
(PERSONALLY AND IN HIS CAPACITY AS CHAPTER 7 TRUSTEE) ET AL.; AND JURY DEMAND

64

Ian S. Landsberg, Esq. (SBN 137431)
Summer Saad, Esq. (SBN 250337)
**LANDSBERG & ASSOCIATES**
**A Professional Law Corporation**
5950 Canoga Avenue, Suite 605
Woodland Hills, California 91367
Telephone: (818) 855-5900
Facsimile: (818) 855-5910
Email: ilandsberg@landsberg-law.com

Attorneys for Debtor and Debtor in Possession

FILED & ENTERED

APR 15 2013

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY remy     DEPUTY CLERK

CHANGES MADE BY COURT

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re | Case No. 1:12-bk-10986-AA |
| | |
| ALLANA BARONI, | Chapter 11 |
| | |
| Debtor and Debtor in Possession. | **ORDER CONFIRMING DEBTORS' SECOND AMENDED PLAN OF REORGANIZATION** |
| | |
| | **Hearing:** |
| | Date:  April 3, 2013 |
| | Time:  10:00 a.m. |
| | Place:  Courtroom "303" |
| | 21041 Burbank Blvd. |
| | Woodland Hills, CA. 91367 |

The hearing on confirmation of the Second Amended Plan of Reorganization of Allana Baroni, filed on March 20, 2013[Docket No. 376] (the "Plan") by Debtor and debtor in possession, Allana Baroni ("Debtor"), came on for hearing on April 3, 2013, before the Honorable Alan M. Ahart, United States Bankruptcy Judge, presiding. Appearances are as noted in the official transcript of the Court.

**Exhibit 4**

1

2

3

The Court having received, reviewed and considered the Plan, the evidence submitted in support of the plan, all filed objections to confirmation of the Plan, having heard and considered the statements of counsel, and being fully advised,

4

5

**IT IS HEREBY ORDERED THAT**:

6

7

8

9

1.   The form and manner of notice of the hearing on confirmation of the Plan and service of the Disclosure Statement/Plan are hereby approved as constituting appropriate notice in accordance with 11 U.S.C. §§102 and 1125 Rules 2002, 3017 and 3018 of the Federal Rules of Bankruptcy Procedure, and Local Bankruptcy Rule 9013-1;

10

11

2.   The Plan is incorporated herein by reference and is hereby confirmed and approved by this Court;

12

3.   All capitalized terms used herein have the same definition given them in the Plan;

13

14

15

4.   ~~The Debtor is authorized to perform all acts, execute and deliver all documents, pleadings and other instruments of any kind necessary or appropriate to carry out the provisions of the Plan and/or this Order;~~

16

5.   ~~Upon entry of this Order, all property of the estate shall vest in Debtor;~~

17

18

19

6.   ~~Unless the Debtor is not entitled to receive a discharge pursuant to 11 U.S.C.A. 1141(d)(3), Debtor will be entitled to a discharge upon completion of all payments under the Plan, and may obtain a discharge upon specific order of the Court;~~

20

21

22

23

24

25

26

27

28

7.   ~~At any time after the confirmation of the Plan, and after notice and a hearing, the Court may grant a discharge to Debtor if she has not completed payments under the Plan if -- (i) the value, as of the Effective Date of the Plan, of property actually distributed under the Plan on account of each allowed unsecured claim is not less than the amount that would have been paid on such claim if the estate of the debtor had been liquidated under Chapter 7 on such date; and (ii) modification of the Plan under section 1127 is not practicable, unless the Court finds that there is no reasonable 522(q)(1)(A) or liable for a debt of the kind described in section 522(q)(1)(B). See 11 U.S.C.A. § 522(q)(1)(A)-(B);~~

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

~~8.   The cause to believe that — (i) section 522(q)(1) may be applicable to the Debtor; and (ii) there is pending any proceeding in which the Debtor may be found guilty of a felony of the kind described in section automatic stay is lifted upon confirmation as to property of the estate. However, the stay continues to prohibit collection or enforcement of pre-petition claims against the Debtor or the Debtor's property until the date the Debtor receives a discharge, if any;~~

9.   Except for as specified in the Plan, and except for any executory contracts and unexpired leases which may have been assumed in writing by Debtor prior to the Effective Date any and all executory contracts and unexpired leases which were, or which are, claimed to be, or have been in existence at any time during the course of this proceeding or before this proceeding was filed, are deemed rejected on the Effective Date;

10. The Reorganized Debtor, as the Disbursing Agent(s), shall distribute all property to be distributed pursuant to the terms of the Plan.  The Disbursing Agent(s) may employ or contract with other entities to assist in, or to perform, the distribution of said property as provided for in the Plan;

11. Pursuant to Local Bankruptcy Rule 3020-1, within 120 days of the entry of this confirmation Order, the Disbursing Agent shall file a status report explaining what progress has been made toward consummation of the confirmed Plan.  The initial report shall be served on the United States Trustee, the twenty largest unsecured creditors, and those parties who have requested special notice.  Further reports shall be filed every 180 days thereafter and served on the same entities, unless otherwise ordered by the court. A post-confirmation status conference shall be held on September 18, 2013 at 10:00 a.m. in Courtroom 303.

~~12. If the final decree has been entered before the status conference, the Post-Confirmation Status Conference will be vacated;~~

CONFIRMATION ORDER
**Exhibit 4**

1    ~~13. Once the Plan has been consummated, a final decree may be entered upon motion of~~

2    ~~the Proponent. The effect of the final decree is to close the bankruptcy case. After such closure, a~~

3    ~~party seeking any type of relief relating to a Plan provision can seek such relief in a state court of~~

4    ~~general jurisdiction.~~

5

6                                             # # #

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24    Date: April 15, 2013                     _Cela M. Cela_____
                                              Alan M. Ahart
25                                            United States Bankruptcy Judge

26

27

28

                                      4                    Case No.  1:12-bk-10986-AA
                              CONFIRMATION ORDER
                                   **Exhibit 4**

**NOTICE OF ENTERED ORDER**

1

2  I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:  *5950 Canoga Avenue, Suite 605, Woodland Hills, California 91367.*

3  A true and correct copy of the foregoing document described as **"ORDER CONFIRMING DEBTORS' SECOND AMENDED PLAN OF REORGANIZATION"** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

4

5  **I.    SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** B

6  Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of <u>April 5, 2013</u>, the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below.

7

8

9

10
- *Adam N Barasch    anb@severson.com*
- *Linda M Blank    linda@lmblank.com*
- *Mark Domeyer    mdomeyer@mileslegal.com*
- *Daniel K Fujimoto    wdk@wolffirm.com*
- *Barry S Glaser    bglaser@swjlaw.com*
- *Andrew A Goodman    agoodman@greenbass.com*
- *Lewis R Landau    LLandau@HorganRosen.com*
- *Ian Landsberg    ilandsberg@landsberg-law.com, bgomelsky@landsberg-law.com;ssaad@landsberg-law.com;dzuniga@landsberg-law.com*
- *Ali Matin    amatin@bmkattorneys.com*
- *Robert Reganyan    reganyanlawfirm@gmail.com*
- *J Alexandra Rhim    arhim@dykema.com, CPerez@dykema.com*
- *S Margaux Ross    margaux.ross@usdoj.gov*
- *Stefanie A Schiff    stefanie.schiff@akerman.com, helen.serrano@akerman.com*
- *United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov*
- *Kristin S Webb    bknotice@rcolegal.com*
- *Edward T Weber    bknotice@rcolegal.com*

11

12

13

14

15

16

17

18  ☐    Service information continued on attached page

19  **II.  SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States Mail, first class, postage prepaid, to the following person(s) and/or entity(ies) at the address(es) indicated below:

20

21  ☐    Service information continued on attached page

22  **III.  TO BE SERVED BY THE LODGING PARTY**: Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s), and/or email address(es)

23

24

25  ☒    Service information continued on attached page

26  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

27

28

| *April 15, 2013* | Diana Zuniga | */s/ Diana Zuniga* |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

**Exhibit 4**

<div align="center">

**SERVICE LIST**

</div>

**Served Via U.S. Mail:**

Attorney for OneWest Bank, FSB
**DYKEMA GOSSETT, LLP**
333 S. Grand Avenue, Suite 2100
Los Angeles, CA 90071

Attorney for OneWest Bank, FSB
William B. Finkelstein
Jeffrey R. Fine
**DYKEMA GOSSETT, PLLC**
1717 Main Street, Suite 4000
Dallas, TX. 75201

Attorney:
Michael S. Riley
242 Algiers Avenue
Fort Lauderdale, FL 33308

Linda M. Blank, Esq.
**LAW OFFICES OF LINDA BLANK**
1925 Century Park East, Suite 2000
Los Angeles, CA 90067

Allana Ann Baroni
3339 Via Verde Court
Calabasas, CA 91302

Andrew A. Goodman, Esq.
**GREENBERG & BASS**
16000 Ventura Boulevard, Suite 1000
Encino, CA 91436

Attorney for Nationstar Mortgage LLC
Severson & Werson P.C.
One Embarcadero Center 26th Fl.
San Francisco, CA. 94111

Attorneys for The Bank of New
York Mellon
Akerman Senterfitt LLP
Stefanie A. Schiff
725 S. Figueroa St. 38th Floor
Los Angeles, CA. 90017

Attorney for Secured Creditor
Los Angeles County Treasurer and Tax
Collector
Barry S. Glaser
Steckbauer Weinhart, LLP
333 S Hope Street, 36th Floor
Los Angeles, CA. 90071

Ambac Assurance Corporation
Ambac Financial Group, Inc.
One State Street Plaza
New York, NY 10004

American Express
P.O. Box 0001
Los Angeles, CA 90096

American Water
c/o Client Services, Inc.
3451 Harry S. Truman Boulevard
Saint Charles, MO 6331-4047

American Express Centurion Bank
c/o **BECKET AND LEE LLP**
P.O. Box 3001
Malvern, PA 19355-0701

Aurora Loan Services
P.O. Box 1706
Scottsbluff, NE 69363

Aurora MSF Lehman
SARM 2005-17
10350 Park Meadow Drive
Lone Tree, CO 80124

Audi Financial
P.O. Box 3
Hillsboro, OR 97123

BAC Home Loans Servicing, LP
100 N. Tyron Street
Charlotte, NC 28255

| | | |
|---|---|---|
| 1 | BAC Home Loas Servicing, LP | |
| 2 | TX-2-977-01-03 | Deutsche Bank |
| | P.O. Box 961206 | 60 Wall Street |
| 3 | Fort Worth, TX 76161-0206 | New York, NY.1005-2858 |
| 4 | Bank of America | EMC Mortgage |
| | P.O. Box 982235 | EMC Mortgage Corporation |
| 5 | El Paso, TX 79998 | 2780 Lake Vista Drive |
| 6 | | Lewisville, TX 75067-3884 |
| | Bank of America | |
| 7 | 100 N. Tyron Street | EMC Mortgage Corporation |
| | Charlotte, NC 28255 | 2780 Lake Vista Drive |
| 8 | | Lewisville, TX 75067 |
| | Bank of America, N.A. | |
| 9 | P.O. Box 660933 | Federal Deposit Insurance Corp. |
| 10 | Dallas, TX 75266-0933 | 1601 Bryan Street, Suite 1700 |
| | | Dallas, TX 75201 |
| 11 | Bank of America, N.A. | |
| | 400 National Way | Financial Security Assurance, Inc. |
| 12 | Simi Valley, CA 93065 | as Assured Guarantee Company |
| 13 | | 31 West 52nd Street |
| | Capital One | New York, NY 10019 |
| 14 | Capital One Bank | |
| | P.O. Box 4199 | First Federal Bank of California |
| 15 | Houston, TX 77210-4199 | 401 Wilshire Boulevard |
| 16 | | Santa Monica, CA 90401 |
| | Christiana Bank and Trust Company | |
| 17 | c/o WSFS Bank | FIA Card Services, N.A. |
| | 500 Delaware Avenue | P.O. Box 15102 |
| 18 | Wilmington, DE 19801 | Wilmington, DE 19886-5102 |
| 19 | Condos at the District HOA | George Sidman and Kathleen Carr |
| | c/o Nevada Association Services | 3385 Rio Road |
| 20 | 6224 W. Desert Inn Road, Suite S | Carmel by the Sea, CA 93921 |
| 21 | Las Vegas, NV 89146 | |
| | | Green Point Mortgage Funding, Inc. |
| 22 | Countrywide Home Loans, Inc. | 100 West Hollow Drive |
| | 400 Countrywide Way SV-35 | Novato, CA 94945 |
| 23 | Simi Valley, CA 93065 | |
| 24 | | Green Tree Servicing LLC |
| | CWHEQ, Inc. | P.O. Box 94710 |
| 25 | 4500 Park Granada | Palatine, IL 60094-4710 |
| | Calabasas, CA 91302 | |
| 26 | | Green Tree Servicing LLC |
| 27 | Deutsche Bank | 7360 S. Kyrene Road, T-120 |
| | 1761 East St. Andrews Place | Tempe, AZ 85283-8432 |
| 28 | Santa Ana, CA 92705 | |

CONFIRMATION ORDER
**Exhibit 4**

| | | |
|---|---|---|
| 1 | | |
| 2 | Green Tree Servicing, LLC | MMA Realty Capital "MRC" |
| | P.O. Box 6172 | 621 E. Pratt Street, Suite 600 |
| 3 | Rapid City, SD 57709 | Baltimore, MD 21223 |

Green Tree Servicing, LLC
Bankruptcy Departmnet
P.O. Box 6154
Rapid City, SD 57709-6154

Meridian Foreclosure Service
3 San Joacuin Plaza, Suite 215
Newport Beach, CA 92660-5943

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

Meridian Foreclosure Service
8485 W. Sunset Road, Suite 205
Las Vegas, NV 89113-2249

Jack Kasarjian and Karlene Kelly
5390 Plata Rosa Center
Camarillo, CA 93012

Nationstar Mortgage, LLC
P.O. Box 299008
Lewisville, TX 75029-9008

James Baroni
3339 Via Verde Court
Calabasas, CA 91302

Nationstar Mortgage, LLC
Bankruptcy Department
350 Highland Drive
Lewisville, TX 75067

JP Morgan Chase as Trustee for CWHEQ
Revolving Home Equity Loan Asset Backed
Notes/Series 2005-D
270 Park Avenue
New York, NY 10017

Nevada Associates Service, Inc.
6224 W. Desert Inn Road
Las Vegas, NV 89146-6612

OneWest Bank FSB
P.O. Box 66935
Los Angeles, CA 90066-0931

JP Morgan Chase Bank, Houston, TX as
Trustee for Unidentified Trust
600 Travis Street
Houston, TX 77002

OneWest Bank FSB
P.O. Box 7056
Pasadena, CA 91109-7056

JP Morgan Chase Bank as Trustee
270 Park Avenue
New York, NY 10017

OneWest Bank FSB
888 E. Walnut Street
Pasadena, CA 91101-1802

LaSalle Bank National Association, as
Trustee for Washington Mutual Pass-Through
Certificates WMALT Series 2007-5
135 LaSalle Street
Chicago, IL 60603

OneWest Bank FSB
P.O. Box 829009
Dallas, TX 75381-9009

Lehman Brothers Holdings Inc.
1271 Avenue of the Americas
New York, NY. 10020-1304

OneWest Bank FSB
c/o Meridian Foreclosure Service
8485 W. Sunset Road, Suite 205
Las Vegas, NV 89113-2249

---

3                                                        Case No.  1:12-bk-10986-AA

| | |
|---|---|
| Platinum Capital Group | Ventura County Tax Collector |
| 1919 Santa Monica Boulevard | 800 South Victoria Avenue |
| Santa Monica, CA 90404 | Ventura, CA 93009 |
| | |
| Structured Asset Mortgage Investment II, Inc. | Wells Fargo Bank NA as Trustee for SAM II |
| 383 Madison Avenue | 2006-AR6 |
| New York, NY 10179 | 9062 Old Annapolis Road |
| | Columbia, MD 21045-1951 |
| Structured Asset Securities Corporation | |
| 745 Seventh Avenue, 7th Floor | Wells Fargo Bank N.A. as Trustee for |
| New York, NY 10020 | BSALTA 2004-13 (GPM A31) |
| | 9062 Old Annapolis Road |
| Tex Brooks | Columbia, MD 21045-1951 |
| 2240 Village Walk Drive, Bldg. 2311 | |
| Henerson, NV 89052 | Wells Fargo Bank NA as Strustee for SARM |
| | 2004-5 |
| The Bank of New York Mellon as Successor | 9062 Old Annapolis Road |
| to JP Morgan Chase Bank NA as Trustee for | Columbia, MD 21045-1951 |
| the Certificate of Holders for the Structured | |
| The One Wall Street | Wells Fargo Bank NA as Trustee SARM |
| New York, NY 10286 | 2005-17 |
| | 9062 Old Annapolis Road |
| The Bank of New York Mellon FKA The | Columbia, MD 21045-1951 |
| Bank of New York | |
| 400 National Way | US Bank as Trustee for DSLA Mortgage |
| Simi Valley, CA 93065 | Loan Trust 2004-AR1 |
| | 60 Livingston Avenue |
| The District at Green Valley Ranch | Saint Paul, MN 55107-2292 |
| 9500 W. Flamingo Road, Suite 100 | |
| Las Vegas, NV 89417 | Wells Fargo Bank NA as Trustee for SARM |
| | 2004-5 |
| Twickenham Capital Corporation, LLC | 9062 Old Annapolis Road |
| c/o Lord Securitie Corporation | Columbia, MD 21045-1951 |
| 48 Wall Street, 25th Floor | |
| New York, NY 10005 | Wells Fargo Bank NA as Trustee for SAMI II |
| | 2006 AR6 |
| US Bank as Successor to Bank of America | 9062 Old Annapolis Road |
| N.A. as Successor to La Salle Bank N.A. as | Columbia, MD 21045-1951 |
| Trustee for Washington Mutual Mortgage | |
| 60 Livingston Avenue | Wells Fargo Bank NA as Trustee for SARM |
| Saint Paul, MN 55107-2292 | 2005-17 |
| | 9062 Old Annapolis Road |
| US Bank as Trustee for DSLA Mortgage | Columbia, MD 21045-1951 |
| Loan Trust 2004-AR1 | |
| 60 Livingston Avenue | Los Angeles City Clerk |
| Saint Paul, MN 55107-2292 | P.O. Box 53200 |
| | Los Angeles, CA 90053-0200 |

4
CONFIRMATION ORDER
**Exhibit 4**

Case No.  1:12-bk-10986-AA



1
2   Employment Development Department
    Bankruptcy Group MIC 92E
3   P.O. Box 826880
    Sacramento, CA 94280-0001

4   L.A. County Tax Collector
5   Bankruptcy Unit
    P.O. Box 54110
6   Los Angeles, CA 90054-0110

7
8   Franchise Tax Board
    Bankruptcy Section MS: A340
9   P.O. Box 2952
    Sacramento, CA 95812-2952
10
11  Securities & Exchange Commission
    5670 Wilshire Boulevard, 11th Floor
    Los Angeles, CA 90036-5627
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CONFIRMATION ORDER
**Exhibit 4**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

# **EXHIBIT 4**

27
28







# EXHIBIT 2

Richard L. Antognini (Cal. Bar No. 075711)
Law Office of Richard L. Antognini
2485 Notre Dame Blvd., Suite 370, #45
Chico, California 95928-7167
Tel: (916) 295-4896
Email: rlalawyer@yahoo.com

Anthony R. Mordente (NY Reg. No. 1847516) (Pro hac vice)
Mordente Law Firm, LLC
160-29 Union Turnpike
Fresh Meadows, New York 11366-1937
Tel: (718) 969-9200
Email: amordente@mordentelaw.com
*Counsel for Plaintiffs*

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| In re | ) Bankruptcy Case No.1:12-bk-10986-MB |
| | ) Chapter 7 |
| ALLANA BARONI, | ) Adv. Proc. No.1:24-ap-01059-MB |
| | ) |
| Debtor. | ) |
| _____ | ) |
| ALLANA BARONI AND JAMES BARONI | ) |
| (individually and on behalf of the United | ) |
| States), | ) |
| | ) PLAINTIFFS' REQUEST FOR |
| Plaintiffs, | ) CONTINUANCE UNDER LBR 9013- |
| | ) 1(m)(1) OF THE FEBRUARY 27, 2025, |
| v. | ) HEARINGS ON MOTIONS TO DISMISS |
| | ) FOR FAILURE TO STATE A CLAIM FOR |
| DAVID SEROR (personally, and in his | ) RELIEF |
| capacity as Chapter 7 Trustee); BRUTZKUS | ) |
| GUBNER; BG LAW LLP; WELLS FARGO | ) |
| BANK N.A.; SEVERSON & WERSEN A | ) Hearings: |
| Professional Corporation; LIBERTY | ) |
| MUTUAL INSURANCE COMPANY; | ) Date: February 27, 2025 |
| UNITED STATES FIRE INSURANCE | ) Time: 2:30pm |
| COMPANY; and DOES 1-50, | ) Place: Via Zoom.gov or 21041 Burbank |
| | ) Boulevard, Courtroom 303 |
| Defendants. | ) Woodland Hills, CA 91367 |
| _____ | ) |

Plaintiffs Allana Baroni and James Baroni, individually, and on behalf of the United States, hereby request pursuant to LBR 9013-1(m)(1) that the Court continue the February 27, 2025, hearings on Defendants BG Law LLP ("BG Law"), David Seror, Liberty Mutual Insurance Company, Amynta Group, and Severson & Werson PC's ("Severson") Motions to Dismiss filed as Docs 23, 71, and 77.

**A.    Relevant Background**

On November 4, 2024, Plaintiffs filed a Motion to Withdraw the Reference Under 28 U.S.C. §157(d) and Federal Rule of Bankruptcy Procedure 5011, in the United States District Court for the Central District of California as Doc. 1 U.S. in Case No. 2:24-cv-09537-MWF (the "Motion to Withdraw"). The Motion to Withdraw concerns the adversary proceeding filed in the bankruptcy court by Plaintiffs on November 4, 2024 (Doc. 1 in Adv. Proc. Case No. 1:24-ap-01059-MB, the "Adversary Proceeding").

 On November 5, 2024, the Honorable Martin R. Barash was served with the Motion to Withdraw. On December 2, 2024, the District Court set the following briefing schedule for the Motion to Withdraw:

- Opposition to the Motion shall be filed no later than January 13, 2025.
- Reply in support of the Motion shall be filed no later than January 27, 2025. The Motion will then be taken under submission, unless the Court determines that a hearing is needed.

As of the time of this filing, the U.S. District Court has not entered its decision on the Motion to Withdraw.

On December 5, 2024, Defendants David Seror (personally, and in his capacity as Chapter 7 Trustee); Brutzkus Gubner; BG Law LLP, and Liberty Mutual Insurance Company, filed a Motion to Dismiss the Complaint, as Doc 23.

On December 9, 2024, Plaintiffs filed as Doc. 29, a *Notice Of Plaintiffs' Motion To Withdraw The Reference Under 28 U.S.C. §157(d) And Federal Rule Of Bankruptcy Procedure 5011 Pending In The U.S. District Court,* informing the Bankruptcy Court of the Motion to Withdraw briefing schedule and requesting the Motion to Dismiss not be set for hearing until the Motion to Withdraw is decided by the District Court, but the Bankruptcy Court took no action to continue the January 30, 2025, hearing on the Motion to Dismiss.

On January 9, 2025, the Court set the hearing on Defendants BG Law, David Seror, and Liberty Mutual Insurance Company's Motion to Dismiss for January 30, 2025, (Doc. 28).

On January 16, 2025, Plaintiffs filed their Opposition and Request for Judicial Notice in support of their Opposition to the Motion to Dismiss, as Doc. Nos. 55 and 56 respectively.

On January 23, 2025, Defendants BG Law, David Seror, and Liberty Mutual Insurance Company filed their Reply as Doc. No. 63.

On January 27, 2025, Plaintiffs filed a request for continuance of the January 30, 2025, Motion to Dismiss hearing, as Doc. 66.

On January 29, 2025, the Court granted in part Plaintiff's request for continuance, continuing the hearing to February 27, 2025, and ordering *3. No later than noon on February 26, 2025, Plaintiffs shall file and serve a brief status report regarding the procedural status of Plaintiffs' Motion to Withdraw the Reference Under 28 U.S.C. §157(d), etc. currently pending before the United States District Court,* Doc. 68.

On February 6, 2025, Defendant BG Law filed a Motion to Dismiss on behalf of Amynta Group, which is not a defendant in this case, as Doc. 71.

On February 6, 2025, Defendant Severson filed a Motion to Dismiss filed as Doc. 77.

On February 13, 2025, Plaintiffs filed their Opposition to the Amynta Group's Motion to Dismiss, as Doc. 84.

On February 13, 2025, Plaintiffs filed their Opposition to Severson's Motion to Dismiss, as Doc. 85.

On February 20, 2025, Defendant BG Law LLP filed its Reply on behalf of the Amynta Group, as Doc. 88.

On February 20, 2025, Defendant Severson filed its Reply as Doc. 78.

**B.    The Hearing On The Motion To Dismiss Should Be Continued Until After The Motion To Withdraw the Reference Pending In The US District Court Is Decided**

The Court did not make clear in its January 29, 2025, continuance order, if it intends to continue the February 27, 2025, hearing on the Motion to Dismiss in the event the District Court has not entered its decision on Plaintiffs Motion to Withdraw the

1   Reference. Therefore, and because LBR 9013-1(m)(1) requires a request for continuance to

2   be filed at least 3 days before the date set for the hearing, Plaintiffs request the February

3   27, 2025, hearings on the Motions to Dismiss filed by BG Law and Severson be continued

4   until after the US District Court entered its decision on the Motion to Withdraw.

5      **C.**  **The Hearings On Defendants' Motions To Dismiss Should Be
      Continued Until Plaintiffs Motion For Recusal Or Disqualification**

6         **Under 28 U.S.C. § 455 Has Been Decided**

7      Plaintiffs argued in their January 27, 2025, motion for continuance that whether

8   the U.S. District Court withdraws the reference of the Adversary Proceeding to the

9   Bankruptcy Court, or not, Judge Barash should not preside over the Adversary

10   Proceeding. Judge Barash did not make any findings in connection with Plaintiffs'

11   arguments, did not treat Plaintiffs request as a motion for recusal or disqualification, and

12   has not recused himself from presiding over the Adversary Proceeding. Therefore,

13   Plaintiffs have filed concurrently with this request for continuance, their Motion for

14   Recusal or Disqualification pursuant to 28 U.S.C. §455 which requires recusal where "a

15   reasonable person with knowledge of all the facts would conclude that the judge's

16   impartiality might reasonably be questioned." *United States v. Studley*, 783 F.2d 934, 939

    (9th Cir. 1986).

17      **D.**  **A Previous Continuance Has Been Granted**

18      On January 27, 2025, Plaintiffs filed a request for continuance of the January 30,

19   2025, Motion to Dismiss hearing, as Doc. 66.

20      On January 29, 2025, the Court granted in part Plaintiffs' request for continuance,

21   continuing the hearing to February 27, 2025, Doc. 68.

22

23

24    Dated: February 24, 2025    LAW OFFICE OF RICHARD L. ANTOGNINI

25               /s/ Richard L. Antognini

26               _____
            Richard L. Antognini, Esq.

27               *Attorneys for Plaintiffs*

28

---

# DECLARATAION OF RICHARD ANOTGNINI

1. I, Richard Antognini, am counsel to Plaintiffs. I have personal knowledge regarding the contents of this Declaration, and if called upon as a witness, I could and would competently testify to the facts set forth below which are true of my own personal knowledge.

2. On November 4, 2024, Plaintiffs filed a Motion to Withdraw the Reference Under 28 U.S.C. §157(d) and Federal Rule of Bankruptcy Procedure 5011, in the United States District Court for the Central District of California as Doc. 1 U.S. in Case No. 2:24-cv-09537-MWF (the "Motion to Withdraw"). The Motion to Withdraw concerns the adversary proceeding filed in the bankruptcy court by Plaintiffs on November 4, 2024 (Doc. 1 in Adv. Proc. Case No. 1:24-ap-01059-MB, the "Adversary Proceeding").

3. On November 5, 2024, the Honorable Martin R. Barash was served with the Motion to Withdraw.

4. On December 2, 2024, the District Court set the following briefing schedule for the Motion to Withdraw:

- Opposition to the Motion shall be filed no later than January 13, 2025.
- Reply in support of the Motion shall be filed no later than January 27, 2025. The Motion will then be taken under submission, unless the Court determines that a hearing is needed.

5. As of the time of this filing, the US District Court has not entered its decision on the Motion to Withdraw. Therefore, the February 27, 2025, hearings on the Motions to Dismiss should be continued until after the Motion to Withdraw pending in the U.S. District Court is decided.

6. Whether the U.S. District Court withdraws the reference of the Adversary Proceeding to the Bankruptcy Court, or not, Judge Barash should not decide issues pertaining to the Adversary Proceeding for the reasons set out in Plaintiff's concurrently filed *Motion for Recusal or Disqualification pursuant to 28 U.S.C. §455.*

7.    The hearings on Defendants' Motions to Dismiss should be continued until the Motion for Recusal or Disqualification has been decided.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 24, 2025, at Chico, California.

/s/ Richard Antognini

_____

Richard Antognini, declarant

1 Richard L. Antognini, Esq. (Cal. Bar No. 075711)
2 Law Office of Richard L. Antognini
  2485 Notre Dame Blvd., Suite 370, #45
3 Chico, California 95928-7167
  Tel: (916) 295-4896
4 Email: rlalawyer@yahoo.com

5
  Anthony R. Mordente (NY Reg. No. 1847516) (Pro hac vice pending)
6 Mordente Law Firm
  160-29 Union Turnpike
7 Fresh Meadows, New York 11366-1937
  Tel: (718) 969-9200
8 Email: amordente@mordentelaw.com
9 *Counsel for Plaintiffs*

10              **UNITED STATES BANKRUPTCY COURT**
11               **CENTRAL DISTRICT OF CALIFORNIA**

12 In re                                )  Bankr. Case No. 1:12-bk-10986-MB
                                         )  Adv. Proc. Case No. 1:24-ap-01059-MB
13    ALLANA BARONI,                     )
14                                       )
         Debtor                          )
15                                       )
                                         )
16 _____ )
17 ALLANA BARONI AND JAMES BARONI        )
   (individually and on behalf of the United )  [PROPOSED] ORDER GRANTING
18 States),                              )  PLAINTIFFS' REQUEST FOR
                                         )  CONTINUANCE UNDER LBR 9013-
19                                       )  1(m)(1) OF THE FEBRUARY 27, 2025
         Plaintiffs,                     )  HEARINGS ON MOTIONS TO DISMISS
20                                       )  FOR FAILURE TO STATE A CLAIM FOR
21 v.                                    )  RELIEF
                                         )
22 DAVID SEROR (personally, and in his   )
   capacity as Chapter 7 Trustee); BRUTZKUS )
23 GUBNER; BG LAW LLP; LIBERTY           )  Current Hearings:
   MUTUAL INSURANCE COMPANY;             )
24 UNITED STATES FIRE INSURANCE          )  Date: February 27, 2025
   COMPANY; WELLS FARGO BANK N.A.;       )  Time: 2:30pm
25 BERNARD KORNBERG; SEVERSON &          )  Place: Via Zoom.gov or 21041 Burbank
   WERSEN A Professional Corporation; and )  Boulevard, Courtroom 303
26 DOES 1-50.                            )  Woodland Hills, CA 91367
27                                       )
                                         )
28       Defendants.                     )
   _____ )

                                                                              1

This matter comes before the Court pursuant to LBR 9013-1(m)(1) on a request for continuance of the February 27, 2025, hearings on Defendants' Motions to Dismiss Plaintiffs Adversary Proceeding (Doc. 1) for Failure to State a Claim, filed as Docs 23, 71, and 77.

The Court has reviewed the motion and the Declaration of Richard Antognini in support thereof (the "Motion"), the oppositions, replies, and is fully informed.

The Court having read and considered the Motion, and all papers and pleadings filed in support and opposition thereof; the Court having found that notice of the Motion was appropriate and sufficient; and good cause appearing therefor:

Accordingly, IT IS HEREBY ORDERED:

1. Plaintiffs' Request for Continuance of the February 27, 2025, hearings on Defendants' Motions to Dismiss for Failure to State a Claim filed as Doc. 23, 71, and 77 is GRANTED.

2. The Court sets the continued hearing date as:

IT IS SO ORDERED.

Dated: _____

_____

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

2485 Notre Dame Blvd., Suite 370, #45; Chico, California 95928-7167

A true and correct copy of the foregoing document entitled (*specify*): Plaintiffs Request For Continuance Under LBR 9013-1(m)(1) Of The February 27, 2025, Hearings On Motions To Dismiss For Failure To State A Claim For Relief **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On February 24, 2025, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

United States Trustee (SV) ustpregion16.wh.ecf@usdoj.gov
David Seror dseror@bg.law, csalszar@bg.lw; C133@ecfcbis.com, mgalvan@bg.law
Jason Komorsky jkomorsky@bg.law
Adam Barash anb@severson.com
Justin Balser justin.balser@troutman.com


**2. SERVED BY UNITED STATES MAIL**:
On    , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.


**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on February 24, 2025, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Via email:

Jason Komorsky jkomorsky@bg.law
Adam Barash anb@severson.com
Justin Balser justin.balser@troutman.com


I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 2/24/2025 | Janice Hall | /s/ Janice Hall |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

2485 Notre Dame Blvd., Suite 370, #45; Chico, California 95928-7167

A true and correct copy of the foregoing document entitled (*specify*): PLAINTIFFS' MOTION FOR DISQUALIFICATION OF THE HON. MARTIN R. BARASH PURSUANT TO 28 U.S.C. §455, **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On February 24, 2025, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

United States Trustee (SV) ustpregion16.wh.ecf@usdoj.gov
David Seror dseror@bg.law, csalszar@bg.lw; C133@ecfcbis.com, mgalvan@bg.law
Jason Komorsky jkomorsky@bg.law
Adam Barash anb@severson.com
Justin Balser justin.balser@troutman.com


**2.  SERVED BY UNITED STATES MAIL**:
On      , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.


**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on February 24, 2025, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Via Overnight Mail:

The Honorable Martin R. Barash
United States Bankruptcy Court
Central District of California
21041 Burbank Boulevard, Suite 342 / Courtroom 303
Woodland Hills, CA 91367




I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 2/24/2025 | Janice Hall | /s/ Janice Hall |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                          **F 9013-3.1.PROOF.SERVICE**